## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN ZINC ASSOCIATION<br>2025 M St., N.W.<br>Suite 800<br>Washington, D.C. 20036,<br><br>       Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF<br>COMMERCE<br>1401 Constitution Avenue, N.W.<br>Washington, D.C. 20230,<br><br>       Defendant. | **COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF**<br><br>Case:<br>Assigned To:<br>Assign. Date:<br>Description: |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### PRELIMINARY STATEMENT

1.    This is an action under the Freedom of Information Act, as amended, 5 U.S.C.

§ 552 ("FOIA"), for declaratory, injunctive, and other appropriate relief, seeking, principally,

the immediate production of agency records requested by plaintiff American Zinc

Association ("AZA") from defendant United States Department of Commerce ("DOC")

regarding the federal policy of procuring products made from recycled materials.

2.    DOC has violated FOIA by: (i) improperly withholding responsive records,

including failing to produce reasonably segregable portions of withheld responsive records;

and (ii) failing to respond to AZA's appeal of DOC's response to AZA's request for records

within the time period mandated by FOIA.

3.      AZA seeks: (i) a declaration that the records sought are subject to disclosure under FOIA; (ii) affirmative injunctive relief requiring DOC to immediately produce all responsive records that have been unlawfully withheld; and (iii) an award of reasonable attorneys' fees and other litigation costs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

6.      Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure.

## PARTIES

7.      Plaintiff AZA is a Washington, D.C.-based, not-for-profit, trade organization comprised of primary and secondary producers of zinc metal, zinc oxide and zinc dust marketed in the United States, as well as consumers.  Its mission includes supporting government efforts to create incentives for recycling of products with recycled or recovered content.

8.      Defendant DOC is a department of the Executive Branch of the United States Government.  DOC is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTUAL ALLEGATIONS

9.      Section 6002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6962, establishes the federal policy of using the government's purchasing power to increase recycling by increasing markets for products with recycled content.

10.     Under the statutory and regulatory regime established by RCRA, the United States Environmental Protection Agency ("EPA") proposes products for inclusion in a list of products with recovered content.

11.     Following notice and the opportunity to comment, EPA designates products with recovered content as part of its Comprehensive Procurement Guidelines ("CPG"). The current CPG can be found at 40 CFR Part 247.

12.     Once a product is added to the CPG, federal agencies, states and localities receiving federal funds and contractors on projects with federal funding are required to purchase those products to the fullest extent practicable. RCRA § 6002(e).

13.     AZA and the domestic steel industry have worked with EPA to include products in the CPG, and have worked with Congressional staff to improve the RCRA/CPG process. As a result of these efforts, a number of steel products have been added to the CPG.

14.     As a result of a meeting of the G-8 in 2004, Japan proposed an initiative called the 3Rs Initiative. The three "Rs" were: reduce, reuse and recycle.

15.     A ministerial meeting to discuss the 3Rs Initiative was held in Tokyo in April 2005.

16.     DOC's Deputy Assistant Secretary Joseph Bogosian ("Bogosian") delivered a keynote address at the ministerial meeting in Japan on April 28, 2005 ("Address"). A copy of the Address is attached as Exhibit A.

17.     AZA and the domestic steel industry had met with Bogosian prior to the Address to inform him about, inter alia, the RCRA requirements for preference of CPG products in purchasing.

3

18.     Prior to finalizing the Address, stakeholders and other agencies had been asked by the DOC to submit suggestions.

19.     On June 1, 2005, DOC convened a meeting at its headquarters for interested stakeholders to debrief on the proceedings in Japan.

20.     At that meeting, copies of the Address were distributed to attendees, including AZA.

21.     Following government comments, AZA's Executive Director, George Vary, expressed to Bogosian and others present, including Bogosian's counsel, David van Hoogstratten, AZA's concern over this sentence in the Address: "Smart purchasing is not and should not be a simple preference for recycled products over non-recycled." See Exhibit A, p. 13.

22.     AZA asked Bogosian for the identity of the person who drafted this portion of the Address and the reasons behind the inclusion of this language.

23.     Bogosian and his counsel specifically agreed to the request.

24.     Despite repeated follow-up requests, neither Bogosian nor his counsel ever provided the information requested at the June 1, 2005 meeting.

25.     At no time did DOC deny it had committed to provide this information.

26.     On May 1, 2006, AZA sent a FOIA request to DOC (the "FOIA Request"). The FOIA Request sought all documents possessed by DOC regarding communications relating to (a) "green procurement," (b) "smart procurement" or (c) general government procurement of products with recycled content, in connection with the 3Rs Initiative, including any materials in connection with the Address. A copy of the FOIA Request is attached as Exhibit B.

4

27.     On June 12, 2006, DOC mailed its response to the FOIA Request (the "DOC FOIA Response"). The DOC FOIA Response cover letter is attached as Exhibit C.

28.     The DOC FOIA Response withheld 137 documents. As grounds, DOC asserted that the pages withheld were exempt from disclosure under 5 U.S.C. §§ 552 (b)(5).

29.     Despite this objection, DOC produced a number of other documents that bore the caption "DRAFT, PRE-DECISIONAL AND DELIBERATIVE," or otherwise indicated that the materials were a "draft" or contained editorial changes from the "OGC," Office of General Counsel.

30.     DOC failed to provide reasonably segregable portions of the 137 withheld responsive records, as required by 5 U.S.C. § 552(b).

31.     On July 10, 2006, AZA appealed the DOC FOIA Response (the "Appeal"). The Appeal is attached as Exhibit D.

32.     On July 12, 2006, DOC acknowledged receipt of the Appeal. A copy of this acknowledgement is attached as Exhibit E.

33.     On September 29, 2006, Mr. Vary spoke via telephone with Mr. Keith Hagg, an attorney at DOC, about the Appeal. Mr. Hagg did not provide any information regarding AZA's Appeal and stated only that all appeals "are given the attention they deserve."

34.     On March 9, 2007, Mr. Hagg sent an e-mail to Mr. Vary stating that the Appeal was "fourth in my queue of appeals awaiting adjudication." He also apologized to Mr. Vary for not keeping him informed "as promised" on a monthly basis of the progress of the Appeal. A copy of this e-mail is attached as Exhibit F.

35.     On October 3, 2007, Mr. Vary e-mailed Mr. Hagg, inquiring as to whether AZA's Appeal had moved up in the queue. See Exhibit F.

36.    On October 4, 2007, Mr. Hagg confirmed that AZA still stood fourth in line; meaning no FOIA appeal had been processed by Mr. Hagg in at least seven months. A copy of this e-mail is attached as Exhibit G.

37.    To date, DOC has failed to respond to the Appeal.

38.    Under 5 U.S.C. § 552(a)(6)(A), DOC had 20 days from its receipt of the Appeal to make a determination with respect to the Appeal.

39.    More than 20 days have passed since DOC's receipt of the Appeal.

40.    AZA is therefore deemed to have exhausted its administrative remedies under FOIA. See 5 U.S.C. § 552(a)(6)(C)(i).

## COUNTS FOR RELIEF

### Count One

### Failure to Provide Responsive Records

41.    AZA realleges and incorporates paragraphs 1-40.

42.    On May 1, 2006, AZA properly submitted a request to DOC for records that are public records subject to FOIA.

43.    DOC failed to provide reasonably segregable portions of the 137 withheld responsive records, as required by 5 U.S.C. § 552(b) and despite the near certainty that some portions of the 137 withheld responsive records are reasonably segregable.

44.    DOC improperly relied on exemptions under 5 U.S.C. §§ 552(b)(5) in withholding responsive records.

45.    Accordingly, DOC's withholding of responsive documents is improper and violates FOIA.

6

**Count Two**

**Failure to Respond to Appeal**

46.     AZA realleges and incorporates paragraphs 1-45.

47.     On July 10, 2006, AZA appealed DOC's improper withholding of 137 responsive documents.

48.     On July 12, 2006, DOC acknowledged receipt of the Appeal.

49.     As of the date of this complaint, DOC has not responded to the Appeal which is improper and violates FOIA.

**WHEREFORE,** AZA respectfully requests that this Court:

A.     Declare that DOC's failure to provide reasonably segregable portions of the 137 withheld responsive records is unlawful under FOIA.

B.     Declare that DOC's withholding of responsive records is unlawful under FOIA.

C.     Declare that DOC's failure to respond to the Appeal within the statutory time period is unlawful under FOIA.

D.     Enter an affirmative injunction that directs DOC to make all requested records available to AZA, unredacted, and without any further delay.

E.     Award AZA its reasonable attorneys' fees and other litigation costs.

F.      Grant AZA any further relief that this Court deems just and proper.


                        Respectfully submitted,


                        By      Charles D. Tobin (Bar No. 15919)
                                Holland & Knight LLP
                                2099 Pennsylvania Avenue, N.W.
                                Suite 100
                                Washington, D.C. 20006
                                (202) 955-3000  Phone
                                (202) 955-5564  Fax
                                *Counsel for Plaintiff*

# **EXHIBIT A**

**International Symposium on the 3R Initiative**
**Keynote Address**
**Joseph H. Bogosian**
**April 28, 2005**

Thank You and Welcome

- On behalf of the United States Department of Commerce and the U.S.
  Government, I appreciate this opportunity to present some remarks about the
  importance of the 3Rs, the benefits to the environment and industry, and the
  need for partnership in order to achieve these benefits.
- I would like to thank the Government of Japan for all the initiative, time and
  resources devoted to pushing forward the 3Rs.
- Specifically, I would like to thank the United Nations University and the
  Organization for the Promotion of Sustainable Society for their support in
  hosting this International Symposium, under the auspices of the Ministry of
  Economy, Trade and Industry.

U.S. Support for Japan's 3Rs Proposal

- The United States is proud to have hosted the 2004 G-8 Summit where the
  concept of the 3Rs was formally presented.
- And we are proud to have worked closely with our Japanese colleagues at Sea
  Island, Georgia to make the 3Rs a deliverable of that 2004 leaders' conference.

<u>The Many Rs</u>

- We know the 3Rs:

  1. Reduce waste

  2. Reuse

  3. Recycle – But there are also many other important Rs:

  4. Remanufacture

  5. Refurbish

  6. Reassemble

  7. Rebuild

  8. Reclaim·

  9. Recondition

  10. Recover

  11. Re-engineer

  12. Reprocess

  13. Restore.  And most importantly,

  14. Responsibility – responsibility to the environment, responsibility to the economy and responsibility to each other to work together in partnership

<u>Win-Win for Economy and Environment</u>

- We know from our experience in the United States, that it is much easier to gain a national consensus on key environmental policies when these policies reflect a win-win for both the environment and the economy.

2

- In the U.S., environmental policy makers and those of us on the economic and trade side work closely together to coordinate our activities and to try and ensure, where we can, that our environmental policies strengthen our economy and that our economic policies support environmental protection efforts.

- For these reasons, we are very pleased to see METI organize this Symposium around the themes it has chosen and in a way that can productively be carried forward into the discussions at the 3Rs Ministerial over the next two days.

- As we address important issues such as the 3Rs, the U.S. government seeks to partner with its domestic industries, non-governmental organizations and with every household in America. We are glad that this is the approach that the Government of Japan has taken at this conference as well.

- Immediately after the 2004 G-8 Summit at Sea Island, Georgia, the U.S. Government launched an interagency effort to create partnerships among U.S. agencies and the private sector to develop a comprehensive solution

- We reached out through a formal process to engage the private sector and reap the benefit of their experience. Often, we find that the private sector is ahead of government in its thinking as a result of the practical applications of the concepts we are discussing. Many times, government policies lag behind innovation and have to change and adapt to changes in science, industry and the marketplace.

- It is important to remember that in the United States, though the government is active in recycling efforts, government often does not act alone or exclusively. Much is going on within U.S. corporations, at the state and local levels, and in individual households nation-wide. Government rules and regulations have to be flexible to support innovation – not create mandates that hinder innovation.

3

- In this spirit, the U.S. delegation to this Symposium and the 2-day Ministerial is comprised of government officials, industry representatives and non-governmental groups.
- Representatives from Hewlett-Packard Corporation and Caterpillar Corporation are participating on panels today. These individuals along with other non-governmental observers from the Institute of Scrap Recycling Industries and the National Recycling Coalition are formally a part of the U.S. delegation. Together we will help bring back the messages from the Conference to the United States and carry forward the lessons of the 3Rs.

3Rs is Future

- The 3Rs is the future. The goals to reduce waste, reuse, remanufacture, recycle – and all those other Rs – are really the future of environmental protection.
- The better we get at the 3Rs, the more efficient we will become and the more we will avoid environmental problems in the first place.
- While each of us has our own sets of laws and national culture, the broad principles of how to implement the 3Rs is something we can probably agree upon.
- Everyone knows that it makes sense –good business sense and good environmental sense to produce in a way that uses less and wastes less.
- If a product can be reused or refurbished or remanufactured so as to save money and protect the environment, those approaches should be pursued. They are being pursued.

4

## Remanufacturing

- Remanufacturing and refurbishment to produce "like new" products has enormous possibilities.

- While the U.S. military is a large remanufacturer, the non-military portion of the U.S. remanufacturing industry was already estimated several years ago to be about $53 billion.

- Remanufacturing is a revenue generator and a job creator – while providing significant benefits to the environment.

- The U.S. Environmental Protection Agency and the National Recycling Coalition developed an environmental benefits calculator that quantifies the job creation and revenue generation of recycling.

- Remanufacturing provides important new economic opportunities for companies, and increases competition and demand for goods by opening up new markets for reliable, fully warrantied industrial goods.

- Remanufactured goods also can provide benefits to consumers with less expensive, "like-new", fully warranted goods.

- Like recycling, remanufacturing reduces the volume of material entering the waste stream by re-directing it to the remanufacturing process – instead of to the landfill.

- In addition, as compared with products made from new materials, the remanufacturing process itself can generate significantly smaller impacts on natural resources and the environment.

- According to one industry sector, the remanufacturing of earth-moving equipment saves enough materials every year to fill 230,000 freight train cars.

- Our industry tells us that remanufacturing c m save up to 85 percent of the energy that would have been required to ma nufacture an original piece of equipment.

## PRIVATE SECTOR LEADERSHIP
### Ex: Scrap Recycling

- The American scrap processing and recyclir g industry's products are worth almost $30 billion per year and represent alr 10st 125 million tons of recyclables destined for domestic and overseas markets.
- These scrap recyclables conserve impressive amounts of energy and natural resources. For example, recycled copper sav es the nation 85% of the energy that would have been used to make the same amount of new copper from ore.
- Government must work together with this in portant industry, and
- Domestic laws and trade laws must support t ne growth of recycling efforts.

### Ex: Xerox End-of-Life Strategies

- Xerox Corporation reports that over 161 mill on pounds of material was diverted from landfills through the reuse, ren anufacturing and recycling of Xerox equipment and supplies.
- Xerox also diverted another 1.5 billion pounds of waste from landfills since 1991 through equipment end-of-life strategie s, which incorporate reuse considerations into the design process of the product.
- This growth in recycling and remanufacturin; will mean less mining, less landfill, less energy use and fewer greenhous gas emissions. It will cut overall productions costs while creating jobs.

6

Ex: Caterpillar Design for Remanufacturability

- Caterpillar Corporation in the United States has launched a "Design for Remanufacturability" program under which their new products are specifically designed so that they may be remanufactured

- We will hear more about these efforts directly from Caterpillar during the afternoon session.

Ex: Eastman Kodak One-Time Use Camera

- The Eastman Kodak Company has developed the "one-time use" camera which is actually re-used many times over.

- The consumer buys the temporary use of the camera body and the film development service. The used camera bodies are returned by the developer to Kodak for sorting and then sent outside the U.S. for disassembly and remanufacture. The remanufactured products, ready to be sold again, are then sold world-wide including in the United States.

- Kodak has entered into arrangements with a number of its competitors including Fuji and Konica Minolta right here in Japan to collect, sort and return camera bodies to Kodak. Each company acts as a collection agent for the other and resources are conserved. It is a win-win as Kodak adds to its bottom line by engaging in all of these practices.

Ex: Lean Manufacturing

- We applaud efforts by the private sector to engage in 'lean manufacturing' practices that have cut down considerably on waste and costs, and provide both economic and environmental benefits.

7

Ex: Hewlett-Packard Eco-Design

- Hewlett-Packard Corporation is engaging in Eco-design practices to reduce environmental impacts throughout the full life cycle of its products.
- A design for the environment program was started in 1992 that places a network of product stewards throughout its businesses in order to promote energy-efficiency, integrate materials innovation into product design, and design for recyclability.
- These design features include elimination of adhesives by eliminating snap-in features, marking plastic parts to speed up material recycling, and relying on modular design for ease of disassembly.
- Eco-Design is important because many U.S. companies are designing their products so components can be more easily and economically recycled or remanufactured.
- In our view, this should be done by setting broad policy goals in partnership with industry and not through prescriptive design requirements mandated by government.
- Government must think broadly and assess the complete life-cycle impacts of different products and make sure that laws truly promote the 3Rs.

Ex: Nanotechnology

- There are benefits to be reaped from nanotechnology development.
- The U.S. private sector is already engaged in developing these new technologies that use fewer resources, conserve resources and reduce the generation of waste, while producing equal or greater results.

- For example, there exist today nano-structur:d, wear-resistant coatings that are applied to ship bodies that reduce the need f r chemical applications, and significantly extend the life of the ship while cutting down on maintenance costs and non-productive down-time.

Ex: Co-Generation

- Also, "co-generation" or "combined heat an l power" has environmental benefits.
- When natural gas is burned to create electric ity, the heat is captured as useable energy for heating and cooling.
- This process as well as using productively heat that would otherwise be dissipated cuts down significantly on greenhouse gas emissions. ⁻

Ex: Nike Grind

- Nike has launched a "Reuse a Shoe" Program that reflects its commitment to Zero Waste, Zero Toxic Substances and the recovery of 100% of what is recoverable.
- In this program, Nike collects athletic shoe: (of any brand) and grinds them up into material called "Nike Grind" which is hen incorporated into playing surfaces of playgrounds, running tracks etc
- Over the last 11 years, Nike has collected 16 million pairs of shoes that have helped build over 170 playground surfaces
- Nike would like to expand this program globally and particularly in Asia.
- But customs laws and duties present a serious barrier to a program that will benefit the environment and the children who use the playgrounds.

9

- Definitions of what constitutes waste and prohibitive tariff rules prevent the free movement of such recycle-able materials and other products internationally.
- Where there is no good reason to prohibit or control the trans-boundary movement of recyclable waste, these wastes should move freely as a benefit to the environment.

## Ex: By-Product Synergies

- In the world of 3Rs, one person's waste truly can be another person's valuable raw material.
- In the early 1990's, Chaparral Steel and its parent company, Texas Industries', pursuit of "zero waste/100% product" resulted in developing what we call "By-Product Synergy".
- BPS is about creating and capturing value through: 1) matching producers of under-valued waste streams with users, and 2) working with regulators to establish support for the process.
- When BPS was first started in Texas, then-Governor George W. Bush declared that it "demonstrates the leadership needed to maintain a vibrant economy and effectively limit environmental impacts."
- The leadership that Governor, now President Bush, was pointing out is that for a program like By-Product Synergy to succeed, it requires the partnership of companies from many different industries, government regulators and a community organization that can identify the matches of waste to input.
- In contrast, a regulatory "command and control" approach to the handling of waste prohibits environmentally-beneficial solutions like BPS.
- Each country should make a commitment that overly burdensome and prescriptive regulations should not stand in the way of innovation.

The U.S. Government has listed a number of items we submitted in our 3Rs Portfolio, I would like to discuss one program:

Govt Leadership: Federal Facilities Restoration and Reuse

- The U.S. Environmental Protection Agency and other U.S. Government agencies work together with local communities and private sector investors to convert federal facilities to non-federal uses

- The U.S. EPA's Federal Facilities Restoration and Reuse Office (FFRRO) helps accelerate the transfer of federal property by coordinating environmental cleanup activities and crafting innovative property transfer arrangements.

- As part of this mission, the U.S. EPA assists in the transfer of both Base Realignment and Closure (BRAC) and National Priorities List (NPL) sites, also known as Superfund sites. Because these facilities often encompass hundreds of acres with buildings, roads and other infrastructure, their effective and efficient cleanup and reuse can play a pivotal role in a community's economic development.

- To elicit community input, smooth the transfer process and mitigate the social and economic impacts of a site closure, EPA and the lead federal agency responsible for cleanup often work with surrounding communities through advisory boards. Together, the lead federal agency, EPA and state and local governments conduct environmental restoration activities as efficiently and effectively as possible to help the local community put the property into economically beneficial use as quickly as possible.

- **BRAC Sites -** To sustain and streamline military readiness, the Department of Defense (DOD) recognized the need to close some installations and redefine the department's mission at others beginning in 1988. A large portion of BRAC property was designated for transfer to other federal agencies or non-federal entities, such as states, tribes, local governments or private industries.

- **NPL Sites** - The National Priorities List (NPL) is a list of the most heavily damaged sites eligible for cleanup under the Superfund program. In addition to Defense Department sites, other federal agencies with NPL sites include the Department of Energy (DOE) and the Department of the Interior (DOI). These sites include properties used to generate nuclear fuels and federal lands that have been environmentally damaged by multiple parties. U.S. EPA helps facilitate the thorough, efficient cleanup and transfer of such sites.

## U.S. Smart Purchasing

- The U.S. Government is using its status as a major consumer to promote environmentally smart purchasing of products.
  - o The U.S. has requirements, through legislation and Presidential Executive Orders, that mandate Federal government purchasing of environmentally smart products.
  - o This is a stewardship effort to conserve resources and use economically viable products with lesser negative impacts on human health and the environment.

12

- o The Federal program applies to the entire range of goods and services purchased by Federal agencies, from office products, to electronics, to buildings, to fleet vehicles. In addition, there are examples of applying environmentally smart considerations to weapons systems design, acquisition, maintenance, and disposal, including recycling of obsolete weapons.
- o Every state government and many local governments also have an environmentally smart purchasing program.
- Smart Purchasing means focusing on:
  1. energy efficiency,
  2. water conservation,
  3. toxics use reduction,
  4. natural resource conservation,
  5. waste minimization, and
  6. the factoring of the expected life-spans of competing products, and
  7. the factoring in of cost-benefit analysis to achieve environmental goals in the most cost-efficient manner.
  8. Smart purchasing is not and should not be a simple preference for recycled products over non-recycled

Measuring/Scientific Basis

- It is very important to make progress internationally on how we measure the environmental benefits that flow from particular manufacturing and production activities.
- If we say a process is environmentally sound, we ought to know that it is environmentally sound, and we must know the economic costs and weigh these against the perceived benefits.

13

- In this regard, I note that G-8 leaders expressly recognized the ongoing work of the OECD on material flows accounting and called for the enhancement of that work  This work is important and deserves our renewed support today.

## Barriers - Standards

- Another area we need to focus on is that of standards and standards harmonization.
- While agreement on standards can further our goals, varying standards can prevent or deny market access and frustrate environmentally smart efforts.
- Internationally, work continues on the development of standards that make the recycling of products easier and promote the use of recycled material in environmentally-smart products and industries, including the construction industry the world over.
- Standards have been developed for manufacturing processes that use less fuel and that promote the use of materials that otherwise would be treated as waste.
- In addition, the International Standards Organization (ISO) has developed guidance standards (14064) for the incorporation of environmental elements into product standards.  These are being used to develop product standards that ensure that the environmental aspects of recycling and energy construction are included in the initial design of products.

## 3Rs Trade Issues – Bilateral, Regional, and the WTO

- Last year at Sea Island G-8 Leaders agreed to "Reduce barriers to the international flow of goods and materials for recycling and remanufacturing, recycled and remanufactured products, and cleaner, more efficient technologies, consistent with existing environmental and trade obligations and frameworks."

14

- The U.S. is interested in continuing to pursu : both at the WTO and in its bilateral and regional Free Trade Agreement n :gotiations ways to promote trade in remanufactured, recycled and refurbished products that positively impact the environment.

- Remanufacturing and recycling reduces indi.strial waste, and encourages conservation by rewarding the recovery of individual parts or materials from used goods that are then reconditioned and i 1corporated or transformed into new industrial goods.

- A remanufactured product is totally distinct from a used good.

- Remanufactured goods, unlike used goods, 1ave the appearance, performance, and life expectancy of brand new goods, and meet the same performance requirements as, and enjoy warranties simili.r to, equivalent new goods.

- Simply put, support for remanufacturing rec uces waste.

- Despite these benefits, many countries restr ct or ban the importation and sale of remanufactured goods, typically because they are misunderstood to be used goods.

- Due to the clear economic and environmental benefits, the United States has worked with its trading partners to take acti on and reduce barriers to trade in remanufactured and recycled goods.

- The United States has taken concrete actior to move forward on this commitment, and our actions promise to cr :ate real economic and environmental benefits.

Remanufacturing Provisions in U.S. FTAs Fu: ther the U.S. Commitment to the 3Rs Initiative.:

- Recent U.S. FTAs (Chile, Australia, Morocco, CAFTA-DR, Panama, Andean and Thailand) encourage the conservation, recycling and reuse of industrial goods by according a tariff preference to industrial goods that are recovered and remanufactured.

- Our FTAs attempt to eliminate the use of import bans, which violate the principle of national treatment (treating imported goods the same as domestically-produced goods), and apply disciplines to import restrictions. As part of our FTAs, we have expressly clarified that import bans and restrictions on used goods do not apply to remanufactured goods.

How the WTO negotiations can further our commitment to the 3Rs Initiative:

- At the WTO in Geneva, where a major market access negotiation is ongoing, the United States is trying to help countries understand not only the distinctions between remanufactured/recycled goods and used goods, but also the environmental benefits that are associated with the remanufacturing and recycling processes.

- We have taken a two-pronged approach in the WTO to addressing trade barriers to these products: 1) reduce tariffs on one hand, and 2) non-tariff barriers (NTBs) on the other.

- On the tariff side, we have put forward the most ambitious proposal for industrial market access: a tariff-free world by 2020 that would start by eliminating all low tariffs (5 percent or less by 2010 and initially focus on highly-traded goods, which could include several remanufactured categories (e.g., agricultural equipment, parts, etc).

16

- On the NTB side, we have circulated a propc sal that focuses on barriers to the importation and sale of remanufactured motc r vehicle parts. Our goal is to get countries to agree to remove barriers to the i nportation and sale of remanufactured products so that consumers l ave access to high quality parts that are also affordably priced.

- While our initial NTB proposal is limited to remanufactured motor vehicle parts, we are considering expanding our proj osal to address other product bans and restrictions, and would welcome suppor and suggestions from other governments in this area.

- More broadly, we invite all governments, as well as industry groups and non-governmental organizations, here today to w ork with us to reduce barriers to trade in remanufactured and recycled goods

- There is a real opportunity to take concrete action in the WTO that could have economic and environmental benefits across all countries– both developed and developing – and across many sectors.

The Mechanics of the U.S. FTA Remanufactur ng Provisions

- A "remanufactured good" is defined in U.S. FTAs as an industrial good that is entirely or partially comprised of recovered goods and has the same life expectancy and warranty as a new good.

- "Recovered goods" are individual parts that are the result of: (a) the disassembly of used goods into individual parts; and (b) cleaning, inspecting, testing, or other processes as necessary for mprovement to sound working condition.

17

- A remanufactured good that is <u>entirely</u> compr sed of recovered goods is deemed "wholly obtained" and is automatically consic ered an originating good, eligible for preferential tariff treatment; such a remanu factured good need not satisfy a product specific rule of origin (e.g. a tariff shi ft or regional value content rule).

- A remanufactured good that is <u>partially</u> comp ised of recovered goods would need to satisfy an applicable product specific ule of origin. If the remanufactured good is subject to a regional value content requirement, the recovered goods would contribute towards th percentage of originating content.

- The United States' believes that remanufactu ed goods meeting the definition of "originating" should be entitled to preferentia l tariff access under an FTA as if the product were a "new" product.

- Our FTA chapters on national treatment and narket access for goods attempt to eliminate the use of import bans, which viola e the principle of national treatment, and apply disciplines to import re trictions. As part of our FTAs, we have expressly clarified that import bans and restrictions on used goods do not apply to remanufactured goods.

Objective:

- To promote the trade-related aspects of the 3 Rs, we should all acknowledge that:

   1) recycling and remanufacturing have posi ive environmental benefits; and

   2) remanufactured goods are qualitatively d fferent from "used" goods.

- Most importantly, countries must commit to work together in the WTO to pursue the elimination of all types of barrier s to trade in recycled and remanufactured goods as part of the WTO I oha Development Agenda (DDA)

and bring their domestic laws, tariffs and regı lations in line with supporting this important 3Rs objective.

## Conclusion

- We think it is significant that the Governmen of Japan has recognized, by its sponsorship of this Symposium, how industr₁ experience and the practical application of environmentally smart concepı s can usefully feed into an important ministerial-level environmental coıference on the 3Rs.

- Partnerships between industry, environmenta. constituencies, citizen groups and government are going to be at the heart of thı future progress that will be made on 3Rs.

- Voluntary partnerships, where broad goals aı e agreed but where the participants are free to reach those goals in a variety of ways is what we advocate rather than mandatory programs or prescriptive rulı s or barriers to trade that will not ultimately help the environment.

- And we will see that the reduction of waste, he conservation of valuable raw materials, increased recycling and remanufaı turing and positive environmental impacts will produce benefits for both our eı vironments and our economies.

- Thank you very much and I look forward to he discussion that will follow this afternoon, in the days ahead, and beyond in urtherance of an action plan for the 3Rs and all the other Rs.

19

# EXHIBIT B

May 1, 2006

Ms. Linda Bell
Freedom of Information Officer
Office of Organizational and Management Support
International Trade Administration
U.S. Department of Commerce
Washington, DC 20230

Dear Ms. Bell:

This is a Freedom of Information Act request for the following:

1.  Documents, including e-mails and attachments, reflecting any communication by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement" or (c)general government procurement of products with recycled content, in connection with the 3Rs Initiative, including any minutes of meetings involving those individuals on that subject.

2.  Documents, including e-mails and attachments, reflecting any communication by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jaime Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement," or (c)general government procurement of products with recycled content, in connection with an International Symposium on the 3Rs Initiative Keynote Address by Mr. Bogosian, given on April 28, 2005, including any and all drafts of such address and any minutes of meetings involving those individuals to discuss that address..

3.  Documents, including e-mails and attachments, reflecting any communication between or among Joseph Bogosian, Jaime Estrada, David Cammarota, or Sarah Aker and any employee of the Department of Commerce referring or in any way relating to (a)"smart procurement," (b)"green procurement," or (c) general government procurement of products with recycled content, in connection with either the 3Rs Initiative

or the April 28 Keynote Address by Mr. Bogosian, including any minutes of meetings involving those individuals to discuss the 3Rs Initiative or that address.

4.    Documents, including e-mails and attachments, reflecting any communications by or between, on the one hand, Joseph Bogosian, Jaime Estrada, David Cammorota, Sarah Aker or any other employee of the Department of Commerce and, on the other, any representative of a corporation, business or a trade association referring or in any way relating to (a)"smart procurement," (b)"green procurement," or (c)general government procurement of products with recycled content, in connection with the 3Rs Initiative or the April 28 Keynote Address by Mr. Bogosian, including all records of any meetings involving those people to discuss the 3Rs initiative or that address..

In the context of this request, "documents" shall include all non-identical copies of the same source material (e.g., two copies of the same e-mail, one of which has handwritten notes thereon).

The period covered by this request is from September 1, 2004 to date.

Any questions concerning this request should be addressed to the undersigned. Please advise the undersigned when and where the requested materials will be available for inspection and, if requested, copying. Also, please advise the undersigned if disclosure of particular documents is withheld and the claimed exemption therefore.

Thank you for your assistance.


Sincerely,


George F. Vary
Executive Director

# **<u>EXHIBIT C</u>**

**UNITED STATE DEPARTMENT OF COMMERCE**
**International Trade Administration**
Washington, D.C. 20230

June 12, 2006

Mr. George F. Vary
Executive Director
American Zinc Institute
2025 M Street, NW, Suite 800
Washington, DC 20036

Dear Mr. Vary:

This is in response to your Freedom of Information Act (FOIA) request for materials
relating to (a) "green procurement," (b) "smart procurement," or (c) general government
procurement of products with recycled content, in connection with the 3Rs Initiative.

One hundred and thirty-seven (137) documents are being withheld under FOIA
exemption (b)(5), privileged interagency or intra-agency memoranda or letters. This
exemption protects internal federal government documents that are both predecisional
and deliberative.

The remaining documents are being released in their entirety and are enclosed with this
letter.

You have the right to appeal this response to your FOIA request. An appeal must be
received within 30 calendar days of the date of this letter by the Assistant General
Counsel for Administration, Room 5898-C, U.S. Department of Commerce, 14th &
Constitution Avenue, NW, Washington, DC 20230. Your appeal may also be sent by e-
mail to FOIAAppeals@doc.gov or by facsimile (fax) to 202/482-2552. The appeal must
include a copy of the original request, this response to the request, and a statement of the
reason why withheld records should be made available and why denial of the records was
in error. The submission (including e-mail and fax submissions) is not complete without
the required attachments. The appeal letter, the envelope, the e-mail subject line, and the
fax cover sheet should be clearly marked "Freedom of Information Act Appeal." The e-
mail, fax machine, and Office are monitored only on working days during normal



business hours (8:30 am to 5:00 pm, Eastern Standard Time, Monday through Friday). FOIA appeals posted to the e-mail box, fax machine or Office after normal business hours will be deemed received on the next business day.

Sincerely,

Linda M. Bell
Freedom of Information Act Officer

Enclosures

FOI 06-072

# **<u>EXHIBIT D</u>**

July 10, 2006

To:     Assistant General Counsel for Administration
        Room 5898-C
        U.S. Department of Commerce

From:   George Vary

Re:     Freedom of Information Act Appeal


Attached is the appeal from the American Zinc Association.

Six pages, including this cover page.

# AZA | American Zinc Association

2025 M Street, NW, Suite 800, Washington DC 20036 Tel (202) 367-1151 Fax (202) 367-2232 www.zinc.org

July 10, 2006

Assistant General Counsel for Administration        <u>Via Facsimile</u>
U.S. Department of Commerce
Room 5898-C
Washington, DC 20230

Dear Sir or Madam:

The American Zinc Association ("AZA") hereby appeals from the decision of the Department of Commerce ("Commerce") to withhold documents from production under the Freedom of Information Act ("FOIA"). Copies of AZA's initial FOIA request and Commerce's June 12 response are attached hereto.

Commerce has withheld documents pursuant to exemption (b)(5), saying that exemption protects those internal "documents that are both predecisional and deliberative." However, Commerce's website says exemption (b)(5) exempts "those documents, and only those documents, normally privileged in the civil discovery context."

AZA does not seek documents which are between counsel and Commerce officials for the purpose of securing legal advice. However, it is established law that documents without this purpose do not become privileged simply by sending them to counsel. AZA suspects there are documents indicating or summarizing meetings with businesses and/or trade associations which are improperly withheld under a claim of a (b)(5) exemption. AZA believes there are documents indicating who authored a certain inclusion in DAS Bogosian's remarks that are being improperly withheld. On this latter point, no privilege can attach as DAS Bogosian and counsel van Hoogstraten **specifically agreed in public to provide AZA with this information.**

Moreover, even assuming, <u>arguendo</u>, the existence of an exemption for these materials, Commerce appears to have waived that by production of other documents to AZA labeled "DRAFT, PRE-DECISIONAL AND DELIBERATIVE." It is axiomatic that one cannot pick and choose which privileged matters to disclose without vitiating the privilege.

Sincerely,

George F. Vary
Executive Director

May 1, 2006

Ms. Linda Bell
Freedom of Information Officer
Office of Organizational and Management Support
International Trade Administration
U.S. Department of Commerce
Washington, DC 20230

Dear Ms. Bell:

This is a Freedom of Information Act request for the following:

1.  Documents, including e-mails and attachments, reflecting any communication by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement" or (c)general government procurement of products with recycled content, in connection with the 3Rs Initiative, including any minutes of meetings involving those individuals on that subject.

2.  Documents, including e-mails and attachments, reflecting any communication by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jaime Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement," or (c)general government procurement of products with recycled content, in connection with an International Symposium on the 3Rs Initiative Keynote Address by Mr. Bogosian, given on April 28, 2005, including any and all drafts of such address and any minutes of meetings involving those individuals to discuss that address..

3.  Documents, including e-mails and attachments, reflecting any communication between or among Joseph Bogosian, Jaime Estrada, David Cammarota, or Sarah Aker and any employee of the Department of Commerce referring or in any way relating to (a)"smart procurement," (b)"green procurement," or (c) general government procurement of products with recycled content, in connection with either the 3Rs Initiative

or the April 28 Keynote Address by Mr. Bogosian, including any minutes of meetings involving those individuals to discuss the 3Rs Initiative or that address.

4.    Documents, including e-mails and attachments, reflecting any communications by or between, on the one hand, Joseph Bogosian, Jaime Estrada, David Cammorota, Sarah Aker or any other employee of the Department of Commerce and, on the other, any representative of a corporation, business or a trade association referring or in any way relating to (a)"smart procurement," (b)"green procurement," or (c)general government procurement of products with recycled content, in connection with the 3Rs Initiative or the April 28 Keynote Address by Mr. Bogosian, including all records of any meetings involving those people to discuss the 3Rs initiative or that address..

In the context of this request, "documents" shall include all non-identical copies of the same source material (e.g., two copies of the same e-mail, one of which has handwritten notes thereon).

The period covered by this request is from September 1, 2004 to date.

Any questions concerning this request should be addressed to the undersigned. Please advise the undersigned when and where the requested materials will be available for inspection and, if requested, copying. Also, please advise the undersigned if disclosure of particular documents is withheld and the claimed exemption therefore.

Thank you for your assistance.


Sincerely,


George F. Vary
Executive Director

**UNITED STATL  DEPARTMENT OF COMMERCE**
**International Trade Administration**
Washington, D.C. 20230

June 12, 2006

Mr. George F. Vary
Executive Director
American Zinc Institute
2025 M Street, NW, Suite 800
Washington, DC 20036

Dear Mr. Vary:

This is in response to your Freedom of Information Act (FOIA) request for materials relating to (a) "green procurement," (b) "smart procurement," or (c) general government procurement of products with recycled content, in connection with the 3Rs Initiative.

One hundred and thirty-seven (137) documents are being withheld under FOIA exemption (b)(5), privileged interagency or intra-agency memoranda or letters. This exemption protects internal federal government documents that are both predecisional and deliberative.

The remaining documents are being released in their entirety and are enclosed with this letter.

You have the right to appeal this response to your FOIA request. An appeal must be received within 30 calendar days of the date of this letter by the Assistant General Counsel for Administration, Room 5898-C, U.S. Department of Commerce, 14th & Constitution Avenue, NW, Washington, DC 20230. Your appeal may also be sent by e-mail to FOIAAppeals@doc.gov or by facsimile (fax) to 202/482-2552. The appeal must include a copy of the original request, this response to the request, and a statement of the reason why withheld records should be made available and why denial of the records was in error. The submission (including e-mail and fax submissions) is not complete without the required attachments. The appeal letter, the envelope, the e-mail subject line, and the fax cover sheet should be clearly marked "Freedom of Information Act Appeal." The e-mail, fax machine, and Office are monitored only on working days during normal



business hours (8:30 am to 5:00 pm, Eastern Standard Time, Monday through Friday).
FOIA appeals posted to the e-mail box, fax machine or Office after normal business
hours will be deemed received on the next business day.

Sincerely,

Linda M. Bell
Freedom of Information Act Officer

Enclosures

FOI 06-072

# **EXHIBIT E**



**UNITED STATES DEPARTMENT OF COMMERCE**
**Office of the General Counsel**
Washington, D.C. 20230

George Vary
Executive Director
American Zinc Institute
2025 M Street, NW, Suite 800
Washington, DC 20036

1 2 JUL 2006

Dear Mr. Vary:

This is to acknowledge receipt of your Freedom of Information Act (5 U.S.C. § 552) (FOIA) appeal dated July 7, 2006. In accordance with the FOIA, a final determination will be issued by the Department.

If you have any questions about this matter, you may contact me at the above address or at (202) 482-5391.

Sincerely,

Keith Hagg
Attorney Advisor

**EXHIBIT F**

## Vary, George

| | |
|---|---|
| **From:** | Vary, George |
| **Sent:** | Wednesday, October 03, 2007 8:49 AM |
| **To:** | 'KHagg@doc.gov' |
| **Subject:** | RE: FOIA appeal |

I have not had an update from you in some time.  I assume I have moved up from fourth in the last seven months.

Please advise.

George Vary

---

**From:** KHagg@doc.gov [mailto:KHagg@doc.gov]
**Sent:** Friday, March 09, 2007 4:59 PM
**To:** Vary, George
**Cc:** ePackard@doc.gov
**Subject:** FOIA appeal

Dear Mr. Vary:

This is in response to your inquiry regarding the status of your Freedom of Information Act appeal filed on July 10, 2006.  You may recall that the General Law Division Chief Elise Packard explained in an October 2006 e-mail that this office handles appeals on a first in first out basis.  Currently, your appeal is fourth in my queue of appeals awaiting adjudication.

Ms. Packard also informed you that I would provide monthly updates on the status of your appeal.  As you note in your e-mail, my last call to your office was in late December of 2006.  I apologize for not providing you with regular status updates as promised.  Beginning in April, I will make every effort to contact you with a status update on, or about, the first business day of each month.  Please feel free to contact me should have you any questions.

Regards,


Keith A. Hagg
Attorney-Advisor
Office of the General Counsel
Assistant General Counsel for Administration
Division of General Law
U.S. Department of Commerce
Phone (202) 482-1315
Fax (202) 482-2552
khagg@doc.gov

3/11/2008

**EXHIBIT G**

## Vary, George

**From:**    Vary, George
**Sent:**    Friday, October 05, 2007 7:50 AM
**To:**      'Hagg, Keith'
**Subject:** RE: FOIA appeal

That means I am still fourth in line, no change since, at the latest, March. I realize you cannot tell me when my appeal will be finalized, but perhaps you can tell me why nothing has changed in seven months.

George Vary

---

**From:** Hagg, Keith [mailto:KHagg@doc.gov]
**Sent:** Thursday, October 04, 2007 5:18 PM
**To:** Vary, George
**Subject:** RE: FOIA appeal

Mr. Vary:

Three appeals precede your appeal. I expect to complete one of the three soon thereby reducing the appeals before yours to two.

Please feel free to contact me should you have any questions.

Regards,

Keith A. Hagg
Attorney-Advisor
Assistant General Counsel for Administration
General Law Division
U.S. Department of Commerce
Tel: (202) 482-1315
fax: (202) 482-2552
khagg@doc.gov

---

**From:** Vary, George [mailto:gvary@zinc.org]
**Sent:** Wednesday, October 03, 2007 8:49 AM
**To:** Hagg, Keith
**Subject:** RE: FOIA appeal

I have not had an update from you in some time. I assume I have moved up from fourth in the last seven months.

Please advise.

George Vary

---

**From:** KHagg@doc.gov [mailto:KHagg@doc.gov]
**Sent:** Friday, March 09, 2007 4:59 PM
**To:** Vary, George
**Cc:** ePackard@doc.gov
**Subject:** FOIA appeal

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

American Zinc Association
2025 M Street, N.W.
Washington, D.C. 20036

**DEFENDANTS**

United States Dept. of Commerce
1401 Constitution Ave., N.W.
Washington, D.C. 20230

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF        Washington, D.C.
    (EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
        (IN U.S. PLAINTIFF CASES ONLY)        Washington, D.C.
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Charles D. Tobin (Bar No. 15919)
Holland & Knight LLP
2099 Pennsylvania Ave., N.W., Ste. 100
Washington, D.C. 20006
(202)955-3000

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 3 Federal Question
   (U.S. Government Not a Party)

◉ 2 U.S. Government
   Defendant

○ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/**
   **Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency**
   **Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
   Administrative Agency is Involved)

○ **D. Temporary Restraining**
   **Order/Preliminary**
   **Injunction**

**Any nature of suit from any category may
be selected for this category of case
assignment.**

**\*(If Antitrust, then A governs)\***

○ **E. General Civil (Other)**        OR        ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
   defendant
☐ 871 IRS-Third Party 26
   USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
   of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
   Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
   Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
   Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
   Exchange
☐ 875 Customer Challenge 12 USC
   3410
☐ 900 Appeal of fee determination
   under equal access to Justice
☐ 950 Constitutionality of State
   Statutes
☐ 890 Other Statutory Actions (if
   not administrative agency
   review or Privacy Act

| ⚪ **G. Habeas Corpus/** <br> **2255** | ⚪ **H. Employment** <br> **Discrimination** | ◉ **I. FOIA/PRIVACY** <br> **ACT** | ⚪ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment <br> (criteria: race, gender/sex, <br> national origin, <br> discrimination, disability <br> age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☒ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions <br> (if Privacy Act) <br><br><br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted <br> Student Loans <br> (excluding veterans) |

| ⚪ **K. Labor/ERISA** <br> **(non-employment)** | ⚪ **L. Other Civil Rights** <br> **(non-employment)** | ⚪ **M. Contract** | ⚪ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & <br> Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights <br> Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities- <br> Employment <br> ☐ 446 Americans w/Disabilities- <br> Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & <br> Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of <br> Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting <br> (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original    ⚪ 2 Removed    ⚪ 3 Remanded from    ⚪ 4 Reinstated    ⚪ 5 Transferred from    ⚪ 6 Multi district    ⚪ 7 Appeal to
Proceeding     from State      Appellate Court     or Reopened     another district      Litigation       District Judge
        Court                                              (specify)                                        from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Freedom of Information Act, 5 U.S.C. Sec. 552, for injunctive and declaratory relief seeking release of Defendant's records as requested by Plaintiff.

| **VII. REQUESTED IN** <br> **COMPLAINT** | CHECK IF THIS IS A CLASS <br> ACTION UNDER F.R.C.P. 23 | **DEMAND $** [_____] | Check YES only if demanded in complain |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐    NO ☒ |

**VIII. RELATED CASE(S)**     (See instruction)     YES ☐    NO ☒    If yes, please complete related case form.
**IF ANY**

DATE   March 28, 2008      SIGNATURE OF ATTORNEY OF RECORD    *Charles D. ...*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

    The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.