# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN ZINC ASSOCIATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-0538 (EGS)** |
| | ) | **Electronic Case Filing** |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **COMMERCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, United States Department of Commerce ("DOC" or the "Agency"), by and through undersigned counsel, hereby moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that no genuine issue of material fact exists and the Agency is entitled to judgment as a matter of law.

In support of this motion, Defendant respectfully refers the Court to the accompanying Statement of Material Facts Not In Genuine Dispute, Memorandum of Points and Authorities in Support and the Declaration of David Cammarota, with its seven attached exhibits including a *Vaughn* Index. A proposed Order consistent with this Motion is attached hereto.

Dated: July 18, 2008

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar No. 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR No. 434122
Assistant United States Attorney


_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
(202) 305-4851

*Of Counsel:*
Sarah E. Coe
Senior Counsel
Office of the General Counsel
General Law Division
U.S. Dept. of Commerce

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN ZINC ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-0538 (EGS) |
| | ) | Electronic Case Filing |
| UNITED STATES DEPARTMENT OF | ) | |
| COMMERCE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to LCvR 7(h), Defendant hereby submits the following statement.

1. Mr. George Vary, Executive Director of the American Zinc Association ("AZA"), submitted a Freedom of Information Act request, dated May 1, 2006, to the DOC's International Trade Administration's ("ITA") Freedom of Information Officer. Declaration of David Cammarota ("Cammarota Decl."), ¶¶ 5-6, and Exh. 1 ("Initial Request Letter").

2. In his letter, Mr. Vary requested all records from September 1, 2004 to "date"[1]:

> . . . reflecting any communications by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement," or (c) general government procurement of products with recycled content, in connection with the 3Rs Initiative, including any minutes of meetings involving those individuals on that subject.
>
> . . . reflecting any communications by or between, on the one hand, Edwin Pinero,

---

[1]  Under DOC regulations, records responsive to a request include only those records within DOC's possession and control as of the date the proper component receives the request. 15 C.F.R. § 4.5(a).  In this case, ITA received the request on May 10, 2006.

Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement," or (c) general government procurement of products with recycled content, in connection with an International Symposium on the 3Rs Initiative Keynote Address by Mr. Bogosian, given on April 28, 2005, including any and all drafts of such address and any minutes of meetings involving those individuals to discuss that address.

. . . reflecting any communications by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement," or (c) general government procurement of products with recycled content, in connection with either the 3Rs Initiative or the April 28 Keynote Address by Mr. Bogosian, including any minutes or meetings involving those individuals to discuss the 3Rs Initiative or that address.

. . . reflecting any communications by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement," or (c) general government procurement of products with recycled content, in connection with the 3Rs Initiative or the April 28 Keynote Address by Mr. Bogosian, including all records of any meetings involving those people to discuss the 3Rs Initiative or that address.

*Id*. ¶ 5 and Exh. 1.

3. Ms. Bell, ITA's FOIA Officer, logged the request into ITA's FOIA tracking system, assigning it number FOI 06-072. Within ITA, lead responsibility for responding to the request was assigned to Manufacturing and Services ("MAS"), based on a determination that the employees specifically mentioned in Mr. Vary's appeal were MAS employees, and therefore MAS would be the office most reasonably likely to have responsive records. *Id*. ¶ 6

4. The request was distributed to all MAS offices with a reasonable likelihood of having responsive documents, and the staff of these offices conducted a thorough search of MAS files,

electronic and hard copy, located on MAS computers, computer disks, desks, filing cabinets, storage areas, and common areas. Mr. Cammarota familiarized himself with the documents that were located as a result of the search. *Id*. ¶ 7.

5. By letter dated June 12, 2006, Ms. Bell responded to Mr. Vary's request by releasing 546 pages responsive to his request. Mr. Vary was informed that an additional 137 documents were being withheld in their entirety based on the deliberative process privilege of 5 U.S.C. § 552(b)(5). The letter also informed Mr. Vary of his right to appeal the partial denial under 15 C.F.R. § 4.10. *Id*. ¶ 8, and Exh. 2 (6/12/06 Bell Letter).

6. By letter dated July 10, 2006, Mr. Vary appealed the partial denial of his FOIA request to the Assistant General Counsel for Administration. *Id.* ¶ 9, and Exh. 3 (7/10/06 AZA Appeal Letter).

7. The Office of the Assistant General Counsel for Administration was in the process of responding to Mr. Vary's appeal when he filed the instant litigation against DOC in the U.S. District Court for the District of Columbia, on March 28, 2008. *Id*. ¶ 10.

8. Pursuant to DOC regulation, 15 C.F.R. § 4.5(b), four documents that originated with the Department of State ("DOS") were referred to DOS for a disclosure determination. DOS determined that all four documents were fully releasable. Six documents that originated with the Council on Environmental Quality ("CEQ") were referred to CEQ for a disclosure determination.[2] CEQ determined that five documents were fully releasable, and one document was withheld pursuant to FOIA exemption (b)(5), as discussed in CEQ's Declaration and

---

[2] Although Mr. Vary was informed that seven documents were referred to CEQ, in a letter dated June 9, 2008 (attached to Mr. Cammarota's Declaration as Exhibit 5), that was an error. Only six documents were CEQ documents, the seventh was a DOC document.

*Vaughn* Index.[3]  *Id*. ¶ 11, and Exh. 4 (CEQ's Declaration and *Vaughn* Index).

9. By letter dated June 9, 2008, DOC released 70 additional documents in their entirety to Mr. Vary.  *Id*. ¶ 12, and Exh. 5 (6/9/08 Coe Letter and attachments).

10. By letter dated June 13, 2008, DOC released an additional 14 documents in their entirety and five in part to Mr. Vary.  This included the DOS and CEQ documents discussed in Paragraph 8, *supra*.  *Id*. ¶ 13 and Exh. 6 (6/13/08 Coe Supplemental Release Letter).

11. Any documents not released by DOC in their entirety in this matter are addressed in DOC's *Vaughn* Index.  *Id*. ¶ 14 and Exh. 7 (DOC's *Vaughn* Index).

12. With the exception of a portion of one document,[4] the documents at issue in this litigation were partially or entirely withheld pursuant to the deliberative process privilege incorporated into FOIA Exemption (b)(5), 5 U.S.C. § 552(b)(5), which protects from disclosure "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency."  *Id*. ¶ 15.

13. Four documents were withheld in part and 23 documents were withheld in their entirety based solely on the deliberative process privilege incorporated within exemption (b)(5) of the FOIA.  The foregoing documents are described in Sections I and II, respectively, of the *Vaughn* Index attached to Mr. Cammarota's Declaration.  *Id*. ¶ 16.

14. The material that is exempt from disclosure under the deliberative process privilege consists of internal government opinions and recommendations relating to various aspects of the

---

[3]  CEQ is asserting an exemption for its portion of an e-mail string between DOC and CEQ personnel.  To the extent that the string contains e-mails originating with DOC, those e-mails were released in their entirety.

[4]  This document was withheld under FOIA exemption (b)(6) (5 U.S.C. § 552(b)(6)), as discussed in Paragraph 31 below.

3Rs Initiative, including responses to members of the public requesting information on the

government's position and discussions concerning proposed agendas, invitations, and speeches

for meetings regarding the 3Rs Initiative.  *Id*. ¶ 17.

15. The documents and portions of documents withheld under the deliberative process

privilege are part of a deliberative process relating to the U.S. Government's decision making

process described in Paragraph 14, in that they consist of advice, opinions or recommendations

on the matters to which they relate, and do not constitute final agency decisions on those matters.

*Id*. ¶ 18.

16. The documents withheld in part pursuant to the deliberative process privilege include

miscellaneous e-mail strings among federal government employees discussing the April 2005

Keynote Address, the 3Rs Senior Officials Meeting, and a response to the Basel Action

Network.  The information withheld in these documents is explained more fully below.  *Id*. ¶ 19.

17. The documents withheld in full pursuant to the deliberative process privilege include

the following categories of documents:  documents relating to ITA's response to AZA

concerning Deputy Assistant Secretary ("DAS") Bogosian's Keynote Address for the April 2005

3Rs Initiative Ministerial Conference (e-mails discussing AZA's request and draft versions of

ITA's formal response to Mr. Vary); draft documents pertaining to the 3Rs Initiative; and

miscellaneous documents pertaining to the 3Rs Initiative.  The information withheld in these

categories is explained more fully below.  *Id*. ¶ 20.

Miscellaneous Documents Pertaining to the 3Rs Initiative

18. Four documents were withheld in part (*See* Section I of the *Vaughn* Index attached to

the Cammarota Declaration), and seven documents are withheld in their entirety in this category

(*See* Section II.C of the attached *Vaughn* Index attached to the Cammarota Declaration).  These

documents consist of e-mail strings among DOC employees or between DOC employees and the employees of other Government agencies on various subjects relating to the 3Rs Initiative. These subjects include: the April 2005 Keynote Address; the 3Rs Senior Officials Meeting; a response to the Basel Action Network; a draft invitation to an Industry Symposium; the conference on Asset Recovery, Recycling, Remanufacturing, Reclamation; a draft briefing report; 3Rs Initiative "next steps;" meeting planning; and a draft statement of MAS' mission. Descriptions of the miscellaneous documents are included in Sections I and II.C of the attached *Vaughn* Index attached to the Cammarota Declaration. *Id*. ¶ 21.

19. The documents consist of opinions and recommendations as to how to address the various issues presented in the e-mails. The information withheld is internal pre-decisional deliberative material, the release of which would discourage open and frank discussions within DOC and between DOC and other Government agencies about what the final decision on various matters should be, and create public confusion due to disclosure of reasons and rationales that may not have been the grounds for the Government's final position on an issue. The material withheld does not represent final agency decisions on the matters contained therein. *Id*. ¶ 22.

20. To the extent that factual information was included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decision-making process. The factual information is, therefore, an integral part of the deliberations undertaken by DOC in determining how best to respond to the issues discussed in the e-mails. *Id*. ¶ 23.

<u>Documents Relating to ITA's Response to AZA Concerning DAS Bogosian's
Keynote Address for the April 2005 3Rs Initiative Ministerial Conference</u>

21. Eight documents were withheld in their entirety in this category. These documents

consist of (1) e-mails discussing ITA's response to AZA's June 9, 2005 e-mail regarding DAS Bogosian's keynote address for the April 2005 3Rs Initiative Ministerial Conference, and (2) draft versions of ITA's formal response to AZA. *Id.* ¶ 24.

22. Three of the documents withheld in this category are e-mails that discuss the AZA's request and how to respond to it. These e-mails were withheld in their entirety pursuant to the deliberative process privilege. The documents consist of communications between officials from ITA/MAS and other agencies of the U.S. Government. The communications are pre-decisional because they occurred before ITA/MAS developed a final response to the AZA's e-mail. The communications are deliberative because they present opinions, comments, and ideas that ITA/MAS used to develop a final response to the AZA's request. Descriptions of these documents are included in Section II.A(1) of the Vaughn Index attached to the Cammarota Declaration. *Id.* ¶ 25.

23. Five of the documents withheld in this category are drafts of a formal letter from ITA/MAS to the AZA regarding their concerns about the language in Mr. Bogosian's keynote address. A draft by its very nature is pre-decisional to the final version of the document and reflects the agency's deliberations as to what should be included in the final document. The drafts are deliberative because they were used to develop a final response to the AZA's e-mail about language in the Ministerial Conference keynote address. Descriptions of these documents are included in Section II.A(2) of the *Vaughn* Index attached to the Cammarota Declaration. *Id.* ¶ 26.

24. To the extent that factual information was included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decision-making process. The factual information was, therefore, an integral part of the

deliberations undertaken by DOC in determining how best to respond to AZA's request. *Id.* ¶ 27.

<u>Draft Documents Pertaining to 3Rs</u>

25. Eight documents were withheld in their entirety in this category. The withheld documents consist of drafts of various documents pertaining to the 3Rs Initiative prepared by personnel of Executive Branch agencies and circulated for comment by personnel in Executive Branch agencies. They consist of draft talking points, draft action items, draft proposal notes, and draft papers. Descriptions of these documents are included in Section II.B of the *Vaughn* Index attached to the Cammarota Declaration. *Id.* ¶ 28.

26. A draft by its very nature is pre-decisional in that it is a recommendation to a decision-maker as to how to address various issues in a final document, and what that document should contain. The information withheld is internal pre-decisional deliberative material, the release of which would discourage open and frank discussions within the government about what the final documents should contain on various matters, and create public confusion due to disclosure of reasons and rationales that may not have been the grounds for the agency's final response. The material withheld does not represent final agency decisions on the matters contained therein. *Id.* ¶ 29.

27. To the extent that factual information was included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decision-making process. The factual information is, therefore, an integral part of the deliberations undertaken by DOC in determining how best to prepare the final versions of the various documents. *Id.* ¶ 30.

28. DOC claimed FOIA Exemption (b)(6) in withholding only a portion of one

document consisting of an individual's health concerns regarding a family member, which is withheld pursuant to exemption (b)(6). Exemption (b)(6) protects personal privacy interests and exempts from disclosure all information about individuals in "personnel and medical files and similar files" if disclosure "would constitute a clearly unwarranted invasion of personal privacy." The term "similar files" has been interpreted broadly to apply to any information which applies to a particular individual. Whether disclosing the information at issue would constitute a clearly unwarranted invasion of personal privacy generally requires a balancing of the public interest in disclosure against the individual's interest in privacy. The information pertains to a particular person, and thus is a "similar file." Under the FOIA, disclosure of information is in the public interest if it would contribute to public understanding of the operations or activities of the government. An individual's health concerns regarding a family member is personal information, the disclosure of which would not contribute to public understanding of the operations or activities of the government. It was determined that no public interest exists in this information, whereas the individual has a strong privacy interest in this information. Accordingly, the privacy interest outweighs the public interest, and the information has been withheld. A description of the information withheld pursuant to FOIA exemption (b)(6) is included in section III of the attached *Vaughn* Index attached to the Cammarota Declaration. *Id.* ¶ 31.

<u>Segregation of Factual Information</u>

29. In connection with the review of documents which are the subject of this suit, DOC made a good faith effort to segregate all factual portions of these documents which are not protectable under the exemptions set forth above. All such segregable portions have been released to AZA. *Id.* ¶ 32.

<u>Status of Other Documents</u>

<u>Non-Responsive Documents</u>

30.  During the review of documents for the instant litigation, two documents previously withheld pursuant to FOIA Exemption (b)(5) were determined to be non-responsive to the request.  They were mistakenly identified as responsive to the initial request; however, they do not relate to the subject matter of the request.  *Id*. ¶ 33.

31.  Portions of eight documents were determined to be non-responsive to the request. These documents consist primarily of weekly reports and other summary documents dealing with a broad range of ITA/MAS issues.  To the extent those documents discussed issues responsive to the request, the responsive sections were released to AZA on June 13, 2008.  *Id*. ¶ 34.

32. A list of the foregoing documents is included in Section III of the *Vaughn* Index attached to the Cammarota Declaration.  *Id*. ¶ 35.

<u>Duplicate Documents</u>

33. During the review of documents for the instant litigation, 19 documents were determined to be duplicates of other documents either released to AZA or withheld.  A list of those documents and their duplicates is included in Section IV of the *Vaughn* Index attached to the Cammarota Declaration.  *Id*. ¶ 36.

34. A thorough search was conducted for documents responsive to this FOIA request. All responsive documents have either been released to the requester or are being properly withheld, as described in the Vaughn Index attached to the Cammarota Declaration.  *Id*. ¶ 37.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar No. 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR No. 434122
Assistant United States Attorney

_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
(202) 305-4851

*Of Counsel:*
Sarah E. Coe
Senior Counsel
Office of the General Counsel
General Law Division
U.S. Dept. of Commerce

13

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICAN ZINC ASSOCIATION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-0538 (EGS)** |
| | ) | **Electronic Case Filing** |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **COMMERCE,** | ) | |
| **Defendant** | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

Plaintiff sent a Freedom of Information Act ("FOIA") request seeking to obtain

documents pertaining to a speech given by a DOC official at a conference in April 2005.  Compl.

¶ 14 *et seq*.  The request focused on documents relevant to a portion of the official's address

relating to U.S. government policy to promote the purchase of products made with recycled

materials often referred to as "green" or "smart" procurement.  Compl. ¶¶ 9, and 14.  These

procurement practices are a component of the government's Reduce, Reuse and Recycle

Initiative (the "3Rs Initiative").  *Id*. ¶¶ 14, 15 and 21.  At this juncture, after conducting

reasonable searches, and referring certain documents to the relevant federal agencies, the DOC

has released all responsive, non-exempt documents found.  Cammarota Decl. ¶¶ 6, 7, 11 and 37.

The Plaintiff cannot now deny that adequate searches have been conducted and all

responsive, non-exempt documents have been released to it, as fully described in Mr.

Cammarota's declaration and its attachments.  The two FOIA exemptions claimed are further

explained in the accompanying *Vaughn* Index.  Accordingly, DOC is entitled to judgment as a

matter of law.

- 1 -

## STATEMENT OF FACTS

Defendants hereby incorporate the Statement of Material Facts Not In Genuine Dispute, filed contemporaneously with this Memorandum.

## ARGUMENT

### I.  Standard of Review

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  *Id.* at 247.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment here, the Plaintiff (as the non-moving party) must present some objective evidence that would enable the Court to find he is entitled to relief.  In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).  In *Anderson* the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff."  *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir.  1987) (the non-moving party is "required to provide evidence

that would permit a reasonable jury to find" in its favor).

In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.  *See Cappabianca v. Commissioner, U.S. Customs Serv.*, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.  *Students Against Genocide v. U.S. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents in question were produced or are exempt from disclosure.  *Hayden v. NSA*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Church of Scientology v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically

- 3 -

falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  *See also Public Citizen, Inc. v. U.S. Dept. of State*, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

## II.    DOC is Entitled to Judgment as a Matter of Law Because Adequate Searches Were Conducted and Responsive Materials Were Released.

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records.  *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.*, 844 F. Supp. 770, 776 (D.D.C. 1993); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce responsive information.  *Id*. at 777 n.4.  An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  *Oglesby*, 920 F.2d at 68.  Consistent with the reasonableness standard, the adequacy of  the search is "dependent upon the circumstances of the case."  *Truitt v. Dept. of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate."  *Steinberg v. Dept. of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent and reasonable.  *Nation Magazine*, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created

a document necessarily imply that the agency has retained it. *Maynard v. CIA*, 986 F.2d 547, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68; *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." *Miller*, 779 F.2d at 1383; *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980). Although the agency has the burden of proof on the adequacy of its search, the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" *Carney v. Dept. of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) (quoting *SafeCard Servs.*, 926 F.2d at 1200). Thus, once the agency has met its burden regarding adequacy of its search, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. *Miller*, 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. *See Carney*, 19 F.3d at 813; *SafeCard*, 926 F.2d at 1200; *Maynard v. CIA*, 986 F.2d 547, 559-560 (1st Cir. 1993).

Here, Plaintiff submitted its request for documents "regarding communications [between certain individuals in various government offices] relating to (a) "green procurement" (b) "smart procurement" or (c) general government procurement of products with recycled content, in connection with the 3Rs Initiative, including materials in connection with the Address." Compl. ¶ 26. The request was addressed to ITA's FOIA Officer, Linda Bell. Cammarota Decl. Exh. 1. Within ITA, lead responsibility for responding to the request was assigned to Manufacturing and

Services ("MAS"), based on a determination that the employees specifically mentioned in AZA's request were MAS employees, and therefore MAS would be the office most reasonably likely to have responsive records. *Id.* ¶ 6. The request was distributed to all MAS offices with a reasonable likelihood of having responsive documents, and the staff of these offices conducted a thorough search of MAS files, electronic and hard copy, located on MAS computers, computer disks, desks, filing cabinets, storage areas, and common areas. Cammarota Decl. ¶¶ 6 and 7.

As a result of the searches conducted by the relevant staff, on or about June 12, 2006, 546 pages were initially released and 137 documents were withheld in their entirety based on FOIA Exemption (b)(5), the deliberative privilege process. *Id.* ¶ 8. After AZA appealed the partial denial of its FOIA request, the Agency conducted a review of the matter, and an additional 84 documents were released in full and five were release in part, on June 9 and 13, 2008. *Id.*, ¶¶ 12 and 13, and Exhs. 5 and 6. Eight[5] other documents were released to AZA with non-responsive portions redacted. *Id.* ¶ 34, Exh. 6. Further, documents referred to the U.S. Department of State, pursuant to DOC Regulation 15 C.F.R. § 4.5(b), were determined to be fully releasable and were included in the June 13, 2008 release. *Id.* ¶¶ 11 and 13, Exh. 6. Only one document referred to the Council on Environmental Quality ("CEQ") was partially withheld for reasons explained in the CEQ Declaration. *Id.* ¶ 11 and Exh. 4 with its attached *Vaughn* Index.

In summary, DOC has conducted an adequate search of its files for responsive information to Plaintiff's requests by having all relevant employees search in the MAS files, both paper and electronic, including MAS computers and disks, and released all responsive, non-exempt documents. Cammarota Decl. ¶ 37. Additionally, after its appeal, a proper response to

---

[5] Although Ms. Coe's supplemental letter indicates that nine documents were released (*see* Exh. 6), undersigned counsel has been advised on this date that the number indicated in Mr. Cammarota's Declaration is the correct number.

Plaintiff's requests have now been made and, ultimately, 89 additional documents were released in whole or in part, with any redactions claimed pursuant to FOIA exemptions 5 and 6.  *Id.* ¶¶ 11, 15-20, and its *Vaughn* Index, and Exh. 4's *Vaughn* Index.  Additionally, DOC facilitated the coordination of responses from other agencies, such as the U.S. Department of State and CEQ. Cammarota's Decl. ¶ 11.

Plaintiff's contention that certain documents should exist is without merit.  Compl. ¶¶ 21-25.  Courts have held that simply claiming that certain information should exists does not make it so.  *Jarvis v. ATF*, No. 07-00111, 2008 WL 2620741 *9-10, (N.D. Fla. June 30, 2008) (adoption of magistrate's recommendation) (holding that Plaintiff's unsubstantiated claim that there might be additional documents responsive to his request is insufficient to call into question the adequacy of Alcohol, Tobacco and Firearms' ("ATF") search.  ATF was able to show that if the documents plaintiff requested exist at all, they exist in the ATF field office in which defendant conducted its search.)

DOC's searches here were reasonable.  *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995); *Miller v. Dept. of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) ("'the search need only be reasonable; it does not have to be exhaustive.'") (citing *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).  Because the reasonableness standard for searches has been met and the records released, with some withholdings, DOC is entitled to judgment as a matter of law.  5 U.S.C. § 522, and Fed. R. Civ. P. 56.

**III.    <u>Defendant's Withholdings Pursuant to Exemption (b)(5) Were Proper</u>.**

A. <u>Standards Applicable to Exemption 5, Deliberative Process Privilege</u>.

DOC properly withheld documents pursuant to Exemption 5 of FOIA.  Exemption (b)(5) protects "inter-agency or intra-agency memorandums or letters which would not be available by

law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Courts have construed this language to exempt documents that would not ordinarily be available to an agency's opponent in a civil discovery context and to incorporate all evidentiary privileges that would be available in that context.  *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984); *FTC v. Grolier, Inc.*, 462 U.S. 19, 26 (1983); *Martin v. Office of Special Counsel*, 819 F.2d 1181 (D.C. Cir. 1987).

The deliberative process privilege is incorporated within Exemption 5.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).  The purpose of this privilege is to protect the "quality of agency decisions."  *Id.*   The policy underlying this privilege is to encourage open, frank discussions of policy matters between subordinates and supervisors, to protect against premature disclosure of proposed policies before they become final, and to protect against public confusion by disclosing reasons and rationales that were not in fact the ultimate grounds for the agency's action.  *See, e.g., Russell v. Dept. of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Jordan v. U.S. Dept. of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc), *overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir.1981) (en banc).

Flowing from the policy considerations is the privilege's protection of the "decision making processes of government agencies."  *Sears*, 421 U.S. at 150.  The privilege protects not merely documents, but also the integrity of the deliberative process itself where the exposure of that process would result in harm.  *Dudman Communications Corp. v. Dept. of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)("Congress enacted Exemption 5 to protect the executive's deliberative processes – not to protect specific materials.").  *Greenberg v. Dept. of Treasury*, 10

F. Supp.2d 3, 16, n.19 (D.D.C. 1998); *Marzen v. HHS*, 825 F.2d 1148, 1155 (7th Cir. 1987) ("[E]xemption protects not only the opinions, comments and recommendations in the draft, but also the process itself."); *Pies v. IRS*, 668 F.2d 1350, 1353-54 (D.C. Cir. 1981). As the court in *Coastal States* held, the privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. Indeed, the mere status of an agency decision within an agency decision-making process may be protectible if the release of that information would have the effect of prematurely disclosing "the recommended outcome of the consultative process...as well as the source of any decision." *Wolfe v. HHS*, 839 F.2d 768, 775 (D.C. Cir. 1988) (en banc).

Two fundamental requirements must be met for the deliberative process privilege to be invoked. *Mapother v. U.S. Dept. of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). First, the communication must be pre-decisional, *i.e.*, "antecedent to the adoption of an agency policy." *Jordan*, 591 F.2d at 774. Second, the communication must be deliberative, i.e., "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

In deciding whether a document should be protected by the privilege, courts look to whether the document is "pre-decisional," whether it was generated before the adoption of an agency policy, and whether the document is "deliberative," whether it reflects the give-and-take of the consultative process. *Coastal States*, 617 F.2d at 866-68. The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. *Id.* Documents which are protected by the privilege are those which would inaccurately reflect or

prematurely disclose the views of the agency, suggesting an agency position that is as yet only a personal position. *Id.*

To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency; "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision-making process.' *Coastal States*, 617 F.2d at 866-68, *quoting United States v. Nixon*, 418 U.S. 683, 705 (1974). Courts look at whether the document is recommendatory in nature or is a draft of what will become a final document, and whether the document is deliberative in nature, weighing the pros and cons of agency adoption of one viewpoint or another. *Coastal States*, 617 F.2d at 868; *Common Cause v. IRS*, 646 F.2d 656, 659-660 (D.C. Cir. 1981).

B. The Documents Withheld are Pre-Decisional and Deliberative.

The documents withheld under Exemption 5 were documents that constituted inter-agency or intra-agency records leading up to a final decision, *i.e.*, the development of policies and responses to requests. *See generally Access Reports v. U.S. Dept. of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991); *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1121 (D.C. Cir. 1989). As explained by Mr. Cammarota and CEQ, these documents were written by employees of the DOC and CEQ, or the Office of the General Counsel, in their capacities as federal employees. Specifically, Section I of Mr. Cammarota's *Vaughn* Index, explains fully why the internal government electronic mail communications that were withheld in part "reflect the give and take of Government deliberations relating to the specific subject discussed in the document

- 10 -

descriptions" on pp. 1-2 of his *Vaughn* Index and how they are clearly pre-decisional.  Mr.

Cammarota also describes, in detail, why the three internal government electronic mail

communications withheld, in full, fall within the pre-decisional category on page 3-4 of his

*Vaughn* Index.  Mr. Cammarota also states that there were seven other documents that were

deemed pre-decisional and deliberative in nature because they contain comments, suggestions,

recommendations and opinions that were part of the various agencies' development of reports,

invitations, conference planning documents and/or strategies for further promoting the 3Rs

Initiative, and therefore withheld.  *Id*., pp. 4-6.

The CEQ Declaration, also outlines how the portion of the single redacted inter-agency

email contains an inter-agency email, "the redacted portions of which describes the deliberative

recommendations of CEQ leadership regarding" a March 2006 meeting.  *Id*., Exh. 4 ¶ 4.

Considering that the records were used by agency employees in the process of developing

policy, there is no question that these documents were intra-agency records.  *Id.*

One category of documents particularly likely to be found exempt under the deliberative

process privilege is "drafts," *see City of Virginia Beach v. Dept. of Commerce*, 995 F.2d 1247,

1253 (4th Cir. 1993); *Dudman*, 815 F.2d at 1569; *Judicial Watch v. Export-Import Bank*, 108 F.

Supp.2d 19, 36 (D.D.C. 2000).  The very process by which a draft evolves into a final document

can itself constitute a deliberative process warranting protection.  *See National Wildlife*

*Federation v. Forest Service*, 861 F.2d 1114, 1122 (9th Cir. 1988); *Pies v. IRS*, 668 F.2d 1350,

1353-54 (D.C. Cir. 1981); *Dudman*, 815 F.2d at 1568-69.

The drafts, by their very nature are deliberative and pre-decisional.  Cammarota Decl., ¶

29.  First, they are deliberative in that they are the author's suggestion to the reviewer as to what

should be the content of the final document.  *Id.*  The reviewer then decides whether the

suggestion is appropriate.  As drafts, their content may change through addition, deletion, or wordsmithing.  The drafts could be abandoned; the positions taken in one draft may change in the next, or the position may never be adopted by the agency.

The drafts are also deliberative in that they reflect the author's opinion about items and issues proper for inclusion in the document.  Cammarota Decl., ¶¶ 28-29.  They are also illustrative of the author's and any reviewer's recommendations for proper treatment of particular issues and questions associated with the document.  Exposing what is included and excluded from one draft–including otherwise factual information–to the next provides insight into the deliberations of the author and any reviewer.  Thus, there is deliberation in the content of the draft documents, which is clearly within the scope of the deliberative process privilege.  *Id.  See Washington Research Project, Inc. v. Dept. of Health, Education & Welfare*, 504 F.2d 238, 250 (D.C. Cir. 1974) (holding fact summaries exempt), *cert. denied*, 421 U.S. 963 (1975);  *see also National Wildlife Fed'n*, 861 F.2d at 1119 (9th Cir.) (holding documents exempt, including draft environmental impact statement, because disclosure would reveal agency's evaluation of facts it had assembled);  *Lead Industries Ass'n v. Occupational Safety and Health Admin.*, 610 F.2d 70, 85 (2d Cir. 1979) (fact summaries prepared by agency protected where disclosure would "demonstrat[e] which facts in the massive rule-making record were considered significant by the decisionmaker").

It cannot be disputed that drafts are pre-decisional in that they are records which have not been adopted as final by the agency.  Mr. Cammarota explains that five drafts of a formal letter from ITA/MAS were withheld as deliberative because they were used to develop a final response. Cammarota Decl., *Vaughn* Index, p. 3.  Additionally, eight draft documents pertaining to the 3Rs Initiative that "were prepared by personnel of the Executive Branch agencies and

- 12 -

circulated for comment by personnel" in those agencies were withheld pursuant to Exemption

(b)(5). *Id.*, p. 4. Because drafts are both deliberative and pre-decisional, they satisfy the

requirements for withholding pursuant to the deliberative process privilege within Exemption 5.

       C.   <u>Public Disclosure Will Harm the Deliberative Process</u>.

       Release of the documents will harm the decision-making process within and among

government agencies. Cammarota Decl., ¶ 27. As explained above, the fundamental purpose of

the deliberative process privilege is to protect the quality of agency decisions. *NLRB v. Sears*,

421 U.S. at 150-51. The deliberative process privilege is centrally concerned with protecting the

process by which policy is formulated. *See Mink v. EPA*, 410 U.S. 73, 87 (1973)(privilege

designed to promote "frank discussion of legal and policy matters"), *quoting* S.Rep. No. 813,

89th Cong., 1st Sess. 9 (1965); *id.* at 89 ("Exemption 5 requires different treatment for material

reflecting deliberative or policy-making processes" and "purely factual, investigative matters").

The deliberative process privilege is designed to encourage open, frank discussion of policy

matters between subordinates and supervisors, to protect against premature disclosure of

proposed policies before they become final and to protect against public confusion by disclosing

reasons and rationales that were not in fact the ultimate grounds for the agency's actions.

*Russell*, 682 F.2d at 1048.

       Public disclosure of the responsive records will expose the deliberative process within

the DOC and other agencies with which it must cooperate, and harm the quality of policy

decisions that the agency will make with respect to other policies. Cammarota Decl., *Vaughn*

Index, pp. 1-6. Thus, the final versions of the policies and approaches to resolving questions

resulted from deliberations between the authors of the withheld documents, and the Agency. *Id.,*

p.1-6. Similarly, the drafts of conference plans and memoranda are the product of deliberations

between staff members. *Id.*

Given the importance of policy making in the development of agency programs and in the DOC and other agencies meeting their statutory obligations, it is critical that the DOC and other agencies involved receive independent and candid evaluations, opinions, and recommendations on the content of, and strategy for, developing policies and rules from its employees. CEQ Decl., ¶ 2-3, and Cammarota Decl. ¶ 22. The disclosure of the responsive records at issue in this matter will have a chilling effect on the ability of authors to be candid with the agency and in the future revisions of their reports and the quality of those decisions will be harmed if the authors feel they cannot express themselves freely because their draft documents will be released to the public. As such, disclosure would have a chilling effect on discussions leading up to decisions because individuals would be reluctant to express their views with candor. *See Quarles v. Department of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (observing that "the prospect of disclosure is less likely to make an adviser omit or fudge raw facts, while it is quite likely to have just such an effect" on materials reflecting agency deliberations); *Montrose Chemical Corp. v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974).

The documents withheld in full or part are not merely mundane. Instead, they are drafts which contain the candid thoughts and recommendations of various agency officials during the development of the rule. Disclosure would likely diminish the candor of agency deliberations in the future. *Hamilton Securities Group v. HHS*, 106 F. Supp.2d 23, 29-33 (D.D.C. 2000), *aff'd.*, 2001 WL 238162 (D.C. Cir. 2001); *Gutman v. U.S. Dept. of Justice*, 238 F. Supp.2d 284, 295-6 (D.D.C. 2003); *Cf. Petroleum Information Corp. of Department of the Interior*, 976 F.2d at 1435. They were properly withheld pursuant to Exemption 5.

AZA admits that with the initial release in June 2006, the Agency asserted (b)(5) as a

basis for withholding privileged documents. Compl. ¶ 28. Nevertheless it goes on to suggest that any privilege was waived because DOC produced some documents "that bore the caption 'DRAFT, PRE-DECISIONAL AND DELIBERATIVE', or otherwise indicated that materials were a "draft" or contained editorial changes . . . ." *Id.* ¶ 29. Insofar as Plaintiff may actually be asserting that DOC waived any privilege, courts have held that agencies that choose to release some otherwise withholdable documents may do so without waiving the right to apply the privilege to other documents. *Mobile Corp. v. U.S. Environmental Protection Agency*, 879 F.2d 698, 700 (9th Cir. 1989) (rejecting the argument that release of certain related documents waived the application of the deliberative process privilege as to other documents.) *Accord Cooper v. U.S. Dept. Of Navy*, 594 F.2d 484 (5th Cir.), *cert denied*, 444 U.S. 926 (1979). Accordingly, it cannot be said in this case that the Agency waived any privilege.

In the final analysis, the 27 documents withheld by ITA and one document withheld by CEQ, constitute electronic mail communications, drafts, meeting agendas, meeting notes, and briefing papers. Of these documents, 23 were properly withheld in full under the deliberative process privilege. In addition, portions of 4 documents were properly withheld under the deliberative process privilege. CEQ withheld the portions of only one additional document.

## IV.    **Defendant's Withholdings Pursuant to Exemption (b)(6) Were Appropriate.**

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), *quoting Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). The Court has also emphasized that "both the common law and the literal understanding of privacy

encompass the individual's control of information concerning his or her person." *U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the Court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier*, 164 F.3d at 46 (interior quotation marks omitted), citing *United States Dept. of Defense v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992), *quoting Dept. of Air Force v. Rose*, 425 U.S. 352, 372 (1976). In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he *only* relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), quoting *United States Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994). *See also Reporters Committee*, 489 U.S. at 773. Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 775. Further, "something, even a modest privacy interest, outweighs nothing every time." *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989); *but see Lepelletier*, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

Here, the Cammarota Declaration and *Vaughn* Index indicate that DOC invoked Exemption 6 to withhold a portion of one document containing information about the health of a

family member of a federal employee who participated in an electronic mail exchange with another.  Cammarota Decl., *Vaughn* Index, p. 6.  Clearly, no public interest would be served in releasing such personal and non-responsive information.  Therefore, Plaintiff cannot contest the invocation of this Exemption, under these circumstances.

## V.  All Reasonably Segregable Material Has Been Released to Plaintiff.

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. United States Dept. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue *sua sponte.*"  *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements."  *Mead Data*, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  *Id.*  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  *Mead Data*, 566 F.2d at 261, n.55.

A review of Mr. Cammarota's Declaration reveals that the DOC carefully reviewed the

information and confirms that all reasonably segregable non-exempt material has been released.

Specifically, Mr. Cammarota states that "[i]n connection with the review of documents which are

the subject of this suit, DOC has made a good faith effort to segregate all factual portions of

these documents which are not protectable under the exemptions set forth above."  *See*

Cammarota Decl. ¶¶ 32 and its attached *Vaughn* Index.  Because all such segregable portions

have been released to AZA, DOC is entitled judgment as a matter of law.  *Armstrong*, 97 F.3d at

578-79; *Mead Data*, 566 F.2d at 26.

CONCLUSION

For all the foregoing reasons, DOC is entitled to judgment as a matter of law.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar No. 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR No. 434122
Assistant United States Attorney


_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
(202) 305-4851


*Of Counsel:*
Sarah E. Coe
Senior Counsel
Office of the General Counsel
General Law Division
U.S. Dept. of Commerce

19

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of July, 2008, I caused the foregoing *Motion for Summary Judgment and accompanying documents* to be served on parties of record via the Court's Electronic Case Filing System.

                                            /s/

                                        MERCEDEH MOMENI
                                        Assistant United States Attorney
                                        555 4th Street, N.W.
                                        Civil Division
                                        Washington, D.C.  20530
                                        (202) 305-4851
                                        (202) 514-8780 (facsimile)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN ZINC ASSOCIATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-0538 (EGS)** |
| | ) | **Electronic Case Filing** |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **COMMERCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

<u>ORDER</u>

This matter is before the Court on Defendant's Motion for Summary Judgment.  Upon

consideration of this motion, the opposition and reply and all attachments thereto, it is this

_____ day of _____, 2008,

ORDERED that such motion should be and hereby is GRANTED.  Summary judgment is

granted in favor of Defendant.  This action is hereby DISMISSED.


_____
UNITED STATES DISTRICT JUDGE


Copies to all parties via ECF.

- 21 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN ZINC ASSOCIATION ·  )<br>2025 M St., N.W.  )<br>Suite 800  )<br>Washington, D.C. 20036,  )<br>  )<br>       Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>UNITED STATES DEPARTMENT OF  )<br>COMMERCE  )<br>1401 Constitution Ave., N.W.  )<br>Washington, D.C. 20230,  )<br>  )<br>       Defendant.  )<br> ) | Civil Action No. 08-0538 (EGS) |

## DECLARATION OF DAVID CAMMAROTA

I, David Cammarota, do hereby state and declare under the penalties for perjury that the following statements are true and correct:

1. I am the Director of the Office of Materials and Machinery, within the Manufacturing and Services (MAS) unit of the International Trade Administration (ITA) at the U.S. Department of Commerce (DOC). I have served in this position continuously since August 2004. In this position I am responsible for assessing and enhancing the competitiveness of the U.S. materials and machinery sectors. The 3Rs (reduce, reuse, recycle) have an impact on these sectors, and I became involved in the interagency process for the G-8 initiative in September 2004. As the Office of Materials and Machinery did not have the lead on this issue, however, and the focus centered on remanufacturing and trade/market access, my involvement was short-lived with the exception of my work on Plaintiff's Freedom of Information Act (FOIA) (5 U.S.C. § 552) request.

2. This declaration is provided in response to the above-referenced lawsuit brought by the American Zinc Association (AZA) as a result of a FOIA request.

3. All information herein is based upon knowledge that I have acquired, constructive or actual, in the performance of my official duties. I have read, and am familiar with, the FOIA request at issue in this case

2

4. The purpose of this declaration is to set forth the chronology of correspondence relating to Plaintiff's FOIA request; explain how DOC processed Plaintiff's request; explain the search conducted to identify records responsive to Plaintiff's FOIA request; and identify the basis for the redaction or withholding of information from those responsive documents that were partially or fully withheld based on exemptions (b)(5) and (b)(6).

5. By letter dated May 1, 2006 (attached as Exhibit 1), George F. Vary, Executive Director, AZA, filed a FOIA request for all records from September 1, 2004 to "date":[1]

> . . . reflecting any communications by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement," or (c) general government procurement of products with recycled content, in connection with the 3Rs Initiative, including any minutes of meetings involving those individuals on that subject.

> . . . reflecting any communications by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement," or (c) general government procurement of products with recycled content, in connection with an International Symposium on the 3Rs Initiative Keynote Address by Mr. Bogosian, given on April 28, 2005, including any and all drafts of such address and any minutes of meetings involving those individuals to discuss that address

> . . . reflecting any communications by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement," or (c) general government procurement of products with recycled content, in connection with either the 3Rs Initiative or the April 28 Keynote Address by Mr. Bogosian, including any minutes or meetings involving those individuals to discuss the 3Rs Initiative or that address.

> . . . reflecting any communications by or between, on the one hand, Edwin Pinero,

---

[1] Under DOC regulations, records responsive to a request include only those records within DOC's possession and control as of the date the proper component receives the request. 15 C.F.R. § 4.5(a). In this case, ITA received the request on May 10, 2006.

3

Dana Arnold or any other employee of the Office of the Federal Environmental
Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota,
Sarah Aker or any other employee of the Department of Commerce, on the other,
referring or in any way relating to (a) "green procurement," (b) "smart procurement," or
(c) general government procurement of products with recycled content, in connection
with the 3Rs Initiative or the April 28 Keynote Address by Mr. Bogosian, including all
records of any meetings involving those people to discuss the 3Rs Initiative or that
address.

6. Mr. Vary's FOIA request was addressed to Linda Bell, ITA's FOIA Officer. Ms. Bell logged
the request into ITA's FOIA tracking system, assigning it number FOI 06-072. Within ITA, lead
responsibility for responding to the request was assigned to MAS, based on a determination that
the employees specifically mentioned in Mr. Vary's appeal were MAS employees, and therefore
MAS would be the office most reasonably likely to have responsive records.

7. The request was distributed to all MAS offices with a reasonable likelihood of having
responsive documents, and the staff of these offices conducted a thorough search of MAS files,
electronic and hard copy, located on MAS computers, computer disks, desks, filing cabinets,
storage areas, and common areas. I am familiar with the documents that were located as a result
of the search.

8. By letter dated June 12, 2006 (attached as Exhibit 2), Ms. Bell responded to Mr. Vary's
request by releasing 546 pages responsive to his request. Mr. Vary was informed that an
additional 137 documents were being withheld in their entirety based on the deliberative process
privilege of 5 U.S.C. § 552(b)(5). The letter also informed Mr. Vary of his right to appeal the
partial denial under 15 C.F.R. § 4.10.

9. By letter dated July 10, 2006 (attached as Exhibit 3), Mr. Vary appealed the partial denial of
his FOIA request to the Assistant General Counsel for Administration.

10. The Office of the Assistant General Counsel for Administration was in the process of
responding to Mr. Vary's appeal when he filed the instant litigation against DOC in the U.S.
District Court for the District of Columbia, on March 28, 2008.

11. Pursuant to DOC regulation, 15 C.F.R. § 4.5(b), four documents that originated with the
Department of State (DOS) were referred to DOS for a disclosure determination. DOS
determined that all four documents were fully releasable. Six documents that originated with the
Council on Environmental Quality (CEQ) were referred to CEQ for a disclosure determination.[2]
CEQ determined that five documents were fully releasable, and one document is being withheld

---

[2] Although Mr. Vary was informed that seven documents were referred to CEQ, in a
letter dated June 9, 2008 (attached as Exhibit 5), that was an error. Only six documents were
CEQ documents, the seventh was a DOC document.

4

pursuant to FOIA exemption (b)(5), as discussed in CEQ's declaration and Vaughn Index (attached as Exhibit 4).[3]

12. By letter dated June 9, 2008 (attached as Exhibit 5), DOC released 70 additional documents in their entirety to Mr. Vary.

13. By letter dated June 13, 2008 (attached as Exhibit 6), DOC released an additional 14 documents in their entirety and five in part to Mr. Vary. This includes the DOS and CEQ documents discussed in Paragraph 11.

14. Any documents not released by DOC in their entirety, or at all, to Mr. Vary, are addressed in DOC's Vaughn Index (attached as Exhibit 7).

## Basis for Withholding Documents

### FOIA Exemption (b)(5)

15. With the exception of a portion of one document,[4] the documents at issue in this litigation are partially or entirely withheld pursuant to the deliberative process privilege incorporated into FOIA Exemption (b)(5), 5 U.S.C. § 552(b)(5), which protects from disclosure "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency."

16. Four documents are withheld in part and 23 documents are withheld in their entirety based solely on the deliberative process privilege incorporated within exemption (b)(5) of the FOIA. The foregoing documents are described in Sections I and II, respectively, of the attached Vaughn Index.

17. The material that is exempt from disclosure under the deliberative process privilege consists of internal Government opinions and recommendations relating to various aspects of the 3Rs Initiative, including responses to members of the public requesting information on the government's position and discussions concerning proposed agendas, invitations, and speeches for meetings regarding the 3Rs Initiative.

18. The documents and portions of documents withheld under the deliberative process privilege are part of a deliberative process relating to the U.S. Government's decision making process

---

[3] CEQ is asserting an exemption for its portion of an e-mail string between DOC and CEQ personnel. To the extent that the string contains e-mails originating with DOC, those e-mails are being released in their entirety.

[4] This document was withheld under FOIA exemption (b)(6) (5 U.S.C. § 552(b)(6)), as is discussed in Paragraph 31 below.

5

described in Paragraph 17, in that they consist of advice, opinions or recommendations on the matters to which they relate, and do not constitute final agency decisions on those matters.

19. The documents withheld in part pursuant to the deliberative process privilege include miscellaneous e-mail strings among Government employees discussing the April 2005 Keynote Address, the 3Rs Senior Officials Meeting, and a response to the Basel Action Network. The information withheld in these documents is explained more fully below.

20. The documents withheld in full pursuant to the deliberative process privilege include the following categories of documents: documents relating to ITA's response to AZA concerning Deputy Assistant Secretary (DAS) Bogosian's Keynote Address for the April 2005 3Rs Initiative Ministerial Conference (e-mails discussing AZA's request and draft versions of ITA's formal response to Mr. Vary); draft documents pertaining to the 3Rs Initiative; and miscellaneous documents pertaining to the 3Rs Initiative. The information withheld in these categories is explained more fully below.

## Miscellaneous Documents Pertaining to the 3Rs Initiative

21. Four documents are withheld in part (See Section I of the attached Vaughn Index), and seven documents are withheld in their entirety in this category (See Section II.C of the attached Vaughn Index). These documents consist of e-mail strings among DOC employees or between DOC employees and the employees of other Government agencies on various subjects relating to the 3Rs Initiative. These subjects include: the April 2005 Keynote Address; the 3Rs Senior Officials Meeting; a response to the Basel Action Network; a draft invitation to an Industry Symposium; the conference on Asset Recovery, Recycling, Remanufacturing, Reclamation; a draft briefing report; 3Rs Initiative "next steps;" meeting planning; and a draft statement of MAS' mission. Descriptions of the miscellaneous documents are included in Sections I and II.C of the attached Vaughn Index.

22. The documents consist of opinions and recommendations as to how to address the various issues presented in the e-mails. The information withheld is internal pre-decisional deliberative material, the release of which would discourage open and frank discussions within DOC and between DOC and other Government agencies about what the final decision on various matters should be, and create public confusion due to disclosure of reasons and rationales that may not have been the grounds for the Government's final position on an issue. The material withheld does not represent final agency decisions on the matters contained therein.

23. To the extent that factual information is included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by DOC in determining how best to respond to the issues discussed in the e-mails.

6

### Documents Relating to ITA's Response to AZA Concerning Deputy Assistant Secretary (DAS) Bogosian's Keynote Address for the April 2005 3Rs Initiative Ministerial Conference

24. Eight documents are withheld in their entirety in this category. These documents consist of (1) e-mails discussing ITA's response to AZA's June 9, 2005 e-mail regarding DAS Bogosian's keynote address for the April 2005 3Rs Initiative Ministerial Conference, and (2) draft versions of ITA's formal response to AZA.

25. Three of the documents withheld in this category are e-mails that discuss the AZA's request and how to respond to it. These e-mails are withheld in their entirety pursuant to the deliberative process privilege. The documents consist of communications between officials from ITA/MAS and other agencies of the U.S. Government. The communications are pre-decisional because they occurred before ITA/MAS developed a final response to the AZA's e-mail. The communications are deliberative because they present opinions, comments, and ideas for that ITA/MAS used to develop a final response to the AZA's request. Descriptions of these documents are included in Section II.A(1).

26. Five of the documents withheld in this category are drafts of a formal letter from ITA/MAS to the AZA regarding their concerns about the language in Mr. Bogosian's keynote address. A draft by its very nature is predecisional to the final version of the document and reflects the agency's deliberations as to what should be included in the final document. The drafts are deliberative because they were used to develop a final response to the AZA's e-mail about language in the Ministerial Conference keynote address. Descriptions of these documents are included in Section II.A(2).

27. To the extent that factual information is included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by DOC in determining how best to respond to Mr. Vary's request.

### Draft Documents Pertaining to 3Rs

28. Eight documents are withheld in their entirety in this category. The withheld documents consist of drafts of various documents pertaining to the 3Rs Initiative prepared by personnel of Executive Branch agencies and circulated for comment by personnel in Executive Branch agencies. They consist of draft talking points, draft action items, draft proposal notes, and draft papers. Descriptions of these documents are included in Section II.B.

29. A draft by its very nature is predecisional in that it is a recommendation to a decisionmaker as to how to address various issues in a final document, and what that document should contain. The information withheld is internal pre-decisional deliberative material, the release of which would discourage open and frank discussions within the Government about what the final documents should contain on various matters, and create public confusion due to disclosure of reasons and rationales that may not have been the grounds for the agency's final response. The material withheld does not represent final agency decisions on the matters contained therein.

7

30. To the extent that factual information is included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by DOC in determining how best to prepare the final versions of the various documents.

## FOIA Exemption (b)(6)

31. This category includes only a portion of one document consisting of an individual's health concerns regarding a family member, which is withheld pursuant to exemption (b)(6). Exemption (b)(6) protects personal privacy interests and exempts from disclosure all information about individuals in "personnel and medical files and similar files" if disclosure "would constitute a clearly unwarranted invasion of personal privacy." The term "similar files" has been interpreted broadly to apply to any information which applies to a particular individual. Whether disclosing the information at issue would constitute a clearly unwarranted invasion of personal privacy requires a balancing of the public interest in disclosure against the individual's interest in privacy. The information pertains to a particular person, and thus is a "similar file." Under the FOIA, disclosure of information is in the public interest if it would contribute to public understanding of the operations or activities of the Government. An individual's health concerns regarding a family member is personal information, the disclosure of which would not contribute to public understanding of the operations or activities of the Government. No public interest exists in this information, whereas the individual has a strong privacy interest in this information. Accordingly, the privacy interest outweighs the public interest, and the information has been withheld. A description of the information withheld pursuant to FOIA exemption (b)(6) is included in section III of the attached Vaughn Index.

## Segregation of Factual Information

32  In connection with the review of documents which are the subject of this suit, Commerce has made a good faith effort to segregate all factual portions of these documents which are not protectable under the exemptions set forth above. All such segregable portions have been released to the requester.

## **Status of Other Documents**

## Non-Responsive Documents

33. During the review of documents for the instant litigation, two documents previously withheld pursuant to FOIA Exemption (b)(5) were determined to be non-responsive to the request. They were mistakenly identified as responsive to the initial request; however, they do not relate to the subject matter of the request.

34. Portions of eight documents were determined to be non-responsive to the request. These documents consist primarily of weekly reports and other summary documents dealing with a

8

broad range of ITA/MAS issues. To the extent those documents discussed issues responsive to the request, the responsive sections were released to the requester on June 13, 2008.

35. A list of these documents is included in Section III of the attached <u>Vaughn</u> Index.

<u>Duplicate Documents</u>

36. During the review of documents for the instant litigation, 19 documents were determined to be duplicates of other documents either released to the requester or withheld. A list of those documents and their duplicates is included in Section IV of the attached <u>Vaughn</u> Index.

## <u>Vaughn Index</u>

37. A thorough search was conducted for documents responsive to this FOIA request. All responsive documents have either been released to the requester or are being properly withheld, as described in the <u>Vaughn</u> Index attached to this Declaration as Exhibit 7.

I certify under penalty of perjury that the foregoing is true and correct.

Executed in Washington, D.C. on this **17** day of July, 2008.

David Cammarota

 **American Zinc Association**

2025 M Street, NW, Suite 800, Washington DC 20036 Tel (202) 367-1151 Fax (202) 367-2232 www.zinc.org

May 1, 2006

*ITA 06-072*

Ms. Linda Bell
Freedom of Information Officer
Office of Organizational and Management Support
International Trade Administration
U.S. Department of Commerce
Washington, DC 20230

Dear Ms. Bell:

This is a Freedom of Information Act request for the following:

1. Documents, including e-mails and attachments, reflecting any communication by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement" or (c)general government procurement of products with recycled content, in connection with the 3Rs Initiative, including any minutes of meetings involving those individuals on that subject.

2. Documents, including e-mails and attachments, reflecting any communication by or between, on the one hand, Edwin Pinero, Dana Arnold or any other employee of the Office of the Federal Environmental Executive and, on the other hand, Joseph Bogosian, Jaime Estrada, David Cammarota, Sarah Aker or any other employee of the Department of Commerce, on the other, referring or in any way relating to (a) "green procurement," (b) "smart procurement," or (c)general government procurement of products with recycled content, in connection with an International Symposium on the 3Rs Initiative Keynote Address by Mr. Bogosian, given on April 28, 2005, including any and all drafts of such address and any minutes of meetings involving those individuals to discuss that address..

3. Documents, including e-mails and attachments, reflecting any communication between or among Joseph Bogosian, Jaime Estrada, David Cammarota, or Sarah Aker and any employee of the Department of Commerce referring or in any way relating to (a)"smart procurement," (b)"green procurement," or (c) general government procurement of products with recycled content, in connection with either the 3Rs Initiative


GOVERNMENT
EXHIBIT
1

or the April 28 Keynote Address by Mr. Bogosian, including any minutes of meetings involving those individuals to discuss the 3Rs Initiative or that address.

4.    Documents, including e-mails and attachments, reflecting any communications by or between, on the one hand, Joseph Bogosian, Jaime Estrada, David Cammorota, Sarah Aker or any other employee of the Department of Commerce and, on the other, any representative of a corporation, business or a trade association referring or in any way relating to (a)"smart procurement," (b)"green procurement," or (c)general government procurement of products with recycled content, in connection with the 3Rs Initiative or the April 28 Keynote Address by Mr. Bogosian, including all records of any meetings involving those people to discuss the 3Rs initiative or that address..

In the context of this request, "documents" shall include all non-identical copies of the same source material (e.g., two copies of the same e-mail, one of which has handwritten notes thereon).

The period covered by this request is from September 1, 2004 to date.

Any questions concerning this request should be addressed to the undersigned. Please advise the undersigned when and where the requested materials will be available for inspection and, if requested, copying. Also, please advise the undersigned if disclosure of particular documents is withheld and the claimed exemption therefore.

Thank you for your assistance.

Sincerely,

George F. Vary
Executive Director



**UNITED STATES DEPARTMENT OF COMMERCE**
**International Trade Administration**
Washington, D.C. 20230

June 12, 2006

Mr. George F. Vary
Executive Director
American Zinc Institute
2025 M Street, NW, Suite 800
Washington, DC 20036

Dear Mr. Vary:

This is in response to your Freedom of Information Act (FOIA) request for materials
relating to (a) "green procurement," (b) "smart procurement," or (c) general government
procurement of products with recycled content, in connection with the 3Rs Initiative.

One hundred and thirty-seven (137) documents are being withheld under FOIA
exemption (b)(5), privileged interagency or intra-agency memoranda or letters. This
exemption protects internal federal government documents that are both predecisional
and deliberative.

The remaining documents are being released in their entirety and are enclosed with this
letter.

You have the right to appeal this response to your FOIA request. An appeal must be
received within 30 calendar days of the date of this letter by the Assistant General
Counsel for Administration, Room 5898-C, U.S. Department of Commerce, 14th &
Constitution Avenue, NW, Washington, DC 20230. Your appeal may also be sent by e-
mail to FOIAAppeals@doc.gov or by facsimile (fax) to 202/482-2552. The appeal must
include a copy of the original request, this response to the request, and a statement of the
reason why withheld records should be made available and why denial of the records was
in error. The submission (including e-mail and fax submissions) is not complete without
the required attachments. The appeal letter, the envelope, the e-mail subject line, and the
fax cover sheet should be clearly marked "Freedom of Information Act Appeal." The e-
mail, fax machine, and Office are monitored only on working days during normal

GOVERNMENT
EXHIBIT

2



business hours (8:30 am to 5:00 pm, Eastern Standard Time, Monday through Friday).
FOIA appeals posted to the e-mail box, fax machine or Office after normal business
hours will be deemed received on the next business day.

Sincerely,

Linda M. Bell
Freedom of Information Act Officer

Enclosures

FOI 06-072

 **American Zinc Association**

2025 M Street, NW, Suite 900, Washington DC 20036 Tel (202) 367-1151 Fax (202) 367-2232 www.zinc.org

July 10, 2006

Assistant General Counsel for Administration          <u>Via Facsimile</u>
U.S. Department of Commerce
Room 5898-C
Washington, DC 20230

Dear Sir or Madam:

The American Zinc Association ("AZA") hereby appeals from the decision of the Department of Commerce ("Commerce") to withhold documents from production under the Freedom of Information Act ("FOIA"). Copies of AZA's initial FOIA request and Commerce's June 12 response are attached hereto.

Commerce has withheld documents pursuant to exemption (b)(5), saying that exemption protects those internal "documents that are both predecisional and deliberative." However, Commerce's website says exemption (b)(5) exempts "those documents, and only those documents, normally privileged in the civil discovery context."

AZA does not seek documents which are between counsel and Commerce officials for the purpose of securing legal advice. However, it is established law that documents without this purpose do not become privileged simply by sending them to counsel. AZA suspects there are documents indicating or summarizing meetings with businesses and/or trade associations which are improperly withheld under a claim of a (b)(5) exemption. AZA believes there are documents indicating who authored a certain inclusion in DAS Bogosian's remarks that are being improperly withheld. **On this latter point, no privilege can attach as DAS Bogosian and counsel van Hoogstraten specifically agreed in public to provide AZA with this information.**

Moreover, even assuming, <u>arguendo</u>, the existence of an exemption for these materials, Commerce appears to have waived that by production of other documents to AZA labeled "DRAFT, PRE-DECISIONAL AND DELIBERATIVE." It is axiomatic that one cannot pick and choose which privileged matters to disclose without vitiating the privilege.

Sincerely,

George F. Vary
Executive Director

GOVERNMENT
EXHIBIT

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN ZINC ASSOCIATION )
2025 M St., N.W. )
Suite 800 )
Washington, D.C.  20036, )
 )
   Plaintiff, )
 )
 v. ) Civil Action
 ) No. 08-0538
UNITED STATES DEPARTMENT OF ) (EGS)
COMMERCE )
1401 Constitution Ave., N.W. )
Washington, D.C.  20230, )
 )
   Defendant. )
 )

## DECLARATION OF EDWARD A. BOLING

I, Edward A. Boling, pursuant to 28 U.S.C. § 1746, depose and say as follows:

 1. I am the General Counsel and Freedom of Information Act ("FOIA")

Officer of the Council on Environmental Quality ("CEQ"), a federal agency within the

Executive Office of the President ("EOP").  My duties as General Counsel and FOIA

Officer include the supervision of CEQ actions in response to FOIA requests. I am

authorized to assert attorney-client privilege and certain governmental privileges on

behalf of CEQ, including the deliberative process privilege, with respect to documents in

the possession of CEQ.

 2. CEQ was established through enactment of the National Environmental

Policy Act of 1969, 42 U.S.C. §§ 4321 et seq. ("NEPA").  The purposes of NEPA are to



"declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation; and to establish a Council on Environmental Quality." 42 U.S.C. § 4321. Under section 204 of NEPA, it is the duty and function of CEQ to, inter alia, review and appraise programs and activities of the Federal Government in light of the policies set forth in NEPA and to make recommendations to the President with respect to the extent to which these programs and activities are contributing to the policies of NEPA. 42 U.S.C. § 4344(3).

3.    I have consulted with the Department of Commerce on the above-captioned matter and the document referred to as 000060. I have reviewed that document and determined it of a type whose premature disclosure would undermine CEQ's ability to conduct candid and constructive deliberations and provide recommendations to senior advisors to the President, including the Chairman of CEQ. I have specifically considered the segregability of the information contained in this document, ensuring that all facts that can be released have been released, and I have determined that disclosure of any remaining information would expose the deliberative processes at issue in these documents. The redacted portion of 000060 is withheld under 5 U.S.C. § 552(b)(5) based on the privilege for protection of inter- and intra-agency communications in a deliberative process.

4.    The document identified as 000060 is an inter-agency email, the redacted portion of which describes the deliberative recommendations of CEQ leadership regarding agency representation at the March 2006 meeting of the senior officials working group for the 3Rs initiative. The attached Vaughn index contains sufficient detail to allow the Court to judge the applicability of Exemption 5 to that document.

5.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed at Washington, D.C., on June 12, 2008.

Edward A. Boling

American Zinc Association v. United States Department of Commerce

Civil Action No. 08-0538 (EGS)
U.S. District Court
District of Columbia

Vaughn Index

Description of the records of the Council on Environmental Quality ("CEQ") currently at issue and protected in full and in part by FOIA Exemption 5 (deliberative process privilege). The withheld records are described below.

| Document Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 000060 | 1/25/2006 | Portions of an inter-agency email that describes the recommendations of CEQ leadership regarding agency representation at the March 2006 meeting of the senior officials working group for the 3Rs initiative. | Deliberative Process | 2 pages withheld in part |



**UNITED STATES DEPARTMENT OF COMMERCE**
**Office of the General Counsel**
Washington, D.C. 20230

George Vary
Executive Director
American Zinc Institute                          JUN 0 9 2008
2025 M Street, NW
Suite 800
Washington, DC 20036

Dear Mr. Vary,

Enclosed please find 70 documents that are being released to you in their entirety, in response to your July 10, 2006 Freedom of Information Act (FOIA) appeal. Additional documents are being withheld in full or in part pursuant to FOIA exemption (b)(5), which protects from disclosure information that is predecisional and deliberative in nature. Finally, four documents have been referred to the Department of State, and seven have been referred to the Center for Environmental Quality for disclosure determinations.

With respect to any documents partially withheld, the segregable portions of those documents will be sent to you under separate cover as soon as they are processed. Any fully withheld documents and withheld portions of documents will be addressed in the Department's <u>Vaughn</u> Index, to be filed with the Court at a later date.

If you have any questions, please feel free to contact me.

Sincerely,

Sarah E. Coe
Senior Counsel

**Enclosures**

cc:    Mercedeh Momeni (w/o enclosures)

GOVERNMENT
EXHIBIT
5

**FedEx** USA Airbill    FedEx Tracking Number **8 2005970 3107**

FedEx Ground No. **0200**

**1 From** Please print and press hard.

Date **6/9/08**    Sender's FedEx Account Number **1506-4516-6**

Sender's Name **Sarah Coe**    Phone **(202) 482-6807**

Company **Department of Commerce**

Address **1401 Constitution Avenue, N.W. - HCHB 5875**
Dept./Floor/Suite/Room

City **Washington**    State **DC**    ZIP **20230**

**2 Your Internal Billing Reference**
First 24 characters will appear on invoice.

**3 To**
Recipient's Name **George Vary, Executive Director**    Phone ( )

Company **American Zinc Institute**

Address **2025 M Street, N.W.**    **Suite 800**
We cannot deliver to P.O. boxes or P.O. ZIP codes.    Dept./Floor/Suite/Room

To "HOLD" at FedEx location, print FedEx address here.

City **Washington**    State **DC**    ZIP **20036**

Questions? Call 1·800·Go·FedEx® (800-463-3339)
Visit our Web site at www.fedex.com

By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.

**4a Express Package Service**    *Packages up to 150 lbs.*

☐ FedEx Priority Overnight    ☐ FedEx Standard Overnight    ☐ FedEx First Overnight

☑ FedEx 2Day*    ☐ FedEx Express Saver*

**4b Express Freight Service**    *Packages over 150 lbs.*

☐ FedEx 1Day Freight*    ☐ FedEx 2Day Freight    ☐ FedEx 3Day Freight

**5 Packaging**    *Declared value limit $500.*

☐ FedEx Letter*    ☑ FedEx Pak*    ☐ Other Pkg.

**6 Special Handling**

☐ Saturday Delivery    ☐ Sunday Delivery    ☐ HOLD Weekday at FedEx Location    ☐ HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?
One box must be checked.

☑ No    ☐ Yes    ☐ Yes    ☐ Dry Ice    ☐ Cargo Aircraft Only

**7 Payment** *Bill to:*

☐ Sender    ☐ Recipient    ☐ Third Party    ☐ Credit Card    ☐ Cash/Check

Total Packages    Total Weight    Total Declared Value $ .00

**8 Release Signature** *Sign to authorize delivery without obtaining signature.*

**360**



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

June 12, 2008

Dear Customer:

The following is the proof-of-delivery for tracking number **820059703107**.

## Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery date: | Jun 10, 2008 09:36 |
| Signed for by: | A.JUDD | | |
| Service type: | FedEx 2Day Pak | | |



## Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 820059703107 | Ship date: | Jun 9, 2008 |

Recipient:                          Shipper:
US                                  WAS US

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339



**UNITED STATES DEPARTMENT OF COMMERCE**
**Office of the General Counsel**
Washington, D.C. 20230

George Vary
Executive Director
American Zinc Institute
2025 M Street, NW
Suite 800
Washington, DC 20036

JUN 1 3 2008

Dear Mr. Vary,

This is a follow-up to my June 9, 2008 letter in which I indicated that documents that were being partially released to you would be sent under separate cover. Enclosed please find 14 documents that are being released to you in their entirety, five documents that are being released to you in part, and nine documents that have had non-responsive portions redacted. This release is in response to your July 10, 2006 Freedom of Information Act (FOIA) appeal. With respect to the documents referred to the Department of State (DOS) and the Center for Environmental Quality (CEQ), referenced in my June 9, 2008 letter, all but one document were determined to be fully releasable, and are included in this release. One CEQ document was partially withheld. The releasable portions of that document are also included this release.

To the extent the enclosed documents contain redactions based on FOIA Exemptions, the withheld portions will be addressed in the Department's <u>Vaughn</u> Index, to be filed with the Court at a later date. The <u>Vaughn</u> Index will also address any documents withheld in their entirety.

If you have any questions, please feel free to contact me.

Sincerely,

Sarah E. Coe
Senior Counsel

Enclosures

cc:    Mercedeh Momeni (w/o enclosures)

GOVERNMENT EXHIBIT
6
CARDELS 800-781-0398

**FedEx.** *USA Airbill* FedEx Tracking Number **8 2005 9703092**

| | | Form ID No. **0200** |
|---|---|---|

**1 From** *Please print and press hard.*

Date **6/13/08**  Sender's FedEx Account Number **1506-4516-6**

Sender's Name **Sarah Coe**  Phone ( **202** ) **482-6807**

Company **Department of Commerce**

Address **1401 Constitution Avenue, N.W. - HCHB 5875**

City **Washington**  State **D.C.**  ZIP **20230**

**2 Your Internal Billing Reference**

**3 To**

Recipient's Name **George Vary, Executive Director**  Phone ( )

Company **American Zinc Institute**

Address **2025 M Street, N.W.**  Suite **800**

City **Washington**  State **DC**  ZIP **20036**

**4a Express Package Service** *Packages up to 150 lbs.*

[X] FedEx Priority Overnight  [ ] FedEx Standard Overnight  [ ] FedEx First Overnight

[ ] FedEx 2Day  [ ] FedEx Express Saver

**4b Express Freight Service** *Packages over 150 lbs.*

[ ] FedEx 1Day Freight  [ ] FedEx 2Day Freight  [ ] FedEx 3Day Freight

**5 Packaging**

[ ] FedEx Letter  [X] FedEx Pak  [ ] Other Pkg.

**6 Special Handling**

[ ] Saturday Delivery  [ ] Sunday Delivery  [ ] HOLD Weekday at FedEx Location  [ ] HOLD Saturday

Does this shipment contain dangerous goods?

[X] No  [ ] Yes As per attached Shipper's Declaration  [ ] Yes Shipper's Declaration not required  [ ] Dry Ice

[ ] Cargo Aircraft Only

**7 Payment** *Bill to:*

[X] Sender  [ ] Recipient  [ ] Third Party  [ ] Credit Card  [ ] Cash/Check

| Total Packages | Total Weight | Total Declared Value |
|---|---|---|
| **1** | | $ .00 |

**8 Release Signature** *Sign to authorize delivery without obtaining a signature.*

**360**

**Questions? Call 1·800·Go·FedEx® (800-463-3339)**
Visit our Web site at www.fedex.com

# VAUGHN INDEX

## I. Documents Withheld in Part Pursuant to the (b)(5) Deliberative Process Privilege

The following documents are withheld in part under the (b)(5) deliberative process privilege. The withheld portions consist of internal Government e-mails among DOC staff, and among staff of other Executive Branch agencies, which reflect the give and take of Government deliberations relating to the specific subject discussed in the document descriptions below. The withheld portions are part of a deliberative process, or series of decisions, relating to the particular subject matter in that they consist of opinions or advice on the matters to which they relate, and do not constitute final agency decisions on those matters.

The withheld portions are predecisional in that they precede final decisions by ITA on the matters to which they relate (and in many cases no final decisions have been made on them), and deliberative because they constitute opinions and recommendations on those matters. These e-mails, created by Department employees, reflect opinions and recommendations for Department decisionmakers. To the extent that factual information is included in the recommendations, it is protected by (b)(5) deliberative process privilege because the facts in the withheld portions were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in developing policy.

The withheld portions are predecisional and deliberative, and their release would discourage open and frank discussions, and disclose opinions and recommendations relating to the matters discussed in the e-mails. Release would also create public confusion due to disclosure of reasons and rationales that were not ultimately the grounds for action.

000012    **June 15, 2005** – 2 pages. E-mail string among Federal Government employees Joseph Bogsian, Sarah Aker, and David Cammarota. Subject: Re: Language in Your April 28 Keynote Address.

        **Redacted:** A portion of the e-mail string discussing a proposed response to AZA's 6/9/05 e-mail concerning language in Joseph Bogosian's April 28, 2005 keynote address. This portion of the e-mail string is predecisional and deliberative because it discusses ITA's response before ITA reached a final decision on the matter. The communications are deliberative because they include opinions, recommendations, and ideas the ITA/MAS used to develop a final response to the AZA's concerns.

000081    **March 23, 2006** – 10 pages. E-mail string among Federal Government employees Joanne Sonenshine, Tu-Trang Phan, Jamie Estrada, Barbara Norton, Jennifer Prescott, John Masterson, Edwin Pinero, and Angie Leith. Subject: Fw: Final Report 3Rs Senior Officials Meeting March 6-8 Tokyo.

        **Redacted:** Two portions of the e-mail string discussing a proposed



GOVERNMENT
EXHIBIT
7

2

response to the Basel Action Network's (BAN) 3/23/06 e-mail expressing concerns about the US report on the recent 3Rs Senior Officials meeting. Withheld portions of the e-mail string are predecisional and deliberative because they discuss ITA's response before ITA reached a final decision on the matter. The communications are deliberative because they include opinions, recommendations, and ideas the ITA/MAS used to develop a final response to BAN's concerns.

000084      **February 2, 2006 – 4 pages.** E-mail string among Federal Government employees Joanne Sonenshine, Carla Langjahr, and Sarah Aker. Subject: Fw: 3R Senior Officials Meeting Questionnaire and Time Table.

   **Redacted:** A portion of the e-mail string concerning meeting planning issues such logistics and invitations. Withheld portions of the e-mail string constitute intra-agency documents because they present communications between ITA/MAS officials. The withheld portions are predecisional because they concern plans for the U.S. Delegation to the Senior Officials Meeting before ITA/MAS made a final decision on those matters. These communications are deliberative because the present staff opinions, thoughts and proposals that were used to formulate the agenda, format, scope, and materials for presentation at the Senior Officials Meeting.

000140      **November 17, 2005– 3 pages.** E-mail string among Federal Government employees Sarah Aker, David Cammarota, and Patty Sefcik. Subject: Re: Fw: 3Rs.

   **Redacted:** A portion of the e-mail string concerning a proposed response to AZA's 11/16/05 e-mail concerning language in Joseph Bogosian's April 28, 2005 keynote address and Commerce's letter to AZA dated July 29, 2005. This portion of the e-mail string is predecisional and deliberative because it discusses ITA's response before ITA reached a final decision on the matter. The communications are deliberative because they include opinions, recommendations, and ideas the ITA/MAS used to develop a final response to the AZA's concerns.

## II. Documents Withheld in Full Pursuant to the (b)(5) Deliberative Process Privilege

### A. Documents Relating to ITA's Response to AZA Concerning Deputy Assistant Secretary (DAS) Bogosian's Keynote Address for the April 2005 3Rs Initiative Ministerial Conference

The following documents concern ITA's response to AZA regarding DAS Bogosian's keynote address for the April 2005 3Rs Initiative Ministerial Conference (Ministerial Conference). These documents consist of: (1) e-mails discussing how best to respond to an e-mail dated June 9, 2005 from the AZA (the AZA e-mail was released in 000012, discussed above) in which AZA sought

3

background information on Mr. Bogosian's statement that "smart purchasing is not and should not be a simple preference for recycled products over non-recycled," and (2) draft versions of ITA's formal response to AZA.

### (1) e-mails that discuss the AZA's request

Three of the documents withheld in this category are e-mails that discuss the AZA's request and how to respond to it. These e-mails are withheld in their entirety pursuant to the deliberative process privilege. The documents consist of communications between officials from ITA/MAS and other agencies of the U.S. Government. The communications are pre-decisional because they occurred before ITA/MAS developed a final response to the AZA's e-mail. The communications are deliberative because they present opinions, comments, and ideas that ITA/MAS used to develop a final response to the AZA's request.

000006     **July 28, 2005** – 3 pages. Email string among Federal Government employees Edwin Pinero, David Cammarota, and Sarah Aker. Subject: Final? [*sic*] Version of the Vary Letter.

000016     **July 27, 2005** – 2 pages. E-mail string between Federal Government employees Sarah Aker, Edwin Pinero. Subject: RE: Letter to the American Zinc Association.

000017     **July 27, 2005** – 1 pages. Email string among Federal Government employees David Cammarota and Sarah Aker. Subject: Vary Letter.

### (2) draft versions of ITA's formal response to AZA

Five of the withheld documents are drafts of a formal letter from ITA/MAS to the AZA regarding their concerns about the language in Mr. Bogosian's keynote address. A draft by its very nature is predecisional to the final version of the document and reflects the agency's deliberations as to what should be included in the final document. The drafts are deliberative because they were used to develop a final response to the AZA's e-mail about language in the Ministerial Conference keynote address. ITA/MAS sent the final version of the letter tp the AZA on July 29, 2005. This letter was included in the materials released to the AZA on June 12, 2006.

000020     **July 29, 2005** – 2 pages. Draft letter from Joseph H. Bogosian to George F. Vary.

000015     **Undated** – 1 page. Draft letter from Joseph H. Bogosian to George F. Vary.

000011     **Undated** – 2 pages. Draft letter from Joseph H. Bogosian to George F. Vary. Draft includes request for advice from other reviewers as to content.

000009     **Undated** – 2 pages. Draft letter from Joseph H. Bogosian to George F. Vary.

000005     **Undated** – 3 pages. Draft letter from Joseph H. Bogosian to George F. Vary. Draft contains strike-out edits.

4

B.  Draft Documents Pertaining to 3Rs

The following documents are drafts that were prepared by personnel of Executive Branch agencies and circulated for comment by personnel in Executive Branch agencies.  They consist of draft talking points, draft action items, draft proposal notes, and draft papers.  A draft by its very nature is predecisional to the final version of the document and reflects the agencies' deliberations as to what should be included in the final document.

000027      November 10, 2004 (handwritten at bottom of page) – 1 page.  Document entitled "3Rs INITIATIVE Draft Action Items."  Consists of proposed action items in the form of bullet points.

000023      April 29, 2005 – 3 pages.  Document entitled "Draft Notes of Input Received for USG Proposal 3Rs Ministerial Conference - April 29-30, 2005."  Consists of proposed input for conference in the form of subject matter headings.

000024      Undated – 2 pages.  Document entitled "Draft Notes for USG Proposal."  A different draft of the document in 000023.

000021      March 6, 2006 – 5 pages.  Document entitled "3Rs Initiative Senior Officials Meeting Draft Opening Talking Points March 6, 2006."  Consists of draft talking points, in the form of bullet points, for proposed use by DAS Estrada.

000022      Undated – 2 pages.  Document entitled "Draft 3Rs Ministerial Conference, Tokyo, Japan, April 28-30, 2005."  This is a draft planning document.  Discusses conference planning suggestions and possible subjects for discussions and/or working groups.

000025      Undated – 5 pages.  Document entitled "3Rs Initiative Ministerial Conference Draft Opening Talking Points."  Consists of draft talking points, in the form of bullet points, for proposed use by DAS Bogosian.

000029      Undated (2004 handwritten on document) – 3 pages.  Draft entitled "Japan Paper on Global "3Rs" (Reduce, Reuse, Recycle)."  Draft contains strike-out edits.

000026      December 13, 2004 – 6 pages.  Draft document entitled "3Rs Initiative," which includes a draft 3Rs timeline, draft working notes of USG Proposal, draft program for 2005 3Rs Ministerial Conference; 3Rs Ministerial Conference Expected Participants, and 3Rs Action Items.

C.  Miscellaneous Documents Pertaining to 3Rs

000047      March 15, 2006 – 7 pages.  E-mail string among Federal Government employees Jamie Estrada, David Hermann, Ed Pinero, Joanne Sonenshine, and Stephen

5

Jacques. Subject: Re: Draft cable for 3Rs SOM. This document constitutes an
inter-agency document because it presents communications among ITA officials
and officials from other agencies of the U.S. Government. The communications
concern the content of the "Reporting Cable" before a final decision was made on
that matter. Accordingly, the communications concern a predecisional matter.
The communications are deliberative because they contain comments,
suggestions, recommendations, and opinions that were part of ITA and the State
Department's development of the Reporting Cable.

**000067**      **July 28, 2005** – 4 pages. E-mail string among Federal Government employees
Jamie Estrada, Joanne Sonenshine, and Carla Langjahr. Subject: Re: Draft Invite
for Industry Symposium. This document presents communications among ITA
staff and therefore constitutes an intra-agency document. The communications
are predecisional because they discuss the invitation for the Industry Symposium
before a final decision was made on that matter. These communications are
deliberative because they present opinions, recommendations, and drafts for the
invitation which were used to develop a final invitation for the 3Rs Industry
Symposium.

**000046**      **December 20, 2005** – 2 pages. E-mail string among Federal Government
employees Jamie Estrada, Carla Langjahr, and Joanne Sonenshine. Subject: Fw:
Arizona conference on Asset Recovery, Recycling, Remanufacturing,
Reclamation. This document presents communications between ITA officials and
therefore is an intra-agency document. The communications are predecisional
because they discuss who will represent ITA at the conference and the agenda for
this event before final decisions were made on these matters. The
communications are deliberative because they present opinions, remarks, and
suggestions which ITA used for planning the conference.

**000045**      **March 14, 2006** – 5 pages. E-mail string among Federal Government employees
Joanne Sonenshine, Jamie Estrada, Jane Corwin, Jean Janicke, and Adam
O'Malley. Subject: Re: Briefing Report for A/S Frink and Talking Points. This
document presents communications among ITA officials and therefore is an intra-
agency document. The communications are predecisional because they discuss
proposed talking points and a draft briefing report for A/S Frink before a final
decision was made as to the contents of the documents. The communications are
deliberative because they present opinions and recommendations which were used
in putting together the final documents.

**000038**      **January 18, 2006** – 3 pages. E-mail string between Federal Government
employees Jamie Estrada and Carla Langjahr. Subject: Commitment on 3R's.
This document presents communications between ITA officials and therefore is an
intra-agency document. The communications are predecisional because they
discuss proposed next steps for 3Rs before a final decision was made on the
matter. The communications are deliberative because they present opinions and

6

recommendations which were used in making a final decision concerning agency next steps.

**000076**  **January 13, 2006** – 1 page. Email string among Federal Government employees Jamie Estrada, Carla Langjahr, Sarah Aker, and Joanne Sonenshine. Subject: Fw: Suggestions for Topics at Tuesday Meeting. This document presents communications among ITA officials and therefore is an intra-agency document. The communications are predecisional because they are making recommendations as to logistics and topics for a meeting. The communications are deliberative because they present opinions and recommendations as to how the meeting should proceed.

**000091**  **January 10, 2006** – 2 pages. E-mail string between Federal Government employees Carla Langjahr and Jamie Estrada. Subject: Re: Two Bullets by tomorrow. This document presents communications between ITA officials and therefore is an intra-agency document. The communications are predecisional because they are making recommendations as what should be included in a final document regarding MAS' mission. The communications are deliberative because they present opinions and recommendations as what should be included in the final document..

## III. Document Withheld in Part Pursuant to FOIA Exemption (b)(6)

A portion of the following document has been withheld in part pursuant to FOIA exemption (b)(6), which protects personal privacy interests and exempts from disclosure information about individuals if the individual's interest in privacy outweighs the public's interest in disclosure. Under the FOIA, disclosure of information is in the public interest if it would contribute to public understanding of the operations or activities of the Government. The information protected below consists of an individual's health concerns regarding a family member, which is personal information the disclosure of which would not contribute to public understanding of the operations or activities of the Government. The strong interest of the individual in protecting personal privacy interests outweighs any minimal public interest in disclosure of the information.

**000121**  **March 13, 2006** – 1 pages. Email string between Federal Government employees Jamie Estrada and Carla Langjahr. Subject: Re: Tomorrow.

> **Redacted:** Portions of two e-mails that discuss the individual's health concerns regarding a family member.

## IV. Duplicate Documents

The following documents were determined to be exact duplicates:

000008 is a duplicate of 000016

7

000037 is a duplicate of 000091
000041 is a duplicate of 000047
000044 is a duplicate of 000047
000053 is a duplicate of 000104
000054 is a duplicate of 000095 and 000060
000058 is a duplicate of 000060
000069 is a duplicate of 000046
000078 is a duplicate of 000038
000092 is a duplicate of 000038
000093 is a duplicate of 000060
000094 is a duplicate of 000067
000098 is a duplicate of 000051
000113 is a duplicate of 000121
000118 is a duplicate of 000095
000120 is a duplicate of 000096
000122 is a duplicate of 000045
000126 is a duplicate of 000091
000139 is a duplicate of 000047

## V. Non-Responsive Documents

A. The following documents were determined to be entirely non-responsive to the request:

000079
000101

B. Portions of the following document were determined to be non-responsive. All responsive portions of the documents were released:

000001
000002
000003
000004
000040
000089
000114
000115