# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN ZINC ASSOCIATION, )
)
Plaintiff, )
)
v. )           Civil Action No. 08-0538 (EGS)
)
UNITED STATES DEPARTMENT OF )
COMMERCE, )
)
Defendant. )
)

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT[1]

Pursuant to Federal Rule of Civil Procedure 56(c), Plaintiff American Zinc Association

("Plaintiff" or "AZA"), moves for summary judgment on its Complaint for Declaratory and

Injunctive Relief in this Freedom of Information Act ("FOIA") action against the United States

Department of Commerce (the "Department") and asks that the Court order the Department to

identify and release all responsive documents and award AZA its attorney's fees pursuant to 5

U.S.C. § 552(a)(4)(E).  In support thereof, AZA states:

1.  Rule 56(c) authorizes summary judgment if pleadings and supporting materials show

that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The plain language of Rule 56(c) "mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986).

---

[1] Plaintiff AZA is contemporaneously submitting a consolidated Memorandum in Support of Plaintiff's Motion for
Summary Judgment and Opposition to Defendant's Motion for Summary Judgment.

2.    "Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified." Miscaviage v. Internal Revenue Serv., 2 F.3d 366, 369 (11th Cir. 1993); Harrison v. Executive Office for U.S. Attorneys, 377 F. Supp. 2d 141, 145 (D.D.C. 2005) ("FOIA cases are typically and appropriately decided on motions for summary judgment."). Critically, the burden of proof rests with the Department to establish that the documents in question are indeed exempt from disclosure. Miscaviage, 2 F.3d at 369; see also S. Rep. No. 813, 89th Cong., 2nd Sess., 8 (1965) ("Placing burden of proof upon the agency puts the task of justifying the withholding on the only party able to explain it."); H.R. Rep. No. 1497, 89th Cong., 2d Sess., 9 (1966), U.S. Code Cong. & Admin. News 1966, pp. 2418, 2426 (same).

3.    The Department has failed to comply with AZA's May 1, 2006, FOIA request regarding "green procurement," "smart procurement," or general government procurement of products with recycled content, in connection with the 3Rs Initiative, and specifically, such information "in connection with an International Symposium on the 3Rs Initiative Keynote Address by [Joseph] Bogosian, given on April 28, 2005 . . . ." See Declaration of George F. Vary, ¶ 11, Ex. D (attached hereto). The pleadings and declarations on file – together with the declaration filed with this cross-motion – make clear that the Department's concealed records must be disclosed. This case presents no genuine issues of material fact. As a matter of law, the records in issue are not exempt from FOIA's disclosure requirements and should be released to AZA.

4.    Additionally, as a direct result of the filing of this action, the Department produced the majority of documents it previously claimed exemptions for. This change in position by the

Department was both voluntary and unilateral. As a result, AZA has a right to its attorney's fees under the OPEN Government Act of 2007 amendments to FOIA. See 5 U.S.C. § 552(a)(4)(E).

5. Grounds for this motion are set forth more fully in the accompanying statement of facts, memorandum of law, and declaration.

WHEREFORE, Plaintiff AZA respectfully requests that this Court enter an order requiring the Department to identify all responsive records and release the withheld and redacted records, awarding AZA its costs and attorneys fees in maintaining this action, and awarding such further relief as this Court deems just and proper.

**ORAL HEARING REQUESTED**

Respectfully submitted,

_/s/ Charles D. Tobin_____
Charles D. Tobin (Bar No. 455593)
Judith F. Bonilla (Bar No. 473190)
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955-3000  Phone
(202) 955-5564  Fax

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN ZINC ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-0538 (EGS) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| COMMERCE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

STATEMENT OF FACTS IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(h), Plaintiff American Zinc Association ("Plaintiff" or "AZA") submits the following Statement of Facts in Opposition to the United States Department of Commerce's (the "Department") Motion for Summary Judgment.

## Preliminary Statement

The Department has set forth in its Statement of Facts in Support of its Summary Judgment Motion a number of facts that are not accurate. In compliance with Local Rule 7(h), AZA identifies those references in the section below titled "Statement of Facts as to Which There Exists a Genuine Issue, and which Preclude Summary Judgment for the Department."

Unlike other forms of litigation, however, in Freedom of Information Act litigation where the government fails to justify the grounds for a claim of exemption, and the plaintiff moves for summary judgment, the plaintiff is entitled to the relief. Accordingly, while Local Rule 7(h) requires a party opposing summary judgment to demonstrate facts supporting "a genuine issue to

be litigated," AZA has filed a Cross-Motion for Summary Judgment largely on grounds that the Department has failed to meet its burden to establish the basis for the exemption it claims in this case.

AZA therefore includes in this filing its "Concise Statement of Facts as to Which There is No Genuine Issue, and which Warrant Summary Judgment for the Plaintiff."

### Statement of Facts as to Which There Exists a Genuine Issue, and which Preclude Summary Judgment for the Deparment

The following is responsive to the Department's Statement of Facts ("SOF").

1.    SOF ¶5 fails to indicate that: the 546 released pages were not numbered; the Department provided no explanation for its claim of exemption under 5 U.S.C. § 552(b)(5) for the 137 documents withheld in their entirety; and the Department provided no explanation for its failure to provide reasonably segregable portions of those 137 documents. See Declaration of George F. Vary ("Vary Decl."), ¶¶ 13-14, Ex. E (attached to AZA's Opposition and Cross-Motion for Summary Judgment).

2.    SOF ¶7 erroneously reports on the status of the processing of the appeal from the partial denial of AZA's FOIA request. At the time the instant litigation was filed, the FOIA appeal had been pending for nearly two years, and the Department had indicated to AZA that the appeal had not progressed. See Vary Decl., ¶¶ 16-23, Ex. H.

3.    SOF ¶9 erroneously reports on the release of the 70 additional documents. These documents were withheld in response to AZA's FOIA request. They were only released following commencement of this litigation. See Vary Decl., ¶¶ 25-26, Ex. I.

4.    SOF ¶10 erroneously reports on the further release of 14 additional documents and the partial release of another five documents. These documents were withheld in response to

AZA's FOIA request.  They were only released following commencement of this litigation.  <u>See</u>
Vary Decl., ¶¶ 25, 27, Ex. J.

    5.     SOF ¶11 erroneously asserts that a complete <u>Vaughn</u> index has been filed.  The
Department has failed to account for at least 75 attachments to documents that it released to AZA
in its <u>Vaughn</u> index.  <u>See</u> Vary Decl., ¶ 34, Ex. M.  The <u>Vaughn</u> index also fails to adequately
account for duplicate documents that were not released by failing to indicate whether the
documents duplicated were released or withheld.  <u>See</u> Motion, Govt. Ex. 7, Sec. IV.  Finally, the
<u>Vaughn</u> index does not "address" the documents not released in their entirety, as it does not fully
describe all withheld documents, the basis for the asserted exemption, the harm posed from
disclosure, or whether segregable portions were released.  <u>See</u> Cross-Motion at 5-18.

    6.     SOF ¶34 erroneously reports on that all responsive documents have either been
released or properly withheld.  The Department has failed to release at least 75 attachments to
documents it previously released to AZA.  <u>See</u> Vary Decl., ¶ 34, Ex. M.

    7.     The Department asserts as "fact," in a number of paragraphs in the SOF, that it
properly invoked a FOIA exemption.  AZA does not believe these are "facts," but instead, are
legal conclusions that the Court will decide.  To the extent, however, that the Court deems any of
these assertions as factual, AZA denies each of them for the reasons set forth in its Opposition to
Summary Judgment and Cross-Motion for Summary Judgment.

**Concise Statement of Facts as to Which There is No Genuine Issue,
<u>and which Warrant Summary Judgment for the Plaintiff</u>**

The following facts present no genuine issue for trial and support summary judgment in favor

of AZA:

1.     On April 28, 2005, the Department of Commerce's (the "Department") Deputy

Assistant Secretary Joseph Bogosian gave a keynote address ("Address") at a ministerial meeting

in Tokyo, Japan regarding Japan's proposed 3Rs Initiative.  The 3Rs Initiative, adopted by the

G8 in 2004 and formally launched by the meeting in Japan, aims to promote the "3Rs" (reduce,

reuse and recycle) globally so as to build a recycling-based society through the effective use of

resources and materials.  Vary Decl., ¶ 3.

2.     AZA, represented by Mr. George F. Vary, the organization's Executive Director,

together with the domestic steel industry met with Bogosian in Washington, D.C., prior to the

ministerial meeting to inform him about, *inter alia*, the Resource Conservation and Recovery

Act, 42 U.S.C. § 6962, preference for products within the Environmental Protection Agency's

Comprehensive Procurement Guidelines.  <u>Id.</u>, ¶ 4.

3.     On June 1, 2005, the Department convened a meeting at its headquarters in

Washington, D.C., for interested stakeholders to be debriefed on the proceedings in Japan.  The

meeting was attended by Mr. Vary.  A copy of the final, delivered Address was distributed to

attendees.  <u>Id.</u>, ¶ 5, Ex. A.

4.     At this meeting, Mr. Vary publicly questioned a sentence in the delivered Address.

Specifically, he asked for the identity of the person who drafted the sentence: "Smart purchasing

is not and should not be a simple preference for recycled products over non-recycled."  In

addition, he asked for the reasons behind the inclusion of the sentence.  <u>Id.</u>, ¶ 6.

5.      It is AZA's belief, shared by others who were present on June 1, that the language in question misstated and weakened long-established U.S. law and practice.  The Steel Recycling Institute, the National Recycling Coalition, Inc. and AZA, on August 9, 2005, sent Bogosian a letter indicating their collective disagreement with that provision of his speech.  Id., ¶ 7, Ex. B.

6.      At the June 1, 2005 meeting, Mr. Bogosian and his counsel, David van Hoogstraten, specifically – and publicly – agreed to release the requested information to AZA and other interested parties.  Id., ¶ 8.

7.      The Department has never provided the information publicly promised to be furnished, despite repeated follow-up requests by Mr. Vary.  Id., ¶ 9, Ex. C.

8.      The Department has never denied that it publicly committed to providing the requested information. Nor has the Department ever indicated that the promised information was not available.  Id., ¶ 10.

9.      Failing in every attempt to have the Department honor its public commitment, on May 1, 2006, AZA submitted a FOIA request to the Department (the "FOIA Request").  Vary Decl., ¶ 11, Ex. D.

10.     The FOIA Request sought all documents possessed by DOC regarding communications relating to (a) "green procurement," (b) "smart procurement" or (c) general government procurement of products with recycled content, in connection with the 3Rs Initiative, including any materials in connection with the Address.  Id.

11.     The Department produced 546 documents to AZA, and, as stated in the Department's cover letter, withheld 137 more, generally claiming exemption under 5 U.S.C. § 552(b)(5).  Vary Decl., ¶ 13, Ex. E.  The Department did not Batestamp the released set of documents or justify the application of the asserted exemption to each withheld record.  Id.

12.     The Department did not provide reasonably segregable portions of those 137 withheld documents. Id.

13.     On July 10, 2006, AZA appealed the Department's response ("Appeal"). Receipt of the Appeal was acknowledged on July 12, 2006.  Vary Decl., ¶ 15, Exs. F and G.

14.     Concerned about the lack of response from the Department on the Appeal, on September 29, 2006, Mr. Vary spoke via telephone with Mr. Keith Hagg, a FOIA attorney at DOC, about the Appeal.  Mr. Hagg did not provide any information regarding AZA's Appeal and stated only that all appeals "are given the attention they deserve." Id., ¶ 16.

15.     Subsequently, in an e-mail dated October 3, 2006, AZA was advised by Elise Packard, Chief of the Department's General Law Division and Mr. Hagg's superior, that Mr. Hagg would provide monthly status updates of AZA's Appeal. Id., ¶ 17, Ex. H.

16.     When the Department failed to provide the promised monthly updates, Mr. Vary again contacted Mr. Hagg.  He responded on March 9, 2007 that AZA's appeal was "fourth in my queue of appeals awaiting adjudication."  He further stated, "I apologize for not providing you with regular status updates as promised.  Beginning in April, I will make every effort to contact you with a status update on, or about, the first business day of each month." Id., ¶ 18, Ex. H.

17.     Despite Mr. Hagg's reaffirmed promise, on October 3, 2007 – 15 months after the filing of AZA's Appeal – Mr. Vary again inquired as to the status of AZA's Appeal in an e-mail to Mr. Hagg, noting "I have not had an update from you in some time.  I assume I have moved up from fourth in the last seven months." Id., ¶ 19, Ex. H.

18.     On October 4, 2007, Mr. Hagg informed AZA that its Appeal still languished fourth. In other words, no appeal had been processed by Mr. Hagg since, at the latest, March 9, 2007. Id., ¶ 20, Ex. H.

19.     On October 5, 2007, Mr. Vary asked Mr. Hagg why no appeals had been processed in seven months. Mr. Hagg simply responded by stating that he would order his paralegal staff to begin review of AZA's Appeal, but no explanation was provided as to the delay in the appeals process. Id., ¶ 21, Ex. H.

20.     Again, Mr. Hagg failed to update AZA on the status of its Appeal. As a result, Mr. Vary continued to make repeat inquiries over the next five months regarding the status of AZA's FOIA appeal. A number of his inquiries went unanswered. Other times, either Mr. Hagg or Ms. Packard would reiterate the promise that AZA's Appeal was being processed and that they would keep AZA timely informed regarding its progress. Id., ¶ 22, Ex. H.

21.     Despite the Department's promises, it failed to take any action on AZA's Appeal between its filing on July 10, 2006, and the commencement of this action on March 28, 2008. AZA did not receive timely updates, nor did it receive any evidence that the Department had made any progress on AZA's appeal. Id., ¶ 23.

22.     In response to the filing of this action, under cover letters dated June 9 and June 13, 2008 – nearly two years since the filing of AZA's FOIA Appeal – the Department radically changed its prior position of withholding 137 documents in their entirety, providing well over half of these documents to AZA. Id., ¶ 25, Exs. I and J.

23.     In the June 9 production, the Department released 70 documents in their entirety. Id., ¶ 26, Ex. I. The cover letter indicated that four documents were referred to the Department of State and seven were referred to the "Center for Environmental Quality [sic]" (the correct name

is Council on Environmental Quality) ("CEQ").  <u>Id.</u>  The Department now claims this latter figure was erroneous, and only six documents were referred to CEQ.  The seventh document actually originated in the Department.  <u>See</u> Declaration of David Cammarota  ("Cammarota Decl."), ¶ 11, n. 2. (attached to Defendant's Motion for Summary Judgment); Vary Decl., ¶ 26.

24.    In the June 13 production, an additional 14 documents were released in their entirety and 14 documents were released in part. Vary Decl., ¶ 27, Ex. J. The Department claimed that nine of these partially released documents had non-responsive portions redacted.  <u>Id.</u>  However, the Department yet again inaccurately assessed the documents.  Eight documents had non-responsive portions redacted, Govt. Ex. 7, <u>Vaughn</u> index, Sec. V (attached to Defendant's Motion for Summary Judgment), and six were withheld in part under asserted FOIA exemptions.  <u>Id.,</u> Sec. I and III.  The letter did not state the basis for its withholding of the remainder of the documents, indicating only that they would be addressed in the Department's <u>Vaughn</u> index to be filed in this action.  Vary Decl., ¶ 27, Ex. J.

25.    Thus, in reaction to the filing of this action, the Department voluntarily released 84 of the originally withheld 137 documents in their entirety and 14 in part.  In other words, as of June 13, 2008, the Department changed its position on 98 of the originally withheld 137 documents. Vary Decl., ¶ 28.

26.    The Department's <u>Vaughn</u> index, Motion, Govt. Ex. 7, lists 23 documents withheld in their entirety and 4 withheld in part, claiming Exemption (b)(5).  One document was withheld in part under a claim of Exemption (b)(6).  <u>Id.</u>  The Department also listed 19 documents as being duplicative of other documents, but did not specify whether these other documents were withheld or disclosed.  <u>Id.</u>  Two documents were identified as being entirely non-responsive, and 8

documents were withheld in part as partially non-responsive. Id. CEQ withheld one document in part, claiming Exemption (b)(5). Cammarota Dec., ¶ 11, n. 3; see also Vary Decl., ¶ 29.

27.    The documents identified in the Department's Vaughn indices, together with the documents released in their entirety in the two June 2008 productions, total 142 documents. Vary Decl., ¶ 30. This is five more documents than the 137 documents previously claimed to have been withheld in their entirety. Cammarota Decl., ¶ 8. The Department has failed to provide any explanation for this discrepancy. Vary Decl., ¶ 30.

28.    None of the released documents contain the specific information sought by AZA and which the Department's Deputy Assistant Secretary publicly promised to release to AZA. Vary Decl., ¶ 31.

29.    The Department did not release at least 75 attachments to documents that it released to AZA. Vary Decl., ¶ 32, Ex. K. Nor did the Department account for the withholding of these attachments in its Vaughn index. Id., Govt. Ex. 7, Vaughn index.

30.    AZA counsel, in the course of this litigation, attempted to inquire about the missing attachment issue with the Department; however, the Department was unwilling to acknowledge any deficiency with the prior releases. Vary Decl., ¶ 33. Department counsel stated: "To the extent that the email attachments that Plaintiff alleges were not produced, again, we note that, after an adequate search all responsive, nonexempt documents have now been released." Id., Ex. L.

31.    Based on a comparison of the Vaughn index's descriptions of the withheld documents to those documents previously released to AZA, a number of the withheld documents appear to contain identical information as that contained in previously disclosed documents. Vary Decl., ¶ 34. These include:

- Doc. 000024 – An undated, 2-page document entitled "Draft Notes for USG Proposal." A 2-page document entitled "Draft Notes of USG Proposal" was released by the Department in its initial, unnumbered FOIA response. Id., Ex. M.

- Doc. 000022 – A document entitled "Draft 3Rs Ministerial Conference, Tokyo, Japan, April 28-30, 2005" that discusses conference planning suggestions and possible subjects for discussions and/or working groups. A document entitled "3Rs Ministerial Conference, Tokyo, Japan, April 28-30, 2005" discussing the same matters was released by the Department in its initial, unnumbered FOIA response. Id., Ex. M.

- Doc. 000025 – An undated, five-page document entitled "3Rs Initiative Ministerial Conference Draft Opening Talking Points." An undated, five-page document with the same title was released by the Department in its initial, unnumbered FOIA response. Id., Ex. M.

- Doc. 00006 – A July 28, 2005 e-mail string among Edwin Pinero, David Cammarota, and Sarah Aker. Subject: Final? Version of the Vary Letter. Two documents containing portions of this e-mail string were released by CEQ on June 2, 2006, in response to AZA's FOIA request for essentially the same information as that requested from AZA. Id., Ex. M. The Department and CEQ have collaborated in responding to AZA's FOIA request. Cammarota Decl., ¶ 11; Declaration of Edward A. Boling (Govt. Ex. 4), ¶ 3.

- Doc. 000016 – A July 27, 2005 e-mail string among Sarah Aker and Edwin Pinero. Subject: RE: Letter to the American Zinc Association. Four documents containing this same e-mail string were released by CEQ to AZA. Vary Decl., ¶ 34, Ex. M. In addition, an e-mail string dated July 27, 2005 among Department employees discussing a response to AZA was released by the Department in its initial, unnumbered response. Id.

- Docs. 000020, 000015, 000011, 000009, 000005 – Draft letters from Joseph H. Bogosian to George F. Vary.  Four documents that are drafts of the letter from Joseph H. Bogosian to George F. Vary were released by CEQ to AZA.  Id., Ex. M.

32.     A number of the documents withheld by the Department appear to be substantially similar to those already released by the Department.  Vary Decl., ¶ 35, Ex. N.  These documents appear to be drafts of speeches, draft talking points, briefing papers, and discussions of meeting logistics.  Id.

33.     When confronted with the inadequacies of its FOIA productions and Vaughn Index, it refused to address AZA's concerns.  Id., ¶ 36, Ex. L.

34.     The Department continues to refuse to even confirm whether the specific information sought by AZA even exists in the Department's records.  Id.

<div style="margin-left: 40%;">

Respectfully submitted,


_____/s/ Charles D. Tobin_____
Charles D. Tobin (Bar No. 455593)
Judith F. Bonilla (Bar No. 473190)
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955-3000  Phone
(202) 955-5564  Fax

*Counsel for Plaintiff*

</div>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN ZINC ASSOCIATION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Civil Action No. 08-0538 (EGS) |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **COMMERCE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**CONSOLIDATED MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff American Zinc Association ("AZA") submits this Memorandum in opposition to

the Motion for Summary Judgment ("Motion") of the United States Department of Commerce

(the "Department") and in support of Plaintiff's Cross-Motion for Summary Judgment ("Cross-

Motion").

**I.    INTRODUCTION AND SUMMARY**

AZA asks that the Court order the Department to fulfill its promise to release documents

reflecting either a serious misstatement or a sea-change in United States policy.  The documents

remain concealed following years of bureaucratic stonewalling and foot-dragging.  As the

Department's limited production reflects, the information AZA seeks is not exempt from the

Department's obligations under the Freedom of Information Act ("FOIA").

In June 2005, then-Deputy Assistant Secretary of Commerce, Joseph Bogosian, publicly

promised AZA that the Department would release information regarding the inclusion of a

certain provision in a public address (the "Address") Bogosian presented before the International

Symposium on the 3Rs Initiative in Tokyo, Japan.  The 3Rs Initiative, adopted by the G8 in 2004 and formally launched by the meeting in Japan, aims to promote the "3Rs" (reduce, reuse and recycle) globally so as to build a recycling-based society through the effective use of resources and materials.  After the Symposium, the Department debriefed AZA and others who were not present at the Symposium.

AZA raised questions about a particular provision in the speech.  Specifically, AZA asked for the identity of the author of the sentence: "Smart purchasing is not and should not be a simple preference for recycled products over non-recycled."  In addition, it asked for an explanation regarding its inclusion in the speech.  The provision appeared to weaken established U.S. government policy, codified in the Resource Conservation and Recovery Act (42 U.S.C. § 6962), of using the government's purchasing power to increase recycling by increasing markets for products with recycled content through preferential purchasing of products so designated by the Environmental Protection Agency.  Prior to the Symposium, AZA and members of the domestic steel industry had met with Bogosian in Washington, D.C., to brief him on this issue.  Upon inquiry, Bogosian and his counsel orally committed to provide AZA with information regarding that language.  After nearly a year of inaction by Bogosian and the Department, AZA submitted a FOIA request for the promised information.

Although the Department produced a number of documents in response to the FOIA request, no document contained the information promised to AZA, and a large number of records were withheld under 5 U.S.C. § 552(b)(5) ("Exemption 5") without explanation.  Thereafter, the Department failed to respond to AZA's timely FOIA appeal filed in July 2006.  It was not until this litigation commenced – nearly two years after the filing of the appeal – that the Department attempted to account for its prior insufficient response.  On two separate occasions following

suit, it produced significant amounts of previously withheld documents, conceding that the Department had no basis for the prior withholding of these records. In addition, the Department changed its position, now designating a number of withheld documents as non-responsive to the FOIA request. Indeed, even now, the Department has not even accurately accounted for all relevant records.

In its present position, the Department withholds five records in part and 23 in their entirety on grounds that they fall within the deliberative process privilege of Exemption 5.[2] However, the Department has failed to meet its burden of establishing (i) that it conducted an adequate search for all responsive records, (ii) that Exemption 5 applies to each record, and (iii) that all reasonably segregable portions of responsive documents have been released.

The Department's non-responsive, inconsistent, and haphazard response to a simple FOIA request egregiously undermines FOIA's core purpose of allowing public scrutiny of government conduct and policies. Moreover, despite AZA's patient attempts to resolve this matter without litigation – and the Department's own representations to this Court that it would avoid this precise form of needless motions practice[3] – the Department's conduct has created an unnecessary burden, in both time and money, on this Court and a small non-profit association. Accordingly, for the reasons set forth herein, this Court should deny the Department's Motion for Summary Judgment and instead render judgment in favor of AZA.

---

[2] The Department withheld a portion of one document under 5 U.S.C. § 552(b)(6) on privacy grounds. (See Motion, Govt. Ex. 7 (Vaughn Index) at Sec. III, Doc. 000121.) Plaintiff does not seek disclosure of this document.
[3] See Motion to Extend Time to Respond to Plaintiff's Complaint, filed June 13, 2008, Dock. No. 12, at ¶ 3 (As justification for an extension to file its response, Department counsel states: "DOC hopes to engage the Plaintiff in a discussion, with an eye toward avoiding motions practice and imposing upon this Court's limited resources.").

## II.    FACTUAL BACKGROUND

AZA incorporates by reference the Statement of Facts in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment, filed concurrently with this Memorandum.

## III.    LEGAL STANDARD

Fed. R. Civ. P. 56(c) prescribes summary judgment if the pleadings and supporting materials show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The plain language of Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In all FOIA cases, the District Court conducts a *de novo* review of the government's invocation of FOIA's specific statutory exemptions. 5 U.S.C. § 552(a)(4)(B). Thus, for an agency to prevail on a motion for summary judgment, it must demonstrate that documents are not subject to FOIA's disclosure requirements. Exxon Corp. v. FTC, 663 F.2d 120, 126 (D.C. Cir. 1980). The agency bears the burden of justifying its exemptions. Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998). In this Circuit, the agency is obligated to submit an index of all responsive material it has withheld, either in whole or in part, under a FOIA exemption. Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973).

The Court may only award summary judgment to the government in a FOIA case if the agency affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Thus, summary judgment is only appropriate where the agency's Vaughn index sets forth with particularity the justification for any specific exclusions and tailors the justification to the particular part of the document[4] to which it applies. Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).[5] The agency's affidavits supporting its Vaughn index must not be conclusory or too broadly sweeping. King v. Dep't of Justice, 830 F.2d 210, 219 (D.C. Cir. 1987). Additionally, consistent with FOIA's dominant policy of disclosure rather than secrecy, the Court narrowly construes all exemptions. Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 16 (2001).

## IV.    ARGUMENT

The record amply demonstrates that the Department has mishandled AZA's FOIA request since its inception over two years ago, and has yet to perform an adequate search and review for all responsive records. Moreover, the Vaughn index and declarations submitted by the Department fall short of FOIA's strictures as they fail to present this Court with the precise information to adjudicate application of the asserted privilege to each record, or to even determine whether all segregable portions have been produced.

As to the substance, Exemption 5 does not apply to the withheld records as a matter of law, since they are neither pre-decisional nor deliberative. Nor does the record reflect, as Exemption 5 requires, that the information in the records has not been adopted into final agency policy or decision.

---

[4] Any non-exempt information that is reasonably segregable from the requested records must be disclosed. See Oglesby v. Dep't of the Army, 79 F.3d 1172, 1178 (D.C. Cir. 1996).
[5] Furthermore, the agency must detail in its Vaughn index what proportion of the information in a document is nonexempt and how that material is dispersed throughout the document. Mead Data Cent., Inc., 566 F.2d at 261.

Finally, the Department voluntary and unilaterally changed its position following the initiation of this lawsuit, having recently turned over more than half of the documents previously claimed to be exempt and thus withheld.  AZA therefore has a right to its attorney's fees pursuant to 5 U.S.C. §552(a)(4)(E).  Accordingly, AZA is entitled to summary judgment as a matter of law and the Department's Motion for Summary Judgment should be denied.

### A.    The Department's Search Was Inadequate.

In this Circuit, an agency responding to a FOIA request must conduct a search "reasonably calculated to uncover all relevant documents."  Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990) (internal quotation marks and citation omitted)  As with all other aspects of FOIA litigation, the Court's overarching aim is maximum disclosure.  "The Court employs a reasonableness test to determine the adequacy of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure."  Campbell v. Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal quotation marks and citations omitted).

The adequacy of a FOIA search is determined by the appropriateness of the methods used to carry out the search.  Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  An agency therefore must demonstrate that it searched all locations likely to contain documents responsive to the FOIA request.  Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326-27 (D.C. Cir. 1999).  Upon challenge, it is the agency's burden to demonstrate beyond material doubt that the search was reasonable and calculated to uncover all relevant documents.  Kronberg v. Dep't of Justice, 875 F. Supp. 861, 869 (D.D.C. 1995) (holding that the agency failed to meet its burden by failing to produce records documenting the agency's compliance with its own specific and demanding regulations mandating such documentation).  To satisfy its burden, an agency must submit "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and

averring that all files likely to contain responsive materials . . . were searched". <u>Valencia-Lucena</u>, 180 F.3d at 326 (citing <u>Oglesby</u>, 920 F.2d at 68). The affidavit must be nonconclusory. <u>Vaughn</u>, 484 F.2d at 826.

While agency affidavits are normally "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," <u>SafeCard Servs. v. SEC</u>, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (internal quotation marks and citation omitted), such affidavits may be controverted either by contrary evidence in the record or by evidence of the agency's bad faith.[6] <u>Spannaus v. CIA</u>, 841 F. Supp. 14, 16 (D.D.C. 1993); <u>see also</u> <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981). For example, an agency's failure to locate documents independently located by the requester is evidence of an inadequate search. <u>Krikorian v. Dep't of State</u>, 984 F.2d 461, 468 (D.C. Cir. 1993).

Here, the Department's production belies the assertion (Motion at 6-7) that its search was adequate and that all responsive documents were identified. The Department still has not accounted for over 75 attachments to records identified by the Department as responsive. <u>See</u> Declaration of George F. Vary ("Vary Decl.") ¶ 32, Ex. K. The Department was required to either produce the attachments in their entirety or indicate the basis for withholding them in its <u>Vaughn</u> index. Yet, none of these missing attachments are included in the <u>Vaughn</u> index or the declarations submitted with the Defendant's Motion.[7] Because the record undisputedly

---

[6] A finding of no bad faith on the part of an agency, however, does not necessarily equate to a finding that the search was adequate. <u>Krikorian v. Dep't of State</u>, 984 F.2d 461, 468 (D.C. Cir. 1993).
[7] In an effort to resolve this discrepancy, AZA directly inquired into this matter. <u>See</u> Vary Decl., ¶ 33. The Department's response is yet-another example of their disingenuous and evasive tactics. <u>See</u> <u>id.</u>, Ex. L (In an e-mail dated August 8, 2008, counsel for the Department writes: "To the extent that the email attachments that Plaintiff alleges were not produced, again, we note that, after an adequate search all responsive, nonexempt documents have now been released.").

demonstrates that the Department failed to adequately search and review its records, the Department's Motion should be denied and judgment granted in AZA's favor.

**B.    The Department's <u>Vaughn</u> Index Is Entirely Insufficient.**

**1.    The Department fails to justify its claim of Exemption 5 with the necessary precision.**

The Department's Motion also must be denied – and AZA's Cross-Motion granted – because the Department's factual record is deficient. FOIA requires specific evidence to support an exemption claim. The Department's <u>Vaughn</u> index and supporting declarations[8] lack the specific factual information that FOIA requires.

Courts in this Circuit repeatedly hold that vague averments will not satisfy the government's burden to justify with precision the basis for each claimed exemption. <u>See</u> <u>Niagara Mohawk Power Corp. v. Dep't of Energy</u>, 169 F.3d 16, 18 (D.C. Cir. 1999) (finding agency affidavits conclusory, and denying summary judgment for defense, despite plaintiff's failure to controvert agency assertions by remaining silent); <u>Kamman v. IRS</u>, 56 F.3d 46, 49 (9th Cir. 1995) (awarding summary judgment to plaintiff when agency affidavits "are nothing more than 'conclusory and generalized allegations'"); <u>Voinche v. FBI</u>, 46 F. Supp. 2d 26, 30 (D.D.C. 1999) (denying summary judgment when agency provided conclusory affidavit to support invocation of exemption).

> A true <u>Vaughn</u> index identifies discrete portions of documents and identifies the exemption pertaining to each portion of the document. In most cases, such an index provides the date, source, recipient, subject matter and nature of each document in sufficient detail to permit the requesting party to argue effectively against the claimed exemptions and for the court to assess the applicability of the claimed exemptions.

---

[8] <u>See</u> Declaration of David Cammarota ("Cammarota Decl.") (attached to Motion); Declaration of Edward A. Boling ("Boling Decl.") and Council on Environmental Quality ("CEQ") <u>Vaughn</u> index (attached to Motion as Govt. Ex. 4).

<u>St. Andrews Park, Inc. v. Dep't of Army Corps of Eng'rs</u>, 299 F. Supp. 2d 1264, 1271 (S.D. Fla. 2003).  <u>See also</u> <u>Campaign for Responsible Transplantation v. FDA</u>, 511 F.3d 187, 190 (D.C. Cir. 2007) ("When creating a <u>Vaughn</u> index, '[a] withholding agency must describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information.'") (quoting <u>King v. Dep't of Justice</u>, 830 F.2d 210, 223-24 (D.C. Cir. 1987)).

The Department apparently hopes to glide by its burden under <u>Vaughn</u> with a lengthy presentation.  Upon examination, however, it is clear that rather than substance, the Department's supporting materials consist of purely conclusory and boilerplate statements.  Aside from identifying the individuals who created and/or received the documents and the documents' general relevance to the FOIA Request, the declarations and indices merely echo the Exemption 5 standard from case law.  For example, regarding a set of four documents withheld in part and seven documents withheld in their entirety, and which pertain to the 3Rs Initiative, Mr. Cammarota states:

> The documents consist of opinions and recommendations as to how to address the various issues presented in the e-mails.  The information withheld is internal pre-decisional deliberative material, the release of which would discourage open and frank discussions within DOC and between DOC and other Government agencies about what the final decision on various matters should be, and create public confusion due to disclosure of reasons and rationales that may have been the grounds for the Government's final position on an issue.  The material withheld does not represent final agency decisions on the matters contained therein.

Cammarota Decl. at ¶ 22.  The <u>Vaughn</u> index essentially mirrors this language, but formulaically adds bits of additional information, all of which falls far short of the specificity requirements of FOIA.  For example, in attempting to justify a partial withholding of Document 000012, the Department writes:

> A portion of the e-mail string discussing a proposed response to AZA's 6/9/05 e-mail concerning language in Joseph Bogosian's April 28, 2005 keynote address.

> This portion of the e-mail string is predecisional and deliberative because it discusses ITA's response before ITA reached a final decision on the matter. The communications are deliberative because they include opinions, recommendations, and ideas the ITA/MAS used to develop a final response to the AZA's concerns.

Govt. Ex. 7, <u>Vaughn</u> index, Section I, Doc. 000012. These types of repetitive and conclusory statements provide only a vague hint as to the possible contents of the documents, and fail to provide a sufficient basis for Plaintiff to legitimately contest the claimed exemptions or for this Court to determine *de novo* whether the exemption applies. Accordingly, the Department's Motion should be denied and AZA's Cross-Motion granted.

### 2.    The Department failed to include the requisite segregability analysis.

In every FOIA action, the Court is required to make an express segregability finding. <u>Morley v. C.I.A.</u>, 508 F.3d 1108, 1123 (D.C. Cir. 2007). Thus, it is essential that the <u>Vaughn</u> index expressly indicate <u>for each document</u> that any reasonably segregable information has been disclosed. <u>Edmonds Inst. v. Dep't of the Interior</u>, 383 F. Supp. 2d 105, 108 (D.D.C. 2005). <u>See also Army Times Publ'g Co. v. Dep't of the Air Force</u>, 998 F.2d 1067, 1071 (D.C. Cir. 1993) ("Non-exempt information must be disclosed if it is reasonably segregable from exempt portions of the record, <u>see</u> 5 U.S.C. § 552(b) [final sentence], and the agency bears the burden of showing that no such segregable information exists."). An agency's blanket and conclusory statements regarding the general segregability of the information contained in the records is insufficient. <u>See</u> <u>Patterson v. IRS</u>, 56 F.3d 832, 839 (7th Cir. 1995) ("[B]ecause the [agency declaration] lumps all of the withheld information together in justifying nondisclosure, the district court could not have independently evaluated whether exempt information alone was being withheld or deleted in each instance."); <u>Nat'l Res. Def. Council v. Dep't of Defense</u>, 388 F. Supp. 2d 1086, 1106 (C.D. Cal. 2005) (denying agency's motion for summary judgment, finding that the segregability analysis is not met based on a "boilerplate statement . . . , which conclusorily

asserts [that] all reasonably segregable information has been released"); see also Judicial Watch, Inc. v. Dep't of Health & Human Servs., 27 F. Supp. 2d 240, 246 (D.D.C. 1998) ("If a court is to make specific findings of segregability without conducting in camera review in every FOIA case, the government simply must provide more specific information in its Vaughn affidavits.").

Despite the law's demand for specificity, the Department attempts to satisfy its segregability requirement through the type of blanket and conclusory statements which other courts in this District have specifically rejected. See, e.g., The Wilderness Soc'y v. Dep't of the Interior, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) (rejecting a "blanket declaration that all facts are so intertwined [as] to prevent disclosure under the FOIA") (citing Animal Legal Def. Fund, Inc. v. Dep't of the Air Force, 44 F. Supp. 2d 295, 301-02 (D.D.C. 1999) (holding that conclusory statement regarding segregability is "patently insufficient")). For example, while the Vaughn index lacks any accounting for the segregability of the 23 documents withheld in their entirety, Mr. Cammarota simply offers the following boiler-plate statement:

> To the extent that factual information is included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by DOC in determining how best to [respond to the issues discussed in the e-mails, respond to AZA's request, prepare the final versions of the various documents].

See Cammarota Decl., ¶¶ 20, 24, and 27. And as to the partially redacted documents, the Department merely concludes that "[t]o the extent that factual information is included in the recommendations, it is protected by (b)(5) deliberative process privilege because the facts in the withheld portions were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in developing policy." Govt. Ex. 7, Vaughn index, Sec. I.

The Department's blanket conclusions fail to prove that the factual information is non-segregable. And, Mr. Cammarota's profession of a "good faith effort to segregate all factual portions of these documents which are not protectable under the exemptions" does nothing to cure the deficiencies in the factual record. Cammarota Decl., ¶ 29. Accordingly, the Department is not entitled to judgment in its favor, and judgment should be entered in favor of AZA.

C.    **The Department's Claim Of Exemption 5's Deliberative Process Privilege Is Improper As A Matter Of Law.**

The Department vastly overreaches in relying on the deliberative process privilege of Exemption 5. The Department seeks to withhold five documents in part and 23 in their entirety on this basis. Motion at 7-15; Cammarota Decl., ¶¶ 15-16; Boling Decl., ¶ 4. The Department claims that all of the withheld documents are "inter-agency or intra-agency memorandums of letters which would not be available by law to a party other than an agency in litigation with the agency." Motion at 7-8 (quoting 5 U.S.C. § 552(b)(5)). The privilege was designed to protect agency decision-making processes. Yet, in order to invoke the exemption, the Department must demonstrate that the documents are (1) pre-decisional, i.e., created before the adoption of the agency policy or decision; and (2) deliberative, i.e., reflect the give-and-take of the consultative process. Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 586 (D.C. Cir. 1987). Congress intended to confine this exemption "as narrowly as is consistent with efficient Government operation." Id. at 584; see also Ctr. for Int'l Entl. Law v. Office of the U.S. Trade Representative, 237 F. Supp. 2d 17, 23 (D.D.C. 2002) ("In keeping with the FOIA's goal of broad disclosure, the Section 552(b)(5) exemption is construed narrowly."). Indeed, documents otherwise meeting this standard must be disclosed if the agency has chosen "expressly to adopt or incorporate by reference [a] . . . memorandum previously covered by Exemption 5 in what would otherwise be a final opinion." Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421

U.S. 132, 151, 161 (1975); see also Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) ("[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public.").

> **1.     The inadequate <u>Vaughn</u> index fails to justify the application of Exemption 5.**

In this case, because of the boiler-plate and formulaic approach used by the Department in its <u>Vaughn</u> index, it is impossible for this Court or AZA to ascertain "what deliberative process is involved, and the role played by the documents in issue in the course of that process." <u>Coastal States</u>, 617 F.2d at 868. For example, an e-mail string referenced as Document 000038 is generically identified as predecisional "because they discuss proposed next steps for 3Rs before a final decision was made on the matter" and deliberative because "they present opinions and recommendations which were used in making a final decision concerning agency next steps." Govt. Ex. 7, <u>Vaughn</u> index, Section II.B. An e-mail string referenced as Document 000091 is labeled predecisional because "they are making recommendations as [to] what should be included in a final document regarding MAS' mission[,]" and deliberative because "they present opinion and recommendations as [to] what should be included in the final document..[sic]"[9] <u>Id</u>. As previously explained, <u>supra</u> at 8-10, these types of generic descriptions fall far short of satisfying the specificity requirement of FOIA Exemption 5. For this reason alone, the Department's Motion should be denied and judgment should be granted for AZA.

> **2.     Post-Decisional Materials.**

The Department admits that it has the burden to demonstrate each withheld document is "pre-decisional" – i.e., "whether it was generated before the <u>adoption of an agency policy</u>,"

---

[9] In this particular <u>Vaughn</u> entry, the Department's formulaic approach is made even more apparent by its poor "cutting and pasting," resulting in omission of words and improper punctuation.

(Motion at 9 (emphasis supplied)) – and "deliberative" – i.e., "whether it reflects the give-and-take of the consultative process." Id. (citing Coastal States, 617 F.2d at 866-68). Yet, contrary to the requirements of the law, the Department asks this Court to broadly construe Exemption 5 by holding that virtually all records reflecting any type of agency action is exempt from disclosure, regardless of the actual nature of the underlying action. In other words, under the Department's logic, all agency documents would be presumed to involve the "adoption of an agency policy" so long as the Department asserted the exemption.

For example, the Department withheld a number of documents pertaining to responses to public inquiries. These records do not fall within the agency's formal or informal policy-making process, and are neither pre-decisional nor deliberative. On the contrary, these decisions are made after the adoption of agency policy. Explanatory material generated after the relevant policy decision does not come within the confines of the privilege. See Nat'l Labor Relations Bd. v. Sears, 421 U.S. at 151-52 ("communications made after the decision and designed to explain it" are not exempt); Judicial Watch, Inc., 27 F. Supp. 2d at 245 ("deliberative process privilege does not protect documents that merely state or explain agency decisions"); Animal Legal Def. Fund, Inc., 44 F. Supp. 2d at 299 (rejecting privilege claim because agency "utterly failed to specify the role played by each withheld document" in policy-formulation process).

Consequently, the Department's withholding of post-decisional documents pertaining to its response to AZA's information requests do not reflect the deliberative process regarding the adoption of agency policy (i.e., the Address). Specifically, the Department withheld two e-mail strings in part (Docs 000012 and 000140), three e-mail strings in their entirety (Docs 000006, 000016, and 000017), and five draft letters in their entirety (Docs 000020, 000015, 000011, 000009, and 000005). See Govt. Ex. 7, Vaughn index, Sec. I and II.A. These discussions

concern how the agency will explain existing policy, not the agency's policy-formulation process. The documents therefore are not "pre-decisional" as contemplated by FOIA's Exemption 5 as a matter of law.[10]

Similarly, the Department's partial withholding of an e-mail string discussing the Department's response to the request for information of another entity, Basel Action Network, cannot be classified within the narrow confines of Exemption 5. See Govt. Ex. 7; Vaughn index, Sec. I (Doc. 000081). Again, the Department's response to another member of the public merely reflects its explanation of existing agency policy and is not pre-decisional.

The extension of Exemption 5 to records regarding an agency's explanation of existing policy would circumvent the core Congressional purpose behind FOIA, which is to enable an informed citizenry. The Department's arguments are not grounded in existing law. The Court should reject them.

### 3.    Administrative Materials.

Many of the withheld records pertain to mundane matters such as invitations, conference logistics and meeting attendance. See Govt. Ex. 7, Vaughn index, Sec. I (Doc. 000084), Sec. II.C. (Docs. 000067, 000046, 000076); and CEQ Vaughn index (Doc. 000060). Such mundane administrative issues do not rise to the level of those types of materials protected by Exemption 5. They do not reflect either legal or policy matters contemplated by Exemption 5. See Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975) ("[T]he document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters."). Accordingly, these records also must be disclosed.

---

[10] Indeed, the Department and CEQ released records that appear to be identical to some of these withheld records, with no claim of exemption. See Vary Decl., ¶ 34, Ex. M.

### 4.     Final Agency Policy.

Importantly, the Department has failed to show that the withheld records contain no information that was not incorporated into final agency policy.   Once a recommendation has been adopted as policy, communications reflecting that recommendation are no longer deliberative and,  therefore, do not fall within Exemption 5.  As the Supreme Court noted in Nat'l Labor Relations Bd. v. Sears, 421 U.S. at 136, "final opinions" and "statements of policy and interpretations which have been adopted" by federal agencies are expressly made public by FOIA.

Here, the specific information sought by AZA – information regarding a change to Bogosian's Address – would not be exempt under Exemption 5 because it was adopted as part of a formal agency pronouncement.[11]    Additionally, Bogosian expressly acknowledged the information's adoption and non-exempt status via his public promise to release the information. See Vary Decl., ¶ 8.  Accordingly, this information must be disclosed.  Sears, 421 U.S. at 161; see also Coastal States, 617 F. 2d at 866.

### 5.     Drafts.

The Department has withheld thirteen documents in their entirety on the basis that they are drafts, which, according to the Department, are "by their very nature deliberative and pre-decisional."  Motion at 11 (citing Cammarota Decl., ¶29).   However, "[t]he mere fact that a document is a draft . . . is not a sufficient reason to automatically exempt it from disclosure." Lee v. Fed. Deposit Ins. Corp., 923 F. Supp. 451, 458 (S.D.N.Y. 1996); see also Judicial Watch, Inc. v. USPS, 297 F. Supp. 2d 252, 261 (D.D.C. 2004) ("drafts are not presumptively privileged").  Rather, an agency still must show that the draft document is pre-decisional and

---

[11] Presumably, it is for this reason that the Department released in its entirety another draft of the Address.  See Vary Decl., ¶ 35, Ex. N (Doc. 000014).

deliberative.  <u>Defenders of Wildlife v. Dep't of Agriculture</u>, 311 F. Supp. 2d 44, 58 (D.D.C. 2004).  The Department has not done so here.  Additionally, the Department has failed to demonstrate that these documents did not contain factual, non-deliberative information that could have been segregated.  And, the Department has failed to demonstrate that the information contained in these drafts did not become incorporated into the final agency decisions.

Moreover, anonymous, undated documents such as Documents 000024, 000022, 000025, and 000029 are not entitled to Exemption 5 withholding.  Govt. Ex. 7, <u>Vaughn</u> index, Sec. II.B.; <u>see</u> <u>Hoch v. C.I.A.</u>, 593 F. Supp. 675, 689 (D.D.C. 1984) ("given the anonymity of the document, Defendant has failed to show by specific and detailed proof that disclosure of this document would defeat rather than further the purposes of FOIA").  Documents 000027, 000023, 00021, and 000026 are similarly anonymous and therefore subject to disclosure.  Govt. Ex. 7, <u>Vaughn</u> index, Sec. II.B.

> **6.    The Department's release of records identical to or substantially similar to many of the withheld documents further evidences the improper application of the exemption.**

The Department's invalid invocation of exemption is further demonstrated by the fact that it has withheld at least thirteen documents that, based on their descriptions, appear to have been previously released to AZA.  <u>See</u> Vary Decl., ¶ 34, Ex. M.  A comparison of the documents against the descriptions provided in the <u>Vaughn</u> index strongly suggests that the documents are in all likelihood duplicative.  Thus, any claim of exemption is demonstrably frivolous.[12]

Moreover, even assuming, *arguendo*, the proper application of Exemption 5, because the information was specifically released by the Department and is duplicative of the withheld

---

[12]  While some of these documents were produced to AZA by CEQ in response to a FOIA request thereto, <u>see</u> Vary Decl., ¶ 34, the Department has been coordinating with CEQ in connection with its response to AZA's FOIA request, <u>see</u> Cammarota Decl., ¶ 11; Boling Decl., ¶ 3, and, thus, should have known what CEQ sent to AZA.  In any event, the fact that CEQ <u>did not</u> view documents it produced as exempt, while the Department claims those same documents <u>are</u> exempt, further corroborates the failure of the Department to seriously weigh its claim of exemption.  The remainder of the referenced documents in this section were released by the Department itself.

information, the exemption has been waived. See U.S. Student Ass'n v. CIA, 620 F.Supp. 565,

571 (D.D.C. 1985) ("It is well established that specific information cannot be withheld if it has

been the subject of prior 'official and documented disclosure.'") (citing Afshar v. Dep't of State,

702 F.2d 1125, 1133 (D.C.Cir.1983)); see also Mobil Oil Corp v. EPA, 879 F.2d 698, 700-01

(9th Cir. 1989) (cited in Motion at 15, recognizing that prior disclosure of record waives

exemption as to that record). Where the court "senses bad faith or general sloppiness[,]" it need

not defer to the agency's affidavits. See Afshar, 702 F.2d at 1131.

Additionally, a number of documents withheld appear to be precisely the same type of

documents as those released to AZA in the Department's productions subsequent to

commencement of this action. See Vary Decl., ¶ 35, Ex. N. These documents appear to be

drafts of speeches, draft talking points, and briefing papers. Again, the inconsistent application

of Exemption 5 is further evidence of the Department's overall mishandling of AZA's FOIA

request, its improper claim of exemption, and the need for this Court to deny its Motion and

grant judgment in AZA's favor.[13]

**D.    AZA Has A Right To Its Attorney's Fees Under The OPEN Government Act Amendments To FOIA.**

Under the 2007 OPEN Government Act amendments to FOIA, given the facts here, AZA

has a right to its attorney's fees regardless of the outcome of the pending motions for summary

judgment. Under revised 5 U.S.C. § 552(a)(4)(E), FOIA's fee-shifting provision now reads as

follows:

---

[13] Should the Court feel that meaningful review of the issues raised herein is thwarted by the Department's insufficient declarations, it may order the Department to submit the documents for in camera review. See, e.g., Cole v. Dep't of Justice, No. 05-674, 2006 WL 2792681, at *5 (D.D.C. Sept. 27, 2006) (in camera review may be ordered where affidavits are insufficiently detailed, there is evidence of bad faith, or to resolve an uneasiness about the government's inherent tendency to resist disclosure); Steinberg v. Dep't of Justice, 179 F.R.D. 357, 364 (D.D.C. 1998) (ordering in camera inspection of small number of documents "[i]n the interests of efficiency"); Pub. Citizen v. Dep't of State, 787 F. Supp. 12, 13 (D.D.C. 1992) (reviewing records in camera to determine if exemption is properly evoked), aff'd, 11 F.3d 198 (D.C. Cir. 1993).

The court may assess against the United States reasonable attorney's fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed. For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either (I) a judicial order, or an enforceable written agreement or consent decree, or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

Id.

As Chief Judge Lamberth recently explained in <u>Judicial Watch, Inc. v. Bureau of Land Management</u>, -- F. Supp. 2d --, 2008 WL 2554831 (D.D.C. June 27, 2008), Congress, in amending FOIA, explicitly chose to make it easier for frustrated FOIA plaintiffs like AZA to recover fees.

This bill also addresses a relatively new concern that, under current law, Federal agencies have an incentive to delay compliance with FOIA requests until just before a court decision is made that is favorable to a FOIA requestor. The Supreme Court's decision in [Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Serv., 532 U.S. 598 (2001)] eliminated the "catalyst theory" for attorneys' fees recovery under certain federal civil rights laws. When applied to FOIA cases, <u>Buckhannon</u> precludes FOIA requesters from ever being eligible to recover attorneys' fees under circumstances where an agency provides the records requested in the litigation just prior to a court decision that would have been favorable to the FOIA requestor. <u>The bill clarifies that Buckhannon does not apply to FOIA cases.</u> Under the bill, a FOIA requestor can obtain attorneys' fees when he or she files a lawsuit to obtain records from the Government and the Government releases those records before the court orders them to do so.

Id. at *4 (quoting 153 CONG. REC. S15701-04 (daily ed. Dec. 14, 2007) (statement of Sen. Leahy, sponsor of the OPEN Government Act of 2007) (emphasis supplied in Lamberth decision)).

The facts underlying the <u>Judicial Watch</u> decision are strikingly similar to those involved in the current action. In <u>Judicial Watch</u>, as here, the agency failed to timely comply with the FOIA-mandated deadlines. Id. at *1. In response to repeated inquiries by the plaintiff as to the status of its request, the agency responded on numerous occasions with promises of future completion as AZA experienced here. Id. In both instances, despite the agencies' promises, the

agencies continued to fail to take action on the FOIA matters and failed to explain the delays. Id. Plaintiffs in each case therefore were compelled to file FOIA actions after the latest promised response dates passed. Id. at *2. Fifteen days after commencement of the suit in Judicial Watch, the agency produced thirty-five pages of responsive documents, id.; similarly, here, the Department produced ninety-eight pages of responsive documents about two and a half months after commencement of this action. See Cammarota Decl., ¶¶ 12,13, 34; Vary Decl., ¶¶ 25-28, Ex. I and J.

In Judicial Watch, the plaintiff, as here, remained concerned that the response was incomplete; however, unlike in the present action, the agency was responsive to efforts to resolve the impasse without further litigation. Id. A supplemental search was run and plaintiff was satisfied that the response was complete. The plaintiff thereafter sought the recovery of his attorney's fees and litigation expenses pursuant to 5 U.S.C. § 552(a)(4)(E). Id. After holding that the amended provision would apply retroactively to the case, Judge Lamberth held that because the agency had released the documents due to a voluntary change in position by the defendant, and the plaintiff's claim was substantial, the plaintiff had "substantially prevailed" under the statute and was entitled to its attorney's fees. Id. at *11.

Equally, here, the Department's release of a large number of the requested documents after commencement of this action, constitutes a voluntary and unilateral change in its prior position and triggers Plaintiff's right to its attorney's fees. Contrary to the June 9, 2008, cover letter issued by the Department, Vary Decl., ¶ 26, Ex. I, the Department's production was not a timely response to AZA's appeal, which had languished for nearly two full years. Accordingly, because of the unilateral and voluntary shift in position, and because AZA's claim was substantial, AZA now has a right to its attorney's fees under the FOIA fee-shifting statute.

<u>Judicial Watch, Inc.</u>, 2008 WL 2554831, at *11 (conclusion drawn from analysis under §
552(a)(4)(E)(ii) that plaintiff had "substantially prevailed" "alone afford plaintiff a right to
collect attorney's fees").

## V.    CONCLUSION

For the foregoing reasons, the documents withheld and redacted by the Department are
not exempt from disclosure under FOIA and therefore should be released to AZA without further
delay.   In addition, the Department should release all missing attachments to documents
previously identified as responsive.  Furthermore, the Court should award AZA its attorney's fees
in an amount to be determined in a subsequent proceeding, and any other relief it deems
appropriate.

Respectfully submitted,

_____/s/ Charles D. Tobin_____
Charles D. Tobin (Bar No. 455593)
Judith F. Bonilla (Bar No. 473190)
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955-3000  Phone
(202) 955-5564  Fax

*Counsel for Plaintiff*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2008, a true and correct copy of the foregoing was served on parties of record via the Court's Electronic Case Filing System.


/s/ Charles D. Tobin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN ZINC ASSOCIATION,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.      ) | Civil Action No. 08-0538 (EGS) |
| ) | |
| UNITED STATES DEPARTMENT OF      ) | |
| COMMERCE,      ) | |
| ) | |
| Defendant.      ) | |
| ) | |

## DECLARATION OF GEORGE F. VARY

I, George F. Vary, do hereby state and declare under the penalties for perjury that the following statements are true and correct:

1. I am the Executive Director of Plaintiff, American Zinc Association ("AZA"). I am personally familiar with the matters set forth herein.

2. The American Zinc Association is a IRC 501(c)(6), Washington, D.C.-based trade organization comprised of primary and secondary producers of zinc metal, zinc oxide and zinc dust marketed in the United States, as well as consumers.

3. On April 28, 2005, the Department of Commerce's (the "Department") Deputy Assistant Secretary Joseph Bogosian gave a keynote address ("Address") at a ministerial meeting in Tokyo, Japan regarding the 3Rs Initiative. The 3Rs Initiative, adopted by the G8 in 2004 and formally launched by the meeting in Japan, aims to promote the "3Rs" (reduce, reuse and recycle) globally so as to build a recycling-based society through the effective use of resources and materials.

4. AZA and the domestic steel industry met with Bogosian in Washington, D.C., prior to the Address to inform him about, *inter alia*, the Resource Conservation and Recovery Act, 42 U.S.C. § 6962, preference for products within the Environmental Protection Agency's Comprehensive Procurement Guidelines.

5. On June 1, 2005, the Department convened a meeting at its Washington, D.C., headquarters for interested stakeholders to be debriefed on the proceedings in Japan. A copy of the final, delivered Address was distributed to attendees, including myself. (See Exhibit A.)

6. At this meeting, I publicly questioned a sentence in the delivered Address that had not been included in the draft version provided to AZA before the proceedings in Japan. Specifically,

I asked for the identity of the person who drafted the sentence: "Smart purchasing is not and should not be a simple preference for recycled products over non-recycled." In addition, I asked for the reasons behind the inclusion of the sentence.

7.  It is AZA's belief, shared by others who were present on June 1, that the language in question misstated and weakened long-established U.S. law and practice. The Steel Recycling Institute, the National Recycling Coalition, Inc. and AZA, on August 9, 2005, sent Bogosian a letter indicating our collective disagreement with that portion of his speech. (See Exhibit B.)

8.  At the June 1, 2005 meeting, Mr. Bogosian and his counsel, David van Hoogstraten, specifically – and publicly – agreed to release the requested information to AZA and the other interested parties.

9.  The Department has never provided the information publicly promised to be furnished, despite repeated follow-up requests. (See, e.g., Exhibit C (7/19/2005, 04:27 PM e-mail discussing the Department's response to AZA's "repeated phone calls.")

10. The Department has never denied that it publicly committed to providing the requested information. Nor has it ever indicated that the promised information was not available.

11. Failing in every attempt to have the Department honor its public commitment, on May 1, 2006, on behalf of AZA, I submitted a FOIA request to the Department (the "FOIA Request"). (See Exhibit D.)

12. The FOIA Request sought all documents possessed by DOC regarding communications relating to (a) "green procurement," (b) "smart procurement" or (c) general government procurement of products with recycled content, in connection with the 3Rs Initiative, including any materials in connection with the Address. (Id.)

13. The Department produced 546 documents to AZA, and, as stated in the Department's cover letter, withheld 137 more, generally claiming exemption under 5 U.S.C. § 552(b)(5). (See Exhibit E.) The Department did not Batestamp the released set of documents or justify the application of the asserted exemption to each withheld record.

14. The Department did not provide reasonably segregable portions of those 137 withheld documents. (Id.)

15. On July 10, 2006, AZA appealed the Department's response ("Appeal"). Receipt of the Appeal was acknowledged on July 12, 2006. (See Exhibits F and G.)

16. Concerned about the lack of response from the Department on the Appeal, on September 29, 2006, I spoke via telephone with Mr. Keith Hagg, a FOIA attorney at DOC, about the Appeal. Mr. Hagg did not provide any information regarding AZA's Appeal and stated only that all appeals "are given the attention they deserve."

17. Subsequently, in an e-mail dated October 3, 2006, AZA was advised by Elise Packard, Chief of the Department's General Law Division and Mr. Hagg's superior, that Mr. Hagg would provide monthly status updates of AZA's Appeal. (See Exhibit H.)

18. When the Department failed to provide the promised monthly updates, I again contacted Mr. Hagg. He responded on March 9, 2007 that AZA's appeal was "fourth in my queue of appeals awaiting adjudication." He further stated, "I apologize for not providing you with regular status updates as promised. Beginning in April, I will make every effort to contact you with a status update on, or about, the first business day of each month." (See id.)

19. Despite Mr. Hagg's reaffirmed promise, on October 3, 2007 – now 15 months after the filing of AZA's appeal – I again inquired as to the status of AZA's Appeal in an e-mail to Mr. Hagg, noting "I have not had an update from you in some time. I assume I have moved up from fourth in the last seven months." (See id.)

20. On October 4, 2007, Mr. Hagg replied that AZA's appeal still languished fourth. In other words, no appeal had been processed by him since, at the latest, March 9, 2007. (See id.)

21. On October 5, 2007, I asked Mr. Hagg why none of the other appeals had been processed in seven months. (See id.) Mr. Hagg simply responded by stating that he would order his paralegal staff to begin review of AZA's Appeal. (See id.)

22. Again, Mr. Hagg failed to update AZA on the status of its Appeal. As a result, I continued to make repeat inquiries over the next five months regarding the status of AZA's FOIA appeal. A number of my inquiries went unanswered. Other times, either Mr. Hagg or Ms. Packard would reiterate the promise that AZA's appeal was being processed and that they would keep me timely informed regarding this progress. (Copies of these e-mail exchanges are attached at Exhibit H.)

23. Despite the Department's promises, it failed to take any action on AZA's Appeal between its filing on July 10, 2006, and the commencement of this action on March 28, 2008. I did not receive timely updates, nor did I receive any evidence that the Department had made any progress on AZA's appeal.

24. Patience exhausted and with no end to the Department's FOIA foot-dragging in sight, this action was filed.

25. In response to this action, under cover letters dated June 9 and June 13, 2008 – nearly two years since the filing of AZA's FOIA Appeal – the Department radically changed its prior position of withholding 137 documents in their entirety, providing well over half of these documents to AZA. (See Exhibits I and J.)

26. In the June 9 production, the Department released 70 documents in their entirety. (See Exhibit I.) The cover letter indicated that four documents were referred to the Department of State and seven were referred to the "Center for Environmental Quality [sic]" (the correct name is Council on Environmental Quality) ("CEQ"). The Department now claims this latter

figure was erroneous, and only six documents were referred to CEQ. The seventh document actually originated in the Department. (See Declaration of David Cammarota, ¶ 11, n. 2 ("Cammarota Decl."), attached to Defendant's Motion for Summary Judgment.)

27. In the June 13 production, an additional 14 documents were released in their entirety and 14 documents were released in part. (See Exhibit J.) The Department claimed that nine of these partially released documents had non-responsive portions redacted. However, the Department yet again inaccurately assessed the documents. Eight documents had non-responsive portions redacted, (see Govt. Ex. 7, Vaughn index, Sec. V, attached to Defendant's Motion for Summary Judgment), and six were withheld in part under asserted FOIA exemptions. (Id., Sec. I and III.) The letter did not state the basis for its withholding of the remainder of the documents, indicating only that they would be addressed in the Department's Vaughn Index to be filed in this action. (See Exhibit J.)

28. Thus, in reaction to the filing of this action, the Department voluntarily released 84 of the originally withheld 137 documents in their entirety and 14 in part. In other words, as of June 13, 2008, the Department changed its position on 98 of the originally withheld 137 documents.

29. The Department's Vaughn Index, (Govt. Ex. 7), lists 23 documents withheld in their entirety and 4 withheld in part, claiming Exemption (b)(5). One document was withheld in part under a claim of Exemption (b)(6). The Department also listed 19 documents as being duplicative of other documents, but did not specify whether these other documents were withheld or disclosed. Two documents were identified as being entirely non-responsive, and 8 documents were withheld in part as partially non-responsive. CEQ withheld one document in part, claiming Exemption (b)(5). (See Cammarota Decl., ¶ 11, n. 3; Declaration of Edward A. Boling ("Boling Decl."), ¶ 4, Govt. Ex. 4, attached to Defendant's Motion for Summary Judgment.)

30. The documents identified in the Department's Vaughn indices, together with the documents released in their entirety in the two June 2008 productions, total 142 documents. This is five more documents than the 137 documents previously claimed to have been withheld in their entirety. (See Cammarota Decl., ¶ 8.) The Department has failed to provide any explanation for this discrepancy.

31. None of the released documents contain the specific information sought by AZA and which the Department's Deputy Assistant Secretary publicly promised to release to AZA.

32. The Department did not release at least 75 attachments to documents that it released to AZA. Nor did the Department account for the withholding of these attachments in its Vaughn index. (Copies of documents referencing missing attachments are included in Exhibit K.)

33. AZA counsel, in the course of this litigation, attempted to inquire about the missing attachment issue with the Department; however, the Department was unwilling to acknowledge any deficiency with the prior releases. Department counsel stated: "To the extent that the email attachments that Plaintiff alleges were not produced, again, we note that,

4

after an adequate search all responsive, nonexempt documents have now been released."
(See Exhibit L.)

34. Based on a comparison of the Vaughn index's descriptions of the withheld documents to
    those documents previously released to AZA, a number of the withheld documents appear to
    contain identical information as that contained in previously disclosed documents. These
    include:

    • Doc. 000024 – An undated, 2-page document entitled "Draft Notes for USG Proposal."
      A 2-page document entitled "Draft Notes of USG Proposal" was released by the
      Department in its initial, unnumbered FOIA response. (See Exhibit M.)

    • Doc. 000022 – A document entitled "Draft 3Rs Ministerial Conference, Tokyo, Japan,
      April 28-30, 2005" that discusses conference planning suggestions and possible subjects
      for discussions and/or working groups. A document entitled "3Rs Ministerial
      Conference, Tokyo, Japan, April 28-30, 2005" discussing the same matters was released
      by the Department in its initial, unnumbered FOIA response. (See id.)

    • Doc. 000025 – An undated, five-page document entitled "3Rs Initiative Ministerial
      Conference Draft Opening Talking Points." An undated, five-page document with the
      same title was released by the Department in its initial FOIA response. (See id.)

    • Doc. 00006 – A July 28, 2005 e-mail string among Edwin Pinero, David Cammarota, and
      Sarah Aker. Subject: Final? Version of the Vary Letter. Two documents containing
      portions of this e-mail string were released by CEQ on June 2, 2006, in response to
      AZA's FOIA request for essentially the same information as that requested from AZA.
      The Department and CEQ have collaborated in responding to AZA's FOIA request. (See
      Cammarota Decl., ¶ 11; Boling Decl., ¶ 3. The CEQ documents (CEQ 2 and 3) are
      attached at Exhibit M.)

    • Doc. 000016 – A July 27, 2005 e-mail string among Sarah Aker and Edwin Pinero.
      Subject: RE: Letter to the American Zinc Association. Four documents containing this
      same e-mail string were released by CEQ to AZA. (The CEQ documents (CEQ 5, 6, 7,
      and 8) are attached at Exhibit M.) In addition, an e-mail string dated July 27, 2005
      among Department employees discussing a response to AZA was released by the
      Department in its initial, unnumbered response. (Id.)

    • Docs. 000020, 000015, 000011, 000009, 000005 – Draft letters from Joseph H. Bogosian
      to George F. Vary. Four documents that are drafts of the letter from Joseph H. Bogosian
      to George F. Vary were released by CEQ to AZA. (The CEQ documents (CEQ 3, 4, 8,
      and 9) are attached at Exhibit M.)

35. A number of the documents withheld by the Department appear to be substantially similar to
    those already released by the Department. These documents appear to be drafts of speeches,
    draft talking points, briefing papers, and discussions of meeting logistics. (See, e.g., Exhibit
    N.)

36. When confronted with the inadequacies of its FOIA productions and <u>Vaughn</u> Index, it refused to address AZA's concerns. (<u>See Exhibit L</u>.)

37. As a final imposition on AZA, the Department continues to refuse to even confirm whether the specific information sought by AZA even exists in the Department's records. (<u>Id.</u>)

I certify under penalty of perjury that the foregoing is true and correct.

Executed in Washington, D.C. on this 15th day of August, 2008.

George F. Vary

6

# EXHIBIT

# A

**International Symposium on the 3R Initiative**
**Keynote Address**
**Joseph H. Bogosian**
**April 28, 2005**

<u>Thank You and Welcome</u>

- On behalf of the United States Department of Commerce and the U.S. Government, I appreciate this opportunity to present some remarks about the importance of the 3Rs, the benefits to the environment and industry, and the need for partnership in order to achieve these benefits.

- I would like to thank the Government of Japan for all the initiative, time and resources devoted to pushing forward the 3Rs.

- Specifically, I would like to thank the United Nations University and the Organization for the Promotion of Sustainable Society for their support in hosting this International Symposium, under the auspices of the Ministry of Economy, Trade and Industry.

<u>U.S. Support for Japan's 3Rs Proposal</u>

- The United States is proud to have hosted the 2004 G-8 Summit where the concept of the 3Rs was formally presented.

- And we are proud to have worked closely with our Japanese colleagues at Sea Island, Georgia to make the 3Rs a deliverable of that 2004 leaders' conference.

## The Many Rs

- We know the 3Rs:

  1. Reduce waste

  2. Reuse

  3. Recycle – But there are also many other important Rs:

  4. Remanufacture

  5. Refurbish

  6. Reassemble

  7. Rebuild

  8. Reclaim

  9. Recondition

  10. Recover

  11. Re-engineer

  12. Reprocess

  13. Restore. And most importantly,

  14. Responsibility – responsibility to the environment, responsibility to the economy and responsibility to each other to work together in partnership

## Win-Win for Economy and Environment

- We know from our experience in the United States, that it is much easier to gain a national consensus on key environmental policies when these policies reflect a win-win for both the environment and the economy.

2

- In the U.S., environmental policy makers and those of us on the economic and trade side work closely together to coordinate our activities and to try and ensure, where we can, that our environmental policies strengthen our economy and that our economic policies support environmental protection efforts.

- For these reasons, we are very pleased to see METI organize this Symposium around the themes it has chosen and in a way that can productively be carried forward into the discussions at the 3Rs Ministerial over the next two days.

- As we address important issues such as the 3Rs, the U.S. government seeks to partner with its domestic industries, non-governmental organizations and with every household in America. We are glad that this is the approach that the Government of Japan has taken at this conference as well.

- Immediately after the 2004 G-8 Summit at Sea Island, Georgia, the U.S. Government launched an interagency effort to create partnerships among U.S. agencies and the private sector to develop a comprehensive solution

- We reached out through a formal process to engage the private sector and reap the benefit of their experience. Often, we find that the private sector is ahead of government in its thinking as a result of the practical applications of the concepts we are discussing. Many times, government policies lag behind innovation and have to change and adapt to changes in science, industry and the marketplace.

- It is important to remember that in the United States, though the government is active in recycling efforts, government often does not act alone or exclusively. Much is going on within U.S. corporations, at the state and local levels, and in individual households nation-wide. Government rules and regulations have to be flexible to support innovation – not create mandates that hinder innovation.

3

- In this spirit, the U.S. delegation to this Symposium and the 2-day Ministerial is comprised of government officials, industry representatives and non-governmental groups.
- Representatives from Hewlett-Packard Corporation and Caterpillar Corporation are participating on panels today.  These individuals along with other non-governmental observers from the Institute of Scrap Recycling Industries and the National Recycling Coalition are formally a part of the U.S. delegation.  Together we will help bring back the messages from the Conference to the United States and carry forward the lessons of the 3Rs.

3Rs is Future
- The 3Rs is the future.  The goals to reduce waste, reuse, remanufacture, recycle – and all those other Rs – are really the future of environmental protection.
- The better we get at the 3Rs, the more efficient we will become and the more we will avoid environmental problems in the first place.
- While each of us has our own sets of laws and national culture, the broad principles of how to implement the 3Rs is something we can probably agree upon.
- Everyone knows that it makes sense – good business sense and good environmental sense to produce in a way that uses less and wastes less.
- If a product can be reused or refurbished or remanufactured so as to save money and protect the environment, those approaches should be pursued.  They are being pursued.

Remanufacturing

- Remanufacturing and refurbishment to produce "like new" products has enormous possibilities.

- While the U.S. military is a large remanufacturer, the non-military portion of the U.S. remanufacturing industry was already estimated several years ago to be about $53 billion.

- Remanufacturing is a revenue generator and a job creator – while providing significant benefits to the environment.

- The U.S. Environmental Protection Agency and the National Recycling Coalition developed an environmental benefits calculator that quantifies the job creation and revenue generation of recycling.

- Remanufacturing provides important new economic opportunities for companies, and increases competition and demand for goods by opening up new markets for reliable, fully warrantied industrial goods.

- Remanufactured goods also can provide benefits to consumers with less expensive, "like-new", fully warranted goods.

- Like recycling, remanufacturing reduces the volume of material entering the waste stream by re-directing it to the remanufacturing process – instead of to the landfill.

- In addition, as compared with products made from new materials, the remanufacturing process itself can generate significantly smaller impacts on natural resources and the environment.

- According to one industry sector, the remanufacturing of earth-moving equipment saves enough materials every year to fill 230,000 freight train cars.

5

- Our industry tells us that remanufacturing can save up to 85 percent of the energy that would have been required to manufacture an original piece of equipment.

## PRIVATE SECTOR LEADERSHIP

### Ex: Scrap Recycling

- The American scrap processing and recycling industry's products are worth almost $30 billion per year and represent almost 125 million tons of recyclables destined for domestic and overseas markets.
- These scrap recyclables conserve impressive amounts of energy and natural resources. For example, recycled copper saves the nation 85% of the energy that would have been used to make the same amount of new copper from ore.
- Government must work together with this important industry, and
- Domestic laws and trade laws must support the growth of recycling efforts.

### Ex: Xerox End-of-Life Strategies

- Xerox Corporation reports that over 161 million pounds of material was diverted from landfills through the reuse, remanufacturing and recycling of Xerox equipment and supplies.
- Xerox also diverted another 1.5 billion pounds of waste from landfills since 1991 through equipment end-of-life strategies, which incorporate reuse considerations into the design process of the product.
- This growth in recycling and remanufacturing will mean less mining, less landfill, less energy use and fewer greenhouse gas emissions. It will cut overall productions costs while creating jobs.

Ex: Caterpillar Design for Remanufacturability

- Caterpillar Corporation in the United States has launched a "Design for Remanufacturability" program under which their new products are specifically designed so that they may be remanufactured
- We will hear more about these efforts directly from Caterpillar during the afternoon session.

Ex: Eastman Kodak One-Time Use Camera

- The Eastman Kodak Company has developed the "one-time use" camera which is actually re-used many times over.
- The consumer buys the temporary use of the camera body and the film development service. The used camera bodies are returned by the developer to Kodak for sorting and then sent outside the U.S. for disassembly and remanufacture. The remanufactured products, ready to be sold again, are then sold world-wide including in the United States.
- Kodak has entered into arrangements with a number of its competitors including Fuji and Konica Minolta right here in Japan to collect, sort and return camera bodies to Kodak. Each company acts as a collection agent for the other and resources are conserved. It is a win-win as Kodak adds to its bottom line by engaging in all of these practices.

Ex: Lean Manufacturing

- We applaud efforts by the private sector to engage in 'lean manufacturing' practices that have cut down considerably on waste and costs, and provide both economic and environmental benefits.

7

Ex: Hewlett-Packard Eco-Design

- Hewlett-Packard Corporation is engaging in Eco-design practices to reduce environmental impacts throughout the full life cycle of its products.

- A design for the environment program was started in 1992 that places a network of product stewards throughout its businesses in order to promote energy-efficiency, integrate materials innovation into product design, and design for recyclability.

- These design features include elimination of adhesives by eliminating snap-in features, marking plastic parts to speed up material recycling, and relying on modular design for ease of disassembly.

- Eco-Design is important because many U.S. companies are designing their products so components can be more easily and economically recycled or remanufactured.

- In our view, this should be done by setting broad policy goals in partnership with industry and not through prescriptive design requirements mandated by government.

- Government must think broadly and assess the complete life-cycle impacts of different products and make sure that laws truly promote the 3Rs.


Ex: Nanotechnology

- There are benefits to be reaped from nanotechnology development.

- The U.S. private sector is already engaged in developing these new technologies that use fewer resources, conserve resources and reduce the generation of waste, while producing equal or greater results.

- For example, there exist today nano-structured, wear-resistant coatings that are applied to ship bodies that reduce the need for chemical applications, and significantly extend the life of the ship while cutting down on maintenance costs and non-productive down-time.

## Ex: Co-Generation

- Also, "co-generation" or "combined heat and power" has environmental benefits.
- When natural gas is burned to create electricity, the heat is captured as useable energy for heating and cooling.
- This process as well as using productively heat that would otherwise be dissipated cuts down significantly on greenhouse gas emissions.

## Ex: Nike Grind

- Nike has launched a "Reuse a Shoe" Program that reflects its commitment to Zero Waste, Zero Toxic Substances and the recovery of 100% of what is recoverable.
- In this program, Nike collects athletic shoes (of any brand) and grinds them up into material called "Nike Grind" which is then incorporated into playing surfaces of playgrounds, running tracks etc
- Over the last 11 years, Nike has collected 16 million pairs of shoes that have helped build over 170 playground surfaces
- Nike would like to expand this program globally and particularly in Asia.
- But customs laws and duties present a serious barrier to a program that will benefit the environment and the children who use the playgrounds.

9

- Definitions of what constitutes waste and prohibitive tariff rules prevent the free movement of such recycle-able materials and other products internationally.
- Where there is no good reason to prohibit or control the trans-boundary movement of recyclable waste, these wastes should move freely as a benefit to the environment.

Ex: By-Product Synergies

- In the world of 3Rs, one person's waste truly can be another person's valuable raw material.
- In the early 1990's, Chaparral Steel and its parent company, Texas Industries', pursuit of "zero waste/100% product" resulted in developing what we call "By-Product Synergy".
- BPS is about creating and capturing value through: 1) matching producers of under-valued waste streams with users, and 2) working with regulators to establish support for the process.
- When BPS was first started in Texas, then-Governor George W. Bush declared that it "demonstrates the leadership needed to maintain a vibrant economy and effectively limit environmental impacts."
- The leadership that Governor, now President Bush, was pointing out is that for a program like By-Product Synergy to succeed, it requires the partnership of companies from many different industries, government regulators and a community organization that can identify the matches of waste to input.
- In contrast, a regulatory "command and control" approach to the handling of waste prohibits environmentally-beneficial solutions like BPS.
- Each country should make a commitment that overly burdensome and prescriptive regulations should not stand in the way of innovation.

The U.S. Government has listed a number of items we submitted in our 3Rs Portfolio, I would like to discuss one program:

Govt Leadership: Federal Facilities Restoration and Reuse

- The U.S. Environmental Protection Agency and other U.S. Government agencies work together with local communities and private sector investors to convert federal facilities to non-federal uses

- The U.S. EPA's Federal Facilities Restoration and Reuse Office (FFRRO) helps accelerate the transfer of federal property by coordinating environmental cleanup activities and crafting innovative property transfer arrangements.

- As part of this mission, the U.S. EPA assists in the transfer of both Base Realignment and Closure (BRAC) and National Priorities List (NPL) sites, also known as Superfund sites. Because these facilities often encompass hundreds of acres with buildings, roads and other infrastructure, their effective and efficient cleanup and reuse can play a pivotal role in a community's economic development.

- To elicit community input, smooth the transfer process and mitigate the social and economic impacts of a site closure, EPA and the lead federal agency responsible for cleanup often work with surrounding communities through advisory boards. Together, the lead federal agency, EPA and state and local governments conduct environmental restoration activities as efficiently and effectively as possible to help the local community put the property into economically beneficial use as quickly as possible.

11

- **BRAC Sites** - To sustain and streamline military readiness, the Department of Defense (DOD) recognized the need to close some installations and redefine the department's mission at others beginning in 1988. A large portion of BRAC property was designated for transfer to other federal agencies or non-federal entities, such as states, tribes, local governments or private industries.
- **NPL Sites** - The National Priorities List (NPL) is a list of the most heavily damaged sites eligible for cleanup under the Superfund program. In addition to Defense Department sites, other federal agencies with NPL sites include the Department of Energy (DOE) and the Department of the Interior (DOI). These sites include properties used to generate nuclear fuels and federal lands that have been environmentally damaged by multiple parties. U.S. EPA helps facilitate the thorough, efficient cleanup and transfer of such sites.

U.S. Smart Purchasing

- The U.S. Government is using its status as a major consumer to promote environmentally smart purchasing of products.
  - The U.S. has requirements, through legislation and Presidential Executive Orders, that mandate Federal government purchasing of environmentally smart products.
  - This is a stewardship effort to conserve resources and use economically viable products with lesser negative impacts on human health and the environment.

o The Federal program applies to the entire range of goods and services purchased by Federal agencies, from office products, to electronics, to buildings, to fleet vehicles. In addition, there are examples of applying environmentally smart considerations to weapons systems design, acquisition, maintenance, and disposal, including recycling of obsolete weapons.

o Every state government and many local governments also have an environmentally smart purchasing program.

- Smart Purchasing means focusing on:

  1. energy efficiency,
  2. water conservation,
  _3. toxics use reduction,
  4. natural resource conservation,
  5. waste minimization, and
  6. the factoring of the expected life-spans of competing products, and
  7. the factoring in of cost-benefit analysis to achieve environmental goals in the most cost-efficient manner.
  8. Smart purchasing is not and should not be a simple preference for recycled products over non-recycled

Measuring/Scientific Basis

- It is very important to make progress internationally on how we measure the environmental benefits that flow from particular manufacturing and production activities.

- If we say a process is environmentally sound, we ought to know that it is environmentally sound, and we must know the economic costs and weigh these against the perceived benefits.

13

- In this regard, I note that G-8 leaders expressly recognized the ongoing work of the OECD on material flows accounting and called for the enhancement of that work. This work is important and deserves our renewed support today.

## Barriers - Standards

- Another area we need to focus on is that of standards and standards harmonization.
- While agreement on standards can further our goals, varying standards can prevent or deny market access and frustrate environmentally smart efforts.
- Internationally, work continues on the development of standards that make the recycling of products easier and promote the use of recycled material in environmentally-smart products and industries, including the construction industry the world over.
- Standards have been developed for manufacturing processes that use less fuel and that promote the use of materials that otherwise would be treated as waste.
- In addition, the International Standards Organization (ISO) has developed guidance standards (14064) for the incorporation of environmental elements into product standards. These are being used to develop product standards that ensure that the environmental aspects of recycling and energy construction are included in the initial design of products.

## 3Rs Trade Issues – Bilateral, Regional, and the WTO

- Last year at Sea Island G-8 Leaders agreed to "Reduce barriers to the international flow of goods and materials for recycling and remanufacturing, recycled and remanufactured products, and cleaner, more efficient technologies, consistent with existing environmental and trade obligations and frameworks."

14

- The U.S. is interested in continuing to pursue both at the WTO and in its bilateral and regional Free Trade Agreement negotiations ways to promote trade in remanufactured, recycled and refurbished products that positively impact the environment.

- Remanufacturing and recycling reduces industrial waste, and encourages conservation by rewarding the recovery of individual parts or materials from used goods that are then reconditioned and incorporated or transformed into new industrial goods.

- A remanufactured product is totally distinct from a used good.

- Remanufactured goods, unlike used goods, have the appearance, performance, and life expectancy of brand new goods, and meet the same performance requirements as, and enjoy warranties similar to, equivalent new goods.

- Simply put, support for remanufacturing reduces waste.

- Despite these benefits, many countries restrict or ban the importation and sale of remanufactured goods, typically because they are misunderstood to be used goods.

- Due to the clear economic and environmental benefits, the United States has worked with its trading partners to take action and reduce barriers to trade in remanufactured and recycled goods.

- The United States has taken concrete action to move forward on this commitment, and our actions promise to create real economic and environmental benefits.

Remanufacturing Provisions in U.S. FTAs Further the U.S. Commitment to the 3Rs Initiative.:

- Recent U.S. FTAs (Chile, Australia, Morocco, CAFTA-DR, Panama, Andean and Thailand) encourage the conservation, recycling and reuse of industrial goods by according a tariff preference to industrial goods that are recovered and remanufactured. .

- Our FTAs attempt to eliminate the use of import bans, which violate the principle of national treatment (treating imported goods the same as domestically-produced goods), and apply disciplines to import restrictions. As part of our FTAs, we have expressly clarified that import bans and restrictions on used goods do not apply to remanufactured goods.

How the WTO negotiations can further our commitment to the 3Rs Initiative:

- At the WTO in Geneva, where a major market access negotiation is ongoing, the United States is trying to help countries understand not only the distinctions between remanufactured/recycled goods and used goods, but also the environmental benefits that are associated with the remanufacturing and recycling processes.

- We have taken a two-pronged approach in the WTO to addressing trade barriers to these products: 1) reduce tariffs on one hand, and 2) non-tariff barriers (NTBs) on the other.

- On the tariff side, we have put forward the most ambitious proposal for industrial market access: a tariff-free world by 2020 that would start by eliminating all low tariffs (5 percent or less by 2010 and initially focus on highly-traded goods, which could include several remanufactured categories (e.g., agricultural equipment, parts, etc).

16

- On the NTB side, we have circulated a proposal that focuses on barriers to the importation and sale of remanufactured motor vehicle parts. Our goal is to get countries to agree to remove barriers to the importation and sale of remanufactured products so that consumers have access to high quality parts that are also affordably priced.

- While our initial NTB proposal is limited to remanufactured motor vehicle parts, we are considering expanding our proposal to address other product bans and restrictions, and would welcome support and suggestions from other governments in this area.

- More broadly, we invite all governments, as well as industry groups and non-governmental organizations, here today to work with us to reduce barriers to trade in remanufactured and recycled goods

- There is a real opportunity to take concrete action in the WTO that could have economic and environmental benefits across all countries– both developed and developing – and across many sectors.

The Mechanics of the U.S. FTA Remanufacturing Provisions

- A "remanufactured good" is defined in U.S. FTAs as an industrial good that is entirely or partially comprised of recovered goods and has the same life expectancy and warranty as a new good.

- "Recovered goods" are individual parts that are the result of: (a) the disassembly of used goods into individual parts; and (b) cleaning, inspecting, testing, or other processes as necessary for improvement to sound working condition.

17

- A remanufactured good that is <u>entirely</u> compr sed of recovered goods is deemed "wholly obtained" and is automatically consic ered an originating good, eligible for preferential tariff treatment; such a remani factured good need not satisfy a product specific rule of origin (e.g. a tariff shi ft or regional value content rule).

- A remanufactured good that is <u>partially</u> comp ised of recovered goods would need to satisfy an applicable product specific rule of origin. If the remanufactured good is subject to a regional value content requirement, the recovered goods would contribute towards the percentage of originating content.

- The United States' believes that remanufactu ed goods meeting the definition of "originating" should be entitled to preferentia l tariff access under an FTA as if the product were a "new" product.

- Our FTA chapters on national treatment and narket access for goods attempt to eliminate the use of import bans, which viola e the principle of national treatment, and apply disciplines to import re: trictions. As part of our FTAs, we have expressly clarified that import bans and restrictions on used goods do not apply to remanufactured goods.

<u>Objective:</u>

- To promote the trade-related aspects of the 3 Rs, we should all acknowledge that:

    1) recycling and remanufacturing have posi ive environmental benefits; and

    2) remanufactured goods are qualitatively d fferent from "used" goods.

- Most importantly, countries must commit to work together in the WTO to pursue the elimination of all types of barrier; to trade in recycled and remanufactured goods as part of the WTO I oha Development Agenda (DDA)

18

and bring their domestic laws, tariffs and regulations in line with supporting this important 3Rs objective.

<u>Conclusion</u>

- We think it is significant that the Government of Japan has recognized, by its sponsorship of this Symposium, how industry experience and the practical application of environmentally smart concepts can usefully feed into an important ministerial-level environmental conference on the 3Rs.

- Partnerships between industry, environmental constituencies, citizen groups and government are going to be at the heart of the future progress that will be made on 3Rs.

- Voluntary partnerships, where broad goals are agreed but where the participants are free to reach those goals in a variety of ways is what we advocate rather than mandatory programs or prescriptive rules or barriers to trade that will not ultimately help the environment.

- And we will see that the reduction of waste, the conservation of valuable raw materials, increased recycling and remanufacturing and positive environmental impacts will produce benefits for both our environments and our economies.

- Thank you very much and I look forward to the discussion that will follow this afternoon, in the days ahead, and beyond in furtherance of an action plan for the 3Rs and all the other Rs.

19

# EXHIBIT

# B

August 9, 2005

Mr. Joseph H. Bogosian
Deputy Assistant Secretary for Manufacturing
United States Department of Commerce
Washington, DC 20230

Re:    3Rs Initiative

Dear Joe:

Thank you for your letter of July 29 to George. We agree with your handwritten note thereon stating you "thought we were talking past each other" on this issue. Unfortunately, we feel we still are doing just that.

First, you thank us for our participation in the 3Rs interagency process, then write, "I understand your desire to promote 'smart purchasing' and share your goal." Joe, we have scrutinized the comments submitted to you by the zinc and steel industries in the interagency process and can find no reference whatsoever to "smart purchasing," much less our promotion thereof. In fact, they had not heard that term used with respect to the 3Rs Initiative until it appeared in the documents distributed for the June 1 meeting at Commerce.

Not only, then, did we not "promote 'smart purchasing,'" but we also cannot support it as defined by you in your April 28 keynote address:

"8.    Smart purchasing is not and should not be a simple preference for recycled products over non-recycled."

As George mentioned at the June 1 meeting, there are many longstanding examples of just such a simple preference throughout this country, including:

1.    Section 6002 of RCRA requires federal agencies to purchase goods with recycled content identified by EPA -- now in its Comprehensive Procurement Guidelines ("CPG"). Once a product has been listed in the CPG, agencies must buy suitable products with recycled content rather than those without recycled content. A simple preference.

2.    RCRA 6002 requires agencies to establish a "recovered materials preference program" and "an agency promotion program to promote the preference program." We don't believe the use of "preference" was accidental.

3.  Section 101 of Executive Order 13101 states, "the head of each executive agency shall…work to increase and expand markets for recovered materials through greater Federal Government preference and demand for such products." Again, "preference" is used.[1]

4.  EPA's own "Greening EPA's Purchases" program has, as one goal, "achieving increased and preferential use of materials with recycled content."

5.  The FHWA's 2002 Formal Policy on the Use of Recycled Materials says, "Recycled materials should get first consideration in materials selection."

6.  Many states also have simple preference programs. See, e.g., North Carolina General Statutes 143.58.2; California Public Contracts Code 12205, 12210. California goes so far as permitting purchasing authorities to "implement recycled product-only bids." One might be hard pressed to find a simpler preference than this.

Based on the foregoing, and many other examples we could cite, we hope you understand our concern that your keynote, in fact, was not as strong on recycled-content preference as current law and policy, as your words do not admit of the many cases of a simple preference for purchase of products with recycled content. In fact, your words convey just the opposite.

Underscoring this concern, we note that neither the word "recycled" nor the word "recovered" appears in your keynote's section on smart purchasing, whereas the U.S. Portfolio for the Tokyo 3R meeting specifically stated that one focus of the U.S. smart purchasing program is "creating and sustaining markets for recycled materials." The Portfolio further noted EPA is responsible for managing the "recycled content" component of the smart purchasing program. In addition, the Portfolio cites work by FHWA and NASA that "researches and encourages the use of recycled materials in the construction of highways and related appurtenances." Finally, the Portfolio states,

"Every state government and many local governments also have an environmentally smart purchasing program. At a minimum, these programs require the purchase of recycled paper, and several programs also require the purchase of other recycled content or environmentally preferable products."

Again, we are concerned that your remarks are considerably weaker than the Portfolio, and might be seen to be part of a broader pattern of downplaying the importance of increasing markets for products with recycled content via government procurement. We see no reason why your remarks should not have included a preference for products with recycled content as a part of smart purchasing, because that is the case.

We are also puzzled by this statement in your letter:

"In fact, as you have noted previously, Executive Order 13101, Section 102 states that, 'agencies shall comply with executive branch policies for the acquisition and use of environmentally preferable products and services….'"

---

[1] You are correct that other sections of the Executive Order speak to "environmentally preferable" products and factors other than recyclability; however, the fact that other defined products and attributes are listed in different sections does not detract from the separable provisions dealing with preferential treatment of products with recycled content. See below.

Joe, we carefully reread zinc's and steel's written submission to you in response to your request for ideas for the Portfolio, and they cited only Section 101 -- not Section 102 -- of Executive Order 13101. Section 101 deals with our concern and is entirely different from Section 102. Section 101 states, in material part:

> "[T]he head of each executive agency shall…work to increase and expand markets for recovered materials through greater Federal Government preference and demand for such products."

It appears from your letter that perhaps there is a view somewhere that products with recovered content are a subset of environmentally preferable products. Such is clearly not the case. Perhaps the clearest illustration of this uncoupling is Section 302(a) (1) (a) of the Executive Order, which requires the Government-wide Waste Prevention and Recycling Strategic Plan established therein to include:

> "direction and initiatives for acquisition of recycled and recyclable products **and** environmentally preferable products and services." (emphasis added).

In addition, Section 601(b) directs that

> "Agencies shall set goals to increase the procurement of products that are made with recycled materials, in order to maximize the number of recycled products purchased, relative to non-recycled alternatives."

Section 601(c), by contrast, separately covers environmentally preferable products:

> – "Each agency shall set a goal for increasing the use of environmentally preferable products and services."[2]

Finally, you will recall that George asked at the June 1 meeting for the identity of the person who introduced the "simple preference" language into your address and the reason why that language was inserted. There was a public commitment at the meeting to provide that information. He subsequently repeated that request via e-mail to your office; no objection was raised, and we still await that information.

Joe, you close by saying that Commerce will "ensure that our government purchasing policies are developed and implemented in a manner consistent with, and supportive of, the 3Rs." Our view is precisely the opposite: the 3Rs' policies on procurement should be developed in a manner consistent with existing federal and state procurement law and policy. Perhaps this best illustrates our continued concern, as well as our differences.

We have worked hard over the years to have products with recycled content favorably viewed by the government in its purchasing decisions, and we will continue to promote those products. We look forward to a continuing open and frank dialogue in this important area, and stand willing to assist you at any time in ensuring products with

---

[2] It is interesting that Section 601(c) never mentions procurement of environmentally preferable products, while Section 601(b) directs additional procurement goals for products with recovered content. To further illustrate the two are simply not the same, Section 501 of the Executive Order is entitled, "Designation of Items that Contain Recovered Materials," while Section 502 is entitled, "Guidance on Acquisition of Environmentally Preferable Products and Services." As yet another example of this dichotomy, EPA's previously mentioned Greening EPA's Purchases program lists a goal of "achieving increased and preferential use of materials with recycled content **and** increasing the purchase and use of environmentally preferable products." (emphasis added).

recycled content are accorded the place to which they have long been entitled under RCRA, Executive Order 13101, and other applicable laws and regulations, local, state or federal.

Sincerely,

Walter J. "Chip" Foley
Vice President
Steel Recycling Institute

Kate Krebs
Executive Director
National Recycling Coalition, Inc.

George F. Vary
Executive Director
American Zinc Association

# EXHIBIT

# C

000010

 "David Cammarota"
<David_Cammarota@ita.doc.
gov>

07/27/2005 01:33 PM

To   <sarah.aker@mail.doc.gov>

cc

bcc

Subject   Fwd: Re: Letter to the American Zinc Association

Sarah,

I'm taking my cue from you on how to proceed with this.  Just let me know if
you need anything.

Dave

──── Message from aWatson1@doc.gov on Wed, 27 Jul 2005 13:29:04 -0400 ────
        To: "David Cammarota" <David_Cammarota@ita.doc.gov>
        cc: Sarah.Aker@mail.doc.gov
    Subject: Re: Letter to the American Zinc Association
Good catch, Dave!

If we go this route, I'll leave it up to you whether van Hoogstraten needs
to see it again. . .

Thanks,

Best,

Art


                    "David Cammarota"
                    <David_Cammarota@
                    ita.doc.gov>
                                                                        To
                    07/27/2005 01:22        <aWatson1@doc.gov>,
                    PM                       <Sarah.Aker@mail.doc.gov>
                                                                        cc

                                                                Subject
                                            Re: Letter to the American Zinc
                                            Association




Guys,

Works for me.  I'd like to suggest adding the word "over" or something

000010

similar in the first line between "concerns" and "my."  Thanks for your
input Art.

Dave

>>> <aWatson1@doc.gov> 07/27/05 0.:05PM >>>
Sarah and Dave,

I thought Dave's draft was excellent.  Although I'm sure it's exactly what
Joe asked for, following discussions with Sarah here is a revision that is
supposed to paper over the issue and strike a conciliatory note.  As I am
not as close to the substance as either of you, please read carefully!

Comments?

Best,

Art


(See attached file: Name-me.464.doc)


| | | |
|---|---|---|
| Sarah.Aker@mail.d oc.gov | | To |
| 07/27/2005 12:02 PM | aWatson1@doc.gov | cc |
| | "David Cammarota" <David_Cammarota@ita.doc.gov> | Subject |
| | Re: Letter to the American Zinc Association | |


Joe gave the keynote, and he, David van Hoogstraten and I prepared it.
See attached:


aWatson1@doc.gov

| | | |
|---|---|---|
| 07/27/2005 12:01 PM | | To |
| | Sarah.Aker@mail.doc.gov | cc |
| | "David Cammarota" | |

000010

<David_Cammarota@ita.doc.gov>                    Subject

Re: Letter to the American Zinc
Association

Who gave the keynote address, and who prepared it?

Best,

Art

Sarah.Aker@mail.d
oc.gov
                                                                      To
07/26/2005 05:30          "David Cammarota"
PM                        <David_Cammarota@ita.doc.gov>
                                                                      cc
                          "Arthur Watson" <aWatson1@doc.gov>,
                          "Joseph Bogosian"
                          <Joseph_Bogosian@ita.doc.gov>
                                                                 Subject
                          Re: Letter to the American Zinc
                          Association

Dave, Art and Joe,
David van Hoogstraten from State just called me about this letter.
Do you have any changes before I send it his direction for clearance??
Thanks
-Sarah

"David Cammarota"
<David_Cammarota@ita.doc
..gov>

000010

<table>
<tr><td></td><td></td><td>To</td></tr>
<tr><td>07/19/2005 04:27 PM</td><td>"Arthur Watson" &lt;aWatson1@doc.gov&gt;,<br>"Joseph Bogosian"<br>&lt;Joseph_Bogosian@ita.doc.gov&gt;,<br>&lt;sarah.aker@mail.doc.gov&gt;</td><td></td></tr>
<tr><td></td><td></td><td>cc</td></tr>
<tr><td></td><td></td><td>Subject</td></tr>
<tr><td></td><td>Letter to the American Zinc<br>Association</td><td></td></tr>
</table>

Art,

Joe Bogosian asked me to draft a letter to the executive director of the
AZA in order to address his repeated phone calls expressing concern that he
believes that language in a U.S. keynote address contradicts USG policy as
outlined in Executive Order 13101 and Section 6002 of the Resource
Conservation and Recoveryf Act.

Could you please take a look at the attached response I've drafted and
provide some guidance in responding.

Thanks,

Dave

(See attached file: GeorgeVaryResponse05July.doc) [attachment
"GeorgeVaryResponse05July.doc" deleted by Arthur Watson/HCHB/Osnet]
[attachment "Keynote Bogosian to read.doc" deleted by Arthur
Watson/HCHB/Osnet]

# EXHIBIT

# D

May 1, 2006

Ms. Linda Bell
Freedom of Information Officer
Office of Organizational and Management Support
International Trade Administration
U.S. Department of Commerce
Washington, DC 20230

Dear Ms. Bell:

This is a Freedom of Information Act request for the following:

1.  Documents, including e-mails and attachments, reflecting any
    communication by or between, on the one hand, Edwin Pinero, Dana
    Arnold or any other employee of the Office of the Federal Environmental
    Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David
    Cammarota, Sarah Aker or any other employee of the Department of
    Commerce, on the other, referring or in any way relating to (a) "green
    procurement," (b) "smart procurement" or (c)general government
    procurement of products with recycled content, in connection with the 3Rs
    Initiative, including any minutes of meetings involving those individuals
    on that subject.

2.  Documents, including e-mails and attachments, reflecting any
    communication by or between, on the one hand, Edwin Pinero, Dana
    Arnold or any other employee of the Office of the Federal Environmental
    Executive and, on the other hand, Joseph Bogosian, Jaime Estrada, David
    Cammarota, Sarah Aker or any other employee of the Department of
    Commerce, on the other, referring or in any way relating to (a) "green
    procurement," (b) "smart procurement," or (c)general government
    procurement of products with recycled content, in connection with an
    International Symposium on the 3Rs Initiative Keynote Address by Mr.
    Bogosian, given on April 28, 2005, including any and all drafts of such
    address and any minutes of meetings involving those individuals to
    discuss that address..

3.  Documents, including e-mails and attachments, reflecting any
    communication between or among Joseph Bogosian, Jaime Estrada, David
    Cammarota, or Sarah Aker and any employee of the Department of
    Commerce referring or in any way relating to (a)"smart procurement,"
    (b)"green procurement," or (c) general government procurement of
    products with recycled content, in connection with either the 3Rs Initiative

or the April 28 Keynote Address by Mr. Bogosian, including any minutes of meetings involving those individuals to discuss the 3Rs Initiative or that address.

4.    Documents, including e-mails and attachments, reflecting any communications by or between, on the one hand, Joseph Bogosian, Jaime Estrada, David Cammorota, Sarah Aker or any other employee of the Department of Commerce and, on the other, any representative of a corporation, business or a trade association referring or in any way relating to (a)"smart procurement," (b)"green procurement," or (c)general government procurement of products with recycled content, in connection with the 3Rs Initiative or the April 28 Keynote Address by Mr. Bogosian, including all records of any meetings involving those people to discuss the 3Rs initiative or that address..

In the context of this request, "documents" shall include all non-identical copies of the same source material (e.g., two copies of the same e-mail, one of which has handwritten notes thereon).

The period covered by this request is from September 1, 2004 to date.

Any questions concerning this request should be addressed to the undersigned. Please advise the undersigned when and where the requested materials will be available for inspection and, if requested, copying. Also, please advise the undersigned if disclosure of particular documents is withheld and the claimed exemption therefore.

Thank you for your assistance.

Sincerely,

George F. Vary
Executive Director

# EXHIBIT

# E



**UNITED STATES DEPARTMENT OF COMMERCE**
International Trade Administration
Washington, D.C. 20230

June 12, 2006

Mr. George F. Vary
Executive Director
American Zinc Institute
2025 M Street, NW, Suite 800
Washington, DC 20036

Dear Mr. Vary:

This is in response to your Freedom of Information Act (FOIA) request for materials relating to (a) "green procurement," (b) "smart procurement," or (c) general government procurement of products with recycled content, in connection with the 3Rs Initiative.

One hundred and thirty-seven (137) documents are being withheld under FOIA exemption (b)(5), privileged interagency or intra-agency memoranda or letters. This exemption protects internal federal government documents that are both predecisional and deliberative.

The remaining documents are being released in their entirety and are enclosed with this letter.

You have the right to appeal this response to your FOIA request. An appeal must be received within 30 calendar days of the date of this letter by the Assistant General Counsel for Administration, Room 5898-C, U.S. Department of Commerce, 14th & Constitution Avenue, NW, Washington, DC 20230. Your appeal may also be sent by e-mail to FOIAAppeals@doc.gov or by facsimile (fax) to 202/482-2552. The appeal must include a copy of the original request, this response to the request, and a statement of the reason why withheld records should be made available and why denial of the records was in error. The submission (including e-mail and fax submissions) is not complete without the required attachments. The appeal letter, the envelope, the e-mail subject line, and the fax cover sheet should be clearly marked "Freedom of Information Act Appeal." The e-mail, fax machine, and Office are monitored only on working days during normal



business hours (8:30 am to 5:00 pm, Eastern Standard Time, Monday through Friday).
FOIA appeals posted to the e-mail box, fax machine or Office after normal business
hours will be deemed received on the next business day.

Sincerely,

Linda M. Bell
Freedom of Information Act Officer

Enclosures

FOI 06-072

# EXHIBIT

# F

July 10, 2006

To:     Assistant General Counsel for Administration
         Room 5898-C
         U.S. Department of Commerce

From:  George Vary

Re:     Freedom of Information Act Appeal

Attached is the appeal from the American Zinc Association.

Six pages, including this cover page.

 **American Zinc Association**

2025 M Street, NW, Suite 800, Washington DC 20036 Tel (202) 367-1151 Fax (202) 367-2232 www.zinc.org

July 10, 2006

Assistant General Counsel for Administration      <u>Via Facsimile</u>
U.S. Department of Commerce
Room 5898-C
Washington, DC 20230

Dear Sir or Madam:

The American Zinc Association ("AZA") hereby appeals from the decision of the Department of Commerce ("Commerce") to withhold documents from production under the Freedom of Information Act ("FOIA"). Copies of AZA's initial FOIA request and Commerce's June 12 response are attached hereto.

Commerce has withheld documents pursuant to exemption (b)(5), saying that exemption protects those internal "documents that are both predecisional and deliberative." However, Commerce's website says exemption (b)(5) exempts "those documents, and only those documents, normally privileged in the civil discovery context."

AZA does not seek documents which are between counsel and Commerce officials for the purpose of securing legal advice. However, it is established law that documents without this purpose do not become privileged simply by sending them to counsel. AZA suspects there are documents indicating or summarizing meetings with businesses and/or trade associations which are improperly withheld under a claim of a (b)(5) exemption. AZA believes there are documents indicating who authored a certain inclusion in DAS Bogosian's remarks that are being improperly withheld. On this latter point, no privilege can attach as DAS Bogosian and counsel van Hoogstraten **specifically agreed in public to provide AZA with this information.**

Moreover, even assuming, <u>arguendo</u>, the existence of an exemption for these materials, Commerce appears to have waived that by production of other documents to AZA labeled "DRAFT, PRE-DECISIONAL AND DELIBERATIVE." It is axiomatic that one cannot pick and choose which privileged matters to disclose without vitiating the privilege.

Sincerely,

George F. Vary
Executive Director

May 1, 2006

Ms. Linda Bell
Freedom of Information Officer
Office of Organizational and Management Support
International Trade Administration
U.S. Department of Commerce
Washington, DC 20230

Dear Ms. Bell:

This is a Freedom of Information Act request for the following:

1.    Documents, including e-mails and attachments, reflecting any
      communication by or between, on the one hand, Edwin Pinero, Dana
      Arnold or any other employee of the Office of the Federal Environmental
      Executive and, on the other hand, Joseph Bogosian, Jamie Estrada, David
      Cammarota, Sarah Aker or any other employee of the Department of
      Commerce, on the other, referring or in any way relating to (a) "green
      procurement," (b) "smart procurement" or (c)general government
      procurement of products with recycled content, in connection with the 3Rs
      Initiative, including any minutes of meetings involving those individuals
      on that subject.

2.    Documents, including e-mails and attachments, reflecting any
      communication by or between, on the one hand, Edwin Pinero, Dana
      Arnold or any other employee of the Office of the Federal Environmental
      Executive and, on the other hand, Joseph Bogosian, Jaime Estrada, David
      Cammarota, Sarah Aker or any other employee of the Department of
      Commerce, on the other, referring or in any way relating to (a) "green
      procurement," (b) "smart procurement," or (c)general government
      procurement of products with recycled content, in connection with an
      International Symposium on the 3Rs Initiative Keynote Address by Mr.
      Bogosian, given on April 28, 2005, including any and all drafts of such
      address and any minutes of meetings involving those individuals to
      discuss that address..

3.    Documents, including e-mails and attachments, reflecting any
      communication between or among Joseph Bogosian, Jaime Estrada, David
      Cammarota, or Sarah Aker and any employee of the Department of
      Commerce referring or in any way relating to (a)"smart procurement,"
      (b)"green procurement," or (c) general government procurement of
      products with recycled content, in connection with either the 3Rs Initiative

or the April 28 Keynote Address by Mr. Bogosian, including any minutes of meetings involving those individuals to discuss the 3Rs Initiative or that address.

4.  Documents, including e-mails and attachments, reflecting any communications by or between, on the one hand, Joseph Bogosian, Jaime Estrada, David Cammorota, Sarah Aker or any other employee of the Department of Commerce and, on the other, any representative of a corporation, business or a trade association referring or in any way relating to (a)"smart procurement," (b)"green procurement," or (c)general government procurement of products with recycled content, in connection with the 3Rs Initiative or the April 28 Keynote Address by Mr. Bogosian, including all records of any meetings involving those people to discuss the 3Rs initiative or that address..

In the context of this request, "documents" shall include all non-identical copies of the same source material (e.g., two copies of the same e-mail, one of which has handwritten notes thereon).

The period covered by this request is from September 1, 2004 to date.

Any questions concerning this request should be addressed to the undersigned. Please advise the undersigned when and where the requested materials will be available for inspection and, if requested, copying. Also, please advise the undersigned if disclosure of particular documents is withheld and the claimed exemption therefore.

Thank you for your assistance.


Sincerely,


George F. Vary
Executive Director

**UNITED STATES DEPARTMENT OF COMMERCE**
**International Trade Administration**
Washington, D.C. 20230

June 12, 2006

Mr. George F. Vary
Executive Director
American Zinc Institute
2025 M Street, NW, Suite 800
Washington, DC 20036

Dear Mr. Vary:

This is in response to your Freedom of Information Act (FOIA) request for materials
relating to (a) "green procurement," (b) "smart procurement," or (c) general government
procurement of products with recycled content, in connection with the 3Rs Initiative.

One hundred and thirty-seven (137) documents are being withheld under FOIA
exemption (b)(5), privileged interagency or intra-agency memoranda or letters. This
exemption protects internal federal government documents that are both predecisional
and deliberative.

The remaining documents are being released in their entirety and are enclosed with this
letter.

You have the right to appeal this response to your FOIA request. An appeal must be
received within 30 calendar days of the date of this letter by the Assistant General
Counsel for Administration, Room 5898-C, U.S. Department of Commerce, 14th &
Constitution Avenue, NW, Washington, DC 20230. Your appeal may also be sent by e-
mail to FOIAAppeals@doc.gov or by facsimile (fax) to 202/482-2552. The appeal must
include a copy of the original request, this response to the request, and a statement of the
reason why withheld records should be made available and why denial of the records was
in error. The submission (including e-mail and fax submissions) is not complete without
the required attachments. The appeal letter, the envelope, the e-mail subject line, and the
fax cover sheet should be clearly marked "Freedom of Information Act Appeal." The e-
mail, fax machine, and Office are monitored only on working days during normal



business hours (8:30 am to 5:00 pm, Eastern Standard Time, Monday through Friday). FOIA appeals posted to the e-mail box, fax machine or Office after normal business hours will be deemed received on the next business day.

Sincerely,

Linda M. Bell
Freedom of Information Act Officer

Enclosures

FOI 06-072

# EXHIBIT

# G

**UNITED STATES DEPARTMENT OF COMMERCE**
**Office of the General Counsel**
Washington, D.C.  20230

George Vary
Executive Director
American Zinc Institute
2025 M Street, NW, Suite 800
Washington, DC 20036

12 JUL 2006

Dear Mr. Vary:

This is to acknowledge receipt of your Freedom of Information Act (5 U.S.C. § 552) (FOIA) appeal dated July 7, 2006.  In accordance with the FOIA, a final determination will be issued by the Department.

If you have any questions about this matter, you may contact me at the above address or at (202) 482-5391.

Sincerely,

Keith Hagg
Attorney Advisor

# EXHIBIT

# H

**Vary, George**

| | |
|---|---|
| **From:** | Vary, George |
| **Sent:** | Wednesday, March 07, 2007 9:57 AM |
| **To:** | 'ePackard@doc.gov' |
| **Subject:** | FW: Fw: OGC's Lack of Cooperation -- What Next? |

   In December, Mr. Hagg called me and left a voice mail message to call him back.  No
status report was left.  I returned his call, asked him to call back and leave a status
report and never heard back from him again.

What's going on?

George Vary

-----Original Message-----
From: ePackard@doc.gov [mailto:ePackard@doc.gov]
Sent: Tuesday, October 03, 2006 4:12 PM
To: Vary, George
Cc: KHagg@doc.gov
Subject: RE: Fw: OGC's Lack of Cooperation -- What Next?


Thank you for your understanding.  I will definitely look into the website.

I can assure you that we will release any information that can be segregated from
protected information and Mr. Hagg will be in touch with you on a regular basis.

Thanks.

Elise Packard


Elise B. Packard
Chief
General Law Division/Office of General Counsel Department of Commerce
(202) 482-0386
fax (202) 482-2552


              "Vary, George"
              <gvary@zinc.org>
                                                                    To
              10/03/2006 02:22       <ePackard@doc.gov>
              PM                                                     cc

                                                                Subject
                                     RE: Fw: OGC's Lack of Cooperation
                                     -- What Next?




Thank you for your timely and detailed response.  Frankly, had Mr. Hagg been as
forthcoming when I called him my e-mail would have been unnecessary.  Also, might I
suggest the DOC website be amended to conform with the reality you describe.  Stating that

1

the Assistant General Counsel "will" determine an appeal within 20 business days appears
to be simply incorrect.

I will look forward to my updates from Mr. Hagg.  I cannot, however, promise that our
forbearance will be infinite.  Moreover, for some of the information we seek, particularly
the information promised us by DAS Bogosian, we trust that Commerce will produce any
readily segregable portions of documents it ultimately withholds.

Sincerely,

George Vary

-----Original Message-----
From: ePackard@doc.gov [mailto:ePackard@doc.gov]
Sent: Tuesday, October 03, 2006 12:20 PM
To: Vary, George
Cc: bFrederi@doc.gov; KHagg@doc.gov
Subject: Re: Fw: OGC's Lack of Cooperation -- What Next?


Dear Mr. Vary,

I am the Chief of the General Law Division, and Barbara Fredericks asked me to respond to
your e-mail, as I am Mr. Hagg's supervisor and my office reviews FOIA appeals for Ms.
Fredericks.  Thank you for bringing your concerns to our attention.  I understand your
frustration with the situation.  There is no question, and Mr. Hagg is aware, that there
is a 20 working-day statutory requirement for responding to FOIA appeals.
This, however, comes up against the reality of our limited resources.
Our office is currently adjudicating 79 FOIA appeals, most of which predate your appeal.
Each FOIA appeal takes a significant amount of time for the attorney to consult with the
initial office, review the documents, do legal research, and then write a draft response.
Pursuant to Court guidance on what agencies should do when they have backlogs (described
in Open America vs. Watergate Special Prosecution Force), we adjudicate the appeals on a
first-in, first-out basis.  The FOIA (5 U.S.C. sec. 552) and Department of Commerce FOIA
regulations (5 CFR sec. 4.6(d)) provide for multiple processing tracks so that quick
simple requests do not have to wait for longer involved requests.  However, your request
involves 137 documents and is, therefore, not qualified for our fasttrack.

Because it is almost impossible to judge how long the series of FOIA appeals ahead of you
in the backlog will take to adjudicate, we cannot promise requesters, such as yourself,
dates by which FOIA appeals will be finished.

What we can promise is to keep you informed of where you are in the list and what we are
doing to move your matter forward.  I have asked Mr.
Hagg to contact you on a monthly basis to keep you informed of the status of your request.
Mr. Hagg has a number of FOIA appeals that predate yours, and, which, therefore, must be
adjudicated before he turns his attention to your appeal.  I do note that since your
request involves 137 documents, it will take a significant amount of time to review.  It
might be helpful for you to know that  exemption (b)(5) is not limited to attorney/client
or attorney-work-product information, but also includes the deliberative process
privilege.  This appears to be the privilege that ITA used in withholding the documents at
issue in your appeal.  Information about this privilege can be found on the Department of
Justice website at http://www.usdoj.gov/oip/exemption5.htm#deliberative.  You can also get
there through links from the Department of Commerce FOIA webpage.


While I realize this situation is not ideal, I believe our record of adjudicating appeals
is good compared to many other Government agencies.
We do the best with the resources we have and the amount of FOIA appeals we get.  Please
feel free to call or contact me with any concerns or issues you have.

Thank you for your patience and understanding.

Elise Packard

Elise B. Packard
Chief

General Law Division/Office of General Counsel Department of Commerce
(202) 482-0386
fax (202) 482-2552

|  |  |
|---|---|
| To | Barbara Fredericks/HCHB/Osnet<br><br>Elise Packard/HCHB/Osnet@osnet |
| cc | 10/03/2006 08:29 AM |
| Subject | Fw: OGC's Lack of Cooperation -- What Next? |

Barbara S. Fredericks
Assistant General Counsel for Administration United States Department of Commerce
Office: 202 482-5387
Fax: 202 482-2998
----- Forwarded by Barbara Fredericks/HCHB/Osnet on 10/03/2006 08:28 AM -----

|  |  |
|---|---|
| To | "Vary, George"<br><gvary@zinc.org><br><br>10/02/2006 08:34 AM    <BFrederi@doc.gov> |
| cc | <ogcexecutiveoffice@doc.gov> |
| Subject | OGC's Lack of Cooperation -- What Next? |

3

Having worked closely with Commerce for over 20 years (including several years on the steel ISAC) representing U.S. metals interests, I am disappointed I have to write you about the lack of even a vestige of cooperation from your office.

I filed an appeal of a FOIA response in July. Commerce acknowledged receipt thereof by letter dated July 12 from Keith Hagg, Attorney Advisor. Mr. Hagg's letter stated, "If you have any questions about this matter, you may contact me at the above address or at (202) 482-5391."

Having heard nothing in the interim, I called Mr.. Hagg as invited to do so on September 29. He returned my call later that day. I said I was inquiring about the status of my appeal. He responded by saying these appeals were treated individually and given the attention they each deserved and took time (the "Non-Response Response"). I said the Commerce website advised that there will be "a determination on your appeal within 20 business days." He seemed wholly unaware of this -- even though it appears to mirror the statutory requirement in 5 U.S.C. Section 552(a)(6)(A)(ii) -- and, so, to help him I provided him with the web address. I asked again in light of this from Commerce's website about my request and, again, received the Non-Response Response. I asked if my appeal would be concluded "this year", and, again, received the Non-Response Response. I asked what Commerce's time frame was for deciding appeals, and, again, received the Non-Response Response. I told Mr. Hagg that I would assume from his "answers" that Commerce had no time frames, and, again, received the Non-Response Response. This went on for a bit, but absolutely no information beyond the Non-Response Response was forthcoming from Mr. Hagg.

Finally, I told Mr. Hagg that I would go over his head, and noted that a federal judge would, in my view, view this conduct harshly. I trust you concur that FOIA does have some time limits. Commerce's ITA FOIA website proclaims, "It is the policy of the agency to make records available to the public to the greatest extent possible, in keeping with the spirit of the FOIA...." How this can be squared with the conduct described above baffles me.

I can be reached at 202-367-1232 to discuss this. If I have not heard from you by close of business Wednesday, I will be forced to take other steps to bring this issue to the public's attention. Given my long (and ongoing) working relationship with Commerce, I would do that reluctantly, but will do so if this continues.


Sincerely,

George F. Vary
Executive Director
American Zinc Association
Washington, DC

## Vary, George

**From:** Vary, George
**Sent:** Wednesday, October 03, 2007 8:49 AM
**To:** 'KHagg@doc.gov'
**Subject:** RE: FOIA appeal

I have not had an update from you in some time.  I assume I have moved up from fourth in the last seven months.

Please advise.

George Vary

---

**From:** KHagg@doc.gov [mailto:KHagg@doc.gov]
**Sent:** Friday, March 09, 2007 4:59 PM
**To:** Vary, George
**Cc:** ePackard@doc.gov
**Subject:** FOIA appeal

Dear Mr. Vary:

This is in response to your inquiry regarding the status of your Freedom of Information Act appeal filed on July 10, 2006.  You may recall that the General Law Division Chief Elise Packard explained in an October 2006 e-mail that this office handles appeals on a first in first out basis.  Currently, your appeal is fourth in my queue of appeals awaiting adjudication.

Ms. Packard also informed you that I would provide monthly updates on the status of your appeal.  As you note in your e-mail, my last call to your office was in late December of 2006.  I apologize for not providing you with regular status updates as promised.  Beginning in April, I will make every effort to contact you with a status update on, or about, the first business day of each month.  Please feel free to contact me should have you any questions.

Regards,

Keith A. Hagg
Attorney-Advisor
Office of the General Counsel
Assistant General Counsel for Administration
Division of General Law
U.S. Department of Commerce
Phone (202) 482-1315
Fax (202) 482-2552
khagg@doc.gov

3/11/2008

## Vary, George

**From:**    Vary, George
**Sent:**    Friday, October 05, 2007 7:50 AM
**To:**      'Hagg, Keith'
**Subject:** RE: FOIA appeal

That means I am still fourth in line, no change since, at the latest, March.  I realize you cannot tell me when my appeal will be finalized, but perhaps you can tell me why nothing has changed in seven months.

George Vary

---

**From:** Hagg, Keith [mailto:KHagg@doc.gov]
**Sent:** Thursday, October 04, 2007 5:18 PM
**To:** Vary, George
**Subject:** RE: FOIA appeal

Mr. Vary:

Three appeals precede your appeal.  I expect to complete one of the three soon thereby reducing the appeals before yours to two.

Please feel free to contact me should you have any questions.

Regards,

Keith A. Hagg
Attorney-Advisor
Assistant General Counsel for Administration
General Law Division
U.S. Department of Commerce
Tel: (202) 482-1315
fax:  (202) 482-2552
khagg@doc.gov

---

**From:** Vary, George [mailto:gvary@zinc.org]
**Sent:** Wednesday, October 03, 2007 8:49 AM
**To:** Hagg, Keith
**Subject:** RE: FOIA appeal

I have not had an update from you in some time.  I assume I have moved up from fourth in the last seven months.

Please advise.

George Vary

---

**From:** KHagg@doc.gov [mailto:KHagg@doc.gov]
**Sent:** Friday, March 09, 2007 4:59 PM
**To:** Vary, George
**Cc:** ePackard@doc.gov
**Subject:** FOIA appeal

3/11/2008

## Vary, George

**From:** Vary, George
**Sent:** Monday, November 12, 2007 11:40 AM
**To:** 'Hagg, Keith'
**Subject:** RE: FOIA appeal

Mr. Hagg, I believe we have been inordinately patient, yet we have heard nothing since your October 5 e-mail. What has been done in the interim?

George Vary

---

**From:** Hagg, Keith [mailto:KHagg@doc.gov]
**Sent:** Friday, October 05, 2007 4:11 PM
**To:** Vary, George
**Subject:** RE: FOIA appeal

Mr. Vary:

I understand your frustration. To facilitate your appeal, I have asked our paralegal staff to review the withheld materials and prepare a summary brief.

Next week, I have to report for a month of grand jury service. However, I will be checking e-mail and voicemail. While I am out, our paralegal staff will be working on your appeal. Please feel free to contact me should you have any questions.

Regards,

Keith

---

**From:** Vary, George [mailto:gvary@zinc.org]
**Sent:** Friday, October 05, 2007 7:50 AM
**To:** Hagg, Keith
**Subject:** RE: FOIA appeal

That means I am still fourth in line, no change since, at the latest, March. I realize you cannot tell me when my appeal will be finalized, but perhaps you can tell me why nothing has changed in seven months.

George Vary

---

**From:** Hagg, Keith [mailto:KHagg@doc.gov]
**Sent:** Thursday, October 04, 2007 5:18 PM
**To:** Vary, George
**Subject:** RE: FOIA appeal

Mr. Vary:

Three appeals precede your appeal. I expect to complete one of the three soon thereby reducing the appeals before yours to two.

Please feel free to contact me should you have any questions.

3/11/2008

## Vary, George

| | |
|---|---|
| **From:** | Hagg, Keith [KHagg@doc.gov] |
| **Sent:** | Thursday, November 15, 2007 2:09 PM |
| **To:** | Vary, George |
| **Subject:** | RE: FOIA appeal |

Mr. Vary:

I was out of the office from October 9 to November 9 for grand jury duty at Superior Court in the District of Columbia. During my absence, our paralegal staff conducted an initial review of the responsive documents that the International Trade Administration withheld under exemption b(5) of the Freedom of Information Act. At this time, I am in the process of reviewing the work of our paralegal staff.

Please feel free to contact me by phone or by email should you have any questions.

Regards,

Keith A. Hagg
Attorney-Advisor
Assistant General Counsel for Administration
General Law Division
U.S. Department of Commerce
Tel: (202) 482-1315
fax: (202) 482-2552
khagg@doc.gov

**From:** Vary, George [mailto:gvary@zinc.org]
**Sent:** Monday, November 12, 2007 11:40 AM
**To:** Hagg, Keith
**Subject:** RE: FOIA appeal

Mr. Hagg, I believe we have been inordinately patient, yet we have heard nothing since your October 5 e-mail. What has been done in the interim?

George Vary

**From:** Hagg, Keith [mailto:KHagg@doc.gov]
**Sent:** Friday, October 05, 2007 4:11 PM
**To:** Vary, George
**Subject:** RE: FOIA appeal

Mr. Vary:

I understand your frustration. To facilitate your appeal, I have asked our paralegal staff to review the withheld materials and prepare a summary brief.

Next week, I have to report for a month of grand jury service. However, I will be checking e-mail and voicemail. While I am out, our paralegal staff will be working on your appeal. Please feel free to contact me should you have any questions.

Regards,

## Vary, George

| | |
|---|---|
| **From:** | Vary, George |
| **Sent:** | Monday, January 07, 2008 10:27 AM |
| **To:** | 'Hagg, Keith' |
| **Subject:** | RE: FOIA appeal |

Where does this stand after your review of your paralegal staff review?  We're only talking a few documents here.

George Vary

---

**From:** Hagg, Keith [mailto:KHagg@doc.gov]
**Sent:** Thursday, November 15, 2007 2:09 PM
**To:** Vary, George
**Subject:** RE: FOIA appeal

Mr. Vary:

I was out of the office from October 9 to November 9 for grand jury duty at Superior Court in the District of Columbia.  During my absence, our paralegal staff conducted an initial review of the responsive documents that the International Trade Administration withheld under exemption b(5) of the Freedom of Information Act.  At this time, I am in the process of reviewing the work of our paralegal staff.

Please feel free to contact me by phone or by email should you have any questions.

Regards,

Keith A. Hagg
Attorney-Advisor
Assistant General Counsel for Administration
General Law Division
U.S. Department of Commerce
Tel: (202) 482-1315
fax: (202) 482-2552
khagg@doc.gov

---

**From:** Vary, George [mailto:gvary@zinc.org]
**Sent:** Monday, November 12, 2007 11:40 AM
**To:** Hagg, Keith
**Subject:** RE: FOIA appeal

Mr. Hagg, I believe we have been inordinately patient, yet we have heard nothing since your October 5 e-mail. What has been done in the interim?

George Vary

---

**From:** Hagg, Keith [mailto:KHagg@doc.gov]
**Sent:** Friday, October 05, 2007 4:11 PM
**To:** Vary, George
**Subject:** RE: FOIA appeal

## Vary, George

**From:**    Vary, George
**Sent:**    Tuesday, January 22, 2008 11:31 AM
**To:**      'ePackard@doc.gov'
**Subject:** FW: FOIA appeal

RESENT JANUARY 22.

**From:** Vary, George
**Sent:** Wednesday, January 09, 2008 11:10 AM
**To:** 'ePackard@doc.gov'
**Cc:** 'Hagg, Keith'
**Subject:** FW: FOIA appeal

I realize you're busy and I hesitate to bring this small matter to your attention, but, frankly, I cannot believe that this appeal, involving but a few documents, has dragged out so long with no end in sight. (Mr. Hagg left me a voice mail last evening confirming he had not reviewed the paralegal review and could not provide me with a date by which our appeal would conclude).

But what truly is of concern to me, and I hope you, is the fact, documented below by Mr. Hagg's e-mails of March 9 and October 4, that nobody's appeal was processed in at least seven months during 2007. Moreover, Mr. Hagg has not been providing the promised monthly updates. These shortcomings seem to me to be cause for alarm.

I have been more than patient in this matter, but my members keep asking me what the status of the appeal is and I lack a good answer.

I look forward to hearing from you.

George Vary

**From:** Vary, George
**Sent:** Monday, January 07, 2008 10:27 AM
**To:** 'Hagg, Keith'
**Subject:** RE: FOIA appeal

Where does this stand after your review of your paralegal staff review? We're only talking a few documents here.

George Vary

**From:** Hagg, Keith [mailto:KHagg@doc.gov]
**Sent:** Thursday, November 15, 2007 2:09 PM
**To:** Vary, George
**Subject:** RE: FOIA appeal

Mr. Vary:

I was out of the office from October 9 to November 9 for grand jury duty at Superior Court in the District of Columbia. During my absence, our paralegal staff conducted an initial review of the responsive documents that the International Trade Administration withheld under exemption b(5) of the Freedom of Information Act. At this time, I am in the process of reviewing the work of our paralegal staff.

## Vary, George

| | |
|---|---|
| **From:** | Packard, Elise [ePackard@doc.gov] |
| **Sent:** | Wednesday, January 23, 2008 1:20 PM |
| **To:** | Vary, George |
| **Cc:** | Hagg, Keith |
| **Subject:** | RE: FOIA appeal |

Dear Mr. Vary,

I understand that your appeal involves 137 documents, which is not by our definition a few. We are working on your appeal expeditiously. In fact, as I gather Mr. Hagg has told you, we assigned a paralegal to help move it along. However, we cannot take you ahead of the other appeals. Mr. Hagg will continue to keep you informed of the progress on this.

Thank you.

Elise Packard
Chief, General Law Division
Department of Commerce
(202) 482-0386
fax (202) 482-2552

---

**From:** Vary, George [mailto:gvary@zinc.org]
**Sent:** Tuesday, January 22, 2008 11:31 AM
**To:** Packard, Elise
**Subject:** FW: FOIA appeal

RESENT JANUARY 22.

---

**From:** Vary, George
**Sent:** Wednesday, January 09, 2008 11:10 AM
**To:** 'ePackard@doc.gov'
**Cc:** 'Hagg, Keith'
**Subject:** FW: FOIA appeal

I realize you're busy and I hesitate to bring this small matter to your attention, but, frankly, I cannot believe that this appeal, involving but a few documents, has dragged out so long with no end in sight. (Mr. Hagg left me a voice mail last evening confirming he had not reviewed the paralegal review and could not provide me with a date by which our appeal would conclude).

But what truly is of concern to me, and I hope you, is the fact, documented below by Mr. Hagg's e-mails of March 9 and October 4, that <u>nobody's</u> appeal was processed in at least seven months during 2007. Moreover, Mr. Hagg has not been providing the promised monthly updates. These shortcomings seem to me to be cause for alarm.

I have been more than patient in this matter, but my members keep asking me what the status of the appeal is and I lack a good answer.

I look forward to hearing from you.

## Vary, George

**From:** Vary, George
**Sent:** Wednesday, January 23, 2008 1:54 PM
**To:** 'Packard, Elise'
**Subject:** RE: FOIA appeal

Thank you for your response. However, as you can see from the correspondence, from March until October there was no progress on clearing any appeal, which does not indicate to me expeditious treament of my appeal, nor anyone else's for that matter. As to the paralegal review, I have seen no indication that that has advanced the process any, and your response offers none. Finally, Mr. Hagg has not been updating me as was represented he would.

In short, as I sit here today, as far as I know I am no closer to having this appeal resolved than I was, at the latest, last March. I find that troubling, and would hope you would, too.

George Vary

---

**From:** Packard, Elise [mailto:ePackard@doc.gov]
**Sent:** Wednesday, January 23, 2008 1:20 PM
**To:** Vary, George
**Cc:** Hagg, Keith
**Subject:** RE: FOIA appeal

Dear Mr. Vary,

I understand that your appeal involves 137 documents, which is not by our definition a few. We are working on your appeal expeditiously. In fact, as I gather Mr. Hagg has told you, we assigned a paralegal to help move it along. However, we cannot take you ahead of the other appeals. Mr. Hagg will continue to keep you informed of the progress on this.

Thank you.

Elise Packard
Chief, General Law Division
Department of Commerce
(202) 482-0386
fax (202) 482-2552

---

**From:** Vary, George [mailto:gvary@zinc.org]
**Sent:** Tuesday, January 22, 2008 11:31 AM
**To:** Packard, Elise
**Subject:** FW: FOIA appeal

RESENT JANUARY 22.

---

**From:** Vary, George

3/11/2008

## Vary, George

| | |
|---|---|
| **From:** | Hagg, Keith [KHagg@doc.gov] |
| **Sent:** | Wednesday, February 20, 2008 3:51 PM |
| **To:** | Vary, George |
| **Subject:** | RE: AZA FOIA Appeal |

Mr. Vary:

Currently, there are two appeals in my queue that precede the AZA appeal. However, I have been -- and will continued to -- work on the AZA Freedom of Information Act administrative appeal notwithstanding the placement of that appeal in my queue.

Regards,

Keith A. Hagg
Attorney-Advisor
Assistant General Counsel for Administration
General Law Division
U.S. Department of Commerce
Tel: (202) 482-1315
fax: (202) 482-2552
khagg@doc.gov

---

**From:** Vary, George [mailto:gvary@zinc.org]
**Sent:** Wednesday, February 20, 2008 3:09 PM
**To:** Hagg, Keith
**Subject:** FW: AZA FOIA Appeal

RESENT 2/20

---

**From:** Vary, George
**Sent:** Monday, February 18, 2008 11:51 AM
**To:** 'Hagg, Keith'
**Subject:** AZA FOIA Appeal

It has been more than a month (Jan. 8) since I have had an update from you.  Please let me know where our appeal stands in the queue.

George Vary

# EXHIBIT

# I



**UNITED STATES DEPARTMENT OF COMMERCE**
**Office of the General Counsel**
Washington, D.C. 20230

George Vary
Executive Director
American Zinc Institute
2025 M Street, NW
Suite 800
Washington, DC 20036

JUN 0 9 2008

Dear Mr. Vary,

Enclosed please find 70 documents that are being released to you in their entirety, in response to your July 10, 2006 Freedom of Information Act (FOIA) appeal. Additional documents are being withheld in full or in part pursuant to FOIA exemption (b)(5), which protects from disclosure information that is predecisional and deliberative in nature. Finally, four documents have been referred to the Department of State, and seven have been referred to the Center for Environmental Quality for disclosure determinations.

With respect to any documents partially withheld, the segregable portions of those documents will be sent to you under separate cover as soon as they are processed. Any fully withheld documents and withheld portions of documents will be addressed in the Department's <u>Vaughn</u> Index, to be filed with the Court at a later date.

If you have any questions, please feel free to contact me.

Sincerely,

Sarah E. Coe
Senior Counsel

Enclosures

cc:    Mercedeh Momeni (w/o enclosures)

# EXHIBIT

# J



**UNITED STATES DEPARTMENT OF COMMERCE**
**Office of the General Counsel**
Washington, D.C. 20230

George Vary
Executive Director
American Zinc Institute                    JUN 1 3 2008
2025 M Street, NW
Suite 800
Washington, DC 20036

Dear Mr. Vary,

This is a follow-up to my June 9, 2008 letter in which I indicated that documents that were being partially released to you would be sent under separate cover. Enclosed please find 14 documents that are being released to you in their entirety, five documents that are being released to you in part, and nine documents that have had non-responsive portions redacted. This release is in response to your July 10, 2006 Freedom of Information Act (FOIA) appeal. With respect to the documents referred to the Department of State (DOS) and the Center for Environmental Quality (CEQ), referenced in my June 9, 2008 letter, all but one document were determined to be fully releasable, and are included in this release. One CEQ document was partially withheld. The releasable portions of that document are also included this release.

To the extent the enclosed documents contain redactions based on FOIA Exemptions, the withheld portions will be addressed in the Department's Vaughn Index, to be filed with the Court at a later date. The Vaughn Index will also address any documents withheld in their entirety.

If you have any questions, please feel free to contact me.

Sincerely,

Sarah E. Coe
Senior Counsel

Enclosures

cc:    Mercedeh Momeni (w/o enclosures)

# EXHIBIT

# K

Joanne
Sonenshine/MAS/ITA/USDO
C

05/02/2006 11:00 AM

To    Ellen Bohon/TD/ITA/USDOC@USDOC, Marc Lemmond, Christian Brittle, Kim Copperthite, Alessandra Cortez, Maria D'Andrea, Daniel Edwards/MAS/ITA/USDOC@USDOC, Leonard Heimowitz, David Cammarota, James McElroy, Andy Parris, Gary Stanley

cc

bcc

Subject    Fw: TPSC 2006-100: WTO Market Access for Non-Agricultural Products - Proposed Negotiating Text on Treatment of Remanufactured Products

At long last....

Please find attached our TPSC paper on Treatment for Remanufactured Products. All comments please send to me by noon tomorrow (WED). This paper will also be available for ITAC review. It should only be made available to cleared advisors at this stage.

If you have questions, please let me know. Thanks for your help!

Joanne

----- Forwarded by Joanne Sonenshine/MAS/ITA/USDOC on 05/02/2006 10:57 AM -----

Jane
Corwin/MAS/ITA/USDOC

05/02/2006 10:56 AM

To    Joanne Sonenshine, Adam OMalley, Mary Thornton

cc    Jean Janicke

Subject    Fw: TPSC 2006-100: WTO Market Access for Non-Agricultural Products - Proposed Negotiating Text on Treatment of Remanufactured Products

Joanne, your lead.
----- Forwarded by Jane Corwin/MAS/ITA/USDOC on 05/02/2006 10:55 AM -----



Dava
Kunneman/OUS/ITA/USDOC

05/02/2006 10:34 AM

To    Alysha Taylor/MAC/ITA/USDOC@USDOC, Dean Matlack/OUS/ITA/USDOC@USDOC, Jane Corwin/MAS/ITA/USDOC@USDOC, Jean Janicke/MAS/ITA/USDOC@USDOC, Lesley Stagliano/IA/ITA/USDOC@USDOC, occic@doc.gov, Roxanne Milner/MAC/ITA/USDOC, Valerie Dees/MAC/ITA/USDOC@USDOC, Adrienne Waite/IA/ITA/USDOC@USDOC, Aisha Jones/IA/ITA/USDOC@USDOC, Tim Truman/IA/ITA/USDOC@USDOC, Sarah Keyes/IA/ITA/USDOC@USDOC, Dean Matlack/OUS/ITA/USDOC@USDOC, Lesley Stagliano/IA/ITA/USDOC@USDOC, Paige Rivas/IA/ITA/USDOC@USDOC, Samantha Biondo/IA/ITA/USDOC@USDOC, Matt Priest/IA/ITA/USDOC@USDOC, Katja Kravetsky/IA/ITA/USDOC, Valerie Dees/MAC/ITA/USDOC@USDOC, Valerie Dees/MAC/ITA/USDOC@USDOC, Dean Matlack/OUS/ITA/USDOC@USDOC, Lesley Stagliano/IA/ITA/USDOC@USDOC, Courtney Cooper/MAC/ITA/USDOC@USDOC, Eric Smith/MAC/ITA/USDOC@USDOC



cc   Skip Jones/MAC/ITA/USDOC@USDOC

Subject   TPSC 2006-100: WTO Market Access for Non-Agricultural Products - Proposed Negotiating Text on Treatment of Remanufactured Products

## TPSC Comment Tracking Database

Document Number: **2006-100**

Subject: **WTO Market Access for Non-Agricultural Products – Proposed Negotiating Text on Treatment of Remanufactured Products**

Type: **TPSC**   Year: **2006**   Grouping: WTO

Lead: **MAC**

USTR Contact: **Barbara Norton (202-395-9568;Barbara_Norton @ustr.eop.gov**

**Unit Comments Due: 01:00 PM on 05/03/2006**

**OGC Final Comments Due: 09:00 AM on 05/04/2006**

## Document Section

Incoming Document(s):    Reman 050106 to TPSC.rev.cl1.doc    Reman draft TPSC paper - to TPSC 050106.rev.cldoc.doc

draft reman text cover note 050106 to TPSC.doc



| | Joanne | | Joseph Ayoub/TD/ITA/USDOC@USDOC, Suleiman |
|---|---|---|---|
| | Sonenshine/TD/ITA/USDOC | To | Bengharsa/TD/ITA/USDOC@USDOC, Christian |
| | 10/04/2005 12:41 AM | | Brittle/TD/ITA/USDOC@USDOC, David |
| | | cc | Sarah Aker/TD/ITA/USDOC@USDOC |
| | | bcc | |
| | | Subject | Fw: draft reman paper |

Please find attached a draft of the paper on the benefits of reduced barriers to trade in remanufactured goods that we plan to submit as a formal proposal to the WTO Negotiating Group during next week's NAMA negotiations. I have not had a chance to review the text but wanted to ensure that you all had a chance to review before we pass it on for inter-agency review. Please provide comments to me by COB Tuesday. I will be out of the office on Tuesday and unfortunately will not have access to email but will be sure to pass on any comments first thing Wednesday.
Many thanks in advance,
Joanne
-----Forwarded by Joanne Sonenshine/TD/ITA/USDOC on 10/04/2005 12:35AM -----

To: John Cobau, Joanne Sonenshine/TD/ITA/USDOC@USDOC, Jean Janicke
From: Edward Brzytwa/MAC/ITA/USDOC
Date: 10/03/2005 06:35PM
cc: Cara Morrow, Skip Jones, Edward Dunn
Subject: draft reman paper

Hi Jean, Joanne, and John,

I apologize for delivering this draft reman paper so close to the October NAMA week. Given our time constraints, I would greatly appreciate your comments by COB tomorrow, Oct. 7, 2005. If you can't make that deadline, I totally understand. Regardless, in order for us to table the paper in Geneva next week, we really should transmit it to USTR on Wednesday. If you have comments ready after that, we can incorporate them later this week. Please let me know if you have any questions. I'll be at my desk all day tomorrow if you need me.

Best regards,

Ed B.

 - Draft Reman Proposal 100305.wpd

September 24, 2004

MEMORANDUM FOR       Raymond A. Mosley
                             Director, Office of the Federal Register
                             National Archives and Records Administration

FROM:                     Annette F. Henderson
                             ITA/TD Federal Register Liaison Officer
                             Office of Planning, Coordination and Management

PREPARED BY:         Sarah E. Aker
                             (202-482-4073)

SUBJECT:              Submission for Publication

Attached is an original document and two certified copies that are being submitted for publication in the FEDERAL REGISTER. Please call Sarah E. Aker at (202) 482-4073 once the document is received and scheduled for publication. Due to Federal Advisory Committee Act Regulations, with which our office must abide, I request the Emergency Publication of this submission to the Federal Register no later than Wednesday, October 7, 2004.

Further, I certify that the diskette furnished with document FRPEC.doc is a true copy of the original signed document and should be used by GPO in preparing the document for publication.

Attachments

Joseph
Bogosian/TD/ITA/USDOC

08/09/2005 11:46 AM

To   david_cammarota@ita.doc.gov, sarah.aker@mail.doc.gov

cc

bcc

Subject   Fw: 3Rs

----- Forwarded by Joseph Bogosian/TD/ITA/USDOC on 08/09/2005 11:44 AM -----

"Vary, George" <gvary@zinc.org>

08/09/2005 10:47 AM

To:     <joseph.bogosian@mail.doc.gov>

cc:    "Van Hoogstraten, David J \(OES\)" <VanHoogstratenDJ@state.gov>

Subject:   3Rs

Joe, Kate Krebs, Chip Foley and I have considered your letter of July 29 and felt we had no choice but to respond with our concerns.  As always, we remain available to discuss this matter with you at any time, and hope to do so.

Regards.

George   Bogosian Reply.doc



"Pinero, Edwin"
<Edwin_Pinero@ceq.eop.gov
>

07/27/2005 03:04 PM

To   <Sarah.Aker@mail.doc.gov>,
<vanhoogstratendj@state.gov>

cc   <joseph.bogosian@mail.doc.gov>, <ed.pinero@ofee.gov>

bcc

Subject   RE: Letter to George Vary with OGC suggestions &
clearance

my minor edit. I softened the word "constrained" in that it might mean that we are not doing as much as
we can.

But not a fall on the sword kind of thing; if you all prefer "constrained", I would be okay with it too.

Ed


-----Original Message-----
**From:** Sarah.Aker@mail.doc.gov [mailto:Sarah.Aker@mail.doc.gov]
**Sent:** Wednesday, July 27, 2005 2:59 PM
**To:** vanhoogstratendj@state.gov; Pinero, Edwin; Pinero.Ed@epamail.epa.gov
**Cc:** joseph.bogosian@mail.doc.gov
**Subject:** Letter to George Vary with OGC suggestions & clearance


Hi David and Ed,

Please see attached: A new draft version of a letter to George Vary
with OGC's suggestions. Please advise.

Thanks
-Sarah



George Vary letter with pinero edit.doc

| | | |
|---|---|---|
| Rebecca<br>Bernier/MAS/ITA/USDOC<br>12/19/2005 09:21 AM | To | June_Posey@ita.doc.gov |
| | cc | Tu-Trang Phan/TD/ITA/USDOC@USDOC, Joe<br>Neuhoff/MAS/ITA/USDOC@USDOC, Jane<br>Corwin/MAS/ITA/USDOC@USDOC, Jean |
| | bcc | |
| | Subject | Fw: Briefing for Al on Environmental Trade Issues |

June, I know we spoke about this but wanted to see if it is on Al's calendar yet? Also I thought when it is scheduled, it would be a good idea to also include Joey Neuhoff.
----- Forwarded by Rebecca Bernier/MAS/ITA/USDOC on 12/19/2005 09:26 AM -----

| | | |
|---|---|---|
| Joanne<br>Sonenshine/TD/ITA/USDOC<br>11/28/2005 02:09 PM | To | Rebecca Bernier/MAS/ITA/USDOC@USDOC |
| | cc | Jane Corwin, Jean Janicke |
| | Subject | Briefing for Al on Environmental Trade Issues |

Rebecca,
It was nice to finally meet you today! I hope you and and Al found our Doha briefing useful.

As Jane mentioned, our office has been doing a lot of work recently, (at an increasing rate), on environmental trade issues and given Al's request for a briefing, I would be happy to set something up with the both of you. In advance of that, I have attached two documents to this email that will give you a basic idea about the role we have begun to play in many of these issues. The first is a visual representation (via a matrix) of how OTPA is involved in some of the key environmental trade issues relevant to this Administration. This is in draft form and we may be incorporating some additional comments from Jack. The second is a write-up of why OTPA (and MAS in general) is relevant and essential in promoting cross-sectoral environmental trade policy issues.

OTPA is being tasked by State, USTR and other DOC units to provide cross-sectoral trade policy analysis and management to issues ranging from the 3Rs to sustainable development and globalization. We are beginning to work not just inter-agency, but also with international organizations including the UN and OECD on some of these topics. We believe that our office has a crucial role to play given our ability to target all sectors and ensure that each message is disseminated in a cohesive and coordinated way.

I look forward to discussing some of these envrionmental trade policy issues in more depth with you and Al at a time that suits you.

Again, it was a pleasure to meet you today!

Regards,
Joanne Sonenshine

  

Environmental Matrix 10_05.ppt   Market Access Environmental Initiatives Business Casev3.doc

## 000034

| | |
|---|---|
| Carla Langjahr/TD/ITA/USDOC | To | Jamie Estrada/TD/ITA/USDOC@USDOC, Joe Neuhoff/MAS/ITA/USDOC@USDOC, Chris Walters/MAS/ITA/USDOC@USDOC |
| 12/29/2005 02:31 PM | cc | Sarah Aker/TD/ITA/USDOC@USDOC, Joanne Sonenshine/MAS/ITA/USDOC@USDOC |
| | bcc | |
| | Subject | Fw: 3R Senior Officials Meeting Questionnaire and Time Table |

I am writing to reschedule the 3R's meeting for Tuesday, January 3 at 11:00 a.m. Sarah received a request for information on DOC's progress on the 3R's initiative from State. Before we can complete the request, we must determine who/what office will be handle such inquiries.
Please mark your calendar. I am hoping we can have the meeting in Jamie's office. Room 2800.
Thanks.

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650

—— Forwarded by Carla Langjahr/TD/ITA/USDOC on 12/29/2005 02:24 PM ——



| | |
|---|---|
| Sarah Aker/MAS/ITA/USDOC | |
| 12/29/2005 10:26 AM | To | "Goldberg, Marsha S (OES)" <GoldbergMS@state.gov> |
| | cc | "'waxmonsky.gary@epa.gov'" <waxmonsky.gary@epa.gov>, Joanne Sonenshine/MAS/ITA/USDOC@USDOC, Carla Langjahr/TD/ITA/USDOC@USDOC |
| | Subject | Re: FW: 3R Senior Officials Meeting Questionnaire and Time Table |

Thanks for the info Marsha. I hope to have a name of the DOC reps by next week. It is looking like it might be our DAS for Manufacturing, Jamie Estrada, but we still need to discuss.

There have been some 3Rs-related activities happening here at the DOC with respect to trade policy and some other areas. I will send these around and see if we can contribute.

Thanks again,
-Sarah
"Goldberg, Marsha S (OES)" <GoldbergMS@state.gov>

| | |
|---|---|
| "Goldberg, Marsha S (OES)" <GoldbergMS@state.gov> | |
| 12/29/2005 09:01 AM | To | "'Sarah.Aker@mail.doc.gov'" <Sarah.Aker@mail.doc.gov>, "'waxmonsky.gary@epa.gov'" <waxmonsky.gary@epa.gov> |
| | cc | |
| | Subject | FW: 3R Senior Officials Meeting Questionnaire and Time Table |

Sarah and Gary,
Dave Hermann just sent me this. Apparently we need to provide info on what the US has been doing in the 3R area. This sounds like a place where EPA

000034

would have information. Please take a look at the forms and let me know if you can provide assistance. I also think a meeting in January would be helpful so that we can determine who is going and who is doing what.

Marsha

Marsha S. Goldberg, Ph.D.
Foreign Affairs Officer/ AAAS Diplomacy Fellow
U.S. Department of State
Office of Environmental Policy (OES/ENV)
Washington, DC 20520
tel: (202) 736-7111
fax: (202) 647-5947
goldbergms@state.gov

-----Original Message-----
From: Hermann, David C(Tokyo)
Sent: Thursday, December 29, 2005 2:59 AM
To: Goldberg, Marsha S (OES)
Cc: Midha, Kristina I (EAP/J)
Subject: FW: 3R Senior Officials Meeting Questionnaire and Time Table

Did they fwd this to you Marsha?   - Dave   EST Tokyo

-----Original Message-----
From: 3R [mailto:3R@env.go.jp]
Sent: Wednesday, December 28, 2005 7:47 PM
To: Ms Angie Leith; Mr.Kenneth L.Peel; Mr. Sean M. Bigley
Cc: HermannDC; KandachiKX; Mr. Harihiko Nishimura(?? ??)
Subject: 3R Senior Officials Meeting Questionnaire and Time Table

Dear Colleagues,

As stated in the letter dated on November 30, we would request you to fill in the attached questionnaire. Please send it prior to 23 January by e-mail to 3R@env.go.jp  or by fax to +81-1-3593-8262. While it is preferable to have information on all items in the questionnaire, please submit information on as many items as possible by the deadline.

Thank you in advance for your cooperation.

Hiroaki TAKIGUCHI (Mr.)
Head of the Task Force for the 3R Initiative, Waste Management and Recycling Department, Ministry of the Environment, Japan
Email: 3R@env.go.jp
Tel: +81-3-5501-3152
Fax: +81-3-3593-8262

  

3RquestionnaireGOV.doc  3RshowcaseL.xls  3RSOMtimetable.pdf

000039

| | | |
|---|---|---|
| Carla Langjahr/MAS/ITA/USDOC 03/06/2006 09:32 AM | To | Kim Wells/MAS/ITA/USDOC@USDOC, Robert Beadle/MAS/ITA/USDOC@USDOC, Richard Reise/MAS/ITA/USDOC@USDOC, Forrest Joanne Sonenshine/MAS/ITA/USDOC@USDOC, Edward |
| | cc | Brzytwa/MAC/ITA/USDOC@USDOC, Sarah Aker/TD/ITA/USDOC@USDOC, Jamie |
| | bcc | |
| | Subject | 3R's Industry Symposium and ITAC Participation- |

Designated Federal Officers:

Deputy Assistant Secretary for Manufacturing Jamie Estrada is leading the U.S. Delegation at the March 6 - 8 3Rs (reduce, reuse and recycle) Senior Officials Meeting in Tokyo, Japan. The purpose of the meeting is to evaluate work done by participants in promoting the 3Rs Initiative domestically and internationally and to discuss areas for future work. DAS Jamie Estrada plans to use the 3Rs Senior Officials Meeting to emphasize the importance of eliminating barriers to trade in remanufactured, recovered and recycled products, as well as the development and deployment of clean energy technologies. On March 16, Commerce will hold a follow-up industry symposium to brief the group on the Tokyo meeting and to provide a forum for collaboration on furthering the 3Rs Initiative.

I am writing to request participation/attendance from the ITACs for this event. Please forward along the invitation if you think members of your ITAC will be interested in participating. Please contact me should you have any questions or require additional information.

I am attaching the invitation, agenda and guest list. Thank you for your assistance.

Carla Langjahr

---

The Commerce Department invites you to The 2006 3R's Industry Symposium

**Background:** The Department of Commerce will be leading the U.S. Delegation at the March 6 - 8 3Rs Senior Officials Meeting in Tokyo, Japan. The 3Rs Senior Officials Meeting will serve two purposes: (1) to evaluate work done thus far by participants in promoting the 3Rs Initiative domestically and internationally and (2) to discuss possible areas for future work.

DAS Jamie Estrada, as head of the U.S. delegation, plans to use the 3Rs Senior Officials Meeting to emphasize the importance of eliminating barriers to trade in remanufactured, recovered and recycled products, as well as the development and deployment of clean energy technologies. U.S. industry's input and involvement in the 3Rs Initiative and related work will be directly conveyed to participants at the Senior Officials Meeting. The 2006 3Rs Industry Symposium will bring U.S. Government, Industry and Civil Society officials together to collaborate on furthering the 3Rs Initiative domestically and internationally and follow-up from the 3Rs Senior Officials Meeting.

<u>Date</u>: Thursday, March 16, 2006
<u>Time</u>: 9:00 a.m. - 12:00 p.m.

000039

Location: Department of Commerce Auditorium
Please arrive at the Department of Commerce main entrance by 8:45 a.m. in order to make your way through Security. We will have representative to escort guests to the meeting location.

**\* The agenda is attached.**

RSVP: Carla Langjahr (202-482-4650 / carla_langjahr@ita.doc.gov) by Friday, March 10.

Please Contact Carla Langjahr (202-482-4650 ' carla_langjahr@ita.doc.gov) or Joanne Sonenshine (202-482-3074 / joanne_sonenshine@ita.doc.gov) with any questions.

Agenda Mar 06 Industry Symposium.doc   3R's industry symposium 2006.xls

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650

# TRANSFERRED/RECOMMEND RELEASE

# RECOMMEND AND TRANSFER - COM

Carla
Langjahr/MAS/ITA/USDOC
03/15/2006 01:37 PM

To  Joanne Sonenshine/MAS/ITA/USDOC@USDOC

cc  Carla Langjahr/MAS/ITA/USDOC@USDOC,
ed.pinero@ofee.gov, Jamie
Estrada/MAS/ITA/USDOC@USDOC

bcc

Subject  Re: BIG CHANGE

Joanne, I will do.
Ed, thank you for the offer.

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650
Joanne Sonenshine/MAS/ITA/USDOC

Joanne
Sonenshine/MAS/ITA/USDO
C.
03/15/2006 01:32 PM

To  ed.pinero@ofee.gov

cc  Carla Langjahr/TD/ITA/USDOC, Jamie
Estrada/MAS/ITA/USDOC@USDOC

Subject  Re: BIG CHANGE

Ed, I am sorry that that is the case. I would like for you to speak on his behalf (if that is ok) unless Jamie
has a different thought.
Carla - we will need to alert Al's office so Al does not thank Mr. Connaughton for speaking when in reality,
it was Mr. Pinero.

ed.pinero@ofee.gov



ed.pinero@ofee.gov
03/15/2006 01:27 PM

To  Joanne_Sonenshine@ita.doc.gov

cc

Subject  BIG CHANGE

Joanne

Hate to do this to you, but I just (as in right now) heard from Chairman
Connaughton's office that he will be offsite tomorrow morning, and
cannot do this.  For this to happen so late usually means a "specific
office" needs him.

So, we need a plan B.  As I wrote his talking points, and am also WH, do
you want me to deliver comments on his behalf (and I can say as much)?
Or do we skip it and say sorry to all?

I am so sorry for this, but when one has the President's senior advisers

on the agenda, this risk is inherent.

Whatever you decide is how we will proceed.

Ed

Joanne_Sonenshin
e@ita.doc.gov                                                                To

03/15/2006 08:07          "Hermann, David C"
AM                        <HermannDC@state.gov>                              cc

                          ed.pinero@ofee.gov, "Goldberg,
                          Marsha S (OES)"
                          <GoldbergMS@state.gov>,
                          "Kandachi, Keiko"
                          <KandachiKX@state.gov>
                                                                        Subject
                          RE: Comments on 3R talking points

Dave,
To give a bit of context, at tomorrow's industry symposium, Ed, Jamie
and David will all be speaking, along with Chairman Connaughton and
other agency representatives. Therefore, David's comments will focus on
State's involvement and work going forward from State's perspective. The
overview of the SOM will be addressed by others, for example, so I
suggested to Marsha that David speak about some of the more specific
points (like Basel and our work with Japan, etc.) That is why you may
see the points more specifically related to Basel and Japan and not more
overarching themes. Just wanted to help you understand where these
initial thoughts may have come from.
Joanne

"Hermann, David C"
<HermannDC@state.gov>

                                                                           To
03/15/2006 03:40 AM       <Joanne_Sonenshine@ita.doc.gov>,
                          "Goldberg, Marsha S (OES)"
                          <GoldbergMS@state.gov>                            cc

                          <ed.pinero@ofee.gov>, "Kandachi,
                          Keiko" <KandachiKX@state.gov>
                                                                      Subject
                          RE: Comments on 3R talking points

Thanks Marsha --

These points mainly seem to be about Basel Convention and cooperation with Japan.   That's fine I guess, but not sure why those are the areas of emphasis.   I guess its not clear to me the msg you want David Brown to be getting across.

I could see having additional points (or collections of points) about:

▾ general overview of 3Rs SOM (could use summary of Tokyo 1361)
▾ progress achieved (or lack thereof)
▾ major hurdles (here you could mention some divergent views from participating countries)
▾ issues related to Basel Convention (then include some of your points)
▾ next steps /Japan's leadership (include pts you've written)
▾ long-term U.S. goals

For this last one, you could lift text from the last para of our comment:
> More progress in working out standards for determining what qualifies as a recycled or remanufactured good will be needed as the United States and like-minded developed nations seek to convince developing nations that they are not simply serving as dumping grounds for used-up equipment.
> Developed countries will need to pay more attention to helping developing nations improve their recycling capacities and regulatory structure to better use the material flows more effectively.
> More work will also be needed to ensure that waste from electronic and electric appliances containing such hazardous materials as lead and mercury do not threaten the environment and human health when they are disassembled to recycle parts and are not dumped without proper treatment.

Anyway, for the text you already prepared, it looks fine w/ Joanne's edits. I would only add the word "sustainable" before development in the last point.

It does sound VERY down on Basel - is that intentional?  Is there a reason to single out the German rep's comments for your audience?    I like that you're focussing on what Japan is doing, but is that what they want to hear about?

Anyway, hope this helps, let us know if there's anything else.

- Dave Hermann  EST Tokyo


-----Original Message-----

From: Joanne_Sonenshine@ita.doc.gov
[mailto:Joanne_Sonenshine@ita.doc.gov]
Sent: Wednesday, March 15, 2006 5:24 AM
To: Goldberg, Marsha S (OES)
Cc: Hermann, David C; ed.pinero@ofee.gov
Subject: Re: Comments on 3R talking points


Looks like a good general set of points. Here are a couple of suggested
edits. I have also copied Ed Pinero as he may have some thoughts.



"Goldberg, Marsha S \(OES\)"
<GoldbergMS@state.gov>
                                                                    To
                                            <Joanne_Sonenshine@ita.doc.gov>,
03/14/2006 03:07 PM                         "Hermann, David C"
                                            <HermannDC@state.gov>
                                                                    cc

                                                                    Subject
                                            Comments on 3R talking points



Hi Joanne and Dave.
Based on the draft cable and my conversation this morning with Joanne
these are the talking points I developed for Dave Brown. Could you
please add/delete as appropriate. Some of the statements are a bit
cryptic but that's all I could glean from the cable. A bit more detail
might be helpful to Dave. Also were there any other issues I might add?
If you could return ASAP I would appreciate as I have a few more people
to circulate to once I get the message from the meeting correct.   Thanks


Marsha


Marsha S. Goldberg, Ph.D.


Foreign Affairs Officer/ AAAS Diplomacy Fellow


U.S. Department of State

Office of Environmental Policy (OES/ENV)

Washington, DC 20520

tel: (202) 736-7111

fax: (202) 647-5947

goldbergms@state.gov (See attached file: TALKING POINTS ON 3R STATE JS
Edits.doc)

TALKING POINTS ON 3R STATE JS Edits.doc

000056

| | | |
|---|---|---|
| Carla Langjahr/MAS/ITA/USDOC 03/01/2006 10:37 AM | To | Marge Donnelly/MAS/ITA/USDOC@USDOC, David Cammarota/MAS/ITA/USDOC@USDOC, Joe Neuhoff/MAS/ITA/USDOC@USDOC, Henry |
| | cc | Jeffrey Gren/MAS/ITA/USDOC@USDOC, Jamie Estrada/TD/ITA/USDOC@USDOC |
| | bcc | |
| | Subject | 3R's Industry Symposium on March 16 |

Dear Office Directors,

Included is the invitee list for the 3R's Industry Symposium on March 16. Please reach out to relevant industry to encourage attendance and participation. I have included the invitation and agenda as well.

Thank you for your assistance.

Carla

 3R's industry symposium 2006.xls     Agenda Mar 06 Industry Symposium.doc

---

The Commerce Department invites you to The **2006 3R's Industry Symposium**

**Background:** The Department of Commerce will be leading the U.S. Delegation at the March 6 - 8 3Rs Senior Officials Meeting in Tokyo, Japan. The 3Rs Senior Officials Meeting will serve two purposes: (1) to evaluate work done thus far by participants in promoting the 3Rs Initiative domestically and internationally and (2) to discuss possible areas for future work.

DAS Jamie Estrada, as head of the U.S. delegation, plans to use the 3Rs Senior Officials Meeting to emphasize the importance of eliminating barriers to trade in remanufactured, recovered and recycled products, as well as the development and deployment of clean energy technologies. U.S. industry's input and involvement in the 3Rs Initiative and related work will be directly conveyed to participants at the Senior Officials Meeting. The 2006 3Rs Industry Symposium will bring U.S. Government, Industry and Civil Society officials together to collaborate on furthering the 3Rs Initiative domestically and internationally and follow-up from the 3Rs Senior Officials Meeting.

Date: Thursday, March 16, 2006
Time: 9:00 a.m. - 12:00 p.m.
Location: Department of Commerce Auditorium
Please arrive at the Department of Commerce main entrance by 8:45 a.m. in order to make your way through Security. We will have representatives to escort guests to the meeting location.

**\* The agenda is attached.**

RSVP: Carla Langjahr (202-482-4650 / carla_langjahr@ita.doc.gov) by Friday, March 10.

Please Contact Carla Langjahr (202-482-4650 / carla_langjahr@ita.doc.gov) or Joanne Sonenshine (202-482-3074 / joanne_sonenshine@ita.doc.gov) with any questions.

000056

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650

000056

| | |
|---|---|
| Carla Langjahr/MAS/ITA/USDOC<br>03/01/2006 02:31 PM | To  Ingrid Mitchem/MAS/ITA/USDOC@USDOC<br>cc  Edward Brzytwa/MAC/ITA/USDOC@USDOC, Joanne Sonenshine/MAS/ITA/USDOC@USDOC, Sarah Aker/TD/ITA/USDOC@USDOC, Jamie<br>bcc<br>Subject  3R's Industry Symposium on March 16 |

Dear Ingrid,

Ed Brzytwa suggested I contact you regarding invitations to the 3R's (reduce, reuse, recycle) Industry Symposium on March 16. Commerce is hosting this event to provide a summary of the 3R's Senior Officials Meeting in Tokyo and to continue to engage industry in promoting the 3R's initiative.

The response to the event has been low, so I mentioned efforts to encourage participation at our last staff meeting. An Office Director recommended that we extend this invitation to ITAC members, more specifically: ITACs 1,2,3,4,8,9,12, and 16. Can you offer any guidance for such an invitation?

I have included background information, the tentative agenda and the guest list for the Symposium. Please let me know if you have any questions or require additional information. Thank you for your assistance in this matter.

Carla

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650

  

3R's industry symposium 2006.xls  Agenda Mar 06 Industry symposium.doc

---

The Commerce Department invites you to The **2006 3R's Industry Symposium**

**Background:** The Department of Commerce will be leading the U.S. Delegation at the March 6 - 8 3Rs Senior Officials Meeting in Tokyo, Japan. The 3Rs Senior Officials Meeting will serve two purposes: (1) to evaluate work done thus far by participants in promoting the 3Rs Initiative domestically and internationally and (2) to discuss possible areas for future work.

DAS Jamie Estrada, as head of the U.S. delegation, plans to use the 3Rs Senior Officials Meeting to emphasize the importance of eliminating barriers to trade in remanufactured, recovered and recycled products, as well as the development and deployment of clean energy technologies. U.S. industry's input and involvement in the 3Rs Initiative and related work will be directly conveyed to participants at the Senior Officials Meeting. The 2006 3Rs Industry Symposium will bring U.S. Government, Industry and Civil Society officials together to collaborate on furthering the 3Rs Initiative domestically and internationally and follow-up from the 3Rs Senior Officials Meeting.

000056

Date: Thursday, March 16, 2006
Time: 9:00 a.m. - 12:00 p.m.
Location: Department of Commerce Auditoriur 1
Please arrive at the Department of Commerce main entrance by 8:45 a.m. in order to make your way
through Security. We will have representatives to escort guests to the meeting location.

**\* The agenda is attached.**

RSVP: Carla Langjahr (202-482-4650 / carla_l ngjahr@ita.doc.gov) by Friday, March 10.

Please Contact Carla Langjahr (202-482-4650 · carla_langjahr@ita.doc.gov) or Joanne Sonenshine
(202-482-3074 / joanne_sonenshine@ita.doc.g ov) with any questions.

000057

| | | |
|---|---|---|
| Carla<br>Langjahr/MAS/ITA/USDOC<br>03/02/2006 11:18 AM | To | Ingrid Mitchem/MAS/ITA/USDOC@USDOC |
| | cc | Edward Brzytwa/MAC/ITA/USDOC@USDOC, Jamie<br>Estrada/TD/ITA/USDOC@USDOC, Joanne<br>Sonenshine/MAS/ITA/USDOC@USDOC, Sarah |
| | bcc | |
| | Subject | Re: 3R's Industry Symposium on March 16 |

Ingrid,

Thank you for your response and the update on ITACs. I appreciate your suggestion, so I will follow up with MAS units for outreach.

Carla

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650
Ingrid Mitchem/MAS/ITA/USDOC

| | | |
|---|---|---|
| Ingrid<br>Mitchem/MAS/ITA/USDOC<br>03/02/2006 08:28 AM | To | Carla Langjahr/MAS/ITA/USDOC@USDOC |
| | cc | Edward Brzytwa/MAC/ITA/USDOC@USDOC, Jamie<br>Estrada/TD/ITA/USDOC@USDOC, Joanne<br>Sonenshine/MAS/ITA/USDOC@USDOC, Sarah<br>Aker/TD/ITA/USDOC@USDOC |
| | Subject | Re: 3R's Industry Symposium on March 16 |

Carla:

Currently, the ITACs are not set up yet for new charter term. This won't happen for at least another 2 weeks. In the meantime, if you would like to prepare an invite with further information, we can send out as soon as the ITACs are up and running or you will have to go through other MAS units for industry outreach given the March 16 date of the event.
Carla Langjahr/MAS/ITA/USDOC

| | | |
|---|---|---|
| Carla<br>Langjahr/MAS/ITA/USDOC<br>03/01/2006 02:31 PM | To | Ingrid Mitchem/MAS/ITA/USDOC@USDOC |
| | cc | Edward Brzytwa/MAC/ITA/USDOC@USDOC, Joanne<br>Sonenshine/MAS/ITA/USDOC@USDOC, Sarah<br>Aker/TD/ITA/USDOC@USDOC, Jamie<br>Estrada/TD/ITA/USDOC@USDOC |
| | Subject | 3R's Industry Symposium on March 16 |

Dear Ingrid,

Ed Brzytwa suggested I contact you regarding invitations to the 3R's (reduce, reuse, recycle) Industry

000057

Symposium on March 16. Commerce is hosting this event to provide a summary of the 3R's Senior Officials Meeting in Tokyo and to continue to engage industry in promoting the 3R's initiative.

The response to the event has been low, so I mentioned efforts to encourage participation at our last staff meeting. An Office Director recommended that we extend this invitation to ITAC members, more specifically: ITACs 1,2,3,4,8,9,12, and 16. Can you offer any guidance for such an invitation?

I have included background information, the tentative agenda and the guest list for the Symposium. Please let me know if you have any questions or require additional information. Thank you for your assistance in this matter.

Carla

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650

  

3R's industry symposium 2006.xls  Agenda Mar 06 Industry Symposium.doc

The Commerce Department invites you to The **2006 3R's Industry Symposium**

**Background:** The Department of Commerce will be leading the U.S. Delegation at the March 6 - 8 3Rs Senior Officials Meeting in Tokyo, Japan. The 3Rs Senior Officials Meeting will serve two purposes: (1) to evaluate work done thus far by participants in promoting the 3Rs Initiative domestically and internationally and (2) to discuss possible areas for future work.

DAS Jamie Estrada, as head of the U.S. delegation, plans to use the 3Rs Senior Officials Meeting to emphasize the importance of eliminating barriers to trade in remanufactured, recovered and recycled products, as well as the development and deployment of clean energy technologies. U.S. industry's input and involvement in the 3Rs Initiative and related work will be directly conveyed to participants at the Senior Officials Meeting. The 2006 3Rs Industry Symposium will bring U.S. Government, Industry and Civil Society officials together to collaborate on furthering the 3Rs Initiative domestically and internationally and follow-up from the 3Rs Senior Officials Meeting.

Date: Thursday, March 16, 2006
Time: 9:00 a.m. - 12:00 p.m.
Location: Department of Commerce Auditorium
Please arrive at the Department of Commerce main entrance by 8:45 a.m. in order to make your way through Security. We will have representatives to escort guests to the meeting location.

**\* The agenda is attached.**

RSVP: Carla Langjahr (202-482-4650 / carla_langjahr@ita.doc.gov) by Friday, March 10.

000057

Please Contact Carla Langjahr (202-482-4650 / carla_langjahr@ita.doc.gov) or Joanne Sonenshine (202-482-3074 / joanne_sonenshine@ita.doc.gov) with any questions.

000057

| | |
|---|---|
| Carla<br>Langjahr/MAS/ITA/USDOC<br>03/02/2006 02:17 PM | To  Matt Englehart/MAS/ITA/USDOC@USDOC |
| | cc  Cary Justice/MAS/ITA/USDOC@USDOC, Jack<br>McDougle/MAS/ITA/USDOC@USDOC, Jamie<br>Estrada/MAS/ITA/USDOC@USDOC |
| | bcc |
| | Subject  Re: Week Ahead |

DAS for Manufacturing, Jamie Estrada will lead the U.S. Delegation at the March 6 - 8 3Rs (reduce, reuse and recycle) Senior Official Meeting in Tokyo, Japan. The purpose of the meeting is to evaluate work done by participants in promoting the 3Rs Initiative domestically and internationally and to discuss areas for future work. DAS Jamie Estrada plans to use the 3Rs Senior Officials Meeting to emphasize the importance of eliminating barriers to trade in remanufactured, recovered and recycled products, as well as the development and deployment of clean energy technologies. On March 16, Commerce will hold a follow-up industry symposium to brief the group on the Tokyo meeting and to provide a forum for collaboration on furthering the 3Rs Initiative. .

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650

000064

| Carla Langjahr/MAS/ITA/USDOC 02/07/2006 12:13 PM | To | Leith.Angie@epa.gov |
| | cc | Sarah Aker/TD/ITA/USDOC@USDOC, Joanne Sonenshine/MAS/ITA/USDOC@USDOC, Edward Brzytwa/MAC/ITA/USDOC@USDOC, Chris |
| | bcc | |
| | Subject | DOC contributions for the 3R's Questionnaire |

Dear Ms. Leith,

I am attaching the Department of Commerce's submission for the 3R's Senior Officials Meeting on the Initiative Questionnaire on 3Rs' strategies and activities.

If you could include EPA's contribution, then the 3R's questionnaire should be ready for Interagency clearance. We hope to obtain clearance before the 3R's follow-up meeting next week. Please feel free to contact me should you have any questions or require additional information. Thank you.



3R's DOC Response Feb7.doc

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650

000070

| Carla | To | Rachel Krushinski/MAS/ITA/USDOC@USDOC |
| Langjahr/MAS/ITA/USDOC | cc | Jamie Estrada/TD/ITA/USDOC@USDOC |
| 02/22/2006 05:29 PM | bcc | |
| | Subject | Fw: Talking Points for 3Rs SOM PLEASE REVIEW |

Rachel,
Included are talking points for Jamie's upcoming 3Rs' Senior Officials Meeting.
I wasn't sure if additional MAS staff needed to review this document.
I thought I would send to OGC. Maybe we can discuss tomorrow.
Thanks

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650
----- Forwarded by Carla Langjahr/MAS/ITA/USDOC on 02/22/2006 05:27 PM -----

| Joanne | To | leith.angie@epamail.epa.gov |
| Sonenshine/MAS/ITA/USDO | | |
| C | | arnold.dana@ofee.gov, barbara_norton@ustr.eop.gov, |
| 02/21/2006 03:04 PM | | brownde3@state.gov, Carla.Langjahr@mail.doc.gov, |
| | | carla_langjahr@ita.doc.gov, chris.walters@mail.doc.gov, |
| | | Cross.Johnf@epamail.epa.gov, ed.pinero@ofee.gov, |
| | | GoldbergMS@state.gov, herman.chris@epamail.epa.gov, |
| | | Jamie.Estrada@ita.doc.gov, |
| | cc | Jennifer_prescott@ustr.eop.gov, Joe.Neuhoff@ita.doc.gov, |
| | | LewisLE@state.gov, Mcalister.Frank@epamail.epa.gov, |
| | | MidhaKl@state.gov, Sarah.Aker@mail.doc.gov, |
| | | waxmonsky.gary@epamail.epa.gov, |
| | | Whiting.Patricia@epamail.epa.gov, HermannDC@state.gov, |
| | | Edward Brzytwa |
| | Subject | Talking Points for 3Rs SOM PLEASE REVIEW |

All,
Please find the following documents for use during the 3Rs SOM.

Please review by 3pm Thursday as we need to finalize by this Friday (due to travel occurring directly before the 3Rs SOM).

1. Jamie Estrada Opening Plenary Talking Points
2. Jamie Estrada Opening Plenary Power Point
3. Working Group 1 Background/General Information/Talking Points
4. Working Group 2 Background/General Information/Talking Points

You will notice that the Working Group 1 material is quite extensive (taken largely from the questionnaire and 3Rs Portfolio) as the domestic discussion is the one in which DOC is least familiar and given that DOC may have to represent the US on both Working Groups, we wanted to have our bases covered. Also, you will see an emphasis on the trade issue (as that is the issue with which we are most familiar here at

000070

DOC) so please do add where you see fit.

Please add, delete, comment, etc.... I pulled most of the information from our questionairre.

Many thanks!

Joanne

Jamie Opening Points.doc   Opening.ppt   Working Group on Domestic Activities.doc   Working Group on Int'l Activities.doc

000070



leith.angie@epamail.epa.gov
02/22/2006 05:19 PM

To  Joanne_Sonenshine@ita.doc.gov

cc  arnold.dana@ofee.gov, barbara_norton@ustr.eop.gov, brownde3@state.gov, Carla.Langjahr@mail.doc.gov, carla_langjahr@ita.doc.gov,

bcc

Subject  Re: Talking Points for 3Rs SOM PLEASE REVIEW

Joanne

Attached are some suggested talking points for Work Group 1 - which are current and deal with 3Rs at the national level.  Also, I have included some of the activities EPA is involved with in OECD, Basel and CEC which you might want to use for Work Group 2.  I will look at Jamie's slide presentation tomorrow and give some comments.

Hope this is helpful - and let me know if you need anything else.

Angie Leith
U.S. Environmental Protection Agency
Office of Solid Waste (5306W)
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460
Tele:  (703) 308-7253
Fax:   (703) 308-8686
email: leith.angie@epa.gov

(See attached file: epa3rsinfo.doc)

Joanne_Sonenshine e@ita.doc.gov

02/21/2006 03:04 PM

To  Angie Leith/DC/USEPA/US@EPA

cc  arnold.dana@ofee.gov, barbara_norton@ustr.eop.gov, brownde3@state.gov, Carla.Langjahr@mail.doc.gov, carla_langjahr@ita.doc.gov, chris_walters@mail.doc.gov, JohnF Cross/DC/USEPA/US@EPA, ed.pinero@ofee.gov, GoldbergMS@state.gov, Chris Herman/DC/USEPA/US@EPA, Jamie.Estrada@ita.doc.gov, Jennifer_prescott@ustr.eop.gov, Joe.Neuhoff@ita.doc.gov, LewisLE@state.gov, Frank Mcalister/DC/USEPA/US@EPA, MidhaKI@state.gov, Sarah.Aker@mail.doc.gov, Gary Waxmonsky/DC/USEPA/US@EPA, Patricia Whiting/DC/USEPA/US@EPA, HermannDC@state.gov, Edward_Brzytwa@ita.doc.gov

000070

                                                    Subject
                              Talking Points for 3Rs SOM PLEASE
                              REVIEW

All,
Please find the following document for use during the 3Rs SOM.

Please review by 3pm Thursday as we need to finalize by this Friday (due
to travel occurring directly before the 3Rs SOM).

1. Jamie Estrada Opening Plenary Talking Points
2. Jamie Estrada Opening Plenary Power Point
3. Working Group 1 Background/General Information/Talking Points
4. Working Group 2 Background/General Information/Talking Points

You will notice that the Working Group 1 material is quite extensive
(taken largely from the questionaire and 3Rs Portfolio) as the domestic
discussion is the one in which DOC is least familiar and given that DOC
may have to represent the US on both Working Groups, we wanted to have
our bases covered. Also, you will see an emphasis on the trade issue (as
that is the issue with which we are most familiar here at DOC) so please
do add where you see fit.

Please add, delete, comment, etc.. . I pulled most of the information
from our questionairre.

Many thanks!

Joanne

(See attached file: Jamie Opening Points.doc)(See attached file:
Opening.ppt)(See attached file: Working Group on Domestic
Activities.doc)(See attached file: Working Group on Intl Activities.doc)

      

epa3rsinfo.doc  Jamie Opening Points.doc  Opening.ppt  Working Group on Domestic Activities.doc



Working Group on Intl Activities.doc

000071

| | |
|---|---|
| Joanne<br>Sonenshine/MAS/ITA/USDOC<br>02/23/2006 06:35 PM | To    Carla Langjahr/TD/ITA/USDOC<br><br>cc    ed.pinero@ofee.gov, Jamie<br>Estrada/MAS/ITA/USDOC@USDOC<br><br>bcc<br><br>Subject   Briefing Materials |

Carla/Ed

Here are the briefing materials as they stand (if I receive comments tomorrow, we'll just have to adjust for on the ground. I will also adjust on the ground any other final points if need be. I'll have everything electronically. Of course I would prefer to have this be the final version of everything but ya never know!)

Jamie's Opening Points and Plenary Presentation:

 

Jamie Opening Points.doc   Opening.ppt

WG1 Talking Points/Briefing Materials:



Working Group on Domestic Activities.doc

WG2  Talking Points/Briefing Materials:



Working Group on Intl Activities.doc

3Rs SOM Agenda/General Info/Timetable

  

annotated_agenda.pdf   Gen Info.pdf   3RSOMtimetable.pdf

U.S. Questionnaire Response/Showcase of Best Practices from EPA

 

3Rs Questionnaire for the United States.pdf   The Showcase of 3Rs Good Practices US.xls

3Rs SOM Issue Paper (FINAL sent by Japanese)/SOM Overview (from Japanese IGES)

 

3Rissuespaper.pdf   3RSOMOVERVIEW.ppt

EPA 3Rs Portfolio (Great examples of work we are doing domestically and internationally)



3R Portfolio final1.doc

Ministerial  Chair Summary From April 2005 (from Japanese)



Ministerial Draft Chair's Summary.pdf

WTO Remanufacturing Non-Tariff Barrier Paper (to pass out)

000071



Reman concept paper (W18A11).doc

Interesting press piece

Report emphasizes need.doc

000075

| | | |
|---|---|---|
| Joanne Sonenshine/MAS/ITA/USDOC 03/15/2006 03:01 PM | To | Jamie Estrada/MAS/ITA/USDOC@USDOC |
| | cc | Carla Langjahr/TD/ITA/USDOC |
| | bcc | |
| | Subject | Slide for Jamie |

History:    🖅 This message has been replied to.

Jamie,
Here is the slide I used. I re-crafted the language VERY slightly from the one we used in Tokyo to fit with your statements. Other slides you want me to include? I will have this on my data stick. FYI also - Ed will arrive at 8:30 and I will meet him in the lobby. From there we are going to head to Rm 3407 and I thought that might give me a few minutes to hear about his meeting with the Chief of Staff for CEQ today about the future of the 3Rs. Pls join us in room 3407 around 8:35 or so if you are free.

Joanne



Opening JE Slide.ppt

000075



Youlanda
Brown/MAS/ITA/USDOC
03/15/2006 05:05 PM

To    Jamie Estrada/MAS/ITA/USDOC@USDOC

cc

bcc

Subject   ppt 3Rs

US 3 R.ppt

| | | |
|---|---|---|
| Joanne<br>Sonenshine/MAS/ITA/USDOC<br>04/24/2006 11:55 AM | To | Jamie Estrada/MAS/ITA/USDOC@USDOC |
| | cc | Jane Corwin, Jean Janicke, Adam OMalley |
| | bcc | |
| | Subject | Sustainable Partnerships Website |

History:      🖅 This message has been replied to.

Jamie,
I received a call shortly before I left for Geneva last week by Lynn Lewis at Dept of State OES (she is my 3Rs, Sust. Consumption and Production contact) asking if Man Cho or I would be willing to sit on an editorial board made up of inter-agency representatives for a revamp of www.sdp.gov (a website highlighting industry/government partnerships promoting sustainable development). The mandate is attached to this email. Given that Man is on detail, I spoke to Dave Cammarotta about a good replacement and he was encouraged by my participation given the cross-sectoral work I have been doing on sustainability issues. I wanted to flag this for you and see if you think there is anyone better suited within Manufacturing before I go ahead and confirm my representation. Please give me a call with any questions.

Thanks,
Joanne

----- Forwarded by Joanne Sonenshine/MAS/ITA/USDOC on 04/24/2006 11:39 AM -----



| | | |
|---|---|---|
| "Brutten, Lori B \(OES\)"<br><BruttenLB@state.gov><br>04/19/2006 06:20 PM | To | "Joanne_Sonenshine" <Joanne_Sonenshine@ita.doc.gov> |
| | cc | |
| | Subject | Hopefully this one will go through. |

Lori B. Brutten
U.S. Department of State
Bureau of Oceans and International Environmental and Scientific Affairs, Office of Policy Coordination & Initiatives
Phone: 202/647-4758
Fax: 202/647-0773
Websites
Partnerships: www.sdp.gov
Sustainable Development: www.state.gov/g/oes/sus

----- Message from "Brutten, Lori B \(OES\)" <BruttenLB@state.gov> on Wed, 19 Apr 2006 18:17:47 -0400 -----

     "Martin Dieu" <dieu.martin@epa.gov>, "Heather Allen" <heather.allen@noaa.gov>,
     "Fredericks, Joseph A\(LPA/PIPOS\)\(RRB, M.01-066\)" <JFredericks@usaid.gov>,
     "Runde, Dan" <DRunde@usaid.gov>, "Adela Backiel" <adela.backiel@usda.gov>,
To: "Joanne Sonenshine" <Joanne_Sonenshine@ita.doc.gov>, "Graham Pugh"
     <graham.pugh@ee.doe.gov>, "Farris, Virginia L" <FarrisVL@state.gov>, "McArdle,
     Patricia \(OES\)" <McArdleP@state.gov>, "Hope, Colleen A \(PACE\)\(Arlington
     \(SA-15\)\)" <HopeCA@state.gov>
     "Clark, Janice E \(PACE\)\(Arlington \(SA-15\)\)" <ClarkJE4@state.gov>, "Armbruster,

cc: William B \(OES\)" <ArmbrusterWB@state.gov>, "Rochberg, Daniel R \(OES\)"
    <RochbergDR@state.gov>, "Celeste, Judith E \(OES\)" <CelesteJE@state.gov>

**Subject:** Agenda and draft TOR for Friday's meeting

Colleagues – I've attached the proposed agenda for the Editorial Board meeting on Friday.  I've also attached a draft of the Board's Terms of Reference for your review, which we will discuss on Friday.  If you need pre-clearance into the building, please send your DOB and the type of identification you will be using to Judith Celeste by COB Thursday.  Many thanks - lbb

Lori B. Brutten
U.S. Department of State
Bureau of Oceans and International Environmental and Scientific Affairs, Office of Policy Coordination & Initiatives
Phone:  202/647-4758
Fax:  202/647-0773
Websites
 Partnerships:  www.sdp.gov
 Sustainable Development:  www.state.gov/g/oes/sus

2006-04-19 SDP Ed Board TOR (draft).doc   Agenda 4-21-06 meeting.doc

To: Michelle O'Neill/TA/Osnet@osnet
From: Jeremy Marcus/HCHB/Osnet
Date: 05/05/2005 01:34PM
Subject: 3Rs

I have rewritten (or vastly edited) the 3Rs section of the speech.
It is the last section of the speech, and all my edits (including the ones I sent Monday) and the 3Rs are
included in this version of your speech.
Jeremy



MO May 9 ITAA JISA speech - jsm edit.doc

Carla                                              To    Jamie Estrada/TD/ITA/USDOC@USDOC
Langjahr/MAS/ITA/USDOC
02/04/2006 08:48 PM                                cc

                                                   bcc

                                           Subject   Fw: 3Rs's assignment returned

```
Jamie, not sure if you have time to meet on Monday re: 3Rs.  We have the
paper, need to determine pre and post symposium with industry, and getting you
properly briefed.  Thanks.
```

```
----- Original Message -----
From: Joanne Sonenshine
Sent: 02/03/2006 10:47 PM
To: Carla Langjahr
Cc: Sarah Aker
Subject: Re: 3Rs's assignment returned
```

Yes we should chat first thing Monday as we need to get this sent around inter-agency and then on to
JPN. It looks like I will be in Geneva the week before the 3Rs meeting so we will have to ensure that
Jamie is fully prepped asap.
Lots to do.... I'll touch base Monday.

Thanks!
Joanne

-----Carla Langjahr/MAS/ITA/USDOC wrote: -----

To: Sarah Aker/TD/ITA/USDOC@USDOC, Joanne Sonenshine/MAS/ITA/USDOC@USDOC, Edward
Brzytwa/MAC/ITA/USDOC@USDOC, Chris Walters/MAS/ITA/USDOC@USDOC
From: Carla Langjahr/MAS/ITA/USDOC
Date: 02/03/2006 05:20PM
Subject: 3Rs's assignment returned

Hi,
Included is the 3R's assignment  for your review.  The only contribution I received from Joanne's 3R's
distribution list was James McElroy.  I have added his name to his contribution should you have
questions.

Ok, I know I brought up corporate governance before, but you could call it environmental stewardship
--the Secretary of Commerce has referred to this phrase.  Last time I will bring up governance!

Can we touch base on Monday about the pre- or post Senior Officials Meeting? Thanks.


Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650

000087



3R's DOC Response.doc

| Jamie Estrada/MAS/ITA/USDOC | To | Joanne Sonenshine/MAS/ITA/USDOC |
| 03/15/2006 01:42 PM | cc | Carla Langjahr/TD/ITA/USDOC@USDOC, Cheri Hurd/MAS/ITA/USDOC@USDOC, Jane Corwin/MAS/ITA/USDOC@USDOC, Jean |
| | bcc | |
| | Subject | Re: Talking Points for 3Rs Industry Symposium |

Thanks...this is great...I'll review in more detail tonight and decide which points I will highlight.

One thought...can we put up the PowerPoint slide with our goals for the 3Rs?

Thanks.

-------------------------------------------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov

Joanne Sonenshine/MAS/ITA/USDOC

| Joanne Sonenshine/MAS/ITA/USDOC | To | Jamie Estrada/MAS/ITA/USDOC@USDOC |
| 03/15/2006 12:15 PM | cc | Carla Langjahr/TD/ITA/USDOC, Cheri Hurd/MAS/ITA/USDOC@USDOC, Tu-Trang Phan, Jane Corwin, Jean Janicke |
| | Subject | Talking Points for 3Rs Industry Symposium |

Jamie,
Here are some suggested points. As we discussed yesterday, feel free to pick and choose. Hopefully they will help to guide your discussion. If you have thoughts, suggestions, comments and prefer I edit in any way, please let me know.

Tu-Trang and Cheri, I have copied you because Al asked to see these points.

Thanks,
Joanne

[attachment "Jamie Points for Industry Symposium.doc" deleted by Jamie Estrada/MAS/ITA/USDOC]

000099

| | | |
|---|---|---|
| Jamie Estrada/MAS/ITA/USDOC 03/15/2006 04:59 PM | To | Joanne Sonenshine/MAS/ITA/USDOC |
| | cc | Carla Langjahr/TD/ITA/USDOC@USDOC |
| | bcc | |
| | Subject | Re: Slide for Jamie |

This is great.  Thanks!

------------------------------------------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov

Joanne Sonenshine/MAS/ITA/USDOC

| | | |
|---|---|---|
| Joanne Sonenshine/MAS/ITA/USDOC 03/15/2006 03:01 PM | To | Jamie Estrada/MAS/ITA/USDOC@USDOC |
| | cc | Carla Langjahr/TD/ITA/USDOC |
| | Subject | Slide for Jamie |

Jamie,
Here is the slide I used. I re-crafted the language VERY slightly from the one we used in Tokyo to fit with your statements. Other slides you want me to include? I will have this on my data stick. FYI also - Ed will arrive at 8:30 and I will meet him in the lobby. From there we are going to head to Rm 3407 and I thought that might give me a few minutes to hear about his meeting with the Chief of Staff for CEQ today about the future of the 3Rs. Pls join us in room 3407 around 8:35 or so if you are free.

Joanne

[attachment "Opening JE Slide.ppt" deleted by Jamie Estrada/MAS/ITA/USDOC]

**000099**

| | | |
|---|---|---|
| Jamie Estrada/MAS/ITA/USDOC | To | mdemoor@AdvaMed.org, gager@buyreman.com, dkulathum@cardone.com, Allen_Joseph_W@cat.com, |
| 03/17/2006 04:58 PM | cc | lane_william_c@cat.com, Rivera_Isabel_c@cat.com, |
| | bcc | |
| | Subject | Thank You -- 3Rs Industry Symposium |

All:

On behalf of the Department of Commerce, I want to thank you for your participation at the 3R's Industry Symposium.  I particularly want to acknowledge the efforts made by Industry representatives and my colleagues within the U.S. Government inter-agency group to ensure that this event was successful and productive.

We at Commerce see the 3Rs as presenting an excellent investment opportunity for U.S. industry.  U.S. Government and Industry must continue to work together to further the 3R's initiative at home and abroad. We will also continue to work closely with each of you to ensure your message is heard and your goals are met.

As always, we will keep you posted on any updates or changes as we move forward. We encourage you to visit www.manufacturing.gov for updated information.  We will post the final chair summary on that site as soon as it is released.

Please feel free to contact my office should you need additional information. If you are interested in copies of the presentations given during the event, please contact Carla Langjahr or Joanne Sonenshine.

Best Regards,
--Jamie Estrada

-------------------------------------------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov
www.manufacturing.gov

000099

| | | |
|---|---|---|
| Jamie<br>Estrada/MAS/ITA/USDOC<br>03/29/2006 08:21 AM | To | "Joseph W. Allen" <Allen_Joseph_W@cat.com> |
| | cc | |
| | bcc | |
| | Subject | Re: Cat Reman & the 3Rs - China |

Dear Joe,
Thanks for the feedback and for presenting at our meeting.  Look forward to hearing more about your trip to China next month.
Best,
--Jamie


------------------------------------------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov
www.manufacturing.gov


"Joseph W. Allen" <Allen_Joseph_W@cat.com>




| | | |
|---|---|---|
| "Joseph W. Allen"<br><Allen_Joseph_W@cat.com><br><br>03/24/2006 10:25 AM | To | Jamie.Estrada@mail.doc.gov, ed.pinero@ofee.gov,<br>Joanne_Sonenshine@ita.doc.gov,<br>Barbara_norton@ustr.eop.gov,<br>leith.angie@epamail.epa.gov, brownde3@state.gov,<br>skip_jones@ita.doc.gov |
| | cc | Cara_Morrow@ita.doc.gov, Edward_Brzytwa<br><Edward_Brzytwa%ita.doc.@cat.com>, "William C. Lane"<br><Lane_William_C@cat.com>, "Isabel C. Rivera"<br><Rivera_Isabel_C@cat.com>, MTyndall@Sidley.com |
| | Subject | Cat Reman & the 3Rs - China |


I just wanted to thank you again for the 3R's Symposium last week.  It was a good chance to review the 3Rs initiative, share thoughts, and discuss next steps.

On a related note, I will be visiting China in late April on Cat Reman business.  During my trip I will be meeting with Dr. Liu of NDRC, Prof. Xu of the China Academy of Engineering (Professor of Resource Recovery for Waste Machinery & Electronic Products), and Mr. Lijun Zhang Vice Minister of State Environmental Protection Administration.  I met Mr Lijun Zhang during the 2005 3Rs Conference in Tokyo.

Below are the planned discussion topics for the visit:

Topics to be covered by Caterpillar

000099

Overview of Caterpillar's remanufacturing business, strategy, and plans
Discussion on how remanufacturing supports reuse, recycling, and Sustainable Development
Review of Caterpillar's input to the U.S. Department of Commerce on the G8 3Rs (reduce, reuse, recycle) initiative
Review Caterpillar's position on eliminating trade barriers to remanufactured products (WTO reman initiative)
Solicit recommendations on how Cat Reman can assist Sustainable Development in China

Topics we have asked Dr. Liu, Prof. Xu, and Mr. Lijun Zhang to discuss

China's focus and plans for the 3Rs initiative
China's view of the WTO initiative to eliminate trade barriers to remanufactured products
Electronic waste (e-waste) management challenges in China
Overview of current business models in China for "product take back" and challenges for reverse logistics

On my return, I will plan to give you feedback relative to both the 3Rs discussions and the WTO Reman initiative.

Please feel free to contact me if I can be of assistance.

Best regards,

Joe Allen
Sustainable Development Manager
Caterpillar Remanufacturing Division

office: 309-636-5556
cell: 309-256-6318

|  | To | Joanne Sonenshine/MAS/ITA/USDOC@USDOC |
|---|---|---|
| Carla Langjahr/MAS/ITA/USDOC 02/15/2006 01:54 PM | cc | Carla Langjahr/MAS/ITA/USDOC@USDOC, Chris Walters/MAS/ITA/USDOC@USDOC, Edward Brzytwa/MAC/ITA/USDOC@USDOC, Jamie |
|  | bcc |  |
|  | Subject | Re: 3Rs Opening Remaks and WGI and WGII Draft Talking Points |

Thanks Joanne.
I will ask our 'clearance person' if others should, or need, to review (maybe general counsel) and let you know.

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650

Joanne Sonenshine/MAS/ITA/USDOC

|  | To | Carla Langjahr/TD/ITA/USDOC, Sarah Aker, Chris Walters/MAS/ITA/USDOC@USDOC, Edward Brzytwa |
|---|---|---|
| Joanne Sonenshine/MAS/ITA/USDOC 02/15/2006 01:51 PM | cc | Jamie Estrada/MAS/ITA/USDOC@USDOC |
|  | Subject | 3Rs Opening Remaks and WGI and WGII Draft Talking Points |

All,
Please review and provide comments by NOON TUESDAY. I will also be incorporating comments made in tomorrow's inter-agency meeting with your comments and distribute to inter-agency group next week. I will also start a power point that Jamie will use in the opening meeting. You will all have a chance to comment on that next week.
Many thanks in advance!

Joanne
PS. Please let me know if there are others who should see these materials for clearance

        

Jamie Opening Points.doc   Working Group on Domestic Activities.doc   Working Group on Intl Activities.doc

000802

| | | |
|---|---|---|
| Carla Langjahr/MAS/ITA/USDOC | To | "Hermann, David C" <HermannDC@state.gov>, Stephen.Jacques@mail.doc.gov |
| 02/23/2006 03:59 PM | cc | Joanne Sonenshine/MAS/ITA/USDOC@USDOC, Jamie Estrada/TD/ITA/USDOC@USDOC |
| | bcc | |
| | Subject | 3Rs Conference |

Mr. Hermann,

Thank you for registering Jamie and Joanne for the 3R's SOM Conference and arranging accommodations.

DAS Estrada will now arrive one day earlier: Saturday, March 4 on United Flight #881 to Tokyo Narita at 4:20 p.m.   Since Jamie has an earlier arrival date, is it possible to contact the hotel for lodging on Sat. March 4.  The departure/check out date remains the same (March 8).  Also, is it possible to arrange for ground transportation for DAS Estrada for pick up from the airport?  I am not sure if procedures for all posts are the same.

Any assistance would could provide with this would be greatly appreciated.  Thank you.

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650



| | Rachel Krushinski/MAS/ITA/USDOC 03/13/2006 09:24 AM | To | Carla Langjahr/MAS/ITA/USDOC@USDOC, Jamie Estrada/MAS/ITA/USDOC@USDOC |
|---|---|---|---|
| | | cc | Patty Sefcik/MAS/ITA/USDOC@USDOC |
| | | bcc | |
| | | Subject | MAS 2359 Assistant Secretary Frink's Participation in the March 16 3Rs Industry Symposium |

This tasker went to IAN to prepare a briefing paper.  We are asked to provide input to IAN.

# MANUFACTURING
# Input

**Status:** ⊠ Open

**MAS#:**    2359

MAS Tasker [MASxxxxx]

**Created:**   03/13/2006 09:22 AM

**Deadline:** 03/14/2006    **at**

04:00 PM

**Priority:**
- ○ Imminent
- ○ Urgent
- ○ High Priority
- ● Normal

Imminent—less than 3 hours
Urgent—less than 24 hours
High Priority—U/S level or above, 24+hours
Normal—everything else

**Subject:**    MAS 2359 Assistant Secretary Frink's Participation in the March 16 3Rs Industry Symposium

| Assigned To: | Response: | E-Copy | Date |
|---|---|---|---|
| | N/A | | at |
| | N/A | | at |
| | N/A | | at |
| | N/A | | at |
| | N/A | | at |
| ⊠ DAS Front Office | Has not responded | | at |

**INSTRUCTIONS**

# MAS TASKER

**TASK:** To: IAN (with input from MFG)

000105

Due: COB Tuesday, March 14

Task:

Please prepare a briefing paper and opening remarks for A/S Frink's participation in the 3Rs Industry Symposium on March 16 at the Department of Commerce.

The briefing paper should include:
- agenda for the event
- background on the outcome of the Senior Officials Meeeting in Tokyo
- list of participants (industry and government)

Notes:
- Please send the opening remarks to Cheri Hurd.
- Please include this event in your weekly highlights submission.
- Pre-brief will be on Wednesday, March 15, time TBD

A briefing paper format is attached for use.  If you have any questions, please contact Tu-Trang Phan at x20480.


Event Briefing FORM.doc

000107

|   |   |
|---|---|
| Jamie Estrada/MAS/ITA/USDOC<br>04/24/2006 02:06 PM | To    Joanne Sonenshine/MAS/ITA/USDOC |
|   | cc    Adam OMalley/MAS/ITA/USDOC@USDOC, Jane Corwin/MAS/ITA/USDOC@USDOC, Jean Janicke/MAS/ITA/USDOC@USDOC |
|   | bcc |
|   | Subject  Re: Sustainable Partnerships Website |

Joanne,
I support you representing us on this project -- you have a great cross-sectoral perspective that would be beneficial.  Thanks for checking in.
--Jamie

-----------------------------------------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov
www.manufacturing.gov


Joanne Sonenshine/MAS/ITA/USDOC

|   |   |
|---|---|
| Joanne Sonenshine/MAS/ITA/USDOC<br>04/24/2006 11:55 AM | To    Jamie Estrada/MAS/ITA/USDOC@USDOC |
|   | cc    Jane Corwin, Jean Janicke, Adam OMalley |
|   | Subject  Sustainable Partnerships Website |


Jamie,
I received a call shortly before I left for Geneva last week by Lynn Lewis at Dept of State OES (she is my 3Rs, Sust. Consumption and Production contact) asking if Man Cho or I would be willing to sit on an editorial board made up of inter-agency representatives for a revamp of www.sdp.gov (a website highlighting industry/government partnerships promoting sustainable development). The mandate is attached to this email. Given that Man is on detail, I spoke to Dave Cammarotta about a good replacement and he was encouraged by my participation given the cross-sectoral work I have been doing on sustainability issues. I wanted to flag this for you and see if you think there is anyone better suited within Manufacturing before I go ahead and confirm my representation. Please give me a call with any questions.

Thanks,
Joanne

----- Forwarded by Joanne Sonenshine/MAS/ITA/USDOC on 04/24/2006 11:39 AM -----



|   |   |
|---|---|
| "Brutten, Lori B \(OES\)"<br><BruttenLB@state.gov><br>04/19/2006 06:20 PM | To    "Joanne_Sonenshine" <Joanne_Sonenshine@ita.doc.gov> |
|   | cc |
|   | Subject  Hopefully this one will go through. |

000**07**

Lori B. Brutten
U.S. Department of State
Bureau of Oceans and International Environmental and Scientific Affairs, Office of Policy Coordination & Initiatives
Phone: 202/647-4758
Fax: 202/647-0773
Websites
 Partnerships: www.sdp.gov
 Sustainable Development: www.state.gov/g/oes/sus

----- Message from "Brutten, Lori B \(OES\)" <BruttenLB@state.gov> on Wed, 19 Apr 2006 18:17:47 -0400 ----

"Martin Dieu" <dieu.martin@epa.gov>, "Heather Allen" <heather.allen@noaa.gov>, "Fredericks, Joseph A\(LPA/PIPOS\)\(RRB, M.01-066\)" <JFredericks@usaid.gov>, "Runde, Dan" <DRunde@usaid.gov>, "Adela Backiel" <adela.backiel@usda.gov>,
**To:** "Joanne Sonenshine" <Joanne_Sonenshine@ita.doc.gov>, "Graham Pugh" <graham.pugh@ee.doe.gov>, "Farris, Virginia L" <FarrisVL@state.gov>, "McArdle, Patricia \(OES\)" <McArdleP@state.gov>, "Hope, Colleen A \(PACE\)\(Arlington \(SA-15\)\)" <HopeCA@state.gov>

"Clark, Janice E \(PACE\)\(Arlington \(SA-15\)\)" <ClarkJE4@state.gov>, "Armbruster,
**cc:** William B \(OES\)" <ArmbrusterWB@state.gov>, "Rochberg, Daniel R \(OES\)" <RochbergDR@state.gov>, "Celeste, Judith E \(OES\)" <CelesteJE@state.gov>

**Subject:** Agenda and draft TOR for Friday's meeting

Colleagues – I've attached the proposed agenda for the Editorial Board meeting on Friday.  I've also attached a draft of the Board's Terms of Reference for your review, which we will discuss on Friday.  If you need pre-clearance into the building, please send your DOB and the type of identification you will be using to Judith Celeste by COB Thursday.  Many thanks - lbb

Lori B. Brutten
U.S. Department of State
Bureau of Oceans and International Environmental and Scientific Affairs, Office of Policy Coordination & Initiatives
Phone: 202/647-4758
Fax: 202/647-0773
Websites
 Partnerships: www.sdp.gov
 Sustainable Development: www.state.gov/g/oes/sus
[attachment "2006-04-19 SDP Ed Board TOR (draft).doc" deleted by Jamie Estrada/MAS/ITA/USDOC] [attachment "Agenda 4-21-06 meeting.doc" deleted by Jamie Estrada/MAS/ITA/USDOC]

|            |                                                                        |
|------------|------------------------------------------------------------------------|
| Jamie Estrada/MAS/ITA/USDOC 03/23/2006 12:50 PM | **To** "Joanne Sonenshine" <Joanne_Sonenshine@ita.doc.gov> |
|            | **cc**                                                                 |
|            | **bcc**                                                                |
|            | **Subject** Fw: Final Report 3Rs Senior Officials Meeting March 6-8 Tokyo |

```
Let me know if you think we need to respond to this. I don't want to get into
an email war about this since they will never listen to what we have to say.
-------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov

Sent via BlackBerry Wireless


----- Original Message -----
From: Jim Puckett [apex@seanet.com]
Sent: 03/23/2006 12:29 PM
To: Joanne Sonenshine
Cc: Sarah Westervelt" <swestervelt@ban.org>
Subject: FW: Final Report 3Rs Senior Officials Meeting March 6-8 Tokyo
```

Dear Joanne:

I received the US report on the recent 3Rs Senior Officials meeting in a round about way. We are of course very interested in being on your mailing list in future so we can receive these communications directly. Please add us to the list.

Your report unfortunately reads more like a US position paper than an accurate report of the meeting. Your report failed to note that we -- the Basel Action Network, an NGO that works to prevent toxic trade, were also in attendance at the meeting. We have a rather different story to report. Your report failed to mention that the US position vis a vis eliminating so-called trade barriers for what is defined in international law by over 160 country Parties to the Basel Convention, as azardous waste, was a very isolated position and one which was roundly criticized by many participants. US credibility at this meeting was further undermined by the fact that the entire mega-delegation while one of the largest at the meeting, failed to include one representative of the Environmental Protection Agency at a meeting which is presumably fundamentally about protecting the environment. The Bush Administration's efforts to utilize the 3Rs initiative to undermine the Basel Convention and its aim to promote global environmental justice and prevent toxic waste trade are seriously misguided and at odds with the government's own policy and executive order on environmental justice. What is particularly shocking in this US position is the fact that it also undermines the establishment of a competitive and environmentally sound waste recycling industry in the United States. It appears the US position of free trade zealotry for waste only benefits a very thin slice of US industry.

For those on your mailing list that might want a more accurate picture of what the US trade in toxic waste really looks like from the receiving end, we urge you to visit our website, read our reports from China and Nigeria, study the pictures, and order our films.

000108

Sincerely,

Jim Puckett, Coordinator
Basel Action Network


**From:** Joanne_Sonenshine@ita.doc.gov [ mailto:Joanne_Sonenshine@ita.doc.gov]
**Sent:** Tuesday, March 14, 2006 3:18 PM
**To:** Tu-Trang_Phan@ita.doc.gov; ed.pinero@ofee.gov; Jamie.Estrada@mail.doc.gov; Barbara_norton@ustr.eop.gov; goldbergms@state.gov; leith.angie@epamail.epa.gov; Allen_Joseph_W@cat.com; gager@buyreman.com; dkulathum@cardone.com; mtyndall@sidley.com; MDeMoor@AdvaMed.org; katek@nrc-recycle.org; Joe.Neuhoff@Mail.doc.gov; aaron_brickman@ita.doc.gov
**Cc:** Carla.Langjahr@mail.doc.gov; Jane_Corwin@ita.doc.gov; Jean_Janicke@ita.doc.gov; Adam_OMalley@ita.doc.gov; Edward_Brzytwa@ita.doc.gov; Sarah.Aker@mail.doc.gov; Brian.Beall@mail.doc.gov; Anna_Flaaten@ita.doc.gov; Carla.Langjahr@mail.doc.gov; Bart_Meroney@ita.doc.gov; Christian_Brittle@ita.doc.gov; David_Cammarota@ita.doc.gov; Kim.Copperthite@mail.doc.gov; Maria.D'Andrea@mail.doc.gov; Simon_Francis@ita.doc.gov; Robin_Gaines@ita.doc.gov; Ronald_Green@mail.doc.gov; Jeffrey_Gren@ita.doc.gov; Leonard_Heimowitz@ita.doc.gov; Scott_Kennedy@ita.doc.gov; Marc_Lemmond@ita.doc.gov; James_Mcelroy@ita.doc.gov; Forrest_Nielsen@ita.doc.gov; Richard_Paddock@ita.doc.gov; Andy_Parris@ita.doc.gov; Richard_Reise@ita.doc.gov; Joanne_Roberson@ita.doc.gov; Gerry.Zapiain@mail.doc.gov; Ellen.Bohon@mail.doc.gov; Man_Cho@ita.doc.gov; John.Harris@mail.doc.gov; Joseph_Burton@ita.doc.gov; Jim_Rice@ita.doc.gov; Simon_Francis@ita.doc.gov; Brian.Beall@mail.doc.gov; Michele_Mire@ita.doc.gov; aaron_brickman@ita.doc.gov; Robin_Gaines@ita.doc.gov; Jane_Siegel@ita.doc.gov; KandachiKX@state.gov; RabensJB@state.gov; Stephen.Jacques@mail.doc.gov; Cara_Morrow@ita.doc.gov; jennifer_prescott@ustr.eop.gov; Leila_Odom@ita.doc.gov
**Subject:** Final Report 3Rs Senior Officials Meeting March 6-8 Tokyo


All,
Please find a report on the outcome of last week's (March 6-8) 3Rs Initiative ("Reduce, Reuse, Recycle") Senior Officials Meeting. Also attached is the draft chair's summary which I must emphasize is nonnegotiated and non-consensus, and merely highlights the discussion held throughout the course of the Meeting A final version of this summary will be posted on Friday, March 17th at the following website:

http://www.env.go.jp/earth/3r/en/s_officials.html

We will have physical copies of both this final report and the Draft Chair Summary available to those of you attending Thursday's (March 16) Industry Symposium here at Commerce.

Please let me know if you have questions or comments.

Many thanks for your continued interest in this subject.

Regards,

000108

Joanne G. Sonenshine
International Economist
Office of Trade Policy Analysis
Industry Analysis
International Trade Administration
U.S. Department of Commerce
202.482.3704

**BASEL ACTION NETWORK (BAN)**
**c/o Earth Economics**
122 S. Jackson, Suite 320
Seattle, Washington 98104 USA
Phone: 1.206.652.5555, Fax: 1.206.652.5750
Email: jpuckett@ban.org
**Website: http://www.ban.org**

  

3Rs Final Report.doc   3RSOM-ChairSum.doc

Jamie
Estrada/MAS/ITA/USDOC
03/21/2006 11:13 AM

To  Sarah Aker/MAS/ITA/USDOC@USDOC
cc
bcc
Subject  Re: Gulf Coast Mission

Hey, just called...any idea on when you are getting here?  What's the plan for this evening specifically?
------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov

Sent via BlackBerry Wireless
    Sarah Aker

        From: Sarah Aker
        Sent: 03/21/2006 10:41 AM
        To: Jamie Estrada
        Subject: Re: Gulf Coast Mission

Thanks Jamie,
This is great.  I'm going to the 11am OD meeting to talk about our outreach plan, so I'll bring a copy
of this strategy for reference.  See you soon!
-Sarah
Jamie Estrada/MAS/ITA/USDOC



Jamie
Estrada/MAS/ITA/USDOC
03/21/2006 10:31 AM

To  Sarah Aker/MAS/ITA/USDOC@USDOC
cc  jandberg@doc.gov, DMcCardell@DOC.GOV,
DHill@doc.gov, Angela
Calzada/MAS/ITA/USDOC@USDOC, Jessica
Arnold/MAS/ITA/USDOC@USDOC, Marc
Chittum/MAS/ITA/USDOC@USDOC, Chris
Walters/MAS/ITA/USDOC@USDOC
Subject  Re: Gulf Coast Mission

Hi,
I've made two public pitches for this already -- the 3Rs Industry meeting last week and yesterday at the
NAM Public Affairs meeting in Phoenix (about 75 attendees -- not as broad an audience as I would have
hoped).  Nonetheless, I provided the website address and NAM will email out the flyer to their conference
attendees.

The steel guys came up to me to tell me about their work to promote steel and construction standards in
the area.  No specific leads from others, but I specifically asked that they take the message to their
company leadership.

I have also asked each of my 5 MFG offices to develop an outreach plan (similar to the one attached).  I'm
holding them each accountable for this.

000109

Let me know if you need anything else,
--Jamie

------------------------------------------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov
www.manufacturing.gov

-----Sarah Aker/MAS/ITA/USDOC wrote: -----

To: jAndberg@doc.gov, DMcCardell@DOC.GOV, DHill@doc.gov
From: Sarah Aker/MAS/ITA/USDOC
Date: 03/21/2006 10:19AM
cc: Angela.Calzada@mail.doc.gov, Jessica.Arnold@mail.doc.gov, Marc.Chittum@mail.doc.gov,
chris.walters@mail.doc.gov, Jamie Estrada/MAS/ITA/USDOC@USDOC
Subject: Gulf Coast Mission

Here's what I have so far:

- Chris Walters is ready to help - He's going to call David now to see how he can help.
- Angela Calzada in my office(x1110) is the auto pen expert - She's ready to help when you need her.
- Marc Chittum (Director of the PEC) in my office is going to do an e-mail follow-up with a phone call to each member.
- Jessica Arnold in my office is ready to help as well

Mfg Council Meeting:
- Follow up with NAM? Jamie Estrada
- Flyers on the Chairs at Council mtg
- Secretary's talking points - Al's follow-up at lunch

I am going to call all of the TTAB members on Thursday to follow-up on last weeks call w/ the Secretary

More to come soon.
Thx
[attachment "Gulf Coast Trade Mission (OTEC plan).doc" deleted by Sarah Aker/MAS/ITA/USDOC]

000109

| Jamie | To | Sarah Aker/MAS/ITA/USDOC@USDOC |
| Estrada/MAS/ITA/USDOC | cc | |
| 03/21/2006 11:39 AM | bcc | |
| | Subject | Re: Gulf Coast Mission |

Ok, are you still in the OD meeting?
-------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov

Sent via BlackBerry Wireless
    Sarah Aker

        **From:** Sarah Aker
        **Sent:** 03/21/2006 11:15 AM
        **To:** Jamie Estrada
        **Subject:** Re: Gulf Coast Mission

Hi there... i'll be there before 2pm. We're doing dinner at the steakhouse
around 7pm. Call me soon. Thx
Jamie Estrada/MAS/ITA/USDOC

| Jamie | To | Sarah Aker/MAS/ITA/USDOC@USDOC |
| Estrada/MAS/ITA/USDOC | cc | |
| 03/21/2006 11:13 AM | Subject | Re: Gulf Coast Mission |


Hey, just called...any idea on when you are getting here? What's the plan for this evening specifically?
-------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov

Sent via BlackBerry Wireless
    Sarah Aker

        **From:** Sarah Aker
        **Sent:** 03/21/2006 10:41 AM
        **To:** Jamie Estrada
        **Subject:** Re: Gulf Coast Mission

Thanks Jamie,
This is great. I'm going to the 11am OD meeting to talk about our outreach plan, so I'll bring a copy

000109

of this strategy for reference.  See you soon!
-Sarah
Jamie Estrada/MAS/ITA/USDOC

 Jamie
Estrada/MAS/ITA/USDOC
03/21/2006 10:31 AM

To  Sarah Aker/MAS/ITA/USDOC@USDOC

cc  jandberg@doc.gov, DMcCardell@DOC.GOV,
DHill@doc.gov, Angela
Calzada/MAS/ITA/USDOC@USDOC, Jessica
Arnold/MAS/ITA/USDOC@USDOC, Marc
Chittum/MAS/ITA/USDOC@USDOC, Chris
Walters/MAS/ITA/USDOC@USDOC

Subject  Re: Gulf Coast Mission

Hi,
I've made two public pitches for this already -- the 3Rs Industry meeting last week and yesterday at the
NAM Public Affairs meeting in Phoenix (about 75 attendees -- not as broad an audience as I would have
hoped).  Nonetheless, I provided the website address and NAM will email out the flyer to their conference
attendees.

The steel guys came up to me to tell me about their work to promote steel and construction standards in
the area.  No specific leads from others, but I specifically asked that they take the message to their
company leadership.

I have also asked each of my 5 MFG offices to develop an outreach plan (similar to the one attached).  I'm
holding them each accountable for this.

Let me know if you need anything else,
--Jamie

------------------------------------------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov
www.manufacturing.gov

-----Sarah Aker/MAS/ITA/USDOC wrote: -----

To: jAndberg@doc.gov, DMcCardell@DOC.GOV, DHill@doc.gov
From: Sarah Aker/MAS/ITA/USDOC
Date: 03/21/2006 10:19AM
cc: Angela.Calzada@mail.doc.gov, Jessica.Arnold@mail.doc.gov, Marc.Chittum@mail.doc.gov,
chris.walters@mail.doc.gov, Jamie Estrada/MAS/ITA/USDOC@USDOC
Subject: Gulf Coast Mission

Here's what I have so far:

- Chris Walters is ready to help - He's going to call David now to see how he can help.
- Angela Calzada in my office(x1110)  is the auto pen expert - She's ready to help when you need her.

- Marc Chittum (Director of the PEC) in my office is going to do an e-mail follow-up with a phone call to each member.
- Jessica Arnold in my office is ready to help as well

Mfg Council Meeting:
- Follow up with NAM? Jamie Estrada
- Flyers on the Chairs at Council mtg
- Secretary's talking points - Al's follow-up at lunch

I am going to call all of the TTAB members on Thursday to follow-up on last weeks call w/ the Secretary

More to come soon.
Thx
[attachment "Gulf Coast Trade Mission (OTEC plan).doc" deleted by Sarah Aker/MAS/ITA/USDOC]

|  | |
|---|---|
| Carla Langjahr/MAS/ITA/USDOC 03/09/2006 05:10 PM | To  Edward Brzytwa/MAC/ITA/USDOC@USDOC, Joanne Sonenshine/MAS/ITA/USDOC@USDOC, Sarah Aker/TD/ITA/USDOC@USDOC |
|  | cc  Jamie Estrada/TD/ITA/USDOC@USDOC |
|  | bcc |
|  | Subject  3Rs update |

Ed was able to secure Michelle DeMoor to serve on the industry panel so I have updated the internal agenda. T
There were no additional RSVP's but we might send another invitation out soon.
I will get a participant and guest list out tomorrow.

Thanks!



Agenda internal.doc
Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650



Edward
Brzytwa/MAC/ITA/USDOC
03/20/2006 03:45 PM

To   Edward Brzytwa

cc

bcc   Jamie Estrada/MAS/ITA/USDOC

Subject   2006 3Rs Industry Symposium Attendeee List

000124

Dear Friends,

Thank you again for participating in the 2006 3Rs Industry Symposium.   For your future use, I have attached the list of industry, civil society, and government officials who participated.  Also, if you are interested in acquiring electronic versions of the presentations, please let Joanne Sonenshine, Carla Langjahr, or myself know.

Best regards,

Ed B.



3Rs Industry Symposium 3-16-2006.xls

000127

| | | |
|---|---|---|
| Joanne Sonenshine/MAS/ITA/USDOC | To | leith.angie@epamail.epa.gov |
| 02/21/2006 03:04 PM | cc | arnold.dana@ofee.gov, barbara_norton@ustr.eop.gov, brownde3@state.gov, Carla.Langjahr@mail.doc.gov, carla_langjahr@ita.doc.gov, chris.walters@mail.doc.gov, |
| | bcc | |
| | Subject | Talking Points for 3Rs SOM PLEASE REVIEW |

All,

Please find the following documents for use during the 3Rs SOM.

Please review by 3pm Thursday as we need to finalize by this Friday (due to travel occurring directly before the 3Rs SOM).

1. Jamie Estrada Opening Plenary Talking Points
2. Jamie Estrada Opening Plenary Power Point
3. Working Group 1 Background/General Information/Talking Points
4. Working Group 2 Background/General Information/Talking Points

You will notice that the Working Group 1 material is quite extensive (taken largely from the questionairre and 3Rs Portfolio) as the domestic discussion is the one in which DOC is least familiar and given that DOC may have to represent the US on both Working Groups, we wanted to have our bases covered. Also, you will see an emphasis on the trade issue (as that is the issue with which we are most familiar here at DOC) so please do add where you see fit.

Please add, delete, comment, etc.... I pulled most of the information from our questionairre.

Many thanks!

Joanne

               

Jamie Opening Points.doc   Opening.ppt   Working Group on Domestic Activities.doc   Working Group on Intl Activities.doc

000129

| | | |
|---|---|---|
| Joanne Sonenshine/MAS/ITA/USDOC 02/15/2006 01:51 PM | To | Carla Langjahr/TD/ITA/USDOC, Sarah Aker, Chris Walters/MAS/ITA/USDOC@USDOC, Edward Brzytwa |
| | cc | Jamie Estrada/MAS/ITA/USDOC@USDOC |
| | bcc | |
| | Subject | 3Rs Opening Remaks and WGI and WGII Draft Talking Points |

All,

Please review and provide comments by NOON TUESDAY. I will also be incorporating comments made in tomorrow's inter-agency meeting with your comments and distribute to inter-agency group next week. I will also start a power point that Jamie will use in the opening meeting. You will all have a chance to comment on that next week.
Many thanks in advance!

Joanne
PS. Please let me know if there are others who should see these materials for clearance

    

Jamie Opening Points.doc   Working Group on Domestic Activities.doc   Working Group on Intl Activities.doc

000134

| | | |
|---|---|---|
| Joanne Sonenshine/MAS/ITA/USDOC | **To** | Jamie Estrada/MAS/ITA/USDOC@USDOC |
| 03/15/2006 12:15 PM | **cc** | Carla Langjahr/TD/ITA/USDOC, Cheri Hurd/MAS/ITA/USDOC@USDOC, Tu-Trang Phan, Jane Corwin, Jean Janicke |
| | **bcc** | |
| | **Subject** | Talking Points for 3Rs Industry Symposium |

| History: | ↩ This message has been replied to. |
|---|---|

Jamie,
Here are some suggested points. As we discussed yesterday, feel free to pick and choose. Hopefully they will help to guide your discussion. If you have thoughts, suggestions, comments and prefer I edit in any way, please let me know.

Tu-Trang and Cheri, I have copied you because Al asked to see these points.

Thanks,
Joanne



Jamie Points for Industry Symposium.doc

**000135**

| | | |
|---|---|---|
| Joanne Sonenshine/MAS/ITA/USDOC | To | Jamie Estrada/MAS/ITA/USDOC@USDOC, ed.pinero@ofee.gov |
| 03/13/2006 12:51 PM | cc | Stephen.Jacques@mail.doc.gov, Jamie.Estrada@mail.doc.gov, Carla.Langjahr@mail.doc.gov, RabensJB@state.gov, KandachiKX@state.gov, Edward |
| | bcc | |
| | Subject | Readout of 3R SOM |

All,

Please find a readout that I have compiled (with the help of Dave's excellent cable) for eventual dissemination within DOC and to relevant industry representatives on the outcome (and way forward) of the 3Rs SOM.

I would like to get this finalized by Tuesday COB (US time) so am hoping for comments from Tokyo by COB Tuesday their time and from DC by noon on Tuesday. Many thanks in advance,

Joanne



3Rs Final Report.doc

000136

| | | |
|---|---|---|
| Joanne Sonenshine/MAS/ITA/USDOC<br>03/14/2006 09:32 AM | To | Tu-Trang Phan, ed.pinero@ofee.gov, Jamie Estrada/MAS/ITA/USDOC@USDOC, |
| | cc | Barbara_norton@ustr.eop.gov, goldbergms@state.gov, Carla Langjahr/TD/ITA/USDOC, Jane Corwin, Jean Janicke, Adam OMalley, Edward Brzytwa, Sarah Aker |
| | bcc | |
| | Subject | Agenda for Thursday March 16 3Rs Industry Symposium |

All,

Thanks to all of you for presenting at our 3Rs Industry Symposium this Thursday from 9am - 12pm. Attached is a detailed agenda. Each speaker has no more than 8 minutes so please plan accordingly. Our location has changed. We will be in room 3407 instead of the auditorium but we will still have power point capabilities. If you note any misinformation on this agenda (i.e. incorrect titles, mispellings) please let me know so I can correct the agenda before Thursday. Otherwise, we look forward to seeing you Thursday morning. We will be at the front entrance to greet you so we will see you then!

Thanks for all of your help.

Regards,

Joanne G. Sonenshine
International Economist
Office of Trade Policy Analysis
Industry Analysis
International Trade Administration
U.S. Department of Commerce
202.482.3704



Agenda for 3Rs Industry Symposium.doc

# EXHIBIT

# L

**Tobin, Charles D (WAS - X72539)**

| | |
|---|---|
| **From:** | Tobin, Charles D (WAS - X72539) |
| **Sent:** | Wednesday, August 06, 2008 6:19 PM |
| **To:** | 'Momeni, Mercedeh (USADC)' |
| **Cc:** | Bonilla, Judith F (WAS - X72546) |
| **Subject:** | American Zinc Assn. v. Department of Commerce |

**Attachments:** example 1__Aug_06_2008_17_07_59_521.pdf; example 2__Aug_06_2008_17_08_48_751.pdf; example 3__Aug_06_2008_17_53_07_504.pdf; example 4__Aug_06_2008_17_55_09_507.pdf

Merce,

Thank you, Ms. Coe, and Ms. Means for the telephone conference this afternoon to discuss this matter.  We appreciated the opportunity to reiterate to you and your client that -- despite the belief you expressed in a previous conversation that the American Zinc Association would never be "satisfied" by the Department of Commerce -- in fact, AZA's goal in this litigation is quite clear and specific, as we previously have explained.  As reflected in AZA's May 1, 2006 FOIA request and my June 30, 2008, email, AZA simply seeks the records containing information regarding a specific change in wording to Joseph Bogosian's April 28, 2005 keynote address.

You indicated in the call that you would discuss this further with your client, and you suggested that in some instances, FOIA plaintiffs press for information that does not exist in an agency's files.  I have asked that you let me know whether (a) the information does not exist in DOC's records at all; or (b) the information exists, but is contained within the records being withheld under a claimed exemption.  Please provide a prompt response, in light of our upcoming filing deadline.

Finally, as promised, we have attached two examples of records that were disclosed by DOC in its initial production, but which also appear in the Vaughn index submitted by DOC as documents 000024 and 000025.

Additionally, we are providing samples of email documents, which we received marked as numbers 000033 and 000085, that we also spoke about in our conference call.  These two documents contain icons that indicate they had other documents attached to them.  No attachments were produced with these emails, and the attachments are not accounted for in the Vaughn index. DOC's document disclosures contain a number of examples like this.

We look forward to hearing from you soon.

Very truly yours,
Chuck






example
.ug_06_2008_17_07

example
.ug_06_2008_17_08

example
.ug_06_2008_17_53

example
.ug_06_2008_17_55

**Holland + Knight**

**Charles D. Tobin**
Partner
Holland & Knight LLP
2099 Pennsylvania Avenue N.W.
Washington, DC 20006
Main  (202) 955-3000
Direct (202) 419-2539
Fax  (202) 955-5564
Email ctobin@hklaw.com

1

www.hklaw.com

**NOTICE:** This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

12/13/04 For Internal Use Only

**Appendix B**                    **Draft Notes of USG Proposal**

1. Ministerial Conference is not a multilateral trade agreement forum, nor a duplication of Basel talks.

2. Goal will be to share information and examples of best practices, and discuss ways the 3Rs can result in mutual benefits to the environment, economy, job-creation and the trading system.

3. Participating country delegations need advance intra-governmental coordination of environmental and natural resource ministries, foreign, economic, commercial and trade ministries.

4. Ministerial Conference should include attendance by and involvement of environmental and consumer non-governmental organizations and business organizations.

5. Conference should include non-G-8 developed and developing countries.

6. Conference provides opportunity to voice support for multilateral efforts underway in WTO Doha Round, as well as WTO-consistent bilateral and regional efforts, to reduce barriers to trade in goods and materials used in recycling and remanufacturing, as well as recycled and remanufactured products themselves.

7. Concept of 3Rs includes "remanufacturing" as a win-win effort for environment and industry.

8. Goal is to level the international trade playing field for new and "like new" goods (goods ready for reuse or remanufactured goods) without creating preferences for either.

9. Distinguish reused/remanufactured goods from used goods to promote environmental benefits of reuse.

10. Look at environmental and economic benefits of recycled and remanufactured goods and of providing increased market access for those goods.

11. Acknowledge desire to achieve commonly acceptable definitions of terms such as "recycled", "refurbished", "reused" and "remanufactured." Recently concluded U.S. free trade agreements might serve as a model for definitions of reused/remanufactured products and their component parts.

12. Study voluntary, private sector material selection and design criteria in certain sectors so products or their components can be more easily reused, remanufactured or recycled and ultimately disposed of in a manner that minimizes their environmental impact, while simultaneously protecting IPR.

13. Exchange information about tools, models and methods to assist in the assessment of the environmental and economic benefits of measures to achieve the 3Rs.

14. Explore and further develop generally accepted methods of measuring and accounting for and weighing the relative economic and environmental benefits of policy measures taken in support of the 3Rs, including material flows accounting.

15. As part of the OECD Material Flow Accounts Initiative, acknowledge the benefits of jointly tracking the global flows of one or more significant materials such as steel, with the goal of identifying opportunities to achieve the 3Rs.

16. Study and encourage voluntary, private sector "lean manufacturing" efforts that cut down on wastes and costs, and provide both environmental and economic benefits.

17. Study and encourage voluntary, private sector efforts to promote the 3Rs across company lines (e.g., environmentally enhanced supply chains, material pooling and the use of byproducts from certain manufacturing processes in other processes).

18. Look at ways in which governments can act as a catalyst to create markets for recycled, reused or remanufactured products -- includes a comparison of various green purchasing or procurement programs and how environmental benefits are identified without discrimination or preference

12/13/04 For Internal Use Only

**Appendix E**

(Japan requested each invited country to prepare the following.)

**Action Items:**

**1. Statement** (for G8 countries and the EC only)

G8 Ministers/EC Commissioner for Environment are requested to make a statement of up to 10 minutes during Session I "National Policies to Implement the 3Rs." It is requested that this statement address aspects of the 3R Initiative comprehensively so as to provide the basis for further discussions during the Conference. An advanced copy of the ministerial statement has been requested by April 20, 2005.

**2. 3R Portfolios**

All delegations are requested to prepare in English a list of best practices regarding the 3Rs, which is referred to as the "3R Portfolio" by February 2005 so that they can be shared at the Conference. A format of the Portfolio, with Japan's Portfolio as an example, will be sent through the U.S. embassy in Tokyo.

### 3Rs Initiative
### Ministerial Conference
### Draft Opening Talking Points

- The United States of America is pleased to have an opportunity today, along with the other G8 members and countries gathered here, to talk about transformative efforts and policies in our societies to make better, cleaner, more environmentally smart use of our resources in ways that grow our economies and create jobs for our people.

- Reduce, reuse, remanufacture and recycle is about the future of environmental protection. We were happy to work with our Japanese colleagues at Sea Island to make this a deliverable of the 2004 leaders' conference. I am indeed impressed with what Japan has done in this area and would like formally to thank the Government of Japan for organizing this important conference.

- **First**, let me say a word about recycling efforts in the U.S. It is important to remember that in the U.S., though government is active, government often does not act alone or exclusively. Much is going on within U.S. corporations, at the state and local level, and indeed in individual households nation-wide.

- The American scrap processing and recycling industry's products are worth almost $30 billion per year and represent almost 125 million tons of recyclables destined for domestic and overseas markets. These scrap recyclables conserve impressive amounts of energy and natural resources. For example, according to EPA, recycled copper saves the nation 85% of the energy that would have been used to make the same amount of new copper from ore. Moreover, our recycling industry's products included exports that contributed an excess of $5 billion in 2003 to the U.S. balance of trade

- Internationally, work continues on the development of standards that make the recycling of products easier and promote the use of recycled material in environmentally-smart products and industries, including the construction industry the world over. Standards have been developed for manufacturing processes that use less fuel and that promote the use of materials that otherwise would be treated as waste. In addition, the

International Standards Organization (ISO) has developed guidance standards (14064) for the incorporation of environmental elements into product standards. These are being used to develop product standards that ensure that the environmental aspects of recycling and energy construction are included in the initial design of products.

- **Second**, there is occurring in the world today a revolution in the remanufacturing and refurbishment of cores and other components that may be incorporated into products that are sold again as "like new". With respect to product after product, the user is in effect, leasing the product for a time, reaping the benefit of a service, and then returning the product for remanufacturing so that it may be 'leased again'. This can have real benefits for the world environment.

- At the Eastman Kodak Company in Rochester, New York, there has been developed the so called "one-time use" camera. In reality, the camera body is re-used many times over. In essence, the consumer buys the temporary use of the camera body and the film development service. The used camera bodies are returned by the developer to Rochester for sorting and then sent outside the U.S. for disassembly and remanufacture. The remanufactured products, ready to be sold again, are then sold worldwide including in the United States. Kodak has entered into arrangements with a number of its competitors including Fuji and Konica Minolta right here in Japan to collect, sort and return camera bodies to Kodak. Each company acts as a collection agent for the other and resources are conserved. It is a win-win as Kodak adds to its bottom line by engaging in all of these practices.

- Also, Caterpillar Corporation in the U.S. has launched a "Design for remanufacturability" program under which their new products are specifically designed so that they may be remanufactured.

- The U.S. is interested in continuing to pursue both at the WTO and in its bi-lateral and regional FTA negotiations ways to promote trade in remanufactured, recycled and refurbished products that positively impact the environment.

- **Third,** we applaud efforts by our private sector to engage in 'lean manufacturing' practices that have cut down considerably on waste and costs, and provide both economic and environmental benefits.

- There are private sector efforts to promote the 3Rs across company lines including: through environmentally enhanced supply chains, material pooling and the use of byproducts from certain manufacturing processes in other processes.

- Hewlett-Packard Corp in the U.S. is engaging in Eco-design practices to reduce environmental impacts throughout the full life cycle of its products. A design for the environment program was started in 1992 that places a network of product stewards throughout its businesses in order to promote energy-efficiency, integrate materials innovation into product design, and design for recyclability. These design features include elimination of adhesives by eliminating snap-in features, marking plastic parts to speed up material recycling, and relying on modular design for ease of disassembly.

- There are benefits to be reaped from nanotechnology development. The U.S. private sector is already engaged in developing these new technologies that use fewer resources, conserve resources and reduce the generation of waste, while producing equal or greater results. For example, there exist today nano-structured, wear-resistant coatings that are applied to ship bodies that reduce the need for chemical applications, and significantly extend the life of the ship while cutting down on maintenance costs and non-productive down-time.

- I also want to mention here "combined heat and power" or so-called "co-generation" This occurs when the heat generated when natural gas is burned to create electricity is captured as useable energy for heating and cooling. This process as well as using productively heat that would otherwise be dissipated cuts down significantly on greenhouse gas emissions.

- **Fourth,** I want to say a word about how important it is to make international progress in toward agreement on how we measure the environmental benefits that flow from particular manufacturing and production activities. If we say a process is environmentally sound, we

ought to know that it is environmentally sound, and we must always take into account the economic costs and weigh these against the perceived benefits. In this regard, I note that G-8 leaders expressly recognized the ongoing work of the OECD on material flows accounting and called for the enhancement of that work. This work is important and deserves our renewed support today.

- **Fifth,** I'ld like to focus for a moment on what the U.S. Government as a major consumer is doing to promote environmentally smart purchasing of products.

  - The U.S. has requirements, both as legislation and as Presidential executive orders, that mandate Federal government purchasing of environmentally smart products.

  - This is a stewardship effort to conserve resources and use economically viable products with lesser negative impacts on human health and the environment.

  - The Federal program applies to the entire range of goods and services purchased by Federal agencies, from office products to electronics to buildings to fleet vehicles. In addition, there are examples of applying environmentally smart considerations to weapons systems design, acquisition, maintenance, and disposal, including recycling of obsolete weapons.

  - Every state government and many local governments also have an environmentally smart purchasing program.

- **In conclusion,** I hope this conference will further international work in a number of areas: (i) Developing new tools for recycling networks. In the U.S. and elsewhere, strides are being made in the area of "byproduct synergy" where materials and users are matched up. One man's waste is truly another man's treasure so we should take beyond the pilot stage the concept of giving people around the world the ability to productively use and re-use what would otherwise go into the waste stream and landfills. (ii) Continuing to develop new technologies to make the production of recycled and remanufactured materials and products even more economical; (iii) Promoting trade in remanufactured and refurbished products that is a win-win for the economy and the environment; and

(iv) agreeing on how we can measure the environmental benefits of economic activity so we can make the best choices for our societies.

| | | |
|---|---|---|
| Rebecca Bernier/MAS/ITA/USDOC | To | June_Posey@ita.doc.gov |
| 12/19/2005 09:21 AM | cc | Tu-Trang Phan/TD/ITA/USDOC@USDOC, Joe Neuhoff/MAS/ITA/USDOC@USDOC, Jane Corwin/MAS/ITA/USDOC@USDOC, Jean |
| | bcc | |
| | Subject | Fw: Briefing for Al on Environmental Trade Issues |

June, I know we spoke about this but wanted to see if it is on Al's calendar yet? Also I thought when it is scheduled, it would be a good idea to also include Joey Neuhoff.
----- Forwarded by Rebecca Bernier/MAS/ITA/USDOC on 12/19/2005 09:26 AM -----

| | | |
|---|---|---|
| Joanne Sonenshine/TD/ITA/USDOC | To | Rebecca Bernier/MAS/ITA/USDOC@USDOC |
| 11/28/2005 02:09 PM | cc | Jane Corwin, Jean Janicke |
| | Subject | Briefing for Al on Environmental Trade Issues |

Rebecca,
It was nice to finally meet you today! I hope you and and Al found our Doha briefing useful.

As Jane mentioned, our office has been doing a lot of work recently, (at an increasing rate), on environmental trade issues and given Al's request for a briefing, I would be happy to set something up with the both of you. In advance of that, I have attached two documents to this email that will give you a basic idea about the role we have begun to play in many of these issues. The first is a visual representation (via a matrix) of how OTPA is involved in some of the key environmental trade issues relevant to this Administration. This is in draft form and we may be incorporating some additional comments from Jack. The second is a write-up of why OTPA (and MAS in general) is relevant and essential in promoting cross-sectoral environmental trade policy issues.

OTPA is being tasked by State, USTR and other DOC units to provide cross-sectoral trade policy analysis and management to issues ranging from the 3Rs to sustainable development and globalization. We are beginning to work not just inter-agency, but also with international organizations including the UN and OECD on some of these topics. We believe that our office has a crucial role to play given our ability to target all sectors and ensure that each message is disseminated in a cohesive and coordinated way.

I look forward to discussing some of these envrionmental trade policy issues in more depth with you and Al at a time that suits you.

Again, it was a pleasure to meet you today!

Regards,
Joanne Sonenshine

   

Environmental Matrix 10_05.ppt   Market Access Environmental Initiatives Business Casev3.doc

000085

|  | Jamie | To | <Michelle.ONeill@technology.gov> |
|--|-------|----|----------------------------------|

Jamie
Estrada/TD/ITA/USDOC
05/09/2005 08:58 AM

To    <Michelle.ONeill@technology.gov>
cc
bcc
Subject    Re: US-Japan Speech

Hi Michelle,
Just talked to Rita  and I'm so sorry -- my schedule is a little rigid today and unless I can move an industry
briefing to prep me for my trip to Paris next week, I won't be able to do it.  I'm checking -- but this will be
tough.

I left messages for Marge to see if she can step in.

I'll let you know if anything changes on my side.

So sorry!!

--Jamie

---------------------------------------------------------
Jamie P. Estrada
Director, Office of Technology & E-Commerce
Department of Commerce
International Trade Administration
(202) 482-1987
Jamie.Estrada@mail.doc.gov

<Michelle.ONeill@technology.gov>



<Michelle.ONeill@techn
ology.gov>
05/09/2005 08:47 AM

To:  "Marge Donnelly" <Marge_Donnelly@ita.doc.gov>,
       <Jamie.Estrada@mail.doc.gov>
cc:  "Patty Sefcik" <Patty_Sefcik@ita.doc.gov>,
       <jeremy.marcus@technology.gov>, <rita.steele@technology.gov>
Subject:  US-Japan Speech

Jamie,

Good morning!  I just tried to "call" you -- Rita left a message.  Unfortunately, I have developed a severe
case of laryngitis -- and have lost my speaking voice.  (Some would say that this is a blessing ;-))  I am
scheduled to deliver a luncheon keynote at an ITAA US-Japan conference today -- and am wondering if
you might be able to step in.  The latest version of the speech is attached -- Marge's IT team and Jeremy
Marcus from TA pulled this together.  Rita has the details.  If you can't do it, perhaps Marge?  I really
appreciate it.

Thanks, MO
Michelle O'Neill
Deputy Under Secretary
for Technology Administration
US Department of Commerce
(tel) (202) 482-3028
(fax) (202) 501-2595
michelle.oneill@technology.gov

-----Forwarded by Michelle O'Neill/TA/Osnet on 05/09/2005 08:36AM -----

000085

To: Michelle O'Neill/TA/Osnet@osnet
From: Jeremy Marcus/HCHB/Osnet
Date: 05/05/2005 01:34PM
Subject: 3Rs

I have rewritten (or vastly edited) the 3Rs section of the speech.
It is the last section of the speech, and all my edits (including the ones I sent Monday) and the 3Rs are
included in this version of your speech.
Jeremy



MO May 9 ITAA JISA speech - jsm edit.doc

**Ellis, Henrietta J (WAS - X72498)**

| | |
|---|---|
| **From:** | Momeni, Mercedeh (USADC) [Mercedeh.Momeni@usdoj.gov] |
| **Sent:** | Friday, August 08, 2008 5:16 PM |
| **To:** | Tobin, Charles D (WAS - X72539) |
| **Cc:** | Coe, Sarah; Bonilla, Judith F (WAS - X72546) |
| **Subject:** | AZA |

Dear Chuck,

Thank you for your email of 8/6/08. Our position is that an adequate search was conducted and all responsive, non-exempt documents have now been released to AZA. While we realize that Plaintiff may not be satisfied with this answer, a specific answer to your question would require our client to interpret what is meant by the so called pin-pointed information requested. As we mentioned during our telephone conversation on Wednesday, AZA's request was interpreted broadly to facilitate a more than reasonable search.

With regard to the alleged discrepancies between previously produced documents and our *Vaughn* Index, once we see your concerns, *in toto*, we will be in a better position to respond via our opposition/reply brief. However, at this juncture, we are able to say that document Bates No. 00024 is a completely different document than the one in AZA's possession. Document No. 00025 is virtually identical to a document inadvertently or perhaps discretionarily released to you (it remains unclear which is the case because of turnover in the office). Document No. 00025 contains non-responsive marginalia and it is exempt under exemption (b)(5). Nonetheless, we intend to forward it to you next week.

To the extent that the email attachments that Plaintiff alleges were not produced, again, we note that, after an adequate search all responsive, nonexempt documents have now been released.

Regards,

*Mercedeh Momeni*

Assistant United States Attorney

United States Attorney's Office

for the District of Columbia/Civil Division

555 Fourth St., NW

Washington, DC 20530

ph: 202-305-4851

fax: 202-514-8780

CONFIDENTIALITY STATEMENT: This electronic communication may contain information that is confidential and/or attorney-client privileged. If you are not an intended recipient, interception, copying,

disclosure or use of confidential communications may be illegal. If you received this message in error, please notify me by reply e-mail and delete this message. Thank you.

# EXHIBIT

# M

12/13/04 For Internal Use Only

Appendix B                    Draft Notes of USG Proposal

1.  Ministerial Conference is not a multilateral trade agreement forum; nor a duplication of Basel talks.

2.  Goal will be to share information and examples of best practices, and discuss ways the 3Rs can result in mutual benefits to the environment, economy, job-creation and the trading system.

3.  Participating country delegations need advance intra-governmental coordination of environmental and natural resource ministries, foreign, economic, commercial and trade ministries.

4.  Ministerial Conference should include attendance by and involvement of environmental and consumer non-governmental organizations and business organizations.

5.  Conference should include non-G-8 developed and developing countries.

6.  Conference provides opportunity to voice support for multilateral efforts underway in WTO Doha Round, as well as WTO-consistent bilateral and regional efforts, to reduce barriers to trade in goods and materials used in recycling and remanufacturing, as well as recycled and remanufactured products themselves.

7.  Concept of 3Rs includes "remanufacturing" as a win-win effort for environment and industry.

8.  Goal is to level the international trade playing field for new and "like new" goods (goods ready for reuse or remanufactured goods) without creating preferences for either.

9.  Distinguish reused/remanufactured goods from used goods to promote environmental benefits of reuse.

10. Look at environmental and economic benefits of recycled and remanufactured goods and of providing increased market access for those goods.

11. Acknowledge desire to achieve commonly acceptable definitions of terms such as "recycled", "refurbished", "reused" and "remanufactured." Recently concluded U.S. free trade agreements might serve as a model for definitions of reused/remanufactured products and their component parts.

12. Study voluntary, private sector material selection and design criteria in certain sectors so products or their components can be more easily reused, remanufactured or recycled and ultimately disposed of in a manner that minimizes their environmental impact, while simultaneously protecting IPR.

13. Exchange information about tools, models and methods to assist in the assessment of the environmental and economic benefits of measures to achieve the 3Rs.

14. Explore and further develop generally accepted methods of measuring and accounting for and weighing the relative economic and environmental benefits of policy measures taken in support of the 3Rs, including material flows accounting.

15. As part of the OECD Material Flow Accounts Initiative, acknowledge the benefits of jointly tracking the global flows of one or more significant materials such as steel, with the goal of identifying opportunities to achieve the 3Rs.

16. Study and encourage voluntary, private sector "lean manufacturing" efforts that cut down on wastes and costs, and provide both environmental and economic benefits.

17. Study and encourage voluntary, private sector efforts to promote the 3Rs across company lines (e.g., environmentally enhanced supply chains, material pooling and the use of byproducts from certain manufacturing processes in other processes).

18. Look at ways in which governments can act as a catalyst to create markets for recycled, reused or remanufactured products -- includes a comparison of various green purchasing or procurement programs and how environmental benefits are identified without discrimination or preference

12/13/04 For Internal Use Only

**Appendix E**

(Japan requested each invited country to prepare the following.)

**Action Items:**

**1. Statement (for G8 countries and the EC only)**
G8 Ministers/EC Commissioner for Environment are requested to make a statement of up to 10 minutes during Session I "National Policies to Implement the 3Rs." It is requested that this statement address aspects of the 3R Initiative comprehensively so as to provide the basis for further discussions during the Conference. An advanced copy of the ministerial statement has been requested by April 20, 2005.

**2. 3R Portfolios**
All delegations are requested to prepare in English a list of best practices regarding the 3Rs, which is referred to as the "3R Portfolio" by February 2005 so that they can be shared at the Conference. A format of the Portfolio, with Japan's Portfolio as an example, will be sent through the U.S. embassy in Tokyo.

THE 3Rs MINISTERIAL CONFERENCE, TOKYO, JAPAN, APRIL 28-30, 2005

The United States sees a number of good opportunities presented by this Conference. This view is based upon the understandings forged at Sea Island during the 2004 G-8 meeting which contemplated potential environmental, economic and trade advantages flowing from such a discussion:

I.    **Process Suggestions:**

- Important to the success of the Conference will be advance intra-governmental coordination that seeks the involvement on national delegations not only of environmental and natural resource ministries but of foreign, economic, commercial and trade ministries.

- Equally important to the success of the conference would be the direct involvement, possibly on national delegations, of environmental and consumer NGOs and interested business organizations.

- Generally, it would not be useful for the Conference to take up matters that are within the jurisdiction of the WTO or of the Basel Convention.

II.    **Broad Purposes of the Conference:**

- Share information and examples of best practices and explore the economic, trade, commercial as well as the environmental benefits of 3Rs.

- Make clear that 3Rs incorporates the concept of remanufacturing, both as an engine for job-creation and as an environmentally sound approach.

- Voice support for multilateral efforts underway at the WTO and in WTO-consistent negotiations to reduce barriers to trade affecting the market for recycled or remanufactured goods.

- Identify existing barriers to trade in recycled, refurbished and remanufactured goods and discuss how reduction/elimination of such barriers can help achieve the environmental and economic objectives of 3Rs.

III.    **Possible Subjects for Discussion at Tokyo**

- How to level the playing field for new and "like new" goods (refurbished or remanufactured goods) without creating preferences for either.

- How to distinguish reused/remanufactured goods from used goods to promote the environmental benefits of reuse.

- Examine the environmental and economic benefits of recycled and remanufactured goods and of providing increased market access for those goods.

- Explore the benefits of achieving common, standard definitions for terms such as "recycled", "refurbished", "reuse l" and "remanufactured." Provisions in recently concluded free trade agreements. might serve as a good model for definitions of reused/remanufactured products and their component parts. (e.g. U.S.-Morocco)

- Study private, voluntary material selection and design criteria so products or components can be more easily reused, reman ifactured or recycled and disposed of in a manner that minimizes the environmental impact of disposal, while simultaneously protecting intellectual property rights.

- Share information about tools, models and methods that can help assess the environmental and economic benefits of measures to achieve the 3Rs.

- Explore and further develop gene ally-accepted methods of measuring, accounting for and weighing of relative economic and environmental benefits of policies in support of the 3Rs, including material flows accounting.

- As part of the OECD Material Flow Accounts Initiative, support joint tracking of the global flows of one or more significant materials, with the goal of identifying opportunities to achieve the 3Rs.

- Encourage voluntary private sector "lean manufacturing" efforts that cut down on wastes and costs, and provide economic and environmental benefits.

- Encourage voluntary private sector efforts to promote the 3Rs across company lines (e.g., e.g., environmentally enhanced supply chains, material pooling and the use of byproducts from certain manufacturing processes in other processes).

- Look at ways in which governments can act as a catalyst to create markets for products that are recycled, reused or remanufactured. This could include a comparison of various green purchasing or procurement programs and how environmental benefits are identified.

### 3Rs Initiative
### Ministerial Conference
### Draft Opening Talking Points

- The United States of America is pleased to have an opportunity today, along with the other G8 members and countries gathered here, to talk about transformative efforts and policies in our societies to make better, cleaner, more environmentally smart use of our resources in ways that grow our economies and create jobs for our people.

- Reduce, reuse, remanufacture and recycle is about the future of environmental protection. We were happy to work with our Japanese colleagues at Sea Island to make this a deliverable of the 2004 leaders' conference. I am indeed impressed with what Japan has done in this area and would like formally to thank the Government of Japan for organizing this important conference.

- **First**, let me say a word about recycling efforts in the U.S. It is important to remember that in the U.S., though government is active, government often does not act alone or exclusively. Much is going on within U.S. corporations, at the state and local level, and indeed in individual households nation-wide.

- The American scrap processing and recycling industry's products are worth almost $30 billion per year and represent almost 125 million tons of recyclables destined for domestic and overseas markets. These scrap recyclables conserve impressive amounts of energy and natural resources. For example, according to EPA, recycled copper saves the nation 85% of the energy that would have been used to make the same amount of new copper from ore. Moreover, our recycling industry's products included exports that contributed an excess of $5 billion in 2003 to the U.S. balance of trade

- Internationally, work continues on the development of standards that make the recycling of products easier and promote the use of recycled material in environmentally-smart products and industries, including the construction industry the world over. Standards have been developed for manufacturing processes that use less fuel and that promote the use of materials that otherwise would be treated as waste. In addition, the

International Standards Organization (ISO) has developed guidance standards (14064) for the incorporation of environmental elements into product standards. These are being used to develop product standards that ensure that the environmental aspects of recycling and energy construction are included in the initial design of products.

- **Second**, there is occurring in the world today a revolution in the remanufacturing and refurbishment of cores and other components that may be incorporated into products that are sold again as "like new". With respect to product after product, the user is in effect, leasing the product for a time, reaping the benefit of a service, and then returning the product for remanufacturing so that it may be 'leased again'. This can have real benefits for the world environment.

- At the Eastman Kodak Company in Rochester, New York, there has been developed the so called "one-time use" camera. In reality, the camera body is re-used many times over. In essence, the consumer buys the temporary use of the camera body and the film development service. The used camera bodies are returned by the developer to Rochester for sorting and then sent outside the U.S. for disassembly and remanufacture. The remanufactured products, ready to be sold again, are then sold world-wide including in the United States. Kodak has entered into arrangements with a number of its competitors including Fuji and Konica Minolta right here in Japan to collect, sort and return camera bodies to Kodak. Each company acts as a collection agent for the other and resources are conserved. It is a win-win as Kodak adds to its bottom line by engaging in all of these practices.

- Also, Caterpillar Corporation in the U.S. has launched a "Design for remanufacturability" program under which their new products are specifically designed so that they may be remanufactured.

- The U.S. is interested in continuing to pursue both at the WTO and in its bi-lateral and regional FTA negotiations ways to promote trade in remanufactured, recycled and refurbished products that positively impact the environment.

- **Third,** we applaud efforts by our private sector to engage in 'lean manufacturing' practices that have cut down considerably on waste and costs, and provide both economic and environmental benefits.

- There are private sector efforts to promote the 3Rs across company lines including: through environmentally enhanced supply chains, material pooling and the use of byproducts from certain manufacturing processes in other processes.

- Hewlett-Packard Corp in the U.S. is engaging in Eco-design practices to reduce environmental impacts throughout the full life cycle of its products. A design for the environment program was started in 1992 that places a network of product stewards throughout its businesses in order to promote energy-efficiency, integrate materials innovation into product design, and design for recyclability. These design features include elimination of adhesives by eliminating snap-in features, marking plastic parts to speed up material recycling, and relying on modular design for ease of disassembly.

- There are benefits to be reaped from nanotechnology development. The U.S. private sector is already engaged in developing these new technologies that use fewer resources, conserve resources and reduce the generation of waste, while producing equal or greater results. For example, there exist today nano-structured, wear-resistant coatings that are applied to ship bodies that reduce the need for chemical applications, and significantly extend the life of the ship while cutting down on maintenance costs and non-productive down-time.

- I also want to mention here "combined heat and power" or so-called "co-generation" This occurs when the heat generated when natural gas is burned to create electricity is captured as useable energy for heating and cooling. This process as well as using productively heat that would otherwise be dissipated cuts down significantly on greenhouse gas emissions.

- **Fourth,** I want to say a word about how important it is to make international progress in toward agreement on how we measure the environmental benefits that flow from particular manufacturing and production activities. If we say a process is environmentally sound, we

ought to know that it is environmentally sound, and we must always take into account the economic costs and weigh these against the perceived benefits. In this regard, I note that G-8 leaders expressly recognized the ongoing work of the OECD on material flows accounting and called for the enhancement of that work. This work is important and deserves our renewed support today.

- **Fifth,** I'ld like to focus for a moment on what the U.S. Government as a major consumer is doing to promote environmentally smart purchasing of products.

  - The U.S. has requirements, both as legislation and as Presidential executive orders, that mandate Federal government purchasing of environmentally smart products.

  - This is a stewardship effort to conserve resources and use economically viable products with lesser negative impacts on human health and the environment.

  - The Federal program applies to the entire range of goods and services purchased by Federal agencies, from office products to electronics to buildings to fleet vehicles. In addition, there are examples of applying environmentally smart considerations to weapons systems design, acquisition, maintenance, and disposal, including recycling of obsolete weapons.

  - Every state government and many local governments also have an environmentally smart purchasing program.

- **In conclusion,** I hope this conference will further international work in a number of areas: (i) Developing new tools for recycling networks. In the U.S. and elsewhere, strides are being made in the area of "byproduct synergy" where materials and users are matched up. One man's waste is truly another man's treasure so we should take beyond the pilot stage the concept of giving people around the world the ability to productively use and re-use what would otherwise go into the waste stream and landfills. (ii) Continuing to develop new technologies to make the production of recycled and remanufactured materials and products even more economical; (iii) Promoting trade in remanufactured and refurbished products that is a win-win for the economy and the environment; and

(iv) agreeing on how we can measure the environmental benefits of economic activity so we can make the best choices for our societies.



"Pinero, Edwin"
<Edwin_Pinero@ceq.eop.gov
>

07/27/2005 03:04 PM

| To | <Sarah.Aker@mail.doc.gov>, <vanhoogstratendj@state.gov> |
| cc | <joseph.bogosian@mail.doc.gov>, <ed.pinero@ofee.gov> |
| bcc | |
| Subject | RE: Letter to George Vary with OGC suggestions & clearance |

my minor edit. I softened the word "constrained" in that it might mean that we are not doing as much as we can.

But not a fall on the sword kind of thing; if you all prefer "constrained", I would be okay with it too.

Ed

-----Original Message-----
**From:** Sarah.Aker@mail.doc.gov [mailto:Sarah.Aker@mail.doc.gov]
**Sent:** Wednesday, July 27, 2005 2:59 PM
**To:** vanhoogstratendj@state.gov; Pinero, Edwin; Pinero.Ed@epamail.epa.gov
**Cc:** joseph.bogosian@mail.doc.gov
**Subject:** Letter to George Vary with OGC suggestions & clearance

Hi David and Ed,

Please see attached: A new draft version of a letter to George Vary with OGC's suggestions. Please advise.

Thanks
-Sarah



George Vary letter with pinero edit.doc

CEQ 2

**Pinero, Edwin**

| | |
|---|---|
| From: | Pinero, Edwin |
| Sent: | Thursday, July 28, 2005 6:54 PM |
| To: | 'Sarah.Aker@mail.doc.gov'; 'David.Cammarota@mail.doc.gov' |
| Cc: | 'ed.pinero@ofee.gov'; 'joseph.bogosian@mail.doc.gov'; 'VanHoogstratenDJ@state.gov' |
| Subject: | Re: Final? Version of the /ary Letter |

I am totally OK with this version, go with it.

Ed

1

Message

 CEQ 3

## Pinero, Edwin

| | |
|---|---|
| **From:** | Pinero, Edwin |
| **Sent:** | Thursday, July 28, 2005 10:44 AM |
| **To:** | 'Sarah.Aker@mail.doc.gov'; vanhoogstratendj@state.gov |
| **Cc:** | joseph.bogosian@mail.doc.gov; 'ed.pinero@ofee.gov' |
| **Subject:** | RE: Updated Version of the Vary Letter |

here you go.

ed

-----Original Message-----
**From:** Sarah.Aker@mail.doc.gov [mailto:Sarah.Aker@mail.doc.gov]
**Sent:** Wednesday, July 27, 2005 7:05 PM
**To:** Pinero, Edwin; vanhoogstratendj@state.gov
**Cc:** joseph.bogosian@mail.doc.gov
**Subject:** Updated Version of the Vary Letter

Hi David and Ed,

Attached is the updated version of the Vary letter.

I used the 'first' letter and added the paragraph (with Ed's edit) from the 'second' letter.
It is now paragraph 3 in the attached version.

Is that the appropriate place for it, and should we then delete a portion of paragraph 2?

Please advise, and call me if you have any questions.   482-4073

Thanks!
-Sarah

Mr. George F. Vary
Executive Director
American Zinc Association
2025 M Street, NW
Suite 800
Washington. DC 20036

Dear Mr. Vary:

I appreciate your active participation in the interagency process in preparation for the G-8 Ministerial on the Reduce, Reuse, and Recycle (3 R) Initiative, as well as your subsequent comments regarding the U.S. keynote address at the Ministerial.  I understand your desire to promote "smart purchasing" and share your goal.

In preparation for the Ministerial, you cited documentation that outlines the U.S. Government's efforts to promote "smart purchasing."  These documents included Executive Order 13101 and Section 6002 of the Resource Conservation and Recovery Act (RCRA).  In referencing these documents, you have cited a specific concern that language in the U.S. keynote address contravenes the objective of these documents to expand markets for goods with recycled content. The language in the keynote address over which you have expressed concerns states that, "smart purchasing is not and should not be a simple preference for recycled products over non-recycled products."

The objective of the U.S. Government with regard to "smart purchasing" is to ensure that it is creating minimal environmental impact while maximizing economic benefits.  Life cycle assessments have demonstrated that this objective is not always achieved through the most intuitive means.  For instance, a remanufactured product may not be necessarily always environmentally preferable to a new part.  Similarly, there may be environmental costs associated with a product made with recycled material that may outweigh those of a product made with material from virgin raw materials (e.g., would it be preferable to purchase a product made from recycled copper, if that copper had been produced from scrap PVC coated wire and the PVC was removed simply by burning it off, thereby producing toxic fumes).

In fact, as you have noted previously, Executive Order 13101, Section 102 states that, "agencies shall comply with executive branch policies for the acquisition and use of environmentally preferable products and services and implement cost-effective procurement preference programs favoring the purchase of these products and services." Furthermore, Section 201 of Executive Order 13101 defines "environmentally preferable" as, "products or services that have a lesser or reduced effect on human health and the environment when compared with competing products or services that serve the same purpose."  Section 401 also states that, "in developing acquisition plans, agencies shall consider, as appropriate, a broad range of factors including: elimination of virgin material requirements; use of biobased products; use of recovered materials; reuse of product; life cycle cost; recyclability; use of environmentally preferable products; waste

prevention; and ultimate disposal." Such plans a e to be developed, also as you noted, in accordance with Section 6002 of RCRA.

Also, in the portion of my address that dealt with government purchasing, I stated that "[t]he U.S. Government is using its status as a ma jor consumer to promote environmentally smart purchasing of products"; and that "[t]he U.S. has requirements, through legislation and Presidential Executive O ders, that mandate Federal government purchasing of environmentally smart products." In these specific areas we, of course, must conform to the governing legislation, imple nenting Orders and regulations. However, these obligations do not in any way un lercut our international commitment to the 3Rs, and I assure you that the Commerce De; artment will fully support any and all efforts to ensure that our government purchasing polices are developed and implemented in a manner consistent with, and supportive of, tl e 3Rs. The overall message of the U.S. keynote address was that the 3Rs, including rec; ling, are a win-win for the economy and the environment.

I hope that this is helpful to you. If you have adc itional questions please do not hesitate to contact me.

Sincerely,


Joseph H. Bogosian

---

Deleted: ¶

Deleted: The overall message of the U.S. keynote address was that the 3Rs, including recycling, are a win-win for the economy and the environment. Specifically, the address states that. "The U.S. Government is using its status as a major consumer to promote environmentally smart purchasing of products. The U.S. has requirements, through legislation and Presidential Executive Orders, that mandate Federal Government purchasing of environmentally smart products."¶

Deleted: The objective of the U.S. Government with regard to "smart purchasing" is to ensure that it is creating minimal environmental impact while maximizing economic benefits. Life cycle assessments have demonstrated that this objective is not always achieved through the most intuitive means. For instance, a remanufactured product may not be necessarily always environmentally preferable to a new part. Similarly, there may be environmental costs associated with a product made with recycled material that may outweigh those of a product made with material from virgin raw materials (e.g. would it be preferable to purchase a product made from recycled copper if that copper had been produced from scrap PVC coated wire and the PVC was removed simply by burning it off, thereby producing toxic fumes).¶
¶
In fact, as you have noted previously, Executive Order 13101, Section 102 states that, "agencies shall comply with executive branch policies for the acquisition and use of environmentally preferable products and services and implement cost-effective procurement preference programs favoring the purchase of these products and services." Furthermore, Section 201 of Executive Order 13101 defines "environmentally preferable" as, "products or services that have a lesser or reduced effect on human health and the environment when compared with competing products or services that serve the same purpose." Section 401 also states that, "in developing acquisition plans, agencies shall consider, as appropriate, a broad range of factors including: elimination of virgin material requirements; use of biobased products; use of recovered materials; reuse of product; life cycle cost; recyclability; use of environmentally preferable products; waste prevention and ultimate disposal." Such plans are to be developed, also as you noted, in accordance with Section 6002 of RCRA.

**CEQ 4**



Mr. George F. Vary
Executive Director
American Zinc Association
2025 M Street, NW
Suite 800
Washington, DC 20036

Dear Mr. Vary:

I appreciate your active participation in the interagency process in preparation for the G-8 Ministerial on the Reduce, Reuse, and Recycle (3R) Initiative, as well as your subsequent comments regarding the U.S. keynote address at the Ministerial. I understand your desire to promote "smart purchasing" and share your goal.

In preparation for the Ministerial, you cited documentation that outlines the U.S. Government's efforts to promote "smart purchasing." These documents included Executive Order 13101 and Section 6002 of the Resource Conservation and Recovery Act (RCRA). In referencing these documents, you have cited a specific concern that language in the U.S. keynote address contravenes the objective of these documents to expand markets for goods with recycled content. The language in the keynote address over which you have expressed concerns states that, "smart purchasing is not and should not be a simple preference for recycled products over non-recycled products."

The objective of the U.S. Government with regard to "smart purchasing" is to ensure that it is creating minimal environmental impact while maximizing economic benefits. Life cycle assessments have demonstrated that this objective is not always achieved through the most intuitive means. For instance, a remanufactured product may not be necessarily always environmentally preferable to a new part. Similarly, there may be environmental costs associated with a product made with recycled material that may outweigh those of a product made with material from virgin raw materials (e.g. would it be preferable to purchase a product made from recycled copper if that copper had been produced from scrap PVC coated wire and the PVC was removed simply by burning it off, thereby producing toxic fumes).

In fact, as you have noted previously, Executive Order 13101, Section 102 states that, "agencies shall comply with executive branch policies for the acquisition and use of environmentally preferable products and services and implement cost-effective procurement preference programs favoring the purchase of these products and services." Furthermore, Section 201 of Executive Order 13101 defines "environmentally preferable" as, "products or services that have a lesser or reduced effect on human health and the environment when compared with competing products or services that serve the same purpose." Section 401 also states that, "in developing acquisition plans, agencies shall consider, as appropriate, a broad range of factors including: elimination of virgin material requirements; use of biobased products; use of recovered materials; reuse of product; life cycle cost; recyclability; use of environmentally preferable products; waste

prevention; and ultimate disposal." Such plans are to be developed, also as you noted, in accordance with Section 6002 of RCRA.

Also, in the portion of my address that dealt with government purchasing, I stated that "[t]he U.S. Government is using its status as a major consumer to promote environmentally smart purchasing of products", and that "[t]he U.S. has requirements, through legislation and Presidential Executive Orders, that mandate Federal government purchasing of environmentally smart products." In these specific areas we, of course, must conform to the governing legislation, implementing Orders and regulations. However, these obligations do not in any way undercut our international commitment to the 3Rs, and I assure you that the Commerce Department will fully support any and all efforts to ensure that our government purchasing polices are developed and implemented in a manner consistent with, and supportive of, the 3Rs. The overall message of the U.S. keynote address was that the 3Rs, including recycling, are a win-win for the economy and the environment.

I hope that this is helpful to you. If you have additional questions please do not hesitate to contact me.

Sincerely,

Joseph H. Bogosian

| Deleted: 1 |
| --- |

| Deleted: The overall message of the U.S. keynote address was that the 3Rs, including recycling, are a win-win for the economy and the environment. Specifically, the address states that, "The U.S. Government is using its status as a major consumer to promote environmentally smart purchasing of products. The U.S. has requirements, through legislation and Presidential Executive Orders, that mandate Federal Government purchasing of environmentally smart products. |
| --- |

| Deleted: The objective of the U.S. Government with regard to "smart purchasing" is to ensure that it is creating minimal environmental impact while maximizing economic benefits. Life cycle assessments have demonstrated that this objective is not always achieved through the most intuitive means. For instance, a remanufactured product may not be necessarily always environmentally preferable to a new part. Similarly, there may be environmental costs associated with a product made with recycled material that may outweigh those of a product made with material from virgin raw materials (e.g. would it be preferable to purchase a product made from recycled copper if that copper had been produced from scrap PVC coated wire and the PVC was removed simply by burning it off, thereby producing toxic fumes).¶<br>¶<br>In fact, as you have noted previously, Executive Order 13101, Section 102 states that, "agencies shall comply with executive branch policies for the acquisition and use of environmentally preferable products and services and implement cost-effective procurement preference programs favoring the purchase of these products and services." Furthermore, Section 201 of Executive Order 13101 defines "environmentally preferable" as, "products or services that have a lesser or reduced effect on human health and the environment when compared with competing products or services that serve the same purpose." Section 401 also states that, "in developing acquisition plans, agencies shall consider, as appropriate, a broad range of factors including: elimination of virgin material requirements; use of biobased products; use of recovered materials; reuse of product; life cycle cost; recyclability; use of environmentally preferable products; waste prevention; and ultimate disposal." Such plans are to be developed, also as you noted, in accordance with Section 6002 of RCRA. |
| --- |

Message

Page 1 of 2

## CEQ 5

### Pinero, Edwin

| | |
|---|---|
| **From:** | Pinero, Edwin |
| **Sent:** | Wednesday, July 27, 2005 4:38 PM |
| **To:** | 'Sarah.Aker@mail.doc.gov' |
| **Subject:** | RE: Letter to the American Zinc Association |

I actually prefer the first version; as it is closer to what we talked about the fist time on the phone. Ideally, we would transplant the paragraph on conforming with the law from the second version (where I made my edit , over to the first version (cleaning it up for redundancy) and then using that. I really like the detail in the first version as it refers to our criteria for environmentally smart.

Ed

-----Original Message-----
**From:** Sarah.Aker@mail.doc.gov [mailto:Sarah.Aker@mail.doc.gov]
**Sent:** Wednesday, July 27, 2005 4:30 PM
**To:** Pinero, Edwin
**Subject:** RE: Letter to the American Zinc Association

Thanks Ed,
Do you have a preference for the first or second version?

| "Pinero, Edwin" <Edwin_Pinero@ceq.eop.gov> | To <Sarah.Aker@mail.doc.gov> |
|---|---|
| | cc <ed.pinero@ofee.gov> |
| 07/27/2005 03:56 PM | Subject RE: Letter to the American Zinc Association |

ok, and I replied to both, but out of order.   The reply with my actual edit (which was actually my first email to you) is the the newer, shorter, letter.  The second email that said it was ok and to keep the paragraph, was commenting on the first version. But honestly, these two letters were focused differently enough that I thought they were addressing two issues.

Hope this helps!

Ed

-----Original Message-----
**From:** Sarah.Aker@mail.doc.gov [mailto:Sarah.Aker@mail.doc.gov]
**Sent:** Wednesday, July 27, 2005 3:35 PM
**To:** Pinero, Edwin
**Cc:** ed.pinero@ofee.gov
**Subject:** RE: Letter to the American Zinc Association

Message

Thanks Ed. There are two versions currently floating. One is the longer version that I sent this am, and the second is the version w/ OGC suggestions. Want to make sure I'm looking at the right one when considering your input. Thanks!
-Sarah

"Pinero, Edwin" <Edwin_Pinero@ceq.eop.gov>

07/27/2005 03:17 PM

To <Sarah.Aker@mail.doc.gov>

cc <ed.pinero@ofee.gov>

Subject RE: Letter to the American Zinc Association

I am ok with this, and do think we should keep that paragraph in question in that is nicely drives home the point of all of the parameters considered in deciding if something is environmentally smart.

Ed

-----Original Message-----
**From:** Sarah.Aker@mail.doc.gov [mailto:Sarah.Aker@mail.doc.gov]
**Sent:** Wednesday, July 27, 2005 9:55 AM
**To:** Pinero, Edwin; Pinero.Ed@epamail.epa.gov
**Subject:** Fw: Letter to the American Zinc Association

Hi Ed,

Dave Cammarota in our office drafted the following letter to George Vary of the American Zinc Association in response to his concern about the language in Joe's keynote. David V. thought you should take a look at it. Once we get final clearance from our General Counsel, we can send it off.

Any thoughts on the second to last paragraph?

Thanks,
-Sarah

Sarah E. Aker
Deputy Chief of Staff
Manufacturing and Services
U.S. Department of Commerce
Washington D.C.  20230
p: (202) 482-4073
f: (202) 482- 5697

Message                                                  Page 1 of 2

## Pinero, Edwin

| From: | Pinero, Edwin |
|---|---|
| Sent: | Wednesday, July 27, 2005 3:56 PM |
| To: | 'Sarah.Aker@mail.doc.gov' |
| Cc: | 'ed.pinero@ofee.gov' |

**Subject:** RE: Letter to the American Zinc Association

ok, and I replied to both, but out of order. The reply with my actual edit (which was actually my first email to you) is the newer, shorter, letter. The second email that said it was ok and to keep the paragraph, was commenting on the first version. But honestly, those two letters were focused differently enough that I thought they were addressing two issues.

Hope this helps!

Ed

-----Original Message-----
**From:** Sarah.Aker@mail.doc.gov [mailto:Sarah.Aker@mail.doc.gov]
**Sent:** Wednesday, July 27, 2005 3:35 PM
**To:** Pinero, Edwin
**Cc:** ed.pinero@ofee.gov
**Subject:** RE: Letter to the American Zinc Association

Thanks Ed. There are two versions currently floating. One is the longer version that I sent this am, and the second is the version w/ OGC suggestions. Want to make sure I'm looking at the right one when considering your input. Thanks!
-Sarah

"Pinero, Edwin" <Edwin_Pinero@ceq.eop.gov>         To <Sarah.Aker@mail.doc.gov>

                                                    cc <ed.pinero@ofee.gov>
07/27/2005 03:17 PM                                 Subject RE: Letter to the American Zinc Association

I am ok with this, and do think we should keep that paragraph in question in that is nicely drives home the point of all of the parameters considered in deciding if something is environmentally smart.

Ed

-----Original Message-----
**From:** Sarah.Aker@mail.doc.gov [mailto:Sarah.Aker@mail.doc.gov]
**Sent:** Wednesday, July 27, 2005 9:55 AM

**To:** Pinero, Edwin; Pinero.Ed@epamail.epa.gov
**Subject:** Fw: Letter to the American Zinc Association

Hi Ed,

Dave Cammarota in our office drafted the following letter to George Vary
of the American Zinc Association in response to his concern about the
language in Joe's keynote.  David V. thought you should take a look at it.
Once we get final clearance from our General Counsel, we can send it off.

Any thoughts on the second to last paragraph?

Thanks,
-Sarah


Sarah E. Aker
Deputy Chief of Staff
Manufacturing and Services
U.S. Department of Commerce
Washington D.C.   20230
p: (202) 482-4073
f:  (202) 482- 5697

Message                          CEQ 7                          Page 1 of 1

## Pinero, Edwin

**From:**    Pinero, Edwin
**Sent:**    Wednesday, July 27, 2005 3:17 PM
**To:**    'Sarah.Aker@mail.doc.gov'
**Cc:**    'ed.pinero@ofee.gov'
**Subject:** RE: Letter to the American Zinc Association

I am ok with this, and do think we should keep that paragraph in question in that is nicely drives home the point of all of the parameters considered in deciding if something is environmentally smart.

Ed

-----Original Message-----
**From:** Sarah.Aker@mail.doc.gov [mailto:Sarah.Aker@mail.doc.gov]
**Sent:** Wednesday, July 27, 2005 9:55 AM
**To:** Pinero, Edwin; Pinero.Ed@epamail.epa.gov
**Subject:** Fw: Letter to the American Zinc Association

Hi Ed,

Dave Cammarota in our office drafted the following letter to George Vary of the American Zinc Association in response to his concern about the language in Joe's keynote. David V. thought you should take a look at it. Once we get final clearance from our General Counsel, we can send it off.

Any thoughts on the second to last paragraph?

Thanks,
-Sarah

Sarah E. Aker
Deputy Chief of Staff
Manufacturing and Services
U.S. Department of Commerce
Washington D.C. 20230
p: (202) 482-4073
f: (202) 482- 5697

Message                          CEQ 8                          Page 1 of 1

## Pinero, Edwin

| | |
|---|---|
| **From:** | Pinero, Edwin |
| **Sent:** | Wednesday, July 27, 2005 3:05 PM |
| **To:** | 'Sarah.Aker@mail.doc.gov'; vanhoogstratendj@state.gov |
| **Cc:** | joseph.bogosian@mail.doc.gov; 'ed pinero@ofee.gov' |
| **Subject:** | RE: Letter to George Vary with OGC suggestions & clearance |

my minor edit. I softened the word "constrained" in that it might mean that we are not doing as much as we can.

But not a fall on the sword kind of thing; if you a I prefer "constrained", I would be okay with it too.

Ed


-----Original Message-----
**From:** Sarah.Aker@mail.doc.gov [mailto:Sarah.Aker@mail.doc.gov]
**Sent:** Wednesday, July 27, 2005 2:59 PM
**To:** vanhoogstratendj@state.gov; Pinero  Edwin; Pinero.Ed@epamail.epa.gov
**Cc:** joseph.bogosian@mail.doc.gov
**Subject:** Letter to George Vary with OGC suggestions & clearance


Hi David and Ed,

Please see attached: A new draft version of a letter to George Vary
with OGC's suggestions. Please advise.

Thanks
-Sarah

Mr. George F. Vary
Executive Director
American Zinc Association
2025 M Street, NW
Suite 800
Washington, DC 20036

Dear Mr. Vary:

I want to respond to your concerns over my keynote address regarding the Reduce, Reuse, and Recycle (3R) Initiative at the G-8 Ministerial, specifically the portion of my remarks regarding the Bush Administration's "smart purchasing" initiatives.

The overall message of my address was that the 3Rs, including recycling, are a win-win for the economy and the environment, and I want to assure you that the Bush Administration, including the Commerce Department, is unwavering in its full commitment to all aspects of the 3R initiative, especially recycling.

In the portion of my address that dealt with government purchasing, I stated that "[t]he U.S. Government is using its status as a major consumer to promote environmentally smart purchasing of products", and that "[t]he U.S. has requirements, through legislation and Presidential Executive Orders, that mandate Federal government purchasing of environmentally smart products." In these specific areas we, of course, must conform to the governing legislation, implementing Orders and regulations. However, these obligations do not in any way undercut our international commitment to the 3Rs, and I assure you that the Commerce Department will fully support any and all efforts to ensure that our government purchasing polices are developed and implemented in a manner consistent with, and supportive of, the 3Rs.

| Deleted: , |
| Deleted: are |
| Deleted: constrained by |

I greatly appreciate your active participation in the interagency process in preparation for the G-8 Ministerial, as well as your subsequent comments regarding the U.S. keynote address at the Ministerial, and I look forward to our continued partnership in support of the 3Rs. If you have additional questions please do not hesitate to contact me.

Sincerely,


Joseph H. Bogosian

CEQ 9



Mr. George F. Vary
Executive Director
American Zinc Association
2025 M Street, NW
Suite 800
Washington, DC 20036

Dear Mr. Vary:

I want to respond to your concerns over my keynote address regarding the Reduce, Reuse, and Recycle (3R) Initiative at the G-8 Ministerial, specifically the portion of my remarks regarding the Bush Administration's "smart purchasing" initiatives.

The overall message of my address was that the 3Rs, including recycling, are a win-win for the economy and the environment, and I want to assure you that the Bush Administration, including the Commerce Department, is unwavering in its full commitment to all aspects of the 3R initiative, especially recycling.

In the portion of my address that dealt with government purchasing, I stated that "[t]he U.S. Government is using its status as a major consumer to promote environmentally smart purchasing of products", and that "[t]he U.S. has requirements, through legislation and Presidential Executive Orders, that mandate Federal government purchasing of environmentally smart products." In these specific areas, we, of course, must conform to the governing legislation, implementing Orders and regulations. However, these obligations do not in any way undercut our international commitment to the 3Rs, and I assure you that the Commerce Department will fully support any and all efforts to ensure that our government purchasing polices are developed and implemented in a manner consistent with, and supportive of, the 3Rs.

I greatly appreciate your active participation in the interagency process in preparation for the G-8 Ministerial, as well as your subsequent comments regarding the U.S. keynote address at the Ministerial, and I look forward to our continued partnership in support of the 3Rs. If you have additional questions please do not hesitate to contact me.

Sincerely,

Joseph H. Bogosian

Deleted: ,
Deleted: are
Deleted: constrained by

# EXHIBIT

# N



"Pinero, Edwin"
<Edwin_Pinero@ceq.eop.gov
>

03/23/2006 07:47 AM

To    <Sarah.Aker@mail.doc.gov>

cc    <ed.pinero@ofee.gov>

bcc

Subject    RE: George Vary

Sarah

When I got back to the office, this is what I found in my archived emails. Sounds like the comments we exchanged went into the first letter to them. Then, he must have replied with another letter, and that prompted the email below.

I assume then, that as our position did not change from July, when he contacted in November (according to him, by letter) we did not reply again by letter, but instead told him he can all me. He never did, so nothing came of the plan below in November, until he raised the issue at the 3Rs meeting lat week saying we did not reply.

I am trying to figure out what to do. Since he never formally contacted me, or wrote me, I am not comfortable writing a response. Calling him won't help because I already talked to him on the 16th.

So, my inclination is to reply to his email request from the March 16th meeting by saying that I was mistaken, that the letter I was recalling was the July letter. But that as we reconstructed the sequence of events, he was told in November to contact me, which he never did, so there was no written reply to any follow up letter he wrote. I will tell him that I feel the July letter was explicit enough, and that I further explained our position last week (which I can recap in the email to him). Sound ok to you folks?????

I never did see his follow up letter, so if you can get that to me, that would be great.

By the way, as an aside, I think he is mixing two thoughts. The speech Joe gave in Japan was regarding our commitment to the 3Rs. The executive orders he references are talking about federal purchasing of environmentally preferable products. Joe's speech did not contradict the EOs, as the orders do not "require" us to only buy recycled product. In other words, although there are some recycled content product metrics in the orders, they in no place say we always have to buy only recycled content or remanufactured products.

He also makes an assumption that the objective of the orders is to expand markets for goods with recycled contents. Although that is a natural outcome, the real objective of the orders is to enhance prudent environmental and economic stewardship in our own purchasing practices. I think this point is the one he is missing.

Finally, based on sidebar discussions, his position is in no way representative of the consensus of the industry group represented; at least at the March meeting. One other representative told me that the issue being raised is missing the point and indicates a lack of understanding of the orders.

Ed

-----Original Message-----
From: Pinero, Edwin
Sent: Thursday, November 17, 2005 9:58 AM
To: 'Sarah.Aker@mail.doc.gov'

000007

Subject: Re: George Vary

I would be happy to talk to him realizing I would basically reiteratw stuff we said already and only that part within my realm so to speak.

So if ok with you, he can call me at 202 564 1297.

Also, can you send me the last email or two that recapped our response?  I am sure I have it somewhere, but just in case.

Thanks

Ed

-----Original Message-----
From: Sarah.Aker@mail.doc.gov <Sarah.Aker@mail.doc.gov>
To: Pinero, Edwin <Edwin_Pinero@ceq.eop.gov>; ed.pinero@ofee.gov <ed.pinero@ofee.gov>
Sent: Wed Nov 16 17:29:07 2005
Subject: George Vary

Hi Ed,
Long time no see!  I wanted to touch base with you regarding the George Vary 'issue'.  As you probably remember, we sent him a letter back in July/August explaining our position.

He now wants to meet with Joe Bogosian's replacement (Joe went to FAA) to discuss this issue further.  Unfortunately, not only does his replacement not have the history of this issue, but he doesn't have a ton of knowledge on these specific issues.

I wanted to see if you wanted me to have him get in touch with you, or drop this thing all together.  David V and Joe felt that we had done all we could.  Let me know if you have a preference on how to deal with this.

Thanks for your help,
-Sarah

Sarah E. Aker
Director
Office of the Advisory Committees
U.S. Department of Commerce



| | | | |
|---|---|---|---|
| **"Pinero, Edwin"** <Edwin_Pinero@ceq.eop.gov > | To | <vanhoogstratendj@state.gov>, <sarah.aker@mail.doc.gov>, <leith.angie@epa.gov>, <allen.derry@epa.gov>, <dana.arnold@ofee.gov> | |
| 04/20/2005 03:02 PM | cc | | |
| | bcc | | |
| | Subject | rewrite of OFEE section | |

All

Here is a rewrite of the govt purchasing part.  We made it more general to capture more government-wide efforts, yet not be too long.  If it is still too long, the italics parts can go to a support background paper.

I will also try to get you more general comments on the other parts.

I copied you all so you can use it for talking points, being developed simultaneously.

I spoke to Jim today and he prefers more general statements.  Not to much in the weeds.

Ed



3Rs - green purchasing - OFEE Suggestions.doc

OFEE Recommend Re-write of Environmentally Smart Purchasing Section

## VIII. Promoting Environmentally Smart Purchasing

- The U.S. has requirements, both as legislation and as Presidential executive orders, that mandate Federal government purchasing of environmentally smart purchasing (also known as "green purchasing").
- The Federal program is a stewardship effort to conserve resources and use economically viable products with lesser negative impacts on human health and the environment. Its seven components focus on creating and sustaining markets for recycled materials and biobased materials, increasing energy efficiency and the use of renewable energy technologies, and reducing the toxic or hazardous constituents of products.
- The seven components are managed by the Environmental Protection Agency (recycled content, Energy Star, non-ozone depleting substances, environmentally preferable, and priority chemicals), Department of Energy (Energy Star, energy-efficient, alternative fuel vehicles), and Department of Agriculture (biobased). (http://www.ofee.gov/gp/gp.htm)
- The Federal program applies to the entire range of goods and services purchased by Federal agencies, from office products to electronics to buildings to fleet vehicles. In addition, there are examples of applying environmentally smart considerations to weapons systems design, acquisition, maintenance, and disposal, including recycling of obsolete weapons.
- *These requirements have been incorporated into agency-specific purchasing protocols. Currently, all major Federal agencies have such efforts, most notably the Departments of Defense and Energy and NASA. In addition, the Federal Highways Administration researches and encourages the use of recycled materials in the construction of highways and related appurtenances.*
- *Every state government and many local governments also have an environmentally smart purchasing program. At a minimum, these programs require the purchase of recycled paper, and several programs also require the purchase of other recycled content or environmentally preferable products.*

RELEASED IN FULL

Briefing Paper for Acting Under Secretary Wayne: 3Rs Ministerial Conference in Tokyo, April 28-30, 2005

Japan Hosted a Ministerial Conference in Tokyo on April 28-30 on the Subject of Reduce, Reuse and Recycle (3Rs) at which the G-8 countries and 12 developing countries mostly from Asia (but including South Africa and Brazil) were participants. The Japanese proposal for the Conference was an outcome of the G-8 Leaders' meeting at Sea Island in 2004. The Initiative and the Conference enjoyed strong U.S. support. The formal Conference, chaired throughout by Japanese Environment Minister Koike, was preceded on the April 28 by an industry symposium and a reception attended by Minister Koizumi. The United States delegation was led by James Connaughton, Chairman of the Council on Environmental Quality and included Assistant Secretary of Commerce Ben Wu and Deputy Assistant Secretary of Commerce Joseph Bogosian. EPA and the Department of State were also represented.

At the conference the United States stressed the importance of addressing tariff and non-tariff trade barriers to trade in recycled and remanufactured goods as a potentially important economic and environmental win-win. The United States further stressed that markets need to be opened for goods and material that would otherwise enter the waste stream and that if a product can be reused, recycled or remanufactured so as to benefit the economy and protect the environment, those approaches should be encouraged. The United States called for a commitment on the part of WTO members to work together in the WTO to pursue barriers to trade in recycled and remanufactured goods as a part of the Doha Development Agenda. The United States further stated its intent to seek partnership with domestic industries, non-governmental organizations, local and state governments when it comes to the promotion of recycling, lean manufacturing initiatives and environmentally smart procurement. Regulation, it was stressed, should support innovation and the work at the OECD and elsewhere on "material flows accounting" (measuring both the economic and environmental benefits of reuse, recycling and remanufacturing) should continue.

The outcome of the conference is a non-negotiated Chairman's Summary (still in draft) which, reflects, among other views, the points stressed by the United States. The summary states that "Promotion of the 3Rs could also contribute to addressing climate change issues. (Note: certain recycling and reuse processes result in lower greenhouse gas emissions) The outputs from this 3R Conference should be fed into the preparations for the G-8 Heads of State and Government Summit at Gleneagles in the UK in July 2005 as well as into the UN Marrakech process on Sustainable Production and Consumption." The meeting also endorsed a further meeting at the senior official level as a follow up to the 3R Ministerial Conference.

g8s o

THE 3Rs could also contribute to addressing climate change issues hsamoang ot

UNCLASSIFIED

000031

Briefing Paper for Acting Under Secretary Wayne: 3Rs Ministerial Conference in Tokyo, April 28-30, 2005

Japan Hosted a Ministerial Conference in Tokyo on April 28-30 on the Subject of Reduce, Reuse and Recycle (3Rs) at which the G-8 countries and 12 developing countries mostly from Asia (but including South Africa and Brazil) were participants. The Japanese proposal for the Conference was an outcome of the G-8 Leaders' meeting at Sea Island in 2004. The Initiative and the Conference enjoyed strong U.S. support. The formal Conference, chaired throughout by Japanese Environment Minister Koike, was preceded on the April 28 by an industry symposium and a reception attended by Minister Koizumi. The United States delegation was led by James Connaughton, Chairman of the Council on Environmental Quality and included Assistant Secretary of Commerce Ben Wu and Deputy Assistant Secretary of Commerce Joseph Bogosian. EPA and the Department of State were also represented.

At the conference the United States stressed the importance of addressing tariff and non-tariff trade barriers to trade in recycled and remanufactured goods as a potentially important economic and environmental win-win. The United States further stressed that markets need to be opened for goods and material that would otherwise enter the waste stream and that if a product can be reused, recycled or remanufactured so as to benefit the economy and protect the environment, those approaches should be encouraged. The United States called for a commitment on the part of WTO members to work together in the WTO to pursue barriers to trade in recycled and remanufactured goods as a part of the Doha Development Agenda. The United States further stated its intent to seek partnership with domestic industries, non-governmental organizations, local and state governments when it comes to the promotion of recycling, lean manufacturing initiatives and environmentally smart procurement. Regulation, it was stressed, should support innovation and the work at the OECD and elsewhere on "material flows accounting" (measuring both the economic and environmental benefits of reuse, recycling and remanufacturing) should continue.

The outcome of the conference is a non-negotiated Chairman's Summary (still in draft) which, reflects, among other views, the points stressed by the United States. The summary states that "Promotion of the 3Rs could also contribute to addressing climate change issues. (Note: certain recycling and reuse processes result in lower greenhouse gas emissions) The outputs from this 3R Conference should be fed into the preparations for the G-8 Heads of State and Government Summit at Gleneagles in the UK in July 2005 as well as into the UN Marrakech process on Sustainable Production and Consumption." The meeting also endorsed a further meeting at the senior official level as a follow up to the 3R Ministerial Conference.

 g8s o
THE 3Rs could also contribute to addressing climate change issues hsamoang ot

UNCLASSIFIED

Caria
Langjahr/MAS/ITA/USDOC

03/15/2006 01:37 PM

To Joanne Sonenshine/MAS/ITA/USDOC@USDOC

cc Caria Langjahr/MAS/ITA/USDOC@USDOC,
ed.pinero@ofee.gov, Jamie
Estrada/MAS/ITA/USDOC@USDOC

bcc

Subject Re: BIG CHANGE



Joanne, I will do.
Ed, thank you for the offer.

Caria Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650
Joanne Sonenshine/MAS/ITA/USDOC

Joanne
Sonenshine/MAS/ITA/USDO
C.

03/15/2006 01:32 PM

To ed.pinero@ofee.gov

cc Caria Langjahr/TD/ITA/USDOC, Jamie
Estrada/MAS/ITA/USDOC@USDOC

Subject Re: BIG CHANGE

Ed, I am sorry that that is the case. I would like for you to speak on his behalf (if that is ok) unless Jamie
has a different thought.
Caria - we will need to alert Al's office so Al does not thank Mr. Connaughton for speaking when in reality,
it was Mr. Pinero.

ed.pinero@ofee.gov



ed.pinero@ofee.gov

03/15/2006 01:27 PM

To Joanne_Sonenshine@ita.doc.gov

cc

Subject BIG CHANGE

Joanne

Hate to do this to you, but I just (as in right now) heard from Chairman
Connaughton's office that he will be offsite tomorrow morning, and
cannot do this. For this to happen so late usually means a "specific
office" needs him.

So, we need a plan B. As I wrote his talking points, and am also WH, do
you want me to deliver comments on his behalf (and I can say as much)?
Or do we skip it and say sorry to all?

I am so sorry for this, but when one has the President's senior advisers

on the agenda, this risk is inherent.

Whatever you decide is how we will proceed.

Ed

Joanne_Sonenshin
e@ita.doc.gov

03/15/2006 08:07
AM

To
"Hermann, David C"
<HermannDC@state.gov>

cc
ed.pinero@ofee.gov, "Goldberg,
Marsha S (OES)"
<GoldbergMS@state.gov>,
"Kandachi, Keiko"
<KandachiKX@state.gov>

Subject
RE: Comments on 3R talking points

Dave,
To give a bit of context, at tomorrow's industry symposium, Ed, Jamie
and David will all be speaking, along with Chairman Connaughton and
other agency representatives. Therefore, David's comments will focus on
State's involvement and work going forward from State's perspective. The
overview of the SOM will be addressed by others, for example, so I
suggested to Marsha that David speak about some of the more specific
points (like Basel and our work with Japan, etc.) That is why you may
see the points more specifically related to Basel and Japan and not more
overarching themes. Just wanted to help you understand where these
initial thoughts may have come from.
Joanne

"Hermann, David C"
<HermannDC@state.gov>

03/15/2006 03:40 AM

To
<Joanne_Sonenshine@ita.doc.gov>,
"Goldberg, Marsha S (OES)"
<GoldbergMS@state.gov>

cc
<ed.pinero@ofee.gov>, "Kandachi,
Keiko" <KandachiKX@state.gov>

Subject
RE: Comments on 3R talking points

Thanks Marsha --

These points mainly seem to be about Basel Convention and cooperation
with Japan.    That's fine I guess, but not sure why those are the areas
of emphasis.    I guess its not clear to me the msg you want David Brown
to be getting across.

I could see having additional points (or collections of points) about:

* general overview of 3Rs SOM (could use summary of Tokyo 1561)
* progress achieved (or lack thereof)
* major hurdles (here you could mention some divergent views from
participating countries)
* issues related to Basel Convention (then include some of your points)
* next steps /Japan's leadership (include pts you've written)
* long-term U.S. goals

For this last one, you could lift text from the last para of our
comment:
        More progress in working out standards for determining what
        qualifies as a recycled or remanufactured good will be needed as
        the United States and like-minded developed nations seek to
        convince developing nations that they are not simply serving as
        dumping grounds for used-up equipment.
        Developed countries will need to pay more attention to helping
        developing nations improve their recycling capacities and
        regulatory structure to better use the material flows more
        effectively.
        More work will also be needed to ensure that waste from electronic
        and electric appliances containing such hazardous materials as
        lead and mercury do not threaten the environment and human health
        when they are disassembled to recycle parts and are not dumped
        without proper treatment.
Anyway, for the text you already prepared, it looks fine w/ Joanne's
edits. I would only add the word "sustainable" before development in the
last point.

It does sound VERY down on Basel - is that intentional?  Is there a
reason to single out the German rep's comments for your audience?    I
like that you're focussing on what Japan is doing, but is that what they
want to hear about?

Anyway, hope this helps, let us know if there's anything else.

- Dave Hermann  EST Tokyo


-----Original Message-----



From: Joanne_Sonenshine@ita.doc.gov
[mailto:Joanne_Sonenshine@ita.doc.gov]
Sent: Wednesday, March 15, 2006 5:24 AM
To: Goldberg, Marsha S (OES)
Cc: Hermann, David C; ed.pinero@ofee.gov
Subject: Re: Comments on 3R talking points


Looks like a good general set of points.  Here are a couple of suggested
edits. I have also copied Ed Pinero as he may have some thoughts.



"Goldberg, Marsha S \(OES\)"
<GoldbergMS@state.gov>

                                                                    To
03/14/2006 03:07 PM                    <Joanne_Sonenshine@ita.doc.gov>,
                                       "Hermann, David C"
                                       <HermannDC@state.gov>
                                                                    cc

                                                              Subject
                                       Comments on 3R talking points




Hi Joanne and Dave.
Based on the draft cable and my conversation this morning with Joanne
these are the talking points I developed for Dave Brown. Could you
please add/delete as appropriate. Some of the statements are a bit
cryptic but that's all I could glean from the cable. A bit more detail
might be helpful to Dave. Also were there any other issues I might add?
If you could return ASAP I would appreciate as I have a few more people
to circulate to once I get the message from the meeting correct.  Thanks


Marsha


Marsha S. Goldberg, Ph.D.

Foreign Affairs Officer/ AAAS Diplomacy Fellow

U.S. Department of State

Office of Environmental Policy (OES/ENV)

Washington, DC 20520

tel: (202) 736-7111

fax: (202) 647-5947

goldbergms@state.gov (See attached file: TALKING POINTS ON 3R STATE JS
Edits.doc)

TALKING POINTS ON 3R STATE JS Edits.doc



Sarah Aker/MAS/ITA/USDOC
02/15/2006 10:49 AM

To   3Rs

cc

bcc

Subject   Fw: Initial CEQ Thoughts on Package from Japan; for
          discussion Thursday at noon

FYI from Ed Pinero:

---------------------------------------------------------------------------------------------

All:

As we prepare for discussion on Thursday, I reviewed the package of documents sent as read-aheads
from Japan.  Some thoughts listed below for discussion:

1. On the powerpoint about Proposed Points for Discussion for the March meeting- These are actually
pretty good, if not somewhat ambitious in terms of intended accomplishments.  But these are in line with
working group kind of meetings, where information is being solicited and shared.  I did not see any spots
where there was a call for consensus, resolutions, or voting.  We can discuss detailed more if you wish on
Thursday, but it looks like the overall theme of the meeting is not too threatening.

2. On the annotated agenda- It looks like the working groups (1 and 2) divide along domestic vs
international lines.  Commerce, USTR, and State are the logical reps for WG 2 on international
implementation.  Working group 1, as defined would be well served with a point person from EPA.  OFEE
can contribute to deal with the federal procurement and practices side.  However, input from Commerce
here too would be valuable.  Action Item: We really need to resolve the issue of no one from OFEE, CEQ,
or EPA going.

3. There is a session on e-wastes on day 2.  We should really provide information on EPA's various
programs and developing regulatory efforts on waste and recycling issues.  Also, the USG's efforts with
Federal Electronics Challenge and Electronics Stewardship MOU.

4. Comments on draft of questionnaire sent to me by Angie- It is not clear if this is a composite of EPA and
Commerce, or only one or the other.  In any case:

-General Comments: Overall, the draft responses are a little weak on the domestic efforts in the USA.  We
can say much about voluntary efforts, e-waste related regulatory activities, USG's own efforts (OFEE
input).  We can, and should, "reuse" as much background info as we can from the package for the April
2005 Ministerial meeting.  Recall that this working group meeting is a different set of folks, so it won't be
old news to them.  And also, a great deal of effort went into that package last year, and is very good stuff.

We need to make sure we show any new developments since last April.  We do not want to give the
impression we have let it sit, because even though we may not have been focused on the 3Rs meeting
part of it, we have done, and continuously do, much on the topic.

As to policy, and CEQ positions, they have not changed since the April 2005 meeting.  Therefore, we may
want to have a brief "cheat sheet" for the delegation on do's and don't's.  I recall the great package the
State Department prepared for the team when we went to Costa Rica.

-Section 1, We need to give something on recent activities.  We can mention SCP meeting in Costa Rica
(our involvement), Asia Pacific (this might be best place to use the general text on this provided in later
sections), and we can bring forth stuff from last year's package.

-Section 2 is heavy on the trade and commerce side, but weak on domestic efforts.  We need more "juice"
from EPA, and OFEE on the USG efforts part.

- Also in section 2, there is mention of PIC.  I would like a status on that if there is any new information

000066

relative to what is presented in this paragraph.

-section 3, there are several places where quantitative information is provided (3.2, 3.3); might be good to cite sources.

- Section 3.3, first sentence of second paragraph should add "....for employment growth while maintaining competitive product costs."

000095

| | |
|---|---|
| Jamie<br>Estrada/MAS/ITA/USDOC<br>03/01/2006 08:20 AM | To  Joanne Sonenshine/MAS/ITA/USDOC@USDOC, "ed pinero"<br>&lt;ed.pinero@ofee.gov&gt;<br>cc  Joanne Sonenshine/MAS/ITA/USDOC<br>bcc<br>Subject  Re: Fw: RE: Meeting for 3Rs SOM |

Sure, I'm open to that and if you think its necessary.
-------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov

Sent via BlackBerry Wireless


----- Original Message -----
From: Joanne Sonenshine
Sent: 03/01/2006 08:19 AM
To: ed.pinero@ofee.gov
Cc: Joanne Sonenshine
Subject: Re: Fw: RE: Meeting for 3Rs SOM

Jamie, do you want to meet up with Dave on Sunday? If so, let me know and I will find a time that works.
Otherwise, well wait until Monday.
——ed.pinero@ofee.gov wrote: -----

To: Joanne_Sonenshine@ita.doc.gov
From: ed.pinero@ofee.gov
Date: 03/01/2006 02:10PM
cc: Jamie.Estrada@mail.doc.gov
Subject: Re: Fw: RE: Meeting for 3Rs SOM

I agree, Monday AM it is; and 8 as he suggested.  I will make sure I eat
before then so I am not spitting egg on everyone as I try to eat and
talk.

Ed


| | | |
|---|---|---|
| Joanne_Sonenshin<br>e@ita.doc.gov<br><br>03/01/2006 08:05<br>AM | ed.pinero@ofee.gov<br><br>Jamie.Estrada@mail.doc.gov | To<br><br>cc<br>Subject<br>Fw: RE: Meeting for 3Rs SOM |

000095

I personally do not think it is necessary to meet with Dave both Sunday
and Monday but that is just me. I think Monday morning is enough time.
Ed, if you disagree and you think Jamie and I should speak with Dave on
Sunday, please advise. Thanks,
Joanne
-----Forwarded by Joanne Sonenshine/MAS/ITA/USDOC on 03/01/2006 12:57PM
-----

To:
From: "Hermann, David C"
Date: 03/01/2006 09:53AM
Cc: , ,
, "Rabens, Joyce B" ,
"Stephen JACQUES \(E-mail\)"
Subject: RE: Meeting for 3Rs SOM

Thank you Joanne --
I think that 8:00 AM Monday morning would be good for us all to meet.
Initially I had suggested breakfast, but on second thought I think it
best for people to just do whatever for breakfast (you'll be hungry
earlier w/ jet-lag), and that way we can have a more focused meeting.
So Joyce and Steve and I will come to your hotel and meet you in the
lobby at 8:00 AM.
Steve and I are also willing to meet you and Jamie on Sunday afternoon
if you'd like at 4pm. It really depends on whether you think it
necessary, based on what role you'd like us to play.   How active will
the PCS and State people from the Embassy need to be in the working
groups in terms of speaking up and making interventions, etc?    If
there are specific things we'll need to study up on and prepare for the
conference, perhaps we should meet on Sunday afternoon (actually would
be best if someone told us sooner).  But if you think we can cover all
that we would need to know on Monday morning, that would be fine for us
(and give you guys more time to sight-see on Sunday afternoon as well).
So for now let's plan on 8am Monday at your hotel, and then please let
us know if you'd still like Steve and I to meet w/ you and DAS Estrada
on Sunday afternoon at 4pm.
Ok, thanks very much - Dave Hermann  EST Tokyo
   ----Original Message-----
From: Joanne_Sonenshine@ita.doc.gov
[mailto:Joanne_Sonenshine@ita.doc.gov]
Sent: Wednesday, March 01, 2006 1:13 AM
To: Hermann, David C
Cc: ed.pinero@ofee.gov; Jamie.Estrada@mail.doc.gov;
Carla.Langjahr@mail.doc.gov
Subject: Meeting for 3Rs SOM

        Ed has proposed an 8pm or 9pm meeting Sunday night OR 8am meeting
        on Monday to touch base.
        Dave, what works for you? Thanks.

000095

Jamie
Estrada/MAS/ITA/USDOC
03/01/2006 08:38 AM

To  Joanne Sonenshine/MAS/ITA/USDOC@USDOC
cc
bcc
Subject  Re: Fw: RE: Meeting for 3Rs SOM

I'm with you on this -- Monday is good enough.

The MEMA meeting was good. Not a lot of new info but it was great to meet them
and develop a relationship.
--------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov

Sent via BlackBerry Wireless

----- Original Message -----
From: Joanne Sonenshine
Sent: 03/01/2006 08:35 AM
To: Jamie Estrada
Subject: Re: Fw: RE: Meeting for 3Rs SOM

I was wondering if you thought it was necessary. I am prone to think that Monday morning is sufficient to
meet up with Dave. But if you disagree, I can set up something with him for SUnday, as well.

I heard about your meeting with MEMA. Helpful?
----Jamie Estrada/MAS/ITA/USDOC wrote: ---

To: Joanne Sonenshine/MAS/ITA/USDOC@USDOC, "ed pinero" <ed.pinero@ofee.gov>
From: Jamie Estrada/MAS/ITA/USDOC
Date: 03/01/2006 02:20PM
cc: Joanne Sonenshine/MAS/ITA/USDOC
Subject: Re: Fw: RE: Meeting for 3Rs SOM

Sure, I'm open to that and if you think its necessary.
--------------------------
Jamie P. Estrada
Deputy Assistant Secretary for Manufacturing
Department of Commerce
International Trade Administration
(202) 482-1872
Jamie.Estrada@mail.doc.gov

Sent via BlackBerry Wireless

----- Original Message -----
From: Joanne Sonenshine

**000095**

```
Sent: 03/01/2006 08:19 AM
To: ed.pinero@ofee.gov
Cc: Joanne Sonenshine
Subject: Re: Fw: RE: Meeting for 3Rs SOM
```

Jamie, do you want to meet up with Dave on Sunday? If so, let me know and I will find a time that works. Otherwise, well wait until Monday.
——ed.pinero@ofee.gov wrote: ---—

To: Joanne_Sonenshine@ita.doc.gov
From: ed.pinero@ofee.gov
Date: 03/01/2006 02:10PM
cc: Jamie.Estrada@mail.doc.gov
Subject: Re: Fw: RE: Meeting for 3Rs SOM

```
I agree, Monday AM it is; and 8 as he suggested.  I will make sure I eat
before then so I am not spitting egg on everyone as I try to eat and
talk.

Ed
```

```
            Joanne_Sonenshin
            e@ita.doc.gov                                              To
                                        ed.pinero@ofee.gov
            03/01/2006 08:05                                           cc
            AM                          Jamie.Estrada@mail.doc.gov
                                                                  Subject
                                        Fw: RE: Meeting for 3Rs SOM
```

```
I personally do not think it is necessary to meet with Dave both Sunday
and Monday but that is just me. I think Monday morning is enough time.
Ed, if you disagree and you think Jamie and I should speak with Dave on
Sunday, please advise. Thanks,
Joanne
-----Forwarded by Joanne Sonensh ne/MAS/ITA/USDOC on 03/01/2006 12:57PM
-----

To:
From: "Hermann, David C"
Date: 03/01/2006 09:53AM
cc: ,
, "Rabens, Joyce B" ,
"Stephen JACQUES \(E-mail\)"
Subject: RE: Meeting for 3Rs SOM
```

000095

Thank you Joanne --
I think that 8:00 AM Monday morning would be good for us all to meet.
Initially I had suggested breakfast, but on second thought I think it
best for people to just do whatever for breakfast (you'll be hungry
earlier w/ jet-lag), and that way we can have a more focused meeting.
So Joyce and Steve and I will come to your hotel and meet you in the
lobby at 8:00 AM.
Steve and I are also willing to meet you and Jamie on Sunday afternoon
if you'd like at 4pm.  It really depends on whether you think it
necessary, based on what role you'd like us to play.   How active will
the FCS and State people from the Embassy need to be in the working
groups in terms of speaking up and making interventions, etc?     If
there are specific things we'll need to study up on and prepare for the
conference, perhaps we should meet on Sunday afternoon (actually would
be best if someone told us soone:).  But if you think we can cover all
that we would need to know on Monday morning, that would be fine for us
(and give you guys more time to sight-see on Sunday afternoon as well).
So for now let's plan on 8am Monday at your hotel, and then please let
us know if you'd still like Steve and I to meet w/ you and DAS Estrada
on Sunday afternoon at 4pm.
Ok, thanks very much - Dave Hermann  EST Tokyo
   ----Original Message-----
From: Joanne_Sonenshine@ita.doc.gov
[ mailto:Joanne_Sonenshine@ita.doc.gov ]
Sent: Wednesday, March 01, 2006 1:13 AM
To: Hermann, David C
Cc: ed.pinero@ofee.gov; Jamie.Estrada@mail.doc.gov;
Carla.Langjahr@mail.doc.gov
Subject: Meeting for 3Rs SOM

       Ed has proposed an 8pm or 9pm meeting Sunday night OR 8am meeting
       on Monday to touch base.
       Dave, what works for you?  Thanks.

000104



Joanne
Sonenshine/MAS/ITA/USDOC
02/27/2006 03:13 AM

To  "Hermann, David C" <HermannDC@state.gov>

cc  Carla Langjahr/MAS/ITA/USDOC@USDOC, Jamie
Estrada/MAS/ITA/USDOC@USDOC, Joanne
Sonenshine/MAS/ITA/USDOC@USDOC, "Miyajima, Chimi"

bcc

Subject  Re: 3Rs Conference - quick mtg Sun PM?

Dave,
That would be great! We are still waiting word on whether or not Ed Pinero will be joining the delegation,
as well. If so, he would not be arriving until later Sunday so perhaps we could meet Sunday early evening
(after 6pm) or first thing Monday. Carla, please forward this email to Ed  as I do not have his email
address and we can try and coordinate.
Looking forward to seeing you all next week.
Regards,
Joanne
-----"Hermann, David C" <HermannDC@state..gov> wrote: -----

To: <Carla.Langjahr@mail.doc.gov>, <Jamie.Estrada@mail.doc.gov>,
<Joanne_Sonenshine@ita.doc.gov>
From: "Hermann, David C" <HermannDC@state.gov>
Date: 02/27/2006 06:57AM
cc: "Miyajima, Chimi" <MiyajimaCX@state.gov>, <Samuel.Kidder@mail.doc.gov>,
<Stephen.Jacques@mail.doc.gov>, "Rabens, Joyce B" <RabensJB@state.gov>
Subject: 3Rs Conference - quick mtg Sun PM?

Thank you Carla.
DAS Estrada/Joanne –
If you think worthwhile, perhaps Steve Jacques and I could come by your hotel just to meet you quickly
on Sunday afternoon?    That way we could  go over the agenda for the conference, and discuss plans for
who will cover what and any other last-minute details.
Minister-Counselor Rabens is not available on Sunday, but Steve and I could meet you from 4:00 to ~
5:00 pm.   We could come to your hotel and just meet in your lobby.    Alternatively (or in addition) we
could have breakfast with you on Monday morning, which Joyce could join.

Please let us know your preferences.
Thanks very much - Dave Hermann
PS - the airport limo bus is clean, cheap and convenient, so hope you don't mind taking that.
David Hermann, Environment Officer
Environment, Science and Technology Section
U.S. EMBASSY TOKYO
10-5 Akasaka 1-Chome, Minato-ku, Tokyo  107-8420
ph: +81 (3) 3224-5495
fax: +81 (3) 3224-5229
within Japan dial 03-3224-5XXX

This message is unclassified
        -----Original Message-----
        From: Carla.Langjahr@mail.doc.gov [mailto:Carla.Langjahr@mail.doc.gov]
        Sent: Friday, February 24, 2006 10:33 PM
        To: Hermann, David C
        Cc: Jamie.Estrada@mail.doc.gov; Joanne_Sonenshine@ita.doc.gov; Miyajima, Chimi;
        Samuel.Kidder@mail.doc.gov; Stephen.Jacques@mail.doc.gov
        Subject: RE: 3Rs Conference - Transportation from airport to hotel

000104

Steve - thank you for the note.

David - thank you as well for the accommodation change.  Joanne and Jamie look forward to seeing you at the 3R's SOM.

Carla

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650


"Hermann, David C"
<HermannDC@state.gov>

02/24/2006 01:41 AM

To  <Stephen.Jacques@mail.doc.gov>, <Carla.Langjahr@mail.doc.gov>
    <Jamie.Estrada@mail.doc.gov>, <Joanne_Sonenshine@ita.doc.gov>,
cc  <Samuel.Kidder@mail.doc.gov>, "Miyajima, Chimi" <MiyajimaCX@state.gov>
Subject  RE 3Rs Conference - Transportation from airport to hotel


Thanks Steve.

Carla -- we've revised DAS Estrada's hotel for March 4 check-in.

Thanks - Dave

------------------
David Hermann, Environment Office
Environment, Science and Technology Section
U.S. EMBASSY TOKYO
10-5 Akasaka 1-Chome, Minato-ku, Tokyo  107-8420
ph: +81 (3) 3224-5495
fax: +81 (3) 3224-5229
within Japan dial 03-3224-5XXX

This message is unclassified

-----Original Message-----
From: Stephen.Jacques@mail.doc.gov [mailto:Stephen.Jacques@mail.doc.gov]
Sent: Friday, February 24, 2006 3:13 PM
To: Carla.Langjahr@mail.doc.gov
Cc: Hermann, David C; Jamie.Estrada@mail.doc.gov;
Joanne_Sonenshine@ita.doc.gov; Samuel.Kidder@mail.doc.gov

000104

Subject: 3Rs Conference – Transportation from airport to hotel

Dear Carla,

Thank you for your message. Due o limited Embassy resources, we are unable to arrange for ground transportation for DAS Estrada from the airport to his hotel. I have copied information from the Embassy's country clearance cable which gives details on transportation from the airport.

DIRECTIONS FROM AIRPORT
————————————

10. (U) Due to limited Embassy resources, all visitors to Tokyo should be prepared to take the airport limousine bus. There is a limousine bus directly to most Tokyo hotels for Yen 3,000. The limousine bus counter is located in the Tokyo Narita airport arrival lobby. Twenty-four hour currency exchange facilities are available in the customs area and the arrival lobby of the airport. Travel time from Tokyo Narita airport to downtown Tokyo is 90-120 minutes depending upon traffic conditions. Alternatively one can take the train into Tokyo and a taxi from the train station to the hotel. The train fare is 3,000 yen. The train/taxi combination will cost more than the airport limousine bus.

Best regards,
Stephen

Stephen Jacques
Commercial Officer
U.S. Embassy Tokyo
U.S. Commercial Service Tokyo
1-10-5 Akasaka, Minato-ku, Tokyo  07-8420
Phone: 81-3-3224-5085
Fax: 81-3-3589-4235
E-mail: Stephen.Jacques@mail.doc.gov

Access Asia's Largest Market

<table>
<tr><td>Carla Langjahr</td><td></td><td></td></tr>
<tr><td></td><td>To:</td><td>"Hermann, David C" &lt;HermannDC@state.gov&gt;,</td></tr>
<tr><td>02/24/2006 05:59<br>AM</td><td></td><td>stephen.Jacques@mail.doc.gov</td></tr>
<tr><td></td><td>cc:</td><td>Joanne Sonenshine/MAS/ITA/USDOC@USDOC, Jamie</td></tr>
<tr><td></td><td></td><td>Estrada/TD/ITA/USDOC@USDOC</td></tr>
<tr><td></td><td></td><td>Subject: 3Rs Conference(Document link: Stephen Jacques)</td></tr>
</table>

Mr. Hermann,

000104

Thank you for registering Jamie and Joanne for the 3R's SOM Conference and
arranging accommodations.

DAS Estrada will now arrive one day earlier: Saturday, March 4 on United
Flight #881 to Tokyo Narita at 4:20 p.m.  Since Jamie has an earlier
arrival date, is it possible to contact the hotel for lodging on Sat. March
4.  The departure/check out date remains the same (March 8).  Also, is it
possible to arrange for ground transportation for DAS Estrada for pick up
from the airport?  I am not sure if procedures for all posts are the same.

Any assistance would could provide with this would be greatly appreciated.
Thank you.

Carla Langjahr
Office of the Deputy Assistant Secretary for Manufacturing
International Trade Administration
U.S. Department of Commerce
(202) 482-4650

TRANSFERRED/RECOMMEND RELEASE

RECOMMEND AND TRANSFER - COM



Joanne
Sonenshine/MAS/ITA/USDOC

04/28/2006 08:48 AM

To "Hermann, David C" <HermannDC@state.gov>

cc Jason.Hancock@mail.doc.gov,
Stephen.Jacques@mail.doc.gov, ed.pinoro@ofee.gov,
Jamie Estrada/MAS/ITA/USDOC@USDOC

bcc

Subject Re: FW: 3Rs Point for Under Secretary Dobriansky

Thank you, Dave. Will be interested to hear if there is any outcome from that....

"Hermann, David C" <HermannDC@state.gov>



"Hermann, David C"
<HermannDC@state.gov>

04/28/2006 04:38 AM

To <Joanne_Sonenshine@ita.doc.gov>,
<Jason.Hancock@mail.doc.gov>,
<Stephen.Jacques@mail.doc.gov>

cc

Subject FW: 3Rs Point for Under Secretary Dobriansky

Joanne & FCS colleagues --

Just so you know, we've asked that U/S Dobriansky raise the 3Rs meeting (and
our disappointment) with Vice Environment Minister Eda at the CSD meeting in
New York next week.

Hope this will bring some benefits.....

Thanks - Dave Hermann     EST Tokyo

-----Original Message-----
From: Hermann, David C
Sent: Friday, April 28, 2006 5:36 PM
To: '?? ??'
Cc: Hermann, David C
Subject: RE: 3Rs Point for Under Secretary Dobriansky

Thank you Mr. Takiguchi.    I hope that doesn't seem to harsh.    Anyway, we
will always be happy to coordinate with you, but also hope we can coordinate
with other countries who seem to be wanting to move backward on the 3Rs and
make it harder to allow trade in recycled goods and materials for recycling.
They are the ones we need to work on!

Ok, thanks very much - Dave Hermann

-----Original Message-----
From: HIROAKI_TAKIGUCHI@env.go.jp [mailto:HIROAKI_TAKIGUCHI@env.go.jp]
Sent: Friday, April 28, 2006 5:26 PM
To: Hermann, David C
Subject: Re:3Rs Point for Under Secretary Dobriansky

Mr. Hermann,

Thank you for your e-mail. It is very helpful for us to prepare talking points
for our Vice Minister. As your mail suggests, we will coordinate with US in
the future process of the G8 Initiative. Anyway, have good holidays.

Hiroaki TAKIGUCHI
Ministry of the Environment, Japan

--Hermann, David C<HermannDC@state.gov> wrote:
>Dear Mr. Takiguchi --
>
>Thank you for your phone call.    Please find below the original background
and talking point that was prepared for Under Secretary Dobriansky's meeting
with Vice Minister Eda. I'm not certain how much her own staff may edit this
before giving it to her, but at least this will give you an idea of the
message
that we expect her to convey:
>================================================================================
>
>================
>
>Recycling & G8 3Rs (Reduce, Reuse, Recycle) Initiative
>------------------------------------------------------
>
>[background]
>
>In April 2005 Japan hosted a Ministerial-level conference on the G8 3Rs
Initiative, which grew out of an agreement at the Sea-Island G8 Summit to
encourage the more productive use of materials worldwide and to promote trade
in recycled goods and materials for recycling.  The initial conference was a
success, with a resulting declaration that included a number of items
important
to the United States, such as reducing barriers to trade in recycled products
and the favorable consideration of trade in remanufactured goods.  Japan
followed-up with a "3Rs Senior Officials Meeting" in March of 2006, which,
from
the U.S. perspective, turned out to be a step backwards.  The U.S. delegation
came home disappointed that old debates about trade in recycled products and
goods for recycling we thought were behind us seemed to dominate the
discussions.  In addition, the United States received minimal support from key
countries usually supportive of our objectives (such as Japan) for our concept
of promoting trade in remanufactured goods.  While the Ministry of Environment
worked hard in organizing the conference, we hope that in the future more
emphasis will be put into developing the agenda and coordinating with key
participants in advance, in order to ensure more successful results.
>
>[suggested talking point]
>
>O  •        While we appreciate Japan's leadership on the G8 3Rs Initiative,
we
hope that future meetings Japan hosts will include a more positive emphasis on
promoting trade in recycled products, materials for recycling, and
particularly
a more favorable consideration of remanufactured goods.
>
>================================================================================
>
>==
>
>=
>
>
>Thank you again Mr. Takiguchi, and please let me know if you have any further
questions.

>
>Best regards -
>
>
>Dave Hermann
>
>
>=====================================
>David Hermann, Environment Officer
>Environment, Science and Technology Section
>U.S. EMBASSY TOKYO
>10-5 Akasaka 1-Chome, Minato-ku, Tokyo  107-8420
>ph: +81 (3) 3224-5495
>fax: +81 (3) 3224-5229
>within Japan dial 03-3224-5XXX
>
>This message is unclassified
>
>-----Original Message-----
>From: 3R [mailto:3R@env.go.jp]
>Sent: Friday, March 31, 2006 8:55 PM
>To: Hermann, David C; Kandachi, Keiko; Ms Angie Leith; Mr.Kenneth
>L.Peel; Mr. Sean M. Bigley; Mr. Haruhiko Nishimura; Goldberg, Marsha S
>(OES); Sarah Aker; Gary Waxmonsky; Miyajima, Chimi; Mr.Pinero Edwin;
>Jamie.Estrada@mail.doc.gov
>Subject: Final version of the Chair's Summary
>
>
>Dear Colleagues,
>
>Thank you for your cooperation on the 3R Senior Officials Meeting.
>Attached is the final version of the Chair's summary.  All the documents,
>including the Chair's summary, will be availlable on the following web-site
>in a week.
>
>http://www.env.go.jp/earth/3r/en/index.html
>
>If you have any questions, please feel free to ask me.
>
>Best regards,
>
>Hiroaki TAKIGUCHI (Mr.)
>Head of the Task Force for the 3R Initiative,
>Waste Management and Recycling Department,
>Ministry of the Environment, Japan
>Email: 3R@env.go.jp
>Tel: +81-3-5501-3152
>Fax: +81-3-3593-8262
>
>
>



Sarah Aker/MAS/ITA/USDOC
02/15/2006 04:32 PM

To  3Rs

cc

bcc

Subject  Fw: one last message to share, promise!

FYI
—— Forwarded by Sarah Aker/MAS/ITA/USDOC on 02/15/2006 04:31 PM ——



ed.pinero@ofee.gov
02/15/2006 02:58 PM

To  sarah.aker@mail.doc.gov

cc  ed.pinero@ofee.gov

Subject  one last message to share, promise!

The paper overall has some strengths, and some weak areas.  It is not
strong enough on the role of the market place, and private sector to
energize 3Rs.  This leveraging of the private marketplace should a theme
throughrunning the entire paper.

I also am wary of section 1.2 that talks about need for legislation.  As
long as it is a country by country decision; but we do not support
international regulations on this; at least I don't think we do.
section 1.3 then is fine to suggest we look at legal frameworks that
exist, as long as there is no expectiation that an outcome is a new set
of more "global" legislative packages.

On a similar point, section 3.1.2, subnumber 1, part 2, is troubling if
the implication is that a goal is to have the international community
help craft national legislation.  It is ok to offer those with
legislation in place as mentors, if they want to, to those who want it.
But no more commitment than that.

Also, it would be nice if it had closer alignment to the dsicussions of
SCP.  For example, the role of government as a consumer and user; not
only as the law and policy maker.  But as OFEE, I am obviously somewhat
provincial on that point.

Table 3 and 4 seem thin in terms of USA info.

On the positive side, the throughrunning theme of sharing successes
stories and awareness is good.

Not sure what the role of this paper is, other than Japan's thoughts,
but we can discuss these issues ans see how receptive they are to edits.

Ed

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN ZINC ASSOCIATION,          )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          Civil Action No. 08-0538 (EGS)
                                    )
UNITED STATES DEPARTMENT OF         )
COMMERCE,                           )
                                    )
            Defendant.              )
                                    )

## ORDER

Upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's Opposition and Cross-Motion for Summary Judgment, replies and all attachments thereto, it is this _____ day of _____, 2008,

ORDERED that Defendant's Motion for Summary Judgment is hereby DENIED; it is

ORDERED that Plaintiff's Cross-Motion for Summary Judgment is hereby GRANTED; it is

ORDERED that Defendant shall immediately release all records identified as responsive to Plaintiff's FOIA request of May 1, 2006, including any attachments thereto; and it is further

ORDERED that Plaintiff is entitled to its attorney's fees in an amount to be determined in a subsequent proceeding.

Summary judgment shall be entered in favor of Plaintiff.

_____
UNITED STATES DISTRICT JUDGE